1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| ALUCARD TAYLOR, individually and on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>ZILLOW, INC., ZILLOW GROUP, INC., ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC., Washington Corporations,<br><br>        Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT
Case No. _____

011313-11/3279870 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   PARTIES ............................................................................................................3

      A.    Plaintiff ....................................................................................................3

      B.    Defendants ..............................................................................................4

III.  JURISDICTION AND VENUE ..........................................................................4

IV.   FACTUAL ALLEGATIONS ...............................................................................5

      A.    Real Estate Industry Background ..........................................................5

      B.    Zillow's "Flex" Program and "Premier" Program ...................................7

      C.    Defendants' Fraudulent Conduct ...........................................................8

      D.    Defendants' Anti-Competitive Conduct ...............................................16

      E.    Zillow's Choice of Law Clause .............................................................17

V.    CLASS ACTION ALLEGATIONS ...................................................................17

VI.   TOLLING OF THE STATUES OF LIMITATIONS ...........................................20

VII.  CLAIMS FOR RELIEF ....................................................................................20

COUNT I VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION
      ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*) (ON BEHALF
      OF A NATIONWIDE CLASS) .........................................................................20

COUNT II VIOLATION OF THE REAL ESTATE SETTLEMENT
      PROCEDURES ACT, 12 U.S.C. § 2607 (ON BEHALF OF A
      NATIONWIDE CLASS) ...................................................................................22

COUNT III UNJUST ENRICHMENT (ON BEHALF OF A NATIONWIDE
      CLASS)............................................................................................................25

REQUEST FOR RELIEF ...........................................................................................26

DEMAND FOR JURY TRIAL .....................................................................................26



Plaintiff Alucard Taylor brings this action on behalf of himself and on behalf of the plaintiff class (the "Class") consisting of all persons and entities who bought a home using a Zillow agent. Defendants Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., and Zillow Listing Services, Inc. (collectively, "Zillow") are Washington State corporations engaged in online real estate transactions. In support of Plaintiff's statutory violations, fraudulent conduct and unjust enrichment claims, Plaintiff states as follows:

## I.    INTRODUCTION

1.    Zillow is the undisputed market leader in online real estate listings. In investment presentations, it notes that it has 66% of the U.S. real estate audience share – twice as high as its nearest competitors.[1] It also promotes the fact that 80% of consumers come to Zillow directly, and that "Zillow revenue growth has meaningfully outperformed a challenged housing market."[2] According to Zillow, it has a "leading category traffic position" and "market-leading audience," with "4x the daily active app users of nearest competitors."[3]

2.    Zillow's ability to monetize this dominance is based on deceptive and illegal conduct. When potential buyers are on Zillow's website, Zillow tricks them into signing up with a Zillow agent. If the agent is part of Zillow's "Flex" program, Zillow gets 40% of the agent's commission – a payment on the back end that is undisclosed to all parties involved.

3.    When a house is for sale on Zillow, the Zillow website has a big button in bright blue lettering posted next to the house listing that says "Contact Agent":



4.    After clicking that button, potential buyers are asked to provide their contact information, which Zillow provides to a Zillow-affiliated agent. Buyers, however, naturally believe

---

[1] Zillow Group, *February 2025 Zillow Investor Presentation*, at 6, efaidnbmnnnibpcajpcglclefindmkaj/https://s24.q4cdn.com/723050407/files/doc_earnings/2024/q4/presentation/Zillow-4Q24-Investor-Presentation.pdf (last visited Aug. 22, 2025).
[2] *Id.* at 9.
[3] *Id.* at 3, 7.

CLASS ACTION COMPLAINT – 1
Case No. _____

- 1 -

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

1  they are contacting the *listing* agent. Instead, they are routed to a Zillow-affiliated *buyer*'s agent,
2  who arranges a tour of the home by getting the buyer to sign a "Touring Agreement." (The same
3  process occurs if the potential buyer clicks the blue "Request a Tour" button.).  The "Touring
4  Agreement" promises the buyer that the agent's services are "free," but this is deceptive and not true:
5  if the sale goes through, the buyer's agent still receives a commission. In addition, if the Zillow-
6  affiliated agent is a "Flex" agent, he or she has to pay Zillow up to 40% of the agent's commission.
7  This cut of the commission paid to Zillow, for no services rendered related to the real estate sale, is
8  never disclosed to the buyer or the seller (the "Hidden Zillow Fees").

9       5.     Zillow furthers its scheme to defraud buyers by effectively forcing home sellers and
10  their agents to post on Zillow.com immediately after advertising the home for sale. If home sellers
11  do not post on Zillow.com within 24 hours of going public, Zillow sends a violation notice to the
12  seller's agent. If the selling agent violates this Zillow-imposed rule three times, the ad is banned on
13  Zillow, effectively forcing the seller to fire her agent and find someone else who will acquiesce to
14  Zillow's coercive tactics. This policy effectively requires sellers and their agents to forgo using other
15  initial methods to advertise the home sale.  The effect of this policy is to inflate the unjustly earned
16  profits Zillow receives from its deceptive conduct, as it continues to increase its dominance of the
17  market.

18       6.     The effect of Zillow's policies and conduct is to increase the purchase price of homes
19  for the buyers. If buyers were directed to *sellers*' agents, they would be better positioned to negotiate
20  a lower purchase price, because the seller would not have to pay commissions to the seller's agent
21  and the buyer's agent. It also incentivizes Zillow Flex agents to prioritize receiving his/her full
22  commission at all costs, even if the buyer loses the bidding process. Since the Flex agents only
23  effectively receive a 1% commission from the purchase of a home (after paying the Hidden Zillow
24  fees and commissions to their firms), they have no practical flexibility in negotiating a lower
25  commission. Sellers are stuck with paying 6% commission (or more) because the buyer Flex agent
26  is receiving such a paltry sum in return, thereby increasing the purchase price of the home for the
27  buyer. Zillow's scheme has the intent and the effect of unlawfully maintaining high and inflexible
28  commissions that drive up the prices that buyers must pay.

