1

2

THE HONORABLE JAMES L. ROBART

3

4

5

6

7

8

9

10    **UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

11

12   ALUCARD TAYLOR, ARABA
ARMSTRONG, HAN ZHENG, DAVID          Consolidated Case No. 2:25-cv-01818-JLR
13   LIAO, KAREN KING, LISA KNUDSON,
EYDALIA THURSTON, KYLE SILVA,        **ZILLOW DEFENDANTS' MOTION TO**
14   DALE KOGER, JOHN CADY, and          **DISMISS AMENDED**
REBECCA BRUCALIERE, individually and **CONSOLIDATED CLASS ACTION**
15   on behalf of all others similarly situated,  **COMPLAINT**

16                   Plaintiffs,             NOTE ON MOTION CALENDAR:
MARCH 20, 2026
17           v.
**ORAL ARGUMENT REQUESTED**
18   ZILLOW, INC., ZILLOW GROUP, INC.,
ZILLOW HOMES, INC., and ZILLOW
19   LISTING SERVICES, INC., Washington
Corporations, ZILLOW HOME LOANS, LLC,
20   a California Corporation, GK PROPERTIES, a
Nevada Corporation, REAL BROKER, LLC, a
21   Florida Corporation, and FRANO TEAM, a
Florida Organization,
22
                   Defendants.
23

24

25

26

**DEFENDANTS' MOTION TO DISMISS**                              COOLEY LLP
**CASE NO. 2:25-CV-01818-JLR**                    1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................ 1

II.  Factual Background ............................................................................ 3

    A.  Contact Agent Allegations. ......................................................... 3

    B.  Pre-Approval Letter Allegations. ............................................... 7

III. Legal Standard ................................................................................... 8

IV. Argument ........................................................................................... 8

    A.  The CCAC Contains Fatal Flaws Common to Multiple Claims.................. 8

        1.  Plaintiffs Do Not Plead Causation. ................................... 8

        2.  Plaintiffs' Group Pleading Strategy Is Improper. .............. 10

        3.  Applicable Statutes of Limitations Bar Several Plaintiffs' Claims. ................. 11

    B.  Plaintiffs' RESPA Claims Fail for Multiple Reasons. .................................. 13

        1.  Plaintiffs lack statutory standing under RESPA. ................ 14

        2.  The Section 2607(a) claim fails for several reasons (Count II). ................ 14

            a.  No Plaintiff Alleges a Timely 2607(a) Claim........................... 14

            b.  Pre-approval letters are not RESPA settlement services. ................ 15

            c.  Pre-approval letters are not "referrals" under RESPA............................. 17

            d.  Plaintiffs fail to allege a "thing of value." ................................. 18

        3.  The Section 2607(b) claim fails because RESPA does not prohibit commissions for provided services and the safe harbor applies (Count III). .......................... 19

            a.  Zillow provided services in exchange for a settlement fee......................... 19

            b.  The 2607(c) safe harbor bars Plaintiffs' 2607(b) claim.............................. 20

    C.  Plaintiffs' WCPA Claim Fails (Count IV)................................................. 20

        1.  Plaintiffs do not plead unfair or deceptive conduct. ......................... 20

        2.  Plaintiffs do not plead injury.......................................................... 23

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR
i
COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

D.  Plaintiffs Fail to Allege Facts to Support a Civil RICO Claim (Count I). ................. 23

    1.  Plaintiffs do not allege any "racketeering activity" with particularity. ............. 24

    2.  Plaintiffs have not alleged an "association-in-fact" enterprise, or a RICO conspiracy. ...................................................................................... 26

E.  Plaintiffs Fail to Plead an Aiding and Abetting Breach of Fiduciary Duty Claim (Count VI). ................................................................................... 27

F.  Plaintiffs' Unjust Enrichment Claim Fails (Count VII). ............................. 28

V.  Conclusion ........................................................................................... 29

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

ii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987)................................................................12

*In re Amazon Serv. Fee Litig.*,
    705 F. Supp. 3d 1255 (W.D. Wash. 2023), *aff'd*, 2025 WL 2268252 (9th Cir.
    Aug. 8, 2025) .................................................................28

*Amina v. WMC Fin. Co.*,
    329 F. Supp. 3d 1141 (D. Haw. 2018)................................................11

*Blaylock v. First Am. Title Ins. Co.*,
    2008 WL 8741396 (W.D. Wash. Nov. 7, 2008).......................................14

*Bloom v. Martin*,
    77 F.3d 318 (9th Cir. 1996)..........................................................15

*Bolinger v. First Mult. Listing Serv., Inc.*,
    2014 WL 4803155 (N.D. Ga. Sept. 26, 2014) .............................. *passim*

*In re Bryce*,
    491 B.R. 157 (Bankr. W.D. Wash. 2013) ............................................20

*Bushbeck v. Chicago Title Ins. Co.*,
    632 F. Supp. 2d 1036 (W.D. Wash. 2008)...........................................15

*Capitol W. Appraisals, LLC v. Countrywide Financial Corp.*,
    2009 WL 10677052 (W.D. Wash. Sept. 30, 2009)..................................24

*CFPB v Borders & Borders PLC*,
    2018 WL 1440606 (W.D. Ky. Mar. 22, 2018) ......................................18

*Chaset v. Fleer/Skybox Int'l*,
    300 F.3d 1083 (9th Cir. 2002) .......................................................9

*Clare v. Saberhagen Holdings, Inc.*,
    123 P.3d 465 (Wash. Ct. App. 2005)................................................12

*In re Consol. Meridian Funds*,
    485 B.R. 604 (Bankr. W.D. Wash. 2013)..........................................9, 27

*Cootey v. Countrywide Home Loans, Inc.*,
    2011 WL 4853333 (D. Haw. Oct. 12, 2011) ........................................11

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**

iii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

*Demopolis v. Galvin*,
   786 P.2d 804 (Wash. Ct. App.1990) ..................................................................23

*Douglass v. Bank of Am. Corp.*,
   2013 WL 2245092 (E.D. Wash. May 21, 2013) ..................................................23

*Eckert v. Skagit Corp.*,
   583 P.2d 1239 (Wash. Ct. App. 1978) ...............................................................11

*Eclectic Props. E., LLC. v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...............................................................23, 24, 26

*Edwards v. First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) ...........................................................................14

*Eller v. EquitTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) ...........................................................................24

*Escue v. United Wholesale Mortg., LLC*,
   2025 WL 2807314 (E.D. Mich. Sep. 30, 2025) ..................................................13

*Farmer v. Countrywide Fin. Corp.*,
   2009 WL 1530973 (C.D. Cal. May 18, 2009) .....................................................25

*Fid. Mortg. Corp. v. Seattle Times Co.*,
   213 F.R.D. 573 (W.D. Wash. 2003) ...................................................................11

*First Pac. Bancorp Inc. v. Bro*,
   847 F.2d 542 (9th Cir. 1988) .............................................................................26

*Friedman v. Market Street Mortg. Corp.*,
   520 F.3d 1289 (11th Cir. 2008) .........................................................................19

*Geraci v. Homestreet Bank*,
   203 F. Supp. 2d 1211 (W.D. Wash. 2002) *aff'd*, 347 F.3d 749 (9th Cir. 2003) .....................29

*Gotham Print v. Am. Speedy Printing Ctrs. Inc.*,
   863 F. Supp. 447 (E.D. Mich. 1994) ..................................................................25

*Gov't APP Sols., Inc. v. City of New Haven*,
   2024 WL 1299993 (9th Cir. Mar. 27, 2024) .......................................................10

*Gragg v. Orange Cab Co.*,
   942 F. Supp. 2d 1111 (W.D. Wash. 2013) ..........................................................10

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

iv

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

*Gray v. Amazon.com, Inc.*,
  653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) ........................................................................................................................23

*Greenberg v. Amazon.com, Inc.*,
  553 P.3d 626 (Wash. 2024), *as amended* (Aug. 16, 2024) ....................................................22

*Guketlov v. Homekey Mortg., LLC*,
  2009 WL3785575 (W.D. Wash. Nov. 9, 2009) .............................................................12, 13

*Han v. Nationstar Mortg. LLC*,
  2015 WL 778552 (W.D. Wash. Dec. 1, 2015) ........................................................................27

*Henson v. Fid. Nat. Fin. Inc.*,
  2014 WL 1246222 (C.D. Cal. Mar. 21, 2014) ......................................................................19

*Howard v. America Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) .............................................................................................26, 27

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
  170 P.3d 10 (Wash. 2007) ............................................................................................. *passim*

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...............................................................................................8

*Kozlov v. F.D.I.C.*,
  2010 WL 4923103 (W.D. Wash. Nov. 29, 2010) ..................................................................11

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397 (9th Cir. 1991) .....................................................................................24, 25, 26

*Malone v. Clark Nuber, P.S.*,
  2008 WL 2545069 (W.D. Wash. June 23, 2008)...................................................................11

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .................................................................................................8

*Minnick v. Clearwire US, LLC*,
  683 F. Supp. 2d 1179 (W.D. Wash. 2010)............................................................................28

*Nau v. Vogel*,
  2021 WL 4520076 (Wash. Ct. App. Oct. 4, 2021) ................................................................27