CLASS ACTION COMPLAINT – 2
Case No. _____

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

7.     Zillow's conduct constitutes a violation of Washington State consumer protection laws, which prohibit "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010. Zillow designs its website to trick potential buyers into connecting with a Zillow-affiliated agent instead of the seller's agent. Zillow also unfairly and deceptively does not disclose to the buyer or the seller that it is receiving the Hidden Zillow fees from the Flex agents at the tail end of the transaction – facts that both the buyer and the seller would want to know as they negotiate the close of the property.

8.     By requiring Flex agents to pay these hidden fees, Zillow is further violating the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2607), because Zillow is receiving a payment that is not in exchange for completing the property transaction. RESPA prohibits receiving payments that are not "in connection with a transaction involving a federally related mortgage loan." 12 U.S.C. § 2607(b). The Zillow Hidden Fees are not in connection with the closing of the property sale, and Plaintiff is entitled to treble damages under the statute. *See* 12 U.S.C. § 2607(d)(2).

9.     Zillow has also unjustly enriched itself as a result of this scheme. It engaged in patently unfair and deceptive behavior, and obtained a windfall of ill-gotten gains as a result. Zillow is liable to Plaintiff and the Class for all profits earned from its deceitful conduct.

10.     Plaintiff on behalf of himself and the Class accordingly brings this lawsuit for Defendants' violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2607), consumer protection violations under the laws of the State of Washington, and common law unjust enrichment. Plaintiff accordingly seeks treble damages, single damages, injunctive relief, disgorgement, and the costs of this lawsuit, including reasonable attorneys' fees.

## II.     PARTIES

### A.     Plaintiff

11.     Plaintiff Alucard Taylor is a resident of Portland, Oregon. On July 1, 2022, Plaintiff Taylor purchased a home in Portland using a Zillow agent, R.H. prior to his purchase, Plaintiff Taylor was browsing Zillow.com to look for houses, and identified a house that interested him. He clicked on the "Contact Agent" button, believing that he was contacting the listing agent; he did not know

CLASS ACTION COMPLAINT – 3
Case No. _____
- 3 -
011313-11/3279870 V1
HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

that he would be routed to a Zillow agent. In his dealings with R.H. prior to and during the purchase of his home, he did not believe he had any other option than to use R.H. to make the purchase.

**B.    Defendants**

12.    Zillow, Inc. is an online real estate marketplace. It is a general corporation organized and existing under the laws of the State of Washington with its principal place of business at 1301 Second Avenue, Floor 31, Seattle, Washington. Zillow maintains real estate brokerage licenses in several states.

13.    Zillow Group, Inc. offers online real estate services and is incorporated in the State of Washington with its principle executive offices located at 1301 Second Avenue, Floor 31, Seattle, Washington. Zillow is the most visited real estate website in the United States and provides its customers an on-demand experience for selling, buying, renting, and financing, "with transparency and nearly seamless end-to-end service."[4]

14.    Zillow Homes, Inc. is organized and existing under the laws of the State of Delaware, with its principal place of business at 1301 Second Avenue, Floor 31, Seattle, Washington.

15.    Zillow Listing Services, Inc. offers a variety of real estate services. It maintains real estate brokerage licenses in several states. It is a general corporation organized and existing under the laws of the State of Washington with its principal place of business at 1301 Second Avenue, Floor 31, Seattle, Washington.

16.    Collectively, the Zillow entities identified above are referred to herein at "Defendants" or "Zillow."

### III.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because the Class defined herein contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and at least one member of the Class is a citizen of a State different from Defendants. Subject matter jurisdiction over this action also exists under 28 U.S.C. §§ 1331, 1337.

---

[4] *See What is Zillow?*, ZENDESK.COM, https://zillow.zendesk.com/hc/en-us/articles/202345030-What-is-Zillow (last visited Aug. 22, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

18.     This Court has personal jurisdiction over Defendants because Defendants have: (1) transacted substantial business in the United States, including in this District; (2) transacted business with members of the Class throughout the United States, including in this District; (3) had substantial contacts with the United States, including in this District; and (4) committed substantial acts in furtherance of their unlawful scheme in the United States, including in this District.

19.     Each Defendant transacts substantial business in this District, as alleged throughout this Complaint. Defendants reside in this District or transact business in this District. Defendants also market and sell products and services in this District, have had continuous and systematic contacts with this District, and engaged in anticompetitive, unfair, and deceptive business practices that were directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     Real Estate Industry Background

20.     State licensing laws regulate who can represent sellers and buyers in the real estate market. There are two licensee categories: (1) the real estate broker (also known as a "brokerage firm"), and (2) the individual real estate licensee or agent. Brokerage firms license individual real estate realtors or agents and are legally responsible for the actions of their licensed realtors or agents.

21.     Licensed brokers are the only entities permitted by state law to be paid to represent buyers or sellers in a real estate transaction. As a result, a real estate brokerage contracts with sellers and buyers are required to be with brokers, not agents, and all payments to individual realtors or agents pass through brokers.

22.     In typical residential real estate transactions, real estate brokers and agents receive compensation through commissions that are calculated as a percentage of a home's sale price, and the commissions are paid when the home sells.

23.     A seller broker's compensation is set forth in a listing agreement, which is a contract between the seller and the seller broker. The listing agreement specifies the total commission that a home seller will pay to the seller broker and also specifies the amount earmarked to be paid to the buyer broker (in the event the buyer has a broker).

CLASS ACTION COMPLAINT – 5
Case No. _____

011313-11/3279870 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    24.    When a buyer retains a broker, the buyer enters into a contract with that broker. The

2    contract typically discloses that the buyer broker will be compensated by receiving a commission

3    from the seller broker.

4    25.    If the buyer has a broker, the seller broker pays the buyer broker a commission out of

5    the total commission paid by the seller.

6    26.    As a result, the buyer brokers and agents – who are supposed to assist their clients in

7    negotiating against the seller – receive their compensation from the total commission paid by the

8    seller, not from the buyer they represent. According to industry insiders, there is "a lot of confusion

9    around how commissions work," where even writers for real estate publications "never get[] a very

10   clear cut answer from the industry or from anyone" on the subject.[5] And other market participants

11   agreed that the practice is "confusing" and that most consumers "just don't understand how

12   commission works."[6]

13   27.    A Multiple Listing Service ("MLS") is a database of properties listed for sale within

14   a certain geographic region. Only registered agents and brokerages that pay for membership can

15   access an MLS database. There are over 500 MLSs in the United States.[7]

16   28.    After a listing is registered with an MLS, companies like Zillow automatically obtain

17   and display these listings through back-end technology feeds called the Internet Data Exchange

18   ("IDX") or the Virtual Office Website ("VOW"). Zillow has obtained and maintained real estate

19   brokerage licenses for sole purpose of collecting listings – upon information and belief, Zillow itself

20   does not provide any brokerage services. Zillow thereby exploits the listings at little cost to squeeze

21   out profits from the listings, without any compensation to the MLSs, agents, or sellers who created

22   the listings.