*Nienaber v. Overlake Hosp. Med. Ctr.*,
  733 F. Supp. 3d 1072 (W.D. Wash. 2024).............................................................................28

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**
v

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

*Ortego v. Lummi Island Scenic Ests. Cmty. Club, Inc.*,
    2016 WL 11622010 (W.D. Wash. Nov. 21, 2016)..................................................26

*In re Pacific Market*,
    764 F. Supp. 3d 1026, 1049 (W.D. Wash. 2025)..................................................29

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009)....................................................................................20

*Perkumpulan Inv. Crisis Ctr. Dressel--WBG v. Regal Fin. Bancorp, Inc.*,
    781 F. Supp. 2d 1098 (W.D. Wash. 2011)...........................................................11

*Promedev, LLC v. Wilson*,
    2023 WL 2330377 (W.D. Wash. Mar. 2, 2023) ...............................................21, 22

*RL Liquidators LLC v. Amazon.com Servs., LLC*,
    2025 WL 2052611 (W.D. Wash. July 15, 2025) .................................................22

*Rodriguez v. Bostock*,
    802 F. Supp. 3d 1297 (W.D. Wash. 2025)...........................................................16

*Sanh v. Opportunity Fin., LLC*,
    2021 WL 100718 (W.D. Wash. Jan. 12, 2021) ....................................................21

*Shahbazian Fam. Tr. v. O'Neil*,
    2017 WL 2964821 (W.D. Wash. July 12, 2017) ..................................................27

*Smale v. Cellco P'ship*,
    547 F. Supp. 2d 1181 (W.D. Wash. 2008)...........................................................22

*Sosa v Chase Manhattan Mortg. Corp.*,
    348 F.3d 979 (11th Cir. 2003) .............................................................................17

*Storey v. Amazon.com Servs. LLC*,
    2024 WL 2882270 (W.D. Wash. June 7, 2024).....................................................21

*Swartz v. Deutsche Bank*,
    2008 WL 1968948 (W.D. Wash. May 2, 2008).....................................................28

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................................................10

*Viveros v. Audible, Inc.*,
    2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ..................................................11

*Woodell v. Expedia Inc.*,
    2019 WL 3287896 (W.D. Wash. July 22, 2019) (Robart, J.) ................11, 25, 26, 27

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

*Young v. Toyota Motor Sales, U.S.A.*,
    472 P.3d 990 (Wash. 2020)..................................................................................................21

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                                    vii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## I.    INTRODUCTION

Zillow has leveled the playing field for residential real estate.  It has radically increased transparency for consumers and democratized access to the information needed to buy and sell homes.  Contrary to the allegations in the Consolidated Amended Class Action Complaint ("CCAC"), Zillow has put consumers in control of their entire home-buying journey, providing them with more choice and information, regardless of which agent or lender they decide to use.  Plaintiffs' attempts to portray Zillow otherwise are premised on implausible and erroneous assumptions that their own allegations contradict.  Both of Plaintiffs' theories of liability fail at the most basic level: Plaintiffs do not plausibly allege any wrongdoing by Zillow, how Plaintiffs lost money, and why it is Zillow's fault.

*"Contact Agent" Theory.*    Plaintiffs allege that, when searching for a home, Zillow deceived them by suggesting they were contacting the seller's agent instead of a buyer's agent who advertises with Zillow.  Not only is that demonstrably untrue based upon judicially noticeable facts, but the events that would have to occur to demonstrate harm caused by Zillow are individually dubious and collectively nonsensical:

- Plaintiffs suggest some of them (but not all) hired agents who advertise with Zillow *without realizing those agents represented them rather than the seller*, despite signing agreements explaining the representation.

- Plaintiffs allege they believed they had *no choice* but to use the buyer's agent who contacted them and no possible means of directly contacting the seller's agent, even though listing agent details were readily available on Zillow's website and Plaintiffs voluntarily remained with that agent after meeting with them.

- Plaintiffs speculate that, because their agents paid a portion of their commission to Zillow, the agents *must have* demanded a higher commission rate than an unidentified hypothetical agent who did not contract with Zillow.

- Based on this assumption, Plaintiffs further speculate that they *must have* paid more for their homes than if they had used agents who did not advertise with Zillow.

Plaintiffs' whole theory hinges on these assumptions that hypothetical agents would have been more willing to negotiate commission rates than Plaintiffs' actual agents, and the resulting hypothetically lower commission rate would have reduced Plaintiffs' home sale prices.  But

Plaintiffs do not cite a single fact in support of *any* of these assumptions.  For example, Plaintiffs do not allege that they even *attempted* to negotiate their agents' commission rates, let alone any communications showing that the agents rebuffed their efforts.  Instead, they fatally allege that the buyer's commission is paid *by the seller* and *pre-determined* before a buyer's agent is even involved in the transaction.

*"Pre-Approval Letter" Theory.*  Plaintiffs' second theory is that Zillow incentivized agents to encourage buyers to obtain free, no-obligation pre-approval letters from its subsidiary, ZHL.  But Plaintiffs fail to explain how these pre-approval letters could coerce them into obtaining a ZHL loan.  They do not identify what their agents told them about the pre-approval letter, obtaining a ZHL loan, or non-ZHL loan options.  Nor do they identify the terms of any other loan options or allege how these unidentified alternatives were superior to a ZHL loan.  And yet, they conclude with no factual basis that Zillow conspired to force buyers to obtain ZHL loans that were inferior to other loans.  The CCAC itself shows that this theory is implausible and Plaintiffs, like all consumers who begin their buying journey with Zillow, could have chosen any mortgage lender they wanted.  In fact, Plaintiff Silva alleges he received a ZHL pre-approval letter, but did not use ZHL to finance his home purchase.

In short, Plaintiffs' bloated, 100-page pleading is heavy on filler but thin on substance, and their claims suffer from myriad pleading deficiencies.  For example, the CCAC fails on causational grounds because Plaintiffs do not explain how their decisions to knowingly use buyer's agents they connected with through Zillow or to obtain free pre-approval letters without further obligation caused their home prices or loan costs to increase.  Similarly, Plaintiffs' fraud-based allegations all fail because they are untied to any individual defendant's actions, and Plaintiffs' own allegations and judicially noticeable documents show that Plaintiffs knew (or should have known) all facts they claim were not disclosed.  The normal and customary business practices alleged are not RESPA violations or evidence of racketeering.  This is now the fourth complaint against the

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR                                        2

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1  Zillow Defendants, and Plaintiffs are still nowhere close to stating a cognizable claim.  The Court

2  should grant Zillow's Motion to Dismiss.

3  **II.    FACTUAL BACKGROUND[1]**

4          Zillow, Inc. ("Zillow") has helped millions of Americans find and purchase a home.  *See*

5  CCAC ¶ 3.   Of the many tools Zillow provides its users to navigate this often "opaque and

6  byzantine" process, *id.* ¶ 1, the two relevant here help buyers (1) connect with local real estate

7  agents to represent their interests, *see id.* ¶¶ 5–6, and (2) obtain pre-approval letters to understand

8  their buying power and strengthen offers, including from Zillow Home Loans, LLC ("ZHL").  *Id.*

9  ¶¶ 35, 60.[2]

10         The 11 named plaintiffs encountered one or both tools when purchasing a home between

11 February 2021 and September 2025.  *See id.* ¶¶ 19–29.  Nine Plaintiffs (Taylor, Brucaliere, Cady,

12 King, Knudsen, Koger, Silva, Thurston, and Zheng) contacted agents through a "Contact Agent"

13 or "Request a Tour" button on Zillow's website, and the other two plaintiffs (Armstrong and Liao)

14 used ZHL for their mortgage.  *See id.*  Plaintiffs Brucaliere and Silva heard about ZHL loans from

15 their agents, but did not use ZHL for financing.  *See id.* ¶¶ 26, 29.

16         **A.    Contact Agent Allegations.**

17         Plaintiffs allege they believed they were contacting listing agents through the "Contact

18 Agent" or "Request a Tour" buttons, but instead spoke to buyer-side agents in the "Zillow Flex"

19 program ("Partner Agents").  *See id.* ¶¶ 19–29.  Zillow Flex provides Partner Agents with Zillow

20 leads, and these agents pay Zillow a portion of their commission from Zillow-generated sales.  *See*

21 *id.* ¶ 6.  Plaintiffs' convoluted theory of harm posits that, because their agents participated in Flex

22 and paid a portion of their commissions to Zillow, the agents *must have* been less willing to

23

24

25 ---

[1] The Zillow Defendants assume the truth of Plaintiffs' factual allegations solely for purposes of this Motion to Dismiss, without admitting or conceding their truth, accuracy, or legal sufficiency.

26 [2] In addition to Zillow and ZHL, Plaintiffs have named as defendants Zillow Group, Inc. (Zillow's parent company); Zillow Homes, Inc.; and Zillow Listing Services, Inc. (collectively with Zillow and ZHL, "Defendants" or the "Zillow Defendants").  Their purported involvement is unclear.