23

24

---

25   [5] FTC-DOJ Joint Public Workshop, Segment 1 Tr., June 5, 2018, *available at* https://www.ftc.gov/system/files/
     documents/videos/whats-new-residential-real-estate-brokerage-competition-part-1/ftc-doj_residential_re_brokerage

26   _competition_workshop_transcript_segment_1.pdf (last visited Aug. 22, 2025).
     [6] FTC-DOJ Joint Public Workshop, Segment 2 Tr., June 5, 2018, *available at* https://www.ftc.gov/system/files/

27   documents/videos/whats-new-residential-real-estate-brokerage-competition-part-2/ftc-doj_residential_re_brokerage
     _competition_workshop_transcript_segment_2.pdf (last visited Aug. 22, 2025).

28   [7] *What is an MLS and How Many MLSs Are There? Multiple Listing Service FAQ*, RESO.ORG, https://www.reso
     .org/mls-faq/ (last visited Aug. 22, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**B.      Zillow's "Flex" Program and "Premier" Program**

29.      Behind the scenes, Zillow operates two different programs for prospective buyers' agents:  the "Flex" Program and the "Premier" Program. The Flex Program requires Flex agents to pay Zillow up to 40% of the commissions the agents earn on a sale (the Hidden Zillow Fees). Zillow Flex agents are also required to steer buyers to Zillow Home Loans; if the agents fail to meet certain quotes, they are dropped from the program.[8]

30.      Based on publicly available information, the Zillow agent identified above as "R.H." is a Zillow Flex agent.  R.H.'s "team" (brokerage service), Works Real Estate, advertises itself as "Zillow Flex," which – based on how the real estate industry operates – means that the Zillow agents are Flex agents.  Below is a clip from its Instagram page:



31.      Works Real Estate is also currently advertising for jobs, looking for Zillow Flex Partners:



---

[8] *See Flex Program Standards*, ZILLOW.COM (https://www.zillow.com/z/flex-performance-terms/performance-standards/ (last visited Sept. 19, 2025).

CLASS ACTION COMPLAINT – 7
Case No. _____

011313-11/3279870 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# Real Estate Sales Agent - Zillow Flex Partner

Works Real Estate 🗗

Portland, OR

$48,226.91 - $196,492.21 a year  - Full-time

You must create an Indeed account before continuing to the company website to apply

**Apply on company site** 🗗

32.     The Zillow Premier Program requires agents to pay on a per-lead basis, regardless of whether the lead (the prospective buyer) buys the property.[9]

**C.    Defendants' Fraudulent Conduct**

33.     The overwhelming majority of houses for sale listed in an MLS are displayed on Zillow's home search platform, and most prospective buyers search for homes on Zillow. But buyers and sellers are not aware that Zillow generates the majority of its revenues by engaging in deceptive business practices that inflate the purchase price of the homes. Financial analysts have called Zillow the "clear leader" in the market and have stated that "Zillow's traffic share appears larger than that of its next three competitors combined, and it reports that about 80% of its traffic comes from organic or direct sources. This is a major competitive advantage for Zillow."[10]

34.     When prospective buyers identify homes they are interested in purchasing, Zillow presents them with the option to click a large button with bold type labeled "Request a Tour" or "Contact Agent" in close proximity to the home photos, sale price, and key property details – creating the appearance that the potential buyer can contact the listing agent to ask questions about the property, schedule a tour, or make an offer. Meanwhile, Zillow buries the listing agent in tiny print, barely visible to the average reader.  Below is an example:

---

[9] *See Become a Premier Agent* partner, ZILLOW.COM, https://www.zillow.com/premier-agent/ (last visited Sept. 19, 2025).

[10] *See Zillow Group, Inc.: Initiation of Research Coverage*, WILLIAMBLAIR.COM (April 21, 2025), https://www.williamblair.com/News/Zillow-Group-Inc-Initiation#:~:text=%E2%80%9CImportantly%2C%20Zillow's%.20traffic%20share%20appears,from%20organic%20or%20direct%20sources (last visited Aug. 22, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    35.    Prospective buyers who click on the "Request a Tour/Contact Agent" buttons

18  naturally believe they are reaching out to the *listing* agent who was hired by the home seller to "list"

19  the property. This is a ruse. Zillow actually directs the buyer *away* from the listing agent, and

20  redirects the buyer to a buyer agent who is working on a Zillow team, who lacks any specialized

21  knowledge about the subject property. In addition, Zillow Flex agents have agreed to pay the Hidden

22  Zillow fees. The Zillow agent who pays for the lead then attempts to contact the buyer and insert

23  herself into the transaction between the buyer and the listing agent so that she can extract a buyer

24  agent commission – typically around 3% of the purchase price of the property.

25    36.    On Zillow's website (as shown in the screenshot above), if potential buyers select

26  "Contact Agent" or "Request a Tour," the ultimate outcome is the same:  they are prompted to

27  provide their name, email, and phone number. Zillow then farms out these leads to Zillow-affiliated

28  agents who are part of the Zillow Flex program. The agents contact the buyers, propose a tour, and

CLASS ACTION COMPLAINT – 9
Case No. _____

011313-11/3279870 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  ask the buyers to sign Zillow's "Touring Agreement."[11] The "Touring Agreement" emphasizes that

2  the services are purportedly "free," as follows:

**4. No Fee for the Touring Services.**
    (a)  Buyer shall not owe or pay Broker any fee for the Touring Services.

37.    Although the touring services are technically "free," buyers are being tricked into believing that the agent's services are free. In reality, if the buyer purchases the home, the buyer agent will add a provision to the purchase offer agreement requiring the Seller to pay a commission to the buyer agent (with no disclosure of the Hidden Zillow Fees if a Flex Agent is involved). Listing agents have recently observed that approximately 80% of the prospective buyers they communicate with about their listings have already spoken with a Zillow Agent who was using a Touring Agreement.[12]

38.    This is precisely what happened to Plaintiff Taylor. In 2022, when browsing Zillow.com to look for houses of interest to him, he clicked on the "Contact Agent" button, assuming that he would be contacting a *listing* agent. Instead, he was routed to a Zillow agent. During the touring and closing process, Plaintiff Taylor did not believe he had any other option other than to use the Zillow agent. If Plaintiff Taylor was able to contact the listing agent, the seller could have paid less commissions, and the purchase price could have been lower. The Hidden Zillow Fees were not disclosed to Plaintiff Taylor.