1  discount their commissions, and Plaintiffs would have been able to purchase their homes at lower

2  prices had they negotiated directly with the sellers or engaged non-Partner Agents.  *See id.*

3       While all Plaintiffs allege the conclusion that Zillow did not "disclose the Hidden Zillow

4  Fees," which "inflated the commissions and the cost of the[ir] property," no Plaintiff describes a

5  single communication with their agent, the seller's agent, or the seller about the price.  Further,

6  none describes how commissions would have been lower with a different agent or how they

7  increased any purchase price.  *Id.* ¶¶ 19–29.  Plaintiffs instead allege that the amount of the

8  commission is pre-determined in a "listing agreement" which "specifies the amount earmarked to

9  be paid to the buyer broker[.]"  *Id.* ¶ 51.  They also allege that commissions are not directly paid

10 by buyers, and higher commissions are "paid by sellers, to the detriment of the sellers."  *Id.* ¶ 317.

11      In addition to these logical fallacies, both the agent's relationship with Zillow and their fee

12 arrangements were disclosed to Plaintiffs, often in multiple ways.  *First*, Plaintiffs complain that

13 they expected the Contact Agent and Request a Tour buttons on the Zillow Platform to connect

14 them with the listing agent, but were instead connected with a Partner Agent.  But the CCAC

15 shows that the listing agent's identity and contact information are presented directly on the same

16 screen as the "Contact Agent" button.[3]

17

18

19

20

21

22

23

24

25

26 _____

[3] Notwithstanding Plaintiffs' claim that the listing agent's name is in "tiny print" that is "barely visible," the CCAC shows it is displayed as prominently as the property description.  CCAC ¶ 102.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-cv-01818-JLR                    4

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  Based on this information, any reasonable consumer can discern that the Partner Agent who

16  contacted them is not the listing agent.

17        *Second*, Zillow told Plaintiffs they would be connected with a Partner Agent, not the listing

18  agent.  *See* Declaration of Aarti Reddy in support of Request for Judicial Notice ("Reddy Decl.")

19  at Ex. 5 at 6; Ex. 1.  For example, in clicking "Contact Agent," Plaintiffs were informed that they

20  were consenting to contact from "Zillow Group and its affiliates, and real estate professionals,"

21  which are defined (via hyperlinked tool tip) to include "Zillow Premier Agent partners" who pay

22
23
24
25
26

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    to advertise on Zillow:



18   Reddy Decl., Ex. 1.  Plaintiffs do not allege that they continued to believe their agent represented

19   the seller at the time of their purchase.  *See generally* CACC ¶¶ 19–26.  In fact, Plaintiffs Brucaliere

20   and Silva specifically allege that their agents informed them that they were buyers' agents upon

21   meeting.  *See id.* ¶¶ 26, 29.  These allegations make clear that Plaintiffs *knowingly chose* to use

22   Partner Agents to close their transactions.

23       Each Plaintiff who used the "Contact Agent" or "Request a Tour" tool also agreed to

24   Zillow's Terms of Use ("TOU"), which disclosed that users "may be connected with a real estate

25   professional[,] . . . authorize [Zillow] to make such referral or lead sale and acknowledge that

26   [Zillow] ***may be paid valuable consideration for facilitating such a connection***."  Reddy Decl.,

Ex. 5, at 6 (emphasis added).[4]  Several states, including the home states of Plaintiffs Armstrong,

Knudson, Silva, Thurston, and Zheng, also require buyer-broker agreements to expressly disclose

the broker's commission and fee splitting.  *See* CACC ¶¶ 20, 21, 24–26; Al. Stat. § 08.88.655;

RCW §§ 18.86.655, 18.86.80(7); 21 NCAC § 58A.0104; Va. C. §§ 54.1-2132, 2136; Ga. R. &

Reg. §§ 520-1-.06, 520-1.10(6).

Plaintiffs also generally allege that Partner Agents ask prospective buyers to sign "Zillow's

'Touring Agreement,'" which states that the agent's "touring services" are free.  CACC ¶ 104 &

n.81.  Plaintiffs allege this document misleadingly suggests "the agent's services are free."  *Id.* ¶

105.  The same page of the identified Touring Agreement directly refutes that allegation, providing

that "[i]f Broker is going to provide Buyer with brokerage services beyond the Touring Services .

. . Buyer and Broker will enter into a separate agreement . . . [and the] fee or commission the

parties agree to for those services are not set by law, are fully negotiable, and shall be

documented[.]"  *See* Reddy Decl., Ex. 6.[5]

## B.    Pre-Approval Letter Allegations.

In support of the Pre-Approval Letter theory, Plaintiffs allege that Zillow incentivizes

agents to "steer" buyers to ZHL to obtain pre-approval letters, as one of multiple criteria used to

evaluate Partner Agent performance.  *See* CCAC ¶¶ 9, 66, 121 (Zillow tracks Flex Partner

performance "through multiple metrics, including customer satisfaction, or 'CSAT,' and closed

transaction").  Plaintiffs do not allege having paid for pre-approval letters, which are free for

prospective buyers. *See id.* ¶¶ 19–29.  Nor do Plaintiffs allege an obligation to use ZHL's mortgage

services following pre-approval; indeed, Plaintiff Silva received a ZHL pre-approval letter, but

"ultimately he did not use ZHL[.]"  *Id.* ¶ 26.

Only three other Plaintiffs allege any contact with ZHL, and Plaintiff Armstrong is the only

---

[4] Plaintiffs had to accept the TOU, which had substantially similar language throughout the relevant time period, to reach an agent.  Reddy Decl. ¶ 2, Exs. 2–5.

[5] Plaintiff Brucaliere, who alleges having signed Touring Agreement, resides and purchased a home in Connecticut, but the "Zillow[] Touring Agreement" that Plaintiffs discuss is a form for Oregon.  *See* CACC ¶¶ 29, 104 & n.81.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR                        7

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

one who obtained a pre-approval letter and a mortgage loan from ZHL. *Id.* ¶ 20. Plaintiff Brucaliere's agent suggested a ZHL loan, but she "declined because she wanted to use USAA." *id.* ¶ 29. And Plaintiff Liao does not allege his agent suggested or encouraged him to use ZHL, makes no allegations as to why he chose ZHL over other lenders, and used ZHL to finance a purchase on February 12, 2021, ***before*** agents allegedly began receiving incentives around ZHL pre-approval metrics "in or around 2022." *Id.* ¶¶ 22, 66.

The TOU informed Plaintiffs that Zillow has affiliated brands, including ZHL, that "each may refer to you the services of another," and that such referrals "may provide the referred company . . . with a financial or other benefit." Reddy Decl., Ex. 5, at 2.[6] Users are further informed that they "may be connected to a party that provides mortgage loan origination services, title and escrow services, or other settlement services. If any of these parties have an affiliated relationship with any of the Zillow Companies, then one or more of the Zillow Companies may receive a financial or other benefit from the referral[.]" *Id.* at 6.

## III.  LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). Where—as here—a claim sounds in fraud, the plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## IV.  ARGUMENT

### A.    The CCAC Contains Fatal Flaws Common to Multiple Claims.

#### 1.    Plaintiffs Do Not Plead Causation.

Three claims at issue—WCPA, RICO, and aiding and abetting (as a derivative of breach of fiduciary duty)—require Plaintiffs to plead causation. *See Indoor Billboard/Wash., Inc. v.*

---

[6] Users receive this same disclosure in a separate Affiliated Business Arrangement Disclosure ("ABAD") provided to every Plaintiff. *See* Reddy Decl., Ex. 7.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    *Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007) (WCPA); *Chaset v. Fleer/Skybox*

2    *Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002) (RICO); *In re Consol. Meridian Funds*, 485 B.R. 604,

3    616-18 (Bankr. W.D. Wash. 2013) (aiding and abetting breach of fiduciary duty).  Each claim is

4    predicated on the Contact Agent and Pre-Approval Letter theories, but Plaintiffs do not plausibly

5    allege how Zillow's alleged conduct harmed them under either.

6          ***Contact Agent Theory.***  The gravamen of Plaintiffs' Contact Agent theory is that they were

7    injured after clicking the "Contact Agent" button because, many steps later, the agents they were

8    matched with, and voluntarily retained, paid Zillow a portion of their commissions from Plaintiffs'

9    home purchases.  Because of their Partner Agents' agreements with Zillow, Plaintiffs allege the

10   agents were less likely to discount their commission rates than non-Partner Agents, and their

11   refusal to negotiate their commissions increased the purchase prices of Plaintiffs' homes.  CCAC

12   ¶¶ 19–29.  But Plaintiffs' own allegations contradict the core of their theory.  Plaintiffs allege the

13   seller and seller's agent set the commissions before a buyer's agent is even involved—according

14   to Plaintiffs, the seller's listing agreement "specifies the total commission that a home seller will

15   pay to the seller broker ***and also specifies the amount earmarked to be paid to the buyer broker***

16   ***(in the event the buyer has a broker)***."  *Id.* ¶ 51 (emphasis added).  Plaintiffs also allege that if the

17   offer is accepted and the "buyer has a broker, then the seller broker pays the buyer broker a

18   commission out of the total commission ***paid by the seller***."  *Id.* ¶ 53 (emphasis added); *see also*

19   *id.* ¶ 317 (the "net effect of Defendants' conduct was to drive up the commission paid by sellers,

20   to the detriment of the sellers").