39.    As Forbes' Magazine described it, this is a classic bait-and-switch scheme by Zillow:

> [The Premier Agent Program], for many years Zillow's primary source of revenue, is based on what appears to me to be a classic bait-and-switch. Each Zillow property page contains, in bold letters at the top, the name of an agent to contact. Ah, thinks the reader, this is the exclusive listing agent who handles the property and is the person most knowledgeable about it. But no, it's not. It's just the name of the agent who has PAID Zillow/StreetEasy for the privilege of being listed there.[13]

---

[11] Touring Agreement Oregon, ZILLOWGROUP.COM, https://delivery.digitallibrary.zillowgroup.com/public/OR-FinalTouringAgreement_pdf_Original.pdf (last visited Sept. 19, 2025).

[12] *See, e.g.,* Jordan Teicher, *What Happens When a Buyer Contacts a Premier Agent Partner?*, ZILLOW.COM (July 19, 2024), https://www.zillow.com/premier-agent/when-buyers-contact-premier-agent/ ("78% of buyers use Zillow has part of their home-buying journey.") (last visited Aug. 22, 2025).

[13] *See* Frederick Peters, *Buyers Beware of this Advertising Tactic by Zillow and StreetEasy*, FORBES (Dec. 9, 2020), *available at* https://www.forbes.com/sites/fredpeters/2020/12/09/buyers-beware-of-this-advertising-tactic-by-zillow-and-streeteasy/ (last visited Sept. 18, 2025).

CLASS ACTION COMPLAINT – 10
Case No. _____

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

40.     Zillow acknowledges that the Touring Agreement is designated to "set[] up the expectation of representation."[14]  Zillow further explains the Touring Agreement (described as a "buyer agreement" below) as follows (*id.*):

## Why buyer agreements are important

Buyer agreements typically lay out exactly what the agent will do for a client. However, requiring an exclusive commitment upfront before the buyer feels comfortable can negatively impact the consumer experience. To put it simply, most people want to date before becoming exclusive.

At the same time, agents deserve to be compensated for the value they provide to buyers. Since this is an introductory agreement, we still anticipate that buyers and agents will sign a longer-term agreement that outlines compensation terms, if they choose to work together throughout the buying process.

The reference to "compensation terms" relates to commissions, not the Hidden Zillow Fees, which are not disclosed to the buyer or the seller.

41.     Zillow describes its Touring Agreement as a "buyer agreement," even though it is not labeled as such. But the "buyer agreement" is "limited," as Zillow acknowledges. Again from Zillow's website (*id.*):

This could be someone's first introduction to buyer agreements, so this approach lets you and the buyer enter the first showing with a signed limited services agreement that satisfies requirements outlined in the NAR settlement.

42.     Notwithstanding this "buyer's agreement," Zillow fails to disclose to home buyers that if they work with a Zillow-affiliated Flex agent, Zillow will collect up to 40% of that agent's commission (the Hidden Zillow Fees). Zillow-affiliated Flex agents, who must pay up to half of their commission to Zillow, are driving up the commission amounts to cover their costs. And buyers are forced to pay more for homes based on the rising commission costs. Traditionally, when necessary, in an ordinary situation non-Zillow agents are often willing to make concessions on their commission

---

[14] *See* Zillow Premier Agent, *Zillow's New Touring Agreement Helps Agents Seamlessly Adjust to Industry Changes*, ZILLOW.COM (Aug. 1, 2024), https://www.zillow.com/premier-agent/zillow-touring-agreement-nar-settlement/#state (last visited Aug. 22, 2025).

CLASS ACTION COMPLAINT – 11
Case No. _____

011313-11/3279870 V1


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1   rates to get a deal done. But Zillow-affiliated Flex agents, who operate on far tighter margins, are

2   less willing to reduce their commission amount to satisfy the demands of a home seller.

3       43.    Zillow takes steps to hide the Hidden Zillow Fees from buyers and sellers. Zillow's

4   webpage suggests that the Hidden Zillow Fees are paid out of escrow,[15] but this is not true. The

5   Hidden Zillow Fees are actually paid by the buyer broker directly to Zillow, so that the buyer and

6   seller are never made aware of it during the closing process.

7       44.    Zillow maintains recordings of all introductory calls between buyers and Zillow-

8   affiliated agents who paid for their referrals. Upon information and belief, Zillow-affiliated agents

9   on these calls do not readily disclose that they are not the listing agent.[16]

10      45.    Sales of referrals or "leads" to real estate agents are Zillow's primary source of

11  revenues, which grew to over $2 billion last year. As sellers pay inflated commissions, and traditional

12  real estate brokers experience declining revenues, Zillow revenues continue to grow. Real estate

13  agent and commentator Jon Brooks further describes Zillow's deceptive business practices and

14  referral fees as follows:[17]



---

[15] *See Flex Compliance Policies & The Disengagement Process*, ZILLOW.COM, https://www.zillow.com/z/flex-performance-terms/compliance/#:~:text=Payment%20must%20be%20remitted%20to,.must%20show%.20Gross.%20Commission%20earned (last visited Aug. 22, 2025).

[16] *See* Byron Lazine, *From Lead to Appointment:  The Zillow Buyer Script that Works* YOUTUBE.COM (Dec. 23, 2024), available at https://www.youtube..com/watch?v=Hcd2vROkyV0&t=114s (last visited Sept. 18, 2025).

[17] *See* John Brooks, *Zillow's Hidden 40% Agent Fee is Costing You Big*, YOUTUBE.COM (June 4, 205), https://www.youtube.com/watch?v=QnDIi-JT1SA (last visited Aug. 22, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1
2
3
4
5
6
7
8
9
10
11



12  These referral fees are what make it so expensive for agents to operate in the
13  market because there's 204 million unique active users on Zillow.