21         At best, Plaintiffs allege it was more difficult to persuade the Partner Agents they

22   voluntarily hired to accept a lower commission than was already earmarked for them.  But

23   Plaintiffs offer no details about their interactions with their agents to fill these inferential gaps,

24   *e.g.*, whether they even asked their Partner Agents to lower their commissions, or whether a

25   different broker would have accepted a lower commission than outlined in the listing agreement,

26   and even if one would, whether the seller would have agreed to lower the purchase price.  Plaintiffs

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                                    9

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

do not assert a single allegation supporting their assumption that Partner Agents—who gain substantial efficiencies from the Zillow platform—negotiate commissions any differently than other agents, who also invest in referral fees, marketing, and other lead generation sources. Plaintiffs' theory is thus based on a speculative chain of inferences that cannot support causation under either Rule 8(a) or Rule 9(b).  *See, e.g., Gov't APP Sols., Inc. v. City of New Haven*, 2024 WL 1299993, at *2 (9th Cir. Mar. 27, 2024) (no RICO causation because "'theory of liability [resting] not just on separate actions, but separate actions carried out by separate parties' is insufficiently direct") (quotations omitted); *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1118 (W.D. Wash. 2013) (no liability under WCPA due to speculative causation).

    ***Pre-Approval Letter Theory.***  Plaintiffs' allegations that ZHL "pre-approval quotas" created "conflicts of interest that deprived homebuyers of impartial advice" also fail to plausibly plead causation.  CCAC ¶ 313.  Of the two Plaintiffs who allege receiving pre-approval letters, Armstrong does not explain how the no-obligation letter prevented her from obtaining a loan from "programs *designed to* reduce interest rates, down payments, and closing costs" (let alone how those unidentified programs were more advantageous than ZHL's), and Silva actually *opted not to use a ZHL loan to purchase his home*.  *Id.* ¶¶ 20, 26 (emphasis added).  These allegations demonstrate the implausibility that any purported "steering" toward pre-approval letters caused any Plaintiff injury.[7]

    Without causation, Plaintiffs' RICO, WCPA, and aiding and abetting claims should be dismissed.

### 2.    Plaintiffs' Group Pleading Strategy Is Improper.

    "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations[.]"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotations omitted).  Rule 9(b) applies because all claims sound in fraud, but

---

[7] Liao used ZHL but fails to allege he encountered "unlawful steering" or that it caused him injury, as he purchased his home before 2022, when Plaintiffs allege ZHL was incorporated into the alleged steering scheme.  *Id.* ¶¶ 22, 66.

Plaintiffs do not allege each individual defendant's participation in the alleged wrongdoing, instead relying on generalized allegations against "Defendants," "Zillow Defendants," "Zillow Fraudulent Business Enterprise," or an undefined "Zillow." Thus, all claims—particularly RICO and RESPA—fail.[8] *See infra* at Sections IV(B), (D) *Woodell v. Expedia Inc.*, 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019) (Robart, J.) (RICO claim that lumped Defendants together failed under 9(b) because it did not "inform each defendant separately of the allegations surrounding his alleged participation in the fraud"); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333, at *6 (D. Haw. Oct. 12, 2011) (dismissing RESPA claims under 9(b) where the court could not determine what each defendant allegedly did to form the basis of the claims).

This problem is particularly acute as to Plaintiffs' RESPA claims "because it is not clear which provision of the statute was violated by which party[.]" *Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1162 (D. Haw. 2018); CCAC ¶¶ 294–306 (alleging 2607(b) claims as to all "Zillow defendants"). While Plaintiffs allege that ZHL is a covered entity under RESPA as to 2607(a), CCAC ¶ 275, there is not a single fact pled against Zillow Homes, Inc. or Zillow Listing Services, Inc. At most, the CCAC alleges Zillow Group, Inc. is a parent holding company, CCAC ¶¶ 31, 221–63, 276–82, 294–306, but a parent relationship does not independently create liability. *See Kozlov v. F.D.I.C.*, 2010 WL 4923103, at *1 (W.D. Wash. Nov. 29, 2010) ("case law support[s]" proposition that parent company cannot be liable under RESPA based solely on status as parent). Plaintiffs' pleading is thus inadequate.

### 3. Applicable Statutes of Limitations Bar Several Plaintiffs' Claims.

Various Plaintiffs' claims are also time-barred under RESPA (one year limitations period), common law (three years), and RICO and WCPA (four years). *See* 12 U.S.C. § 2614 (RESPA); *Eckert v. Skagit Corp.*, 583 P.2d 1239, 1240 (Wash. Ct. App. 1978) (unjust enrichment); *Malone*

---

[8] Rule 9(b) also applies to Plaintiffs' other claims. *See Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (WCPA); *Viveros v. Audible, Inc.*, 2023 WL 6960281, at *4 (W.D. Wash. Oct. 20, 2023) (unjust enrichment); *Perkumpulan Inv. Crisis Ctr. Dressel--WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1114–15 (W.D. Wash. 2011) (aiding and abetting).

1   *v. Clark Nuber, P.S.*, 2008 WL 2545069, at *7, 13 (W.D. Wash. June 23, 2008) (cleaned up)

2   (aiding and abetting); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156

3   (1987) (RICO); Wash. Rev. Code § 19.86.120 (WCPA). Under Plaintiffs' allegations, the only

4   time they were possibly injured was the date of their home purchases. As such: (1) Plaintiffs Liao,

5   Taylor, King, Brucaliere, Armstrong, and Koger are each barred from bringing RESPA claims; (2)

6   Liao and Taylor are also barred from bringing common law claims; and (3) Liao's RICO and

7   WCPA claims are barred.

| Plaintiff | Purchase Date | Filed Suit | RESPA (1 yr) | Aiding/ Abetting (3 Yrs) | UE (3 Yrs) | RICO (4 Yrs) | WCPA (4 Yrs) |
|---|---|---|---|---|---|---|---|
| Liao (CCAC ¶ 22) | 2/12/21 | 11/19/25 | X | X | X | X | X |
| Taylor (CCAC ¶ 19) | 7/1/22 | 9/19/25 | X | X | X | | |
| King (CCAC ¶ 23) | 9/8/23 | 11/19/25 | X | | | | |
| Brucaliere (CCAC ¶ 29) | 12/13/23 | 11/19/25 | X | | | | |
| Armstrong (CCAC ¶ 20) | 4/3/24 | 11/7/25 | X | | | | |
| Koger (CCAC ¶ 27) | 8/12/24 | 11/19/25 | X | | | | |

15   Since their claims are facially time-barred, Plaintiffs must plead equitable tolling. *See*

16   *Clare v. Saberhagen Holdings, Inc.*, 123 P.3d 465, 467 (Wash. Ct. App. 2005). As this Court has

17   observed, tolling "focuses on excusable delay by the plaintiff . . . and inquires whether a reasonable

18   plaintiff would . . . have known of the existence of a possible claim within the limitations period."

19   *Guketlov v. Homekey Mortg., LLC*, 2009 WL3785575, at *3 (W.D. Wash. Nov. 9, 2009) (internal

20   citations omitted) (Robart, J.). A "bare allegation that Defendants' fraud prevented [a plaintiff]

21   from discovering the violations within the limitations period" is insufficient. *Id.*

22   Plaintiffs plead no more here: only that "[t]here was no reasonable way for the public,

23   including Plaintiffs, to know that Zillow Flex agents were involved in their transactions . . . [or]

24   about the payment of the Hidden Zillow Fees" or that "Zillow required Flex agents to steer buyers

25   to ZHL." CCAC ¶¶ 210, 212. These conclusory statements offer "no fact[s] that would support a

26   finding that a reasonable plaintiff would not have known that he received inadequate

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

disclosures[.]" *Guketlov*, 2009 WL3785575, at *3.  Instead, their allegations belie reasonableness.

As to the Contact Agent theory, the CCAC confirms all Plaintiffs agreed to the TOU that disclosed Partner Agents may be involved in their transactions and that Zillow may share in those agents' commissions.  *Supra*, at Section II(A).  As to the Pre-Approval Letter theory, the two Plaintiffs who allege they obtained pre-approval letters (Armstrong and Silva[9]) were also on notice of the basis for their allegations, including through extensive disclosures received before closing, informing them they may be connected with affiliated mortgage providers, and that Zillow entities could benefit from the referral.  Reddy Decl., Ex. 5, at 2, 6; *see* CCAC ¶¶ 20, 22.

In both instances, Plaintiffs cannot "in one breath argue that they relied on all the information [defendant] put into the marketplace to their detriment and entered into overpriced loans, while also trying to persuade the Court that they exercised due diligence . . . to . . . uncover these claims when there was information about the [alleged fraud] placed in the same marketplace." *Escue v. United Wholesale Mortg., LLC,* 2025 WL 2807314, at *20 (E.D. Mich. Sep. 30, 2025).  With no basis for equitable tolling, Plaintiffs' claims are time-barred.

### B.    Plaintiffs' RESPA Claims Fail for Multiple Reasons.

RESPA prohibits kickbacks for referrals to a settlement service, 12 U.S.C. § 2607(a), and splitting commissions other than for services actually performed, § 2607(b).  Plaintiffs allege that Zillow violated § 2607(a) by providing leads to agents in exchange for encouraging ZHL pre-approvals, and § 2607(b) by splitting commissions with Partner Agents without providing services. Both claims fail.