14  []

15  Zillow continues to gobble up more and more and more of your money that
     you're paying in commissions, and you didn't even know about it when you
16  clicked the button on Zillow.

17  []

18  This is a ton of money – of your money – that you think is going to the real
     estate agent that's not going to the real estate agent or the broker; it's going
19  straight to Zillow off the top, and by the way, they have been raising these
     fees over time, as you can see that the top range actually increased it from
20  35% to 40%.

21  []

22  Zillow is making just as much money as the agent is making and all Zillow is
     doing is selling your information to the real estate agent.

23  []

24  Now where can you find the information of the agent who actually has the
25  listing? So they are selling your information to the buyer agent; you're not
     getting in touch with the listing agent, the one who actually has the listing.
26  The one who actually  -- and this is where they hide it – it is the person right
     here. You need to call this number right there in order to get in touch with the
27  real estate agent who actually has the listing and knows about the property.
     And this is one of the problems; it's hidden down a little bit on the page where
28  you can barely find it.

CLASS ACTION COMPLAINT – 13
Case No. _____

011313-11/3279870 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX



46.     In truth, contrary to Jon Brooks' statement, the Zillow listings do not routinely even include the seller agent's phone numbers. Many times it simply provides the agent's name, as excerpted below:

47.     Zillow charges Flex Agents up to 40% of their commission in exchange for the leads, and agents who are willing to pay this outsized fee are typically less skilled and experienced with

CLASS ACTION COMPLAINT – 14
Case No. _____

011313-11/3279870 V1

- 14 -

real estate transactions, and less knowledgeable about the local residential real estate market, than agents who are not willing to pay the fee. Buyers are stuck with agents who offer inferior services for an inflated price.

48.    Ironically, Zillow promotes "independent representation" of buyers and sellers, while engineering a relationship such that the agents are entirely dependent on – and compromised by – Zillow. As the website states, "We strongly believe in the value of independent representation: Buyers and sellers deserve to work with an agent who is committed their best interests and only represents them."[18] This is plainly false; the agents effectively represent Zillow.

49.    Through its Hidden Zillow Fees scheme, Zillow is aiding and abetting the breaching of the agents' fiduciary duties to their clients. Under Oregon law, for example, a real estate agent representing a buyer has several duties, including an obligation to "act under a written representation agreement with the buyer. The representation agreement must (a) Be entered into before, or as soon as reasonably practicable after, the licensee has commenced efforts to assist the buyer in purchasing real property or in identifying real property for purchase." O.R.S. § 696.810(1). In addition:

> (5) A buyer's agent owes the buyer, other principals and the principals' agents involved in a real estate transaction the following affirmative duties:
>
> (a) To deal honestly and in good faith;
>
> (b) To present all written offers, written notices and other written communications to and from the parties in a timely manner without regard to whether the property is subject to a contract for sale or the buyer is already a party to a contract to purchase; and
>
> (c) To disclose material facts known by the buyer's agent and not apparent or readily ascertainable to a party.
>
> (6) A buyer's agent owes the buyer involved in a real estate transaction the following affirmative duties:
>
> (a) To exercise reasonable care and diligence;
>
> (b) To account in a timely manner for money and property received from or on behalf of the buyer;
>
> (c) To be loyal to the buyer by not taking action that is adverse or detrimental to the buyer's interest in a transaction;

---

[18] *See* Zillow Premier Agent, *Zillow's New Touring Agreement Helps Agents Seamlessly Adjust to Industry Changes*, ZILLOW.COM (Aug. 1, 2024), https://www.zillow.com/premier-agent/zillow-touring-agreement-nar-settlement/#state (last visited Aug. 22, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

(d) To disclose in a timely manner to the buyer any conflict of interest, existing or contemplated;

(e) To advise the buyer to seek expert advice on matters related to the transaction that are beyond the agent's expertise;

(f) To maintain confidential information from or about the buyer except under subpoena or court order, even after termination of the agency relationship; and

(g) Unless agreed otherwise in writing, to make a continuous, good faith effort to find property for the buyer, except that a buyer's agent is not required to seek additional properties for the buyer while the buyer is subject to a contract for purchase or to show properties for which there is no written agreement to pay compensation to the buyer's agent. [O.R.S. § 696.810(5) & (6).]

50.    Zillow Flex Agents are violating their fiduciary duties in many respects, including by not disclosing their Hidden Zillow fees, and not exercising reasonable skill and care on behalf of the buyers.

**D.    Defendants' Anti-Competitive Conduct**

51.    The harmful effects of Zillow's fraudulent conduct are exacerbated and amplified by its abuse of its dominant position to monopolize as many listings as possible. On April 10, 2025, Zillow announced that it would be implementing the Zillow Listing Access Standards (the "Zillow LAS"). Under this program, agents must list any properties on MLS (which thereby get routed to Zillow) within 24 hours of any effort by the seller's agent to sell the property. This includes, for example, yard signs, virtual tours, or social media posts.[19]  If the agents do not list their properties within 24 hours, they are sent warnings of non-compliance. According to Zillow, "each non-compliant listing will be logged as a single violation and the listing agent will be notified directly on each violation." *Id.*

---

[19] *See* Zillow Premier Agent, *Zillow's Listing Access Standards:  What Agents Need to Know*, ZILLOW.COM (May 20, 2025), *available at* https://www.zillow.com/premier-agent/agents-know-listing-access-standards/ (last visited Aug. 22, 2025). Zillow defines "public marketing" to mean (i) "promoting, marketing, or advertising a listing in any manner", including without limitation, "flyers, yard signs, social media, public-facing websites or apps, emails, printed mailers, newspapers, open houses, previews, showings, multi-brokerage listing sharing networks, virtual tours, and brokerage private listing networks to the extent such listing network is publicly marketed and/or accessible to consumers, including those accessible only to a brokerage's clients behind a registration wall"; and/or (ii) sending and/or transmitting a Listing, regardless of status, to an MLS, unless seller opts out of the display of the Listing everywhere on the internet due to privacy concerns, and executes a Seller Waiver (as defined below). *Id.*

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

52. Critically, *every single post* is a violation, and "an agent's third non-compliant listing – and any subsequent non-compliant listings – will be blocked from Zillow and Trulia for the life of the listing agreement between that listing broker and seller." *Id*. The practical effect of this conduct is that sellers and their agents are forced to list through Zillow via the MLS within 24 hours of putting out any public information about the property for sale. The purpose and effect of this policy is to ensure that all houses, throughout the country, will be listed on Zillow so that Zillow can maintain and grow its monopoly and continue to unjustly earn profits through its fraudulent practices.