To begin, each of Plaintiffs' RESPA claims fail because they lack statutory standing to bring them.  Additionally, the 2607(a) claim fails because pre-approval letters are not a "settlement service" or a "referral," and Plaintiffs have not adequately alleged a "thing of value."  The 2607(b) claim fails because Partner Agents permissibly paid a portion of their commissions to Zillow.

---

[9] Silva's claim is not facially time-barred, but fails for other reasons, including that he does not allege that he received a federally related mortgage loan.  *Infra*, at Section IV(B)(2)(a).

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1     **1.     Plaintiffs lack statutory standing under RESPA.**

2         Plaintiffs must allege they were "***charged*** for the settlement service involved in" the

3     alleged violations to have standing under RESPA.  *See Blaylock v. First Am. Title Ins. Co.*, 2008

4     WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) (quoting 12 U.S.C. § 2607(d)(2)) (emphasis

5     added). They fail to do so.  Their § 2607(a) claim fails because they do not and cannot plead that

6     they paid for a pre-approval letter. *See generally* CCAC ¶¶ 19–29; 264–306. As to their § 2607(b)

7     claim, Plaintiffs allege that the Zillow Defendants received fees for settlement services that were

8     split with Partner Agents, but those "[f]ees were paid to Zillow ***by seller brokers*** as settlement

9     service providers using settlement proceeds[.]"  *Id.* ¶ 297 (emphasis added).  As such, Plaintiffs

10    do not plead they were charged for a settlement service and they lack standing.

11    **2.     The Section 2607(a) claim fails for several reasons (Count II).**

12        Plaintiffs allege that "Zillow" generally violated RESPA by providing leads to Partner

13    Agents to encourage them to refer Plaintiffs to ZHL to obtain pre-approval letters.  CCAC ¶¶ 272–

14    276.  To state a claim under Section 2607(a), plaintiffs must show "(1) a payment or thing of value

15    was exchanged, (2) pursuant to an agreement to refer settlement business, and (3) there was an

16    actual referral."  *Edwards v. First Am. Corp*., 798 F.3d 1172, 1178-79 (9th Cir. 2015) (internal

17    citations omitted).  Plaintiffs' claims fail because: they are barred by the statute of limitations; pre-

18    approval letters are not a "settlement service"; and Zillow did not make a "referral" under RESPA.

19    **a.     No Plaintiff Alleges a Timely 2607(a) Claim.**

20        As a threshold matter, Plaintiffs' 2607(a) claim is time barred because no Plaintiff obtained

21    a pre-approval letter from Zillow *and* obtained a ZHL loan within the 1-year limitations period.

22    *See supra*, Section IV(A)(3).  Only three plaintiffs claim to have received a ZHL pre-approval

23    letter and/or a ZHL loan and could even conceivably assert 2607(a) claims.  But two of these

24    plaintiffs' claims are time-barred (Armstrong and Liao), and the third (Silva) does not allege he

25    received a federally regulated mortgage loan, ***meaning RESPA's prohibitions do not apply to his***

26

1  ***transaction at all***.  12 U.S.C. §§ 2607 (a), (b) (prohibiting conduct "involving a federally related

2  mortgage loan").

3  **b.      Pre-approval letters are not RESPA settlement services.**

4  Under RESPA, a "settlement service" must cost money and be necessary for obtaining a

5  loan. But Plaintiffs do not (and cannot) allege they paid for pre-approval letters or that they are

6  required for a loan.  This is fatal to Plaintiffs' theory.

7  RESPA's purpose is to ensure borrowers "are protected from unnecessarily high settlement

8  charges" through disclosures of such costs and the elimination of "kickbacks or referral fees that

9  tend to increase unnecessarily the costs of certain settlement services."  *Id*. § 2601(b)(2); *see* 12

10  U.S.C. § 2601.  Accordingly, RESPA defines a "settlement service" as "any service provided in

11  connection with a real estate *settlement*," and lists a host of such for-cost services as examples.  12

12  U.S.C. § 2602(3) (referring to, *inter alia*, "title searches, title examinations, the provision of title

13  certificates, title insurance, services rendered by an attorney . . . the handling of the processing,

14  and closing or settlement").

15  Consistent with this stated purpose, the Ninth Circuit has interpreted the phrase "settlement

16  services" to encompass ***only those services necessary for closing and for which the borrower***

17  ***pays at or before closing***.  *See Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) (noting

18  "RESPA's non-exhaustive list of settlement services also suggests a limitation to costs payable at

19  or before settlement").  Applying *Bloom*, this Court correctly observed that "RESPA was meant

20  to apply ***only to costs payable at or before settlement***."  *Bushbeck v. Chicago Title Ins. Co.*, 632

21  F. Supp. 2d 1036, 1040–41 (W.D. Wash. 2008) (emphasis added) (Robart, J.) (concluding

22  plaintiffs stated a claim where the challenged fees were payable at or before settlement, were "not

23  assessed after the closing," and "there was no doubt that they would be collected").  *Id.* at 1041.

24  In contrast, pre-approval letters are not settlement services because they are: (1) free, and

25  (2) not necessary to a loan transaction.  Plaintiffs do not—and cannot—allege these letters cost

26  them anything, were part of the settlement process, or obligated them to use ZHL for financing.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                                                                    15

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    Indeed, Plaintiffs' own allegations demonstrate that pre-approval is distinct from the mortgage

2    transaction and obligation-free because ***Plaintiff Silva obtained a pre-approval letter but did not***

3    ***choose ZHL as his lender***.    CCAC ¶ 26.

4         Other RESPA provisions support the conclusion that pre-approval letters are not a

5    settlement service.  *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. 2025)

6    ("[A] court must interpret the statute as a whole, giving effect to each word and making every

7    effort not to interpret a provision in a manner that renders other provisions of the same statute

8    inconsistent, meaningless or superfluous.") (citation omitted).  For example, among RESPA's

9    required disclosures is a booklet that must be provided to loan applicants, which includes "a

10   description and explanation of the nature and purpose of the costs incident to a real estate

11   settlement or a federally related mortgage loan." 12 U.S.C. § 2604(b)(1).  Not surprisingly, pre-

12   approval letters are not included among the list of covered "costs" or services because they have

13   no cost and, in any event, are not a part of the loan's origination.  *See, e.g.*, 1974 U.S.C.C.A.N.

14   6546, 1974 WL 11646, at *6548, 6555 (1974) (listing information required to be included in the

15   booklet, including, e.g., "nature of escrow accounts" and "charges to be avoided").  The TILA-

16   RESPA Integrated Disclosures Rule, which governs the timing and content of disclosures required

17   by RESPA, is similarly triggered by receipt of an "application," including the "property address"

18   and "value of the property," neither of which is necessary for pre-approvals. *See* 78 Fed. Reg.

19   79730-01, 79791 (requiring disclosure "after the consumer applies for a mortgage loan"); 12

20   C.F.R. § 1024.2(b); 12 C.F.R. § 1026.2(a)(3)(ii).  Likewise, construing a free pre-approval letter

21   as a "settlement service" cannot be squared with RESPA's remedial provisions because those

22   provisions contemplate that "settlement services" cost money.  Specifically, they permit plaintiffs

23   to recover "three times the amount of any charge *paid* for such settlement service[.]"  *See* 12 U.S.C.

24   § 2607(d)(2) (emphasis added).

25

26

Read together or independently, RESPA's plain language, statutory intent, and execution—as reflected by Plaintiff Silva's own experience—reveal that pre-approval letters are not a settlement service, and this theory fails.[10]

### c.    Pre-approval letters are not "referrals" under RESPA.

Plaintiffs' 2607(a) claim also fails because they cannot plead a "referral" occurred.

RESPA's implementing regulation, Regulation X, defines a "referral" as a settlement service for which the consumer will pay: "A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service . . . *when such person will **pay for** such settlement service or business incident thereto **or pay** a charge attributable in whole or in part to such settlement service or business*." 12 C.F.R. § 1024(f)(1) (emphasis added).  A pre-approval letter is neither.

In *Bolinger v. First Mult. Listing Serv., Inc.*, a court examined allegations similar to those at issue here, involving defendant real estate brokers' alleged referrals of plaintiffs' property listings to a listing service in exchange for dividends.  2014 WL 4803155, at *5 (N.D. Ga. Sept. 26, 2014).  The court granted summary judgment on the 2607(a) claims because, as here, there was no "referral."  Defendants argued "they never influenced or required Plaintiffs to do business with [the listing service], and Plaintiffs could not have been referred because they did not pay for [the listing service's] services."  *Id.*  The Court agreed, as the Plaintiffs "paid no charges to [the listing service]."  *Id.* at *6.