53. Zillow's efforts to capture the whole market are made more insidious because Zillow slaps the homes for sale with a "Zestimate" (Zillow's estimate of the sale price of the home), which is often inaccurate and is contrary to the seller's interest. Zillow acknowledges in fine print that "[t]he amount of data we have for your home and homes in your area directly affects the Zestimate's accuracy, including the amount of demand in your area for homes."[20]

54. Without the deceptive practices, more home buyers would connect directly with listing agents and avoid the Hidden Zillow Fees. Due to Zillow's deceptive practices, more buyers use buyer agents than they otherwise would, which results in higher buyer broker commissions and correspondingly higher purchase prices. Neither Zillow nor the participating real estate agents disclose to the buyer that Zillow collects up to 40% of the commissions that the seller pays to the buyer broker.

**E.    Zillow's Choice of Law Clause**

55. According to Zillow's "Terms of Use," Washington State law applies to any disputes between Zillow and its users.[21]

## V.    CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of himself, and as a class action under Federal Rule of Civil Procedure 23, on behalf of the members of the following Class based on violations of consumer protection laws, RESPA, and unjust enrichment:

---

[20] What is a Zestimate?, ZILLOW.COM, https://www.zillow.com/z/zestimate/ (last visited Aug. 22, 2025).

[21] *See Zillow Terms of Use*, ZILLOW.COM (May 20, 2025), https://www.zillow.com/z/corp/terms/ (last visited Sept. 18, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1
2
>All persons and entities in the United States who, from September 19, 2021 to the present, purchased a home listed on Zillow.com, and were represented by a Zillow agent.

3    57.    Excluded from the Class are Defendants, their officers, directors and employees; any

4  entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or

5  assign of any Defendant. Also excluded from the Class are any judicial officers presiding over this

6  action and the members of their immediate family and judicial staff, jurors, and Plaintiff's counsel

7  and employees of their law firms.

8    58.    The Class is readily ascertainable because records of the relevant property

9  transactions should exist and are easily obtainable.

10    59.    The Class members are so numerous that individual joinder of all its members is

11  impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the Class

12  has at least tens of thousands of members, the exact number and their identities being known to

13  Defendants.

14    60.    Plaintiff will fairly and adequately protect the interests of the members of the Class.

15  Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class.

16    61.    Common questions of law and fact exist as to all members of the Class and

17  predominate over questions affecting only individual Class members. These common legal and

18  factual questions, each of which also may be certified under Rule 23(c)(4), include but are not limited

19  to the following:

20          a.    Whether Defendants engaged in the alleged conduct;

21          b.    Whether the conduct of Defendants caused injury to the business or property

22              of Plaintiff and the other members of the Class;

23          c.    Whether the effect of Defendants' conduct was to inflate both total

24              commissions and buyer broker commissions that increased the buyer's

25              purchase price;

26          d.    Whether Plaintiff and the other members of the Class are entitled to, among

27              other things, injunctive relief, and, if so, the nature and extent of such

28              injunctive relief;

CLASS ACTION COMPLAINT – 18
Case No. _____



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

1          e.      Whether Defendants' conduct is unlawful; and

2          f.      The appropriate class-wide measures of damages.

3      62.    Plaintiff's claims are typical of the claims of the members of the Class because his

4  claims arise from the same course of conduct by Defendants, and the relief sought within the Class

5  is common to each member. There are no defenses available to Defendants that are unique to Plaintiff

6  or to any particular Class members.

7      63.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has

8  no interest incompatible with the interests of the Class, and has retained counsel competent and

9  experienced in class action, consumer protection, and false advertising litigation.

10     64.    A class action is the superior method for the efficient adjudication of this litigation

11 because individual litigation of Class members' claims would be impracticable and individual

12 litigation would be unduly burdensome to the courts. Because of the size of the individual Class

13 members' claims, no Class member could afford to seek legal redress for the wrongs identified in

14 this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and

15 would continue to suffer losses, as Defendants continue to engage in the unlawful, unfair, fraudulent,

16 and/or deceptive conduct that is the subject of this Complaint, and Defendants would be permitted

17 to retain the proceeds of their violations of law. Further, individual litigation has the potential to

18 result in inconsistent or contradictory judgments. A class action in this case presents fewer

19 management problems and provides the benefits of single adjudication, economies of scale, and

20 comprehensive supervision by a single court.

21     65.    Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

22         a.      The prosecution of separate actions by individual Class members would create

23                 a risk of inconsistent or varying adjudications with respect to individual Class

24                 members that would establish incompatible standards of conduct for

25                 Defendants;

26         b.      The prosecution of separate actions by individual Class members would create

27                 a risk of adjudications with respect to them which would, as a practical matter,

28                 be dispositive of the interests of other Class members not parties to the

CLASS ACTION COMPLAINT – 19
Case No. _____

**HAGENS BERMAN**

- 19 -

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

1    adjudication, or substantially impair or impede their ability to protect their

2    interests; and/or

3        c.    Defendants have acted or refused to act on grounds generally applicable to the

4            Class, thereby making appropriate final and injunctive relief with respect to

5            the Class members as a whole.

6                    **VI.    TOLLING OF THE STATUES OF LIMITATIONS**

7        66.    As of the date of this Complaint, Zillow still does not disclose on its website whether

8    Zillow-affiliated real estate agents are Zillow "Flex" agents.  More importantly, Zillow and its

9    affiliated agents at no point disclose the existence of the Hidden Zillow Fees to buyers or sellers

10   during the property transaction.  There was no reasonable way for the public, including Plaintiff

11   Taylor, to know that Zillow Flex agents were involved in their transactions, and certainly no

12   reasonable way for the public and Plaintiff Taylor to know about the payment of the Hidden Zillow

13   fees.  Indeed, Zillow concealed these facts from buyers and sellers.