The same is true here; aside from not being a settlement service, pre-approval letters are no-obligation and free, and Plaintiffs do not (and cannot) allege they paid any charge to ZHL for

---

[10] Pre-approval letters also are not a "business incident to" a settlement service pursuant to 12 U.S.C. § 2607(a).  RESPA's statutory text focuses on services that contribute to the cost of the transaction—unlike free pre-approval letters.  *See, e.g., Sosa v Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981–82 (11th Cir. 2003) ("Section 8 of RESPA addresses kickbacks and unearned fees . . . . Read together, the two subsections create a broad prohibition against *fees that serve solely to increase the cost of settlements to consumers*.").

them. Accordingly, the challenged conduct did not constitute a RESPA "referral," and the claim should be dismissed.

### d.    Plaintiffs fail to allege a "thing of value."

Plaintiffs' 2607(a) claim also fails because they do not adequately allege a "thing of value" exchanged for a referral of settlement business tied to their alleged Pre-Approval Letter theory. Plaintiffs allege the *conclusion* that an undefined "Zillow" is "illegally both giving and receiving a 'thing of value' related to referrals," but they fail to describe how an agent's introduction of potential clients *to ZHL* involves a "thing of value," as defined by RESPA. At most, encouraging buyers to obtain obligation and cost-free ZHL pre-approval letters constitutes *potential* value for ZHL that *may* result in business, but which is not realized unless and until a buyer chooses to finance through ZHL instead of a different lender. Indeed, Silva's allegations demonstrate that pre-approval letters are non-binding and often do not lead to a ZHL loan.

At least one court has declined to find similar leads, or "assignment of business," independently a "thing of value" under RESPA. In *Borders*, the CFPB alleged that joint venture title companies violated RESPA by paying dividends to their joint venture partners in exchange for the partners (which were also mortgage lenders and brokers) assigning consumers to the title companies for closing services. The district court rejected this argument on the grounds that such assignments were not a "thing of value," explaining:

> This 'nominal assignment' is insufficient to constitute a 'thing of value' because consumers were not obligated to follow the suggestion of Borders & Borders. Indeed consumers had thirty days after the closing to decide whether to use the Title LLC suggested by Borders & Borders . . . If the consumer chose to purchase insurance from another underwriter, the JVP involved with the case received nothing. This potential benefit is insufficient to constitute a 'thing of value' because it is entirely conditioned on the third-party consumer's choice.

*CFPB v Borders & Borders PLC*, 2018 WL 1440606, at *3 (W.D. Ky. Mar. 22, 2018). The same result follows here—Plaintiffs do not plead that ZHL pre-approvals obligate plaintiffs to use ZHL as a mortgage lender; that decision is "entirely conditioned on . . . third-party consumer's choice." *Id*.

1       **3.**    **The Section 2607(b) claim fails because RESPA does not prohibit**

2           **commissions for provided services and the safe harbor applies (Count III).**

3           **a.**    **Zillow provided services in exchange for a settlement fee.**

4   Plaintiffs allege that "Zillow" violated Section 2607(b) by sharing in the commissions

5   earned by Partner Agents, while providing no value for those fees.  CCAC ¶¶ 299–301.  To

6   adequately allege a violation of Section 2607(b), a plaintiff must demonstrate that "no services

7   were rendered in exchange for a settlement fee."  *Friedman v. Market Street Mortg. Corp.*, 520

8   F.3d 1289, 1298 (11th Cir. 2008) ("[N]o prohibited split can occur for RESPA purposes if the

9   person receiving the kickback has performed actual services—no matter how little services she

10  performs."); *Henson v. Fid. Nat. Fin. Inc.*, 2014 WL 1246222, at * 9 (C.D. Cal. Mar. 21, 2014).

11  *Bolinger* is again instructive.  In resolving 2607(b) claims, the court found commission-

12  splitting was proper between brokers and a listing service that "performed a service each time by

13  connecting sellers and buyers through its directory."  2014 WL 4803155, at *8.  The Court further

14  explained that "[t]he Court need not inquire further because RESPA does not require courts to

15  assess the reasonableness of the fee or to divide the fee into earned or unearned components[.]"

16  *Id.*; *see Henson*, 2014 WL 1246222, at *9 (dismissing 2607(b) claim because plaintiffs "establish

17  in their Complaint that Fidelity did in fact provide services by promoting the Delivery Companies

18  to its escrow subsidiaries").

19  Here, Plaintiffs allege Zillow performed multiple services, including:

20  (1) Connecting potential buyers and their agents with sellers, as in *Bolinger*, CCAC ¶¶ 5,

21      56;

22  (2) providing use of Zillow-specific apps, CCAC ¶ 89;

23  (3) providing apps for consumers and agents to communicate, CCAC ¶ 89; and

24  (4) providing agents with enhanced placement and visibility on consumer-facing websites,

25      CCAC ¶¶ 19–22, 24–26, 28–29, 67.

26  Accordingly, Plaintiffs' Section 2607(b) claim also fails.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                    19

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

**b.    The 2607(c) safe harbor bars Plaintiffs' 2607(b) claim.**

Plaintiff's 2607(b) claim also fails because the referral fees at issue are expressly permitted under RESPA's cooperative broker exemption, which states that "[n]othing in [Section 2607] shall be construed as prohibiting . . . payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers." 12 U.S.C. § 2607(c)(3). A "cooperative broker" arrangement is when one real estate broker refers a potential buyer to another real estate broker and the two brokers share in the commissions earned from the transaction. *See Hearings on RESPA the Real Estate Settlement Procedures Act of 1974: Hearing on S. 2327 and S. 2349 Before the Comm. on Bank., Hous. & Urban Aff.*, 94th Cong. 314–16 (1975). As testimony at the time noted, "broker-to-broker referral cannot possibly inflate the total charge to the consumer." *Id*. at 317. This safe harbor is fatal to Plaintiffs' fee-splitting claim, as Plaintiffs acknowledge Zillow is a licensed real-estate broker. CCAC ¶ 56.

**C.    Plaintiffs' WCPA Claim Fails (Count IV).**

In addition to Plaintiffs' failure to plead causation or individualized conduct by Defendants, *see supra*, at Section IV(A), the WCPA claim must also be dismissed because Plaintiffs do not plead "an unfair or deceptive act or practice" or injury. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).

**1.    Plaintiffs do not plead unfair or deceptive conduct.**

Plaintiffs attempt to plead unfair or deceptive conduct through three arguments: (1) Defendants' conduct was *per se* unfair because it violated RESPA; (2) Defendants' conduct was fraudulent; and (3) Defendants' conduct offended public policy or was immoral. Each theory fails.

***First***, Plaintiffs cannot establish Defendants' conduct was *per se* unfair (CCAC ¶ 320) because, as outlined above, Plaintiffs' RESPA claims fail. Even if viable, a RESPA violation is not a *per se* WCPA violation because the statute has not "been declared by the legislature to constitute an unfair or deceptive act in trade or commerce [that] has been violated." *In re Bryce*, 491 B.R. 157, 185, 186–87 (Bankr. W.D. Wash. 2013) ("[T]his Court is not aware of a single

1    Washington State case finding that a violation of . . . RESPA is a per se violation of the CPA.")
2    (citations omitted).

3         **Second**, Plaintiffs do not identify any deceptive conduct; *i.e.*, "a representation, omission
4    or practice that is likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.*,
5    472 P.3d 990, 994 (Wash. 2020) (quotation omitted).  Plaintiffs offer no details regarding their
6    interactions with Partner Agents or any representations by the Zillow Defendants directly, and
7    their claims thus fall well short of Rule 9(b) and Rule 8.

8         The only specific representation Plaintiffs identify is their use of the "Contact Agent" or
9    "Request a tour" buttons on Zillow's website. CCAC ¶¶ 19–29.  Plaintiffs principally claim those
10   buttons are deceptive because: (i) after Plaintiffs clicked them, they were connected to a Partner
11   Agent rather than the listing agent; and (ii) unbeknownst to Plaintiffs, the Partner Agent agreed to
12   pay Zillow a portion of their commission upon closing a transaction.  *Id.* ¶¶ 101–18.  But no
13   reasonable consumer would be deceived; Zillow *does* connect buyers with agents and help them
14   schedule tours, and, as Plaintiffs allege, the touring services are in fact free. *Id.* ¶¶ 103, 105.  Even
15   if Plaintiffs *hoped* to be connected with the listing agent, any reasonable belief they were
16   interacting with the listing agent would disappear as soon as the Partner Agents contacted them,
17   including because Zillow discloses the name of the listing agents on property listings.  *Id.* ¶ 102;
18   *see also Sanh v. Opportunity Fin., LLC,* 2021 WL 100718, at *5 (W.D. Wash. Jan. 12, 2021)
19   (dismissing claim where plaintiff failed to explain how the advertisement "could mislead a
20   reasonable consumer, much less a substantial portion of the consuming public").

21        Plaintiffs' interpretations are likewise implausible given Zillow's express disclosures
22   regarding its affiliations and fee-splitting with Partner Agents.  *See Promedev, LLC v. Wilson*,
23   2023 WL 2330377, at *7 (W.D. Wash. Mar. 2, 2023) (Robart, J.) (internal quotations omitted)
24   (finding no fraudulent omission where the relevant facts were contained in corporate filings and
25   thus "readily discoverable by the exercise of ordinary diligence"); *Storey v. Amazon.com Servs.*
26   *LLC*, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024) (conduct disclosed in terms of service

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR
21
COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   not deceptive under CPA); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188–89 (W.D. Wash.