14       67.    Plaintiff Taylor and Zillow.com users further had no way of knowing about Zillow

15   deceptive conduct generally, including the deceptive design of Zillow's website.  As a result, Plaintiff

16   Taylor and other members of the public did not discover and reasonably could not have discovered

17   Zillow's fraudulent conduct and receipt of hidden fees.  Any applicable statues of limitations or

18   repose are accordingly tolled.

19                        **VII.    CLAIMS FOR RELIEF**

20                            **COUNT I**

21   **VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
        **(Wash. Rev. Code Ann. § 19.86.010, *et seq*.)**
22           **(On Behalf of A Nationwide Class)**

23       68.    Plaintiff (for purposes of all Washington Class Counts) incorporates by reference all

24   paragraphs as though fully set forth herein.

25       69.    Plaintiff bring this Count on behalf of the nationwide class based on violations of

26   Washington's Consumer Protection Act (the "Washington CPA").

27       70.    Defendants, Plaintiff, and each member of the Washington Class are "person[s]"

28   under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

CLASS ACTION COMPLAINT – 20
Case No. _____

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

- 20 -

011313-11/3279870 V1

71.    At all relevant times, Defendants were and are engaged in "trade" or "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

72.    The Washington CPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010. Defendants' conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. In short, Defendants' conduct has been deceptive because they have the capacity or tendency to deceive.

73.    In the course of Defendants' business, Defendants crafted their website to deceive buyers into believing that they were contacting the *seller*'s agent, when in fact potential buyers were being routed to a Zillow-affiliated agent. When the agent was a Zillow Flex agent, the Flex agent failed to disclose (and was prohibited from disclosing) the Hidden Zillow Fees to the buyer or seller. The net effect of Defendants' conduct was to drive up the commission paid by sellers, to the detriment of the sellers.

74.    Defendants knew or should have known that their conduct violated the Washington CPA.

75.    Defendants owed Plaintiff and the Class a duty to disclose the truth about the deceptive website and the Hidden Zillow Fees because Defendants:

      a.    Possessed exclusive knowledge of the deceptive website and the Hidden Zillow Fees; and

      b.    Intentionally concealed the foregoing from Plaintiff and the Class.

76.    Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

77.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiff and the other Class members paid inflated commissions related to the sales of their homes. These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.



1    78.    Defendants' conduct also aided and abetted the buyer agent's fiduciary duties to

2    Plaintiff Taylor, in that the agent did not disclose the material fact of the Hidden Zillow Fees that the

3    agent had to pay to Zillow.

4    79.    Defendants' violations present a continuing risk to Plaintiff as well as to the general

5    public. Defendants' unlawful acts and practices complained of herein impact the public interest, in

6    that home sellers are paying inflated commissions as a result of Defendants' conduct.

7    80.    Defendants are liable to Plaintiff and the Class members for damages in amounts to

8    be proven at trial, including attorneys' fees, costs, and treble damages up to $25,000, as well as any

9    other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

10                                      **COUNT II**

11          **VIOLATION OF THE REAL ESTATE SETTLEMENT**
            **PROCEDURES ACT, 12 U.S.C. § 2607**
12                  **(On Behalf of A Nationwide Class)**

13    81.    Plaintiff repeats and incorporates by reference each paragraph above and in any other

14    count of this Complaint.

15    82.    The Real Estate Settlement Procedures Act ("RESPA") (codified at 12 U.S.C. § 2601,

16    *et seq.*) was enacted in 1974 to provide consumers with greater and timelier disclosure of the nature

17    and costs of the real estate settlement process and to protect them from abusive practices.

18    83.    RESPA's premise was that complete disclosure of information would preclude illegal

19    kickbacks, fee splits, unearned fees, and compensated referrals, and thereby empower the consumer

20    to get the same or better services at a lower cost.

21    84.    Section 7 of RESPA (12 U.S.C. § 2607) provides: "No person shall give and no

22    person shall accept any portion, split, or percentage of any charge made or received for the rendering

23    of a real estate settlement service in connection with a transaction involving a federally related

24    mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

25    85.    RESPA confers on the Secretary of the U.S. Department of Housing and Urban

26    Development ("HUD") authority to prescribe rules and regulations to achieve the purposes of

27    RESPA. The regulation adopted by HUD to fulfill its mandate is known as Regulation X, 24 C.F.R.

28    § 3500, *et seq*.

**HAGENS BERMAN**

86.    RESPA achieves its goals in a twofold manner: by imposing disclosure requirements in connection with settlement services, and by prohibiting certain practices in connection with settlements.

87.    The term "settlement services" includes any service provided in connection with a real estate settlement, including, but not limited to, providing brokerage services.

88.    HUD has determined in its regulations that kickbacks, fee splits, and referral fees in connection with residential real estate sales are anticompetitive, result in harm to consumers, and thus illegal.

89.    24 C.F.R. § 3500.14 further explains the prohibitions in 12 U.S.C. § 2607 as follows:

(b)    No referral fees. No person shall give and no person shall accept any fee, kickback or other thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a settlement service involving a federally related mortgage loan shall be referred to any person. Any referral of a settlement service is not a compensable service, except as set forth in Sec. 3500.14(g)(1). A business entity (whether or not in an affiliate relationship) may not pay any other business entity or the employees of any other business entity for the referral of settlement service business.

(c)    No split of charges except for actual services performed. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section. The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this part be avoided by creating an arrangement wherein the purchaser of services splits the fee.

(d)    Thing of value. This term is broadly defined in section 3(2) of RESPA (12 U.S.C. 2602(2)). It includes, without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity, special bank deposits or accounts, special or unusual banking terms, services of all types at special or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another person's expenses, or reduction in credit against an existing obligation. The term "payment" is used throughout Secs. 3500.14 and 3500.15 as synonymous with the giving or receiving any "thing of value'' and does not require transfer of money.

90.    The Plaintiff's settlements of residential real estate purchases and sales were financed in whole or in part by federally related mortgage loans.  Specifically, Plaintiff Taylor used a lender which is regulated by an agency of the Federal Government.

91.    Defendants are real estate settlement services providers that provided real estate settlement services involving federally related mortgage loans within the meaning of 12 U.S.C. § 2602(2) and § 2607(a) for the settlements at issue.