2   2008) (no deception where Verizon disclosed the conduct at issue in Customer Agreement).  The

3   relevant disclosures here were even more readily available than the corporate disclosures found

4   sufficient in *Promedev*: Zillow's TOU expressly state that Zillow may connect consumers with

5   Partner Agents and receive "***valuable consideration for facilitating such connection***."  Reddy

6   Decl., Ex. 5, at 6 (emphasis added).  Additionally, (1) Zillow's Contact Agent and Request a Tour

7   submission screens inform users that they agree to be contacted by Zillow partners and defined

8   "real estate professionals"; (2) several brokers specifically informed Plaintiffs that they were

9   buyer-side agents; and (3) the Touring Agreement specifies that commissions for other brokerage

10   services are separately determined.  *See supra*, at Section II(A).

11         Plaintiffs also do not allege a material deception under their Pre-Approval Letter theory.

12   Again, Zillow's TOU readily disclosed that Plaintiffs may be connected to Zillow-related services,

13   with a potential financial incentive for one or more Zillow-related entities.  *See id.*; *Promedev*,

14   2023 WL 2330377, at \*7; *Smale*, 547 F. Supp. 2d at 1188–89.  Plaintiffs' claims of "deception"

15   are belied by the multiple Plaintiffs who were offered ZHL services or received pre-approval

16   letters, but chose other funding sources.  *Supra*, at Section II(B).

17         ***Third***, Plaintiffs have not alleged conduct that (1) "offends public policy as it has been

18   established by statutes, the common law, or otherwise," (2) "is immoral, unethical, oppressive, or

19   unscrupulous" or (3) "causes substantial injury to consumers[,]" sufficient to show "unfairness."

20   *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 639 (Wash. 2024), *as amended* (Aug. 16, 2024)

21   (cleaned up).

22         Plaintiffs' bare recitation of these requirements is insufficient.  *See* CCAC ¶¶ 322–23.  As

23   discussed above, a RESPA violation is not a *per se* WCPA violation and thus does not offend

24   public policy.  And there is no "substantial injury" because any supposed injury under either theory

25   is entirely speculative and was "reasonably avoidable."  *See RL Liquidators LLC v. Amazon.com*

26   *Servs., LLC*, 2025 WL 2052611, at \*6 (W.D. Wash. July 15, 2025).  Indeed, because Defendants

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR
22
COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

disclosed all challenged conduct, Plaintiffs had "'reason to anticipate' their injury and 'the means to avoid it'"—including by not using Zillow's services. *See, e.g.*, *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (no WCPA liability "[i]n light of Amazon's disclosures" which put plaintiffs on notice of the challenged conduct).

### 2.    Plaintiffs do not plead injury.

Plaintiffs' cursory—and repeated—allegation that they "paid inflated commissions related to the sales of their homes," *see, e.g.*, CCAC ¶ 324, does not evince injury, where the "net effect of Defendants' conduct was to drive up the commission paid by sellers, ***to the detriment of the sellers***," *id.* ¶ 317 (emphasis added).  Plaintiffs do not allege facts showing that: commissions charged by Partner Agents were higher than those charged by other agents; Partner Agent commission rates had any impact on the price of Plaintiffs' homes; or Plaintiffs sustained any injuries from ZHL pre-approval letters or loans.  This is insufficient.  *See, e.g.*, *Demopolis v. Galvin*, 786 P.2d 804, 809 (Wash. Ct. App.1990) (no injury when third party, not plaintiff, paid allegedly unlawful loan fee); *Douglass v. Bank of Am. Corp.*, 2013 WL 2245092, at *8 (E.D. Wash. May 21, 2013) (no injury from alleged fraudulent loan payments where plaintiffs did not allege "attempts to modify their loans").

### D.    Plaintiffs Fail to Allege Facts to Support a Civil RICO Claim (Count I).

RICO requires Plaintiffs to allege that each defendant engaged in: (1) conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity, and the predicate racketeering activity "must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  In addition to Plaintiffs' failed causation allegations (*see supra*, at Section IV(A)(1)), Plaintiffs fail to plausibly allege almost all of the remaining elements and offer no individualized allegations as to each Zillow Defendant.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                    23

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1          **1.      Plaintiffs do not allege any "racketeering activity" with particularity.**

2          Racketeering activity requires predicate acts, defined to include any act "indictable" under

3    enumerated federal criminal statutes.  *Id.*  Plaintiffs' RICO claim is predicated on acts of mail and

4    wire fraud.  CCAC ¶¶ 245–47.  To plead either, Plaintiffs must allege "(A) the formation of a

5    scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the

6    specific intent to defraud." *Eclectic Props.*, 751 F.3d at 997. *Id.*  None of these elements is properly

7    alleged.

8          ***No particularized or plausible allegations as to alleged fraudulent "schemes."***  Rule 9(b)

9    "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of

10   fraud, plus the role of each defendant in each scheme," as well as "the predicate act of mail fraud."

11   *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  Neither

12   of the two "fraudulent" "schemes" at issue—the Contact Agent theory or the Pre-Approval Letter

13   theory—is alleged with sufficient particularity, either as to the "schemes" generally or ***each*** Zillow

14   Defendant's alleged conduct in furtherance thereof.  *See Capitol W. Appraisals, LLC v.*

15   *Countrywide Financial Corp.*, 2009 WL 10677052, at *3 (W.D. Wash. Sept. 30, 2009)

16   (generalized allegations regarding a scheme to steer borrowers to inappropriate subprime loans did

17   "not sufficiently explain *how* the Defendants' conduct was fraudulent" beyond "simply stat[ing]

18   that it *is* fraudulent").

19         To the extent Plaintiffs base their claim on omissions, it still fails because they have not

20   alleged a duty to disclose.  *Eller v. EquitTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015)

21   (fraud by omission requires "an independent duty [to disclose] that has been breached").  Anyway,

22   any allegedly omitted information ***was disclosed*** in the TOU and on Zillow's website.  *Supra*, at

23   Section IV(C)(1).

24         ***No specific allegations regarding use of mails or wires***.  In mail and wire fraud cases,

25   "[c]ourts have been particularly sensitive to [Rule] 9(b)'s pleading requirements," requiring

26   Plaintiffs to plead "specific allegations as to *which* defendant caused *what* to be mailed . . . and

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR                                24

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    *when* and *how* each mailing . . . furthered the fraudulent scheme." *Gotham Print v. Am. Speedy*

2    *Printing Ctrs. Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994). Plaintiffs' allegations do not suffice.

3        ***First***, Plaintiffs' mail fraud claim fails because they do not describe how Defendants used

4    mailing services at all. *Woodell*, 2019 WL 3287896, at *5 (dismissing mail fraud claim where no

5    use of the mail was specifically alleged).

6        ***Second***, Plaintiffs allege innocuous conduct undifferentiated from Defendants' operation

7    of their ordinary businesses. *Id.* at *6-10 (dismissing RICO claims where plaintiff's allegations

8    "describe[d] nothing more than legitimate business conduct"). For example, Plaintiffs generically

9    allege "[e]ach Defendant" "[m]arket[ed] homes online at Zillow.com" and "[c]ommunicat[ed]

10   with potential buyers through email, text, phone calls and other means," but fail to tether those

11   allegations to any purported fraud. CCAC ¶¶ 246–47. "Plaintiffs cannot simply list what kinds of

12   communications Defendants tended to send by mail or wire." *Farmer v. Countrywide Fin. Corp.*,

13   2009 WL 1530973, at *4 (C.D. Cal. May 18, 2009).

14       ***Third***, the boilerplate allegations that each Plaintiff "viewed a residential listing," used

15   certain features on Zillow's website, and were "routed" to a Partner Agent, CCAC ¶¶ 247(a)–(k),

16   are also insufficient because they do not describe fraud, let alone "plead the time, place, and

17   manner of each specific act of mail or wire fraud, plus the role of each individual defendant in

18   each act." *Farmer*, 2009 WL 1530973, at *4; *see also Lancaster*, 940 F.2d at 405 (allegation

19   defendant "used the mails to submit [fraudulent] claims for reimbursement . . . pursuant to illegal

20   kickback schemes" insufficient because no specific mailings were mentioned).

21       ***Finally***, Plaintiffs' theory that Defendants committed mail and wire fraud cannot be

22   squared with their allegations that Defendants specifically ***avoided*** the use of mails and wires. *See,*

23   *e.g.,* CCAC ¶ 10 ("to avoid putting anything in writing, Zillow personnel are now flying out from

24   Seattle"); *id.* ¶ 158 (similar).

25       Tacitly acknowledging this failure, Plaintiffs plead that "many of the precise dates of the

26   fraudulent uses of the U.S. Mail and interstate wire facilities are hidden" from them. CCAC ¶ 250.

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**                                    25

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

But Plaintiffs allege that Defendants made challenged communications directly **with** Plaintiffs (*e.g.*, CCAC ¶ 246 (identifying "communications with buyers"), precluding any claim that this information was "hidden." Regardless, any "'relaxation' of the Rule 9(b) particularized pleading requirement for matters within the opposing party's knowledge 'does not nullify Rule 9(b).'" *Woodell*, 2019 WL 3287896, at *6.

*No specific intent to defraud.* Plaintiffs also do not adequately plead intent—*i.e.*, that Defendants' "alleged referral activity was [] designed to deprive [Plaintiffs] of either tangible or intangible property." *Lancaster*, 940 F.2d at 406. At most, Plaintiffs allege that Zillow evaluated Partner Agent performance, in part, based on whether buyers obtained free pre-approval letters from ZHL, *see* CCAC ¶¶ 19–29, which is a far cry from "fraudulent pretenses for the specific purpose of causing pecuniary loss[.]" *First Pac. Bancorp. Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir. 1988). Defendants' disclosures on the Zillow platform, Touring Agreements, and elsewhere refute intent.

Plaintiffs' allegations instead focus on their own subjective beliefs. *See, e.g.*, CCAC ¶ 247a (Plaintiff Taylor "used Zillow's 'Contact Agent' feature, *believing* he was contacting the listing agent"); ¶ 247j (Plaintiff Cady "used Zillow's 'Contact Agent' feature *with the intent* of contacting the seller's agent") (emphasis added). But allegations that "certain plaintiffs convinced themselves" of fraud is insufficient to show Defendants' intent. *Ortego v. Lummi Island Scenic Ests. Cmty. Club, Inc.*, 2016 WL 11622010, at *2 (W.D. Wash. Nov. 21, 2016).[11]

### 2. Plaintiffs have not alleged an "association-in-fact" enterprise, or a RICO conspiracy.

An "association-in-fact" enterprise requires "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997. For the reasons detailed in the Real Estate Defendants' motion to dismiss, Plaintiffs' claims

---

[11] Plaintiffs thus also fail to allege a "pattern," which "requires at least two acts of racketeering activity within ten years of each other." 18 U.S.C. § 1961(5); *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

fail under the threshold element—"common purpose"—which requires allegations "that the group engaged in enterprise conduct distinct from their own affairs." *Woodell*, 2019 WL 3287896, at *7. Likewise, because there is no substantive RICO violation alleged, Plaintiffs' conspiracy claim under 18 U.S.C. § 1962(d) cannot stand. *Howard*, 208 F.3d at 751 ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.") The Zillow Defendants join and incorporate the Real Estate Defendants' argument on these points by reference herein.

### E.    Plaintiffs Fail to Plead an Aiding and Abetting Breach of Fiduciary Duty Claim (Count VI).

Under Washington law, a plaintiff asserting a claim for aiding and abetting must allege (1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation by the aider and abettor; and (3) that the aider and abettor substantially assisted in the primary wrong. *See, e.g.*, *In re Consol. Meridian Funds*, 485 B.R. at 616. Plaintiffs' claims fail for three reasons.

*First*, Plaintiffs do not plead a cognizable theory of direct liability under Washington law, which they invoke via Zillow's TOU. CCAC ¶ 198. Assuming Washington law applies to the direct claim, the derivative claim "[f]ails as a matter of law" because "[i]n place of common law fiduciary duties, the Washington State legislature has prescribed statutory duties that real estate brokers owe their clients." *Shahbazian Fam. Tr. v. O'Neil*, 2017 WL 2964821, at *7-8 (W.D. Wash. July 12, 2017); *see also* Wash. RCA § 18.86.110 ("This chapter supersedes the fiduciary duties."). Since Plaintiffs plead only common law breach of fiduciary duty, the aiding and abetting claim fails. *Nau v. Vogel*, 2021 WL 4520076, at *7 (Wash. Ct. App. Oct. 4, 2021) (noting that legislature abrogated common law breach of fiduciary duty claim and finding no statutory breach).

*Second*, Plaintiffs fail to plead facts supporting a primary breach as described in the Real Estate Defendants' Motion to Dismiss, with the Zillow Defendants join and incorporate herein. They do not plead what their agents told them beyond the boilerplate allegation that the agents "did not disclose [unspecified] Hidden Zillow Fees." CCAC ¶¶ 19–29; *see Han v. Nationstar*

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

27

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

*Mortg. LLC*, 2015 WL 778552, at *3 (W.D. Wash. Dec. 1, 2015) (dismissing breach of fiduciary claim due to "threadbare allegations . . . merely recit[ing] legal conclusions").

**Third**, Plaintiffs also fail to allege that Zillow knew of or assisted any breaches. Plaintiffs instead allege the opposite: that "Zillow's internal policies, training materials, and public marketing repeatedly emphasize . . . that agents owe duties of care, loyalty and advocacy to the buyers they represent" and that "Zillow explains that a buyer's agent is expected to represent only the buyer's interests and to advise and advocate for the buyer throughout the transaction." CCAC ¶ 337; *see, e.g.*, *Swartz v. Deutsche Bank*, 2008 WL 1968948, at *16 (W.D. Wash. May 2, 2008) (aiding and abetting claim "cannot survive without . . . knowledge of . . . intent to breach and substantial[] assist[ance to] that breach").

## F.    Plaintiffs' Unjust Enrichment Claim Fails (Count VII).

Count VII fails for three reasons. **First**, "a plaintiff who is a party to a valid express contract is bound by the provisions of that contract and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter." *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (internal quotations omitted). Here, Plaintiffs' unjust enrichment claim arises from the same Partner Agent and affiliated-Zillow entity relationships discussed above, which were authorized by the parties' agreement in the TOU. CCAC ¶¶ 346–54; *see also In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1270 (W.D. Wash. 2023), *aff'd*, 2025 WL 2268252 (9th Cir. Aug. 8, 2025) (dismissing unjust enrichment claim because "Defendant's modification of Prime benefits . . . was authorized by the T&C") (internal quotations omitted).

**Second**, Plaintiffs' vague references to unspecified "Hidden Fees" and "Premium Fees," *see, e.g.*, CCAC ¶ 351, do not show an unjust benefit, particularly under the Rule 9(b) standard. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024) (requiring plaintiffs to plead specific factual support within their personal knowledge). Indeed, Plaintiffs do not allege Defendants received any money to which they were entitled. *See, e.g.*, *Bolinger*, 2014 WL 4803155, at *9 (granting summary judgment to listing service that retained

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

28

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1  commissions paid by brokers, reasoning plaintiffs "cannot show that FMLS received money

2  belonging to [plaintiffs] or that FMLS cannot in good conscience keep the sold fees").

3      *Third*, as discussed above, because Plaintiffs' two theories cannot support their RESPA,

4  WCPA, or RICO claims, the unjust enrichment claim also fails. *See Geraci v. Homestreet Bank*,

5  203 F. Supp. 2d 1211, 1217 (W.D. Wash. 2002) *aff'd*, 347 F.3d 749 (9th Cir. 2003) (dismissing

6  unjust enrichment claim because it was "derivative of [RESPA] claim"); *In re Pacific Market*, 764

7  F. Supp. 3d 1026, 1049 (W.D. Wash. 2025) (dismissing unjust enrichment claim where WCPA

8  claim was inadequate).

9  **V.    CONCLUSION**

10      The Zillow Defendants respectfully request dismissal of all claims against them with

11  prejudice.

12  Dated: February 20, 2026

                                      */s/ Benjamin B. Sweeney*
Benjamin Brink Sweeney (WSBA No. 63957)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
Telephone: (206) 452-8700
Fax: (206) 452-8800
Email: bsweeney@cooley.com

Benedict Y. Hur *(pro hac vice)*
Aarti Reddy *(pro hac vice)*
Thilini Chandrasekera *(pro hac vice)*
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Fax: (415) 693-2222
Email: areddy@cooley.com
          bhur@cooley.com
          tchandrasekera@cooley.com

Michelle Rogers *(pro hac vice)*
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Fax: (202) 842-7899
Email: mrogers@cooley.com

**DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 2:25-CV-01818-JLR**
29
COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Sara Victoria M. Pitt *(pro hac vice)*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Fax: (213) 561-3244
Email: sporter@cooley.com

Attorneys for Defendants

1

**<u>Local Civil Rule 7(e)(6) Certification</u>**

2
I certify that this memorandum contains 9,498 words, in compliance with the Local Civil

3
Rules for the Western District of Washington.

4

5
/s/ Benjamin B. Sweeney

6
Benjamin Brink Sweeney (WSBA No. 63957)
COOLEY LLP

7
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
Telephone: (206) 452-8700

8
Fax: (206) 452-8800
Email: bsweeney@cooley.com

9

10
Benedict Y. Hur *(pro hac vice)*
Aarti Reddy *(pro hac vice)*
Thilini Chandrasekera *(pro hac vice)*

11
COOLEY LLP
3 Embarcadero Center, 20th Floor

12
San Francisco, CA 94111
Telephone: (415) 693-2000

13
Fax: (415) 693-2222
Email: areddy@cooley.com

14
    bhur@cooley.com
    tchandrasekera@cooley.com

15

16
Michelle Rogers *(pro hac vice)*
COOLEY LLP

17
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800

18
Fax: (202) 842-7899
Email: mrogers@cooley.com

19

20
Sara Victoria M. Pitt *(pro hac vice)*
COOLEY LLP

21
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250

22
Fax: (213) 561-3244
Email: sporter@cooley.com

23
Attorneys for Defendants

24

25

26

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR

31

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700