92.    In the alternative to the preceding allegation, Defendants are subject to RESPA because it ostensibly "provides business incident to or part of" a real estate settlement service and received settlement fees in connection therewith, within the meaning of 24 C.F.R. §§ 3500.2 and 3500.14, *et seq*.

93.    In the alternative to the preceding allegation, each Defendant is also a person who received a split of commissions (other than for services performed) that were paid for the rendering of a settlement service in transactions involving federally related mortgage loans, within the meaning of 12 U.S.C. § 2607(a) and (b).

94.    The  Hidden Zillow Fees were paid to Zillow by seller brokers as settlement service providers using settlement proceeds within the meaning of 12 U.S.C. §§ 2602(2) and 2607(a) and 24 C.F.R. §§ 3500.2 and 3500.14, *et seq*.

95.    The seller brokers paid the Hidden Zillow Fees from settlement proceeds in connection with real estate settlements involving federally related mortgage loans.

96.    The Zillow-affiliated agents who received real estate commissions from the subject settlements acquiesced in splitting those commissions with the Defendants by paying the Hidden Zillow Fees in connection with real estate settlements involving federally related mortgage loans.

97.    Defendants accepted the Hidden Zillow Fees either as a settlement services provider, a purported provider of services incident to or part of a real estate settlement service, or a person within the meaning of 12 U.S.C. § 2607, *et seq*.

98.    Payment and receipt of the Hidden Zillow Fees violated 12 U.S.C. § 2607(b) in that it represents a split of commissions paid without rendering any settlement services in connection with a federally related mortgage loan.



99.    Defendants collect the unearned Hidden Zillow Fees from settlement proceeds *only* when a listed property sells.

100.    The Hidden Zillow Fees are paid from settlement proceeds after all real estate settlement services have been rendered. The Hidden Zillow Fees serve no legitimate purpose, and are an illegal fee for which Defendants perform no services.

101.    Each Defendant is jointly and severally liable to the Plaintiff pursuant to 12 U.S.C. § 2607(d)(2) in an amount equal to three times the Hidden Zillow Fees.

**COUNT III**

**UNJUST ENRICHMENT**
**(On Behalf of A Nationwide Class)**

102.    Plaintiff repeats and incorporates by reference each paragraph above and in any other count of this Complaint.

103.    As a result of the wrongful and deceptive conduct of Defendants as alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of Hidden Zillow Fees and referral fee payments by Premium Agents (the "Premium Fees").

104.    In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

105.    As a result, each Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

106.    The unjust enrichment of Defendants is traceable to, and resulted directly and proximately from, the conduct alleged herein.

107.    Defendants either knew or should have known that the Hidden Zillow Fees and the Premium Fees were obtained by deception and were unearned. As such, it would be inequitable for Defendants to retain the benefit of the Hidden Zillow Fees and Premium Fees under these circumstances.

108.    The financial benefits derived by Defendants from collecting Hidden Zillow Fees and Premium Fees rightfully belong to Plaintiff and Class members.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1      109.    Defendants' acceptance and retention of the Hidden Zillow Fees and Premium Fees

2 under the circumstances alleged herein make it inequitable for Defendants to retain the benefits

3 without payment of the value to Plaintiff and Class members.

4      110.    Plaintiff and Class members are entitled to recover from Defendants all amounts

5 wrongfully collected and improperly retained by Defendants, plus interest thereon.

6 **REQUEST FOR RELIEF**

7      WHEREFORE, Plaintiff, individually and on behalf of all Class members, respectfully

8 requests that the Court enter judgment in his favor and against Defendants, as follows:

9      A.    Determine that this action may be maintained as a class action pursuant to Rule 23(a),

10 (b)(2), and (b)(3) of the Federal Rules of Civil Procedure; direct that reasonable notice of this action,

11 as provided by Rule 23(c)(2), be provided to the Class; and declare Plaintiff as the representatives of

12 the Class;

13      B.    Enter joint and several judgments against the Defendants and in favor of Plaintiff and

14 the Class;

15      C.    Award the Class damages (i.e., three times the Hidden Zillow Fees and/or the

16 Premium Fees) in an amount to be determined at trial;

17      D.    Order disgorgement in the amount by which Defendants' ill-gotten gains exceed the

18 treble damages awarded in this case;

19      E.    Permanently enjoin Defendants' ongoing anticompetitive and deceptive conduct;

20      F.    Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees

21 as provided by law; and

22      G.    Award such further and additional relief as the case may require and the Court may

23 deem just and proper under the circumstances.

24 **DEMAND FOR JURY TRIAL**

25      Plaintiff hereby demands a jury trial for all claims so triable.

26

27

28

CLASS ACTION COMPLAINT – 26
Case No. _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

011313-11/3279870 V1

1    DATED: September 19, 2025                    Respectfully submitted,

2                                                 HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                                  By: /s/ Steve W. Berman
4                                                     Steve W. Berman (WSBA No. 12536)
                                                  By: /s/ Jerrod C. Patterson
5                                                     Jerrod C. Patterson (WSBA No. 43325)
                                                  1301 Second Avenue, Suite 2000
6                                                 Seattle, WA 98101
                                                  Telephone: (206) 623-7292
7                                                 Facsimile:  (206) 623-0594
                                                  Email: steve@hbsslaw.com
8                                                        jerrodp@hbsslaw.com

9
                                                  Douglas J. McNamara*
10                                                COHEN MILSTEIN SELLERS & TOLL PLLC
                                                  1100 New York Avenue NW, 8th Floor
11                                                Washington, DC 20005
                                                  Telephone:  (202) 408-4600
12                                                Email: dmcnamara@cohenmilstein.com

13
                                                  Theodore J. Leopold*
14                                                COHEN MILSTEIN SELLERS & TOLL PLLC
                                                  11780 U.S. Highway One
15                                                Suite N500
                                                  Palm Beach Gardens, FL 33408
16                                                Telephone: (561) 515-1400
                                                  Facsimile: (561) 515-1401
17                                                Email: tleopold@cohenmilstein.com

18
                                                  *Attorneys for Plaintiff and the Proposed Class*
19

20                                                **Pro hac vice application forthcoming*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT – 27
Case No. _____                                - 27 -

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX