1

2

3

4

5

6

7

8

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALUCARD TAYLOR, ARABA ARMSTRONG, HAN ZHENG, DAVID LIAO, KAREN KING, LISA KNUDSON, EYDALIA THURSTON, KYLE SILVA, DALE KOGER, JOHN CADY, and REBECCA BRUCALIERE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ZILLOW, INC., ZILLOW GROUP, INC., ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC., Washington Corporations, ZILLOW HOME LOANS, LLC, a California Corporation, GK PROPERTIES, a Nevada Corporation, REAL BROKER, LLC, a Florida Corporation, and FRANO TEAM, a Florida Organization,<br><br>                    Defendants. | CONSOLIDATED CASE NO. 2:25-cv-01818-JLR<br><br>REAL ESTATE DEFENDANTS' MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: Friday, April 3, 2026<br><br>ORAL ARGUMENT REQUESTED |

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND .............................................................................................. 2

    A.    Allegations Specific to the Real Estate Defendants.......................... 2

    B.    Plaintiffs Allege Fraud and Conspiracy Theories with No Nexus to the
        Real Estate Defendants' Alleged Conduct.......................................... 3

III.  ARGUMENT .................................................................................................... 5

    A.    Motion to Dismiss for Failure to State a Claim. ............................... 5

        1.    Legal Standards.......................................................................... 5

        2.    Plaintiffs' Claims Suffer from Common Defects. ..................... 7

            a.    Plaintiffs do not plausibly allege proximately caused harm. .......... 7

            b.    Liao's claims are time-barred. ......................................... 8

        3.    Plaintiffs Fail to State a Plausible RICO Claim........................ 9

            a.    No racketeering activity. ................................................. 10

            b.    No pattern of racketeering activity. ............................... 13

            c.    No RICO enterprise. ....................................................... 13

            d.    No proximately caused harm. ......................................... 14

            e.    No RICO conspiracy........................................................ 14

        4.    Plaintiffs Fail to State a Plausible Breach of Fiduciary Duty Claim. ....... 15

            a.    Plaintiffs' fiduciary duty claims sound in fraud and lack the
                requisite specificity. ....................................................... 15

            b.    Even under a lesser standard, Plaintiffs do not state a viable
                claim........................................................................... 16

        5.    Plaintiffs Fail to State a Plausible Aiding and Abetting Claim. ............... 19

    B.    Motion to Dismiss for Lack of Personal Jurisdiction. .......................... 21

        1.    Legal Standard. ......................................................................... 22

        2.    This Court Lacks Personal Jurisdiction Over the Real Estate
            Defendants. ................................................................................ 22

            a.    Plaintiffs cannot rely on RICO's nationwide service
                provision. ....................................................................... 22

            b.    No general or specific jurisdiction. ................................. 23

IV.   CONCLUSION.................................................................................................. 25

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - i
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.  INTRODUCTION

GK Properties, Real Broker, and Frano Team ("Real Estate Defendants") move to dismiss Plaintiffs' claims on the grounds that (1) this Court lacks personal jurisdiction over them and (2) Plaintiffs' Consolidated Amended Class Action Complaint ("CACC") fails to plausibly allege the claims asserted against them: (a) Claim 1: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on unspecified mail and wire fraud and a purported conspiracy to do the same; (b) Claim 5: breach of fiduciary duty based on unidentified duties and breaches, and (c) Claim 6: aiding and abetting breach of fiduciary duty—also alleged without specifics. Each claim is predicated on the same conclusory allegations of a fraudulent scheme to deceive and illegally steer home buyers.

The Real Estate Defendants should be dismissed from this lawsuit because Plaintiffs do not plausibly allege a "fraudulent scheme," much less participation by these defendants. If anything, the few allegations specific to the Real Estate Defendants—which appear in just seven of the CACC's *hundreds* of paragraphs and concern two unrelated real estate transactions in Nevada and Florida, respectively—dispel Plaintiffs' conclusory claims of fraud and conspiracy. This defect alone warrants dismissal under Rule 12(b)(6). The same defect also warrants dismissal under Rule 12(b)(2) as Plaintiffs bootstrap their unsupported RICO conspiracy claim as the sole basis for personal jurisdiction over the nonresident Real Estate Defendants, invoking RICO's nationwide service provision. This Court otherwise lacks personal jurisdiction over the Real Estate Defendants.

Plaintiffs' claims also fail for a myriad of independent reasons. For example:

*Time barred.* All claims against GK Properties are time-barred.

*No plausible harm.* The sole theory of proximately caused harm asserted against the Real Estate Defendants relies on pure speculation: without alleging any facts about the listing price or purchase price, offers or negotiations, or the amount of any commission on the sale, Plaintiffs nevertheless allege they purchased homes at inflated prices.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 1
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

***No legal basis for fiduciary duty-related claims.*** Plaintiffs invoke only amorphous common law duties that they allege apply "throughout the United States." There are no common law fiduciary duties generally applicable to the two transactions here, which took place in Florida and Nevada. These jurisdictions have carefully defined—and limited—the duties owed by real estate brokers and agents, replacing the broad common law fiduciary duties cited by Plaintiffs with detailed statutory schemes. Plaintiffs fail to plead any such actual duties as necessary to state plausible fiduciary duty and aiding and abetting claims, let alone specific conduct amounting to breach of any such unidentified duty by any Real Estate Defendant.

## II.    BACKGROUND[1]

### A.    Allegations Specific to the Real Estate Defendants.

Only *seven* of the 354 paragraphs in Plaintiffs' 100-page complaint allege facts specific to the Real Estate Defendants.[2] These allegations involve two unrelated residential real estate transactions involving only two of the 11 named plaintiffs.[3] The *entirety* of these allegations are as follows:

***Defendant GK Properties*** is a Nevada organization that houses the George Kypreos Team and participates in the Zillow Flex program. CACC ¶38. On February 12, 2021, Plaintiff David Liao, a California resident, bought a home in Nevada using an agent, "V.P.," associated with GK Properties. *Id.* ¶¶22, 38. Liao connected with V.P. initially through Zillow's website. *Id.* ¶247(d). Liao alleges V.P. did not disclose that Zillow received a portion of the agent's commission for the referral. *Id.* ¶22. Liao alleges he used Zillow Home Loans ("ZHL") to finance and close the purchase. *Id.* ¶¶22, 247(d). Liao does not allege V.P. suggested he use ZHL, let alone encouraged

---

[1] Although the Real Estate Defendants dispute many allegations in the CACC, for the purposes of this motion, they take Plaintiffs' well-pled allegations as true.

[2] The CACC also named Works Industries, LLC as a defendant, presumably because of the alleged association between Works and Plaintiff Alucard Taylor. There was no such association, and Works has been dismissed from the case. Dkt. #63.

[3] None of the other nine named plaintiffs have any alleged connection to the Real Estate Defendants and could not possibly have a claim against them.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

him to do so, and alleges no explanation for choosing ZHL or whether he considered other lenders.[4] *Id.*

  **Defendant Frano Team** is an alleged Florida organization[5] that is "part of" Real Broker, LLC. *Id.* ¶40. Frano Team participates in the Zillow Flex program. *Id.* ¶40. On September 19, 2025, Plaintiff John Cady, a Florida resident, bought a home in Melbourne, Florida using a Frano Team agent, "E.L." *Id.* ¶¶28, 40. Cady connected with E.L. initially through the Zillow website. *Id.* ¶247(j). Cady alleges E.L. did not disclose that Zillow received a portion of the agent's commission for the referral. *Id.* ¶28. Cady purchased the home using an unidentified lender. *Id.* ¶28. While the CACC claims "the Real Estate Defendants" conspired with Zillow to steer buyers to ZHL, *e.g.*, *id.* ¶¶226, 259-60, Cady does not allege he was ever referred to ZHL for pre-approval or any other purpose.

  **Defendant Real Broker LLC** is an alleged Florida corporation.[6] Peter Frano, Frano Team's leader, "is a Real Broker, LLC agent." *Id.* ¶39. The CACC does not otherwise allege any facts about Real Broker's role in Cady's—or any other—transaction.

  Liao and Cady speculate that the Zillow fee increased the purchase price. CACC ¶¶22, 28. Plaintiffs allege no other facts about these transactions.

**B.** **Plaintiffs Allege Fraud and Conspiracy Theories with No Nexus to the Real Estate Defendants' Alleged Conduct.**

  These two transactions, which comprise the entirety of the allegations specific to the Real Estate Defendants, do not support Plaintiffs' theories of wrongdoing or alleged harm. Plaintiffs ground all claims in two overarching theories of liability against Zillow and, by extension,

---

[4] Further, Liao used ZHL to finance his property in 2021, *before* agents allegedly received incentives around ZHL pre-approval metrics "[b]eginning in or around 2022." CACC ¶¶22, 66.

[5] Frano Team is not a legal entity. Dkt. #43.

[6] Real Broker is a Texas LLC. https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=REALBROKER%20M150000053151&aggregateId=forl-m15000005315-5830d431-3e31-4bd0-9d26-93c09098e15f&searchTerm=real%20broker&listNameOrder=REALBROKER%20M150000053151.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 3
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

"Defendants"—namely, that (1) Zillow's website purportedly deceives prospective buyers into contacting buyer's agents who advertise with Zillow, through the "Zillow Flex" program, and who share an allegedly undisclosed portion of commissions resulting from such contacts with Zillow (the "Contact Agent" theory); and (2) Zillow incentivizes agents to encourage buyers to obtain free, no obligation loan pre-approval letters from ZHL, which Plaintiffs allege constitutes illegal steering (the "Pre-Approval Letter" theory). CACC ¶¶59-193.

*Allegations of deception-by-website are not tied to any conduct of the Real Estate Defendants.* Liao and Cady allege varied experiences with Zillow's website. Cady claims he initially believed he was contacting the listing agent, not a buyer's agent, based on the layout of Zillow's website—not based on anything said or done by any Real Estate Defendant or its agent. CACC ¶¶28, 247(j). He does not allege that after speaking with the agent he continued to hold this belief. Liao does not allege any confusion about who he was contacting. *See* CACC ¶¶22, 247(d).

*Plaintiffs claim their agents failed to disclose Zillow fees but make no specific allegations of fraud or associated harm.* While Plaintiffs claim their *agents* did not disclose that Zillow received a portion of the agent's commission, Plaintiffs do not claim they had no knowledge of such fees, which are disclosed *at least* in Zillow's terms of use. Reddy Decl. (Dkt. #66), Exs. 2, 5 (Zillow Terms of Use).

Nor do they allege facts tying the Contact Agent theory to their claimed harm: increased home prices. The CACC speculates that without Zillow, buyers would negotiate directly with sellers, who might then agree to a lower price. *See, e.g.*, CACC ¶¶28, 334. But Liao does not claim he would have purchased a home without a buyer's agent. Cady claims he intended initially to contact the seller's agent directly "to avoid paying a buyer-agent commission." *Id.* ¶247(j). But he makes no allegations regarding why he ultimately used a buyer's agent and—like the other Plaintiffs—does not allege he actually paid any commission. *Id.* ¶317.

Plaintiffs also speculate that another buyer's agent might have waived a portion of their commission to negotiate a lower purchase price, CACC ¶8, without alleging facts supporting this

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 4
CASE NO. **2:25-cv-01818-JLR**

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

theory as applied to them. And Plaintiffs' generalized allegations undermine this proposition: Plaintiffs concede commissions are "paid by sellers, to the detriment of the sellers," *id.* ¶317, and that the amount of the commission is pre-determined in a "listing agreement" which "specifies the amount earmarked to be paid to the buyer broker," *id.* ¶51.

   ***Neither Liao nor Cady alleges they were steered to ZHL (the Pre-Approval Letter theory).*** Cady used an unnamed lender; he makes no allegations about ZHL. Liao alleges only that he used ZHL, not that he was steered to ZHL.

### III.  ARGUMENT[7]

   The sole specific allegations against the Real Estate Defendants—respectively alleged as Nevada or Florida entities—concern two isolated real estate transactions in those states involving Plaintiffs from California and Florida. Taking every allegation as true, these two transactions do not even suggest participation by the Real Estate Defendants in the alleged fraud or conspiracy as would be necessary to substantiate Plaintiffs' claims or establish personal jurisdiction over the Real Estate Defendants. Further, all of Plaintiffs' claims against the Real Estate Defendants lack a plausible theory of proximately caused harm and otherwise fail on the merits, in addition to several being time-barred.

   As Plaintiffs' claim of jurisdiction turns on the sufficiency of their RICO allegations, the Real Estate Defendants address Rule 12(b)(6) first.

### A. Motion to Dismiss for Failure to State a Claim.

#### 1. Legal Standards.

   To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although

---

[7] The Real Estate Defendants join all arguments raised in the Zillow Defendant's motion to dismiss, Dkt. #64, and request for judicial notice, Dkt. #65. The Real Estate Defendants reserve all rights to enforce any arbitration agreements relating to the at-issue transactions.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 5
CASE NO. **2:25-cv-01818-JLR**

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

well-pleaded facts and *reasonable* inferences are accepted as true, the Court need not assume the truth of "allegations that are merely conclusory, unwarranted deductions of facts, or unreasonable inferences." *State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C.*, 2017 WL 3189026, at *2 (W.D. Wash. July 27, 2017), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (conclusory and formulaic recitations of the elements of a cause of action are insufficient); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (no need to accept allegations contradicted by judicially noticeable facts). A court need not grant leave to amend where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) ("[F]utility includes the inevitability of a claim's defeat on summary judgment.").

Further, Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This heightened standard applies to claims for which fraud is an element (*e.g.*, RICO) and claims for which plaintiffs rely on a pattern of fraudulent conduct (*e.g.*, the fiduciary duty and aiding and abetting claims here):

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). When a claim "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b)," dismissal is proper. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Finally, both Rules 8(a) and 9(b) require allegations that identify each defendant's lawbreaking conduct—notice that cannot be met with generalized or group pleadings. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (dismissing complaint "with general allegations

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 6
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

that the 'defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to [some defendants]"); *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 898-99 (D. Haw. 2019).

### 2. Plaintiffs' Claims Suffer from Common Defects.

#### a. Plaintiffs do not plausibly allege proximately caused harm.

Each of Plaintiffs' claims require proximately caused harm. *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (RICO); *All Purpose Title, LLC v. Knobloch*, 397 So. 3d 85, 88 (Fla. Dist. Ct. App. 2024) (breach of fiduciary duty); *Guzman v. Johnson*, 137 Nev. 126, 132, 483 P.3d 531, 538 (2021) (same); *Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) (aiding and abetting). Yet Plaintiffs do not allege a plausible theory of harm, much less harm proximately caused by the Real Estate Defendants.

Plaintiffs claim, generally, that the Defendants' conduct inflated the prices of their homes.[8] As concerns the Real Estate Defendants, Liao and Cady allege the "Hidden Zillow Fees…inflated the commissions and the cost of the property that Plaintiff [] had to pay." CACC ¶¶22, 28.

Plaintiffs make no specific factual allegations as to *how* a Real Estate Defendant's conduct plausibly increased the purchase price of a home. Their theory appears to be two-fold: either (1) the buyer *might* have negotiated directly with the seller and *might* have been able to get a better price or (2) the buyer *might* have worked with a different agent who *might* have agreed to a lesser commission, which could *possibly* entice a seller to accept a lower purchase price. These speculative claims are untethered to requisite well-pleaded facts:

- Plaintiffs make no specific allegations about the purchase price, negotiation thereof or the amount of any commission paid.

---

[8] Plaintiffs also claim inflated mortgage costs but make no allegations or claims against the Real Estate Defendants based on that theory. *E.g.*, CACC ¶99.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 7
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

- Plaintiffs do not allege whether there were competing offers or whether they paid the asking price. *Compare* CACC ¶1 (claiming generally, "Home buyers in competitive markets need to make quick decisions to increase their offers or make other concessions to beat multiple bids for the house.") *with* CACC ¶¶22, 28 (making no allegations that this generalization was true in Liao or Cady's case).

- Plaintiffs do not describe a *single* conversation, email, text, or other communication with their agents or anyone else.

- If anything, Plaintiffs' allegations suggest the commission would have been no different with another agent. CACC ¶51 (alleging commission is set in advance by the seller's listing agreement).

- Liao does not allege he would have purchased a home without a buyer's agent. Only Cady suggests he ever intended to negotiate directly with the seller.

In short, Plaintiffs do not plausibly allege any proximately caused harm.

### b.    Liao's claims are time-barred.

Liao purchased his home from an alleged GK Properties agent in Nevada on February 12, 2021. *See* CACC ¶¶22, 38. He sued on November 19, 2025, Dkt. #15, almost five years later. RICO claims have a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The longest potentially applicable statute of limitations for the breach of fiduciary duty and aiding and abetting claims against GK Properties is three years. N.R.S. 11.190(3), (4) (three-year SOL in Nevada for claim based on fraud; two-year SOL for claim not involving fraud); RCW 4.16.080 (three-year SOL in Washington).[9] As Liao's claims accrued at closing, they are time-barred.

Liao must plead equitable tolling to save facially time-barred claims. *See Clare v. Saberhagen Holdings, Inc.*, 123 P.3d 465, 467 (Wash. 2005). Equitable tolling "focuses on

---

[9] As discussed below, the CACC does not identify which state law(s) govern the fiduciary duty claims.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 8
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

excusable delay by the plaintiff…and inquires whether a reasonable plaintiff would…have known of the existence of a possible claim within the limitations period." *Guketlov v. Homekey Mortg., LLC*, 2009 WL3785575, at *3 (W.D. Wash. Nov. 9, 2009). A "bare allegation that Defendants' fraud prevented [a plaintiff] from discovering the violations within the limitations period" is insufficient. *Id.* at *3.

The CACC offers only bare allegations: that "[t]here was no reasonable way for the public, including Plaintiffs, to know that Zillow Flex agents were involved in their transactions[,] about the payment of the Hidden Fees," and that "Zillow required Flex agents to steer buyers to ZHL." CACC ¶¶210, 212. Liao alleges no facts tying these conclusory allegations to his home purchase. Indeed, Liao does not allege steering or lack of knowledge about his agent's connection with Zillow. CACC ¶22. Nor does he claim he had no notice that Zillow may receive a portion of the agent's commission. *Id.* (claiming only that his "agent" did not disclose the fees).[10] Accordingly, Liao "assert[s] no facts that would support a finding that a reasonable plaintiff would not have known that he received inadequate disclosures[.]" *Guketlov*, 2009 WL3785575, at *3.

All claims against GK Properties are time-barred.

### 3. Plaintiffs Fail to State a Plausible RICO Claim.

Plaintiffs make *no* particularized allegations that could support a RICO claim against the Real Estate Defendants.

RICO requires Plaintiffs to allege that each defendant engaged in (1) conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity, and (5) the predicate conduct must be the proximate cause of harm to the victim. *Eclectic Props.*, 751 F.3d at 997.

---

[10] Additionally, Liao's pleadings implicate the "Contact Agent" or "Request a Tour" tools, CACC ¶247(d) (alleging being routed to a Zillow agent), governed by Zillow's Terms of Use, which disclosed that users "may be connected with a real estate professional[,]…authorize [Zillow] to make such referral or lead sale and acknowledge that [Zillow] may be paid valuable consideration for facilitating such a connection." Dkt. #66, Ex. 2, p.6. Liao's use of such features required acceptance of these terms, which defeat a claim of equitable tolling.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 9
CASE NO. **2:25-cv-01818-JLR**

### a.    No racketeering activity.

The fourth element—racketeering activity—"requires predicate acts." *Eclectic Props.*, 751 F.3d at 997. Here, Plaintiffs claim mail and wire fraud under 18 U.S.C. §§1341 and 1343. CACC ¶¶245–47. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props.*, 751 F.3d at 997. Allegations of mail and wire fraud must satisfy Rule 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud."). Thus, Plaintiffs must allege "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Id.*

Plaintiffs do not allege "the time, place, and manner" of *any* act of mail or wire fraud by a Real Estate Defendant, nor any participation in a scheme to defraud. The CACC does not identify even a single mail or wire involving GK Properties, Real Broker, or Frano Team. Instead, Plaintiffs advance conclusory allegations of mail and wire fraud against "Defendants" generally, which include:

- "Communicating with potential buyers through email, text, phone calls, and other means;"

- "Sending and receiving documents related to the purchase of the homes advertised on Zillow.com;"

- "Sending and receiving documents related to the financing of the homes advertised on Zillow.com."

CACC ¶246 (listing "[e]ach Defendant's use of the mails and wires . . . in furtherance of their scheme to defraud"). Plaintiffs cannot rely on these general allegations lodged at "Defendants" to meet the particularity requirements of Rule 9. *E.g.*, *Woodell v. Expedia Inc.*, 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019) (RICO claim failed because it did not "inform each defendant

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 10
CASE NO. **2:25-cv-01818-JLR**

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

separately of the allegations surrounding his alleged participation in the fraud”); *Aquilina*, 406 F. Supp. 3d at 903 (dismissing RICO, fiduciary duty, and other tort/statutory claims due to group pleading); *Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1126 (D. Haw. 2018) (dismissing RICO claims premised on group pleadings).

Further, only one of the alleged categories of communications purports to connect (unidentified) mails or wires to fraud. *See* CACC ¶246(c) (stating in full: “Engaging in communications between Zillow and each of the Real Estate Agents about how to fraudulently induce potential buyers into using Zillow Flex agents.”). But Plaintiffs offer no specifics about the allegedly discussed “fraudulent inducement,” let alone the participants, manner, or timing of the alleged “communications,” as is required by Rule 9. It is impossible to even guess at what communications Plaintiffs deem fraudulent.

Plaintiffs also purport to identify “interstate wire and mail communications in connection with specific home purchase transactions involving Plaintiffs,” which they allege “constituted a step in Defendants’ scheme.” *Id.* ¶247. As concerns the Real Estate Defendants, Plaintiffs’ vague descriptions of mails and wires depict ordinary business activities with no plausible inference of fraud:

- “**David Liao.** Prior to purchasing a home on February 12, 2021, Plaintiff Liao accessed Zillow.com, viewed a residential listing, and was routed by Zillow to V.P., identified on Zillow’s website as a ‘Top Agent on Zillow.’ Plaintiff Liao completed the transaction using ZHL to finance and close the purchase.” *Id.* ¶247(d).

- “**John Cady.** Prior to purchasing a home on September 19, 2025, Plaintiff Cady accessed Zillow.com, viewed a residential listing, and used Zillow’s ‘Contact Agent’ feature with the intent of contacting the seller’s agent directly to avoid paying a buyer-agent commission. Zillow routed his inquiry to E.L., identified on Zillow’s website as a ‘Top Agent on Zillow.’” *Id.* ¶247(j).

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

All of these allegations—*e.g.*, sending and receiving documents related to a home purchase—"describe nothing more than legitimate business conduct," which cannot form the basis of a RICO claim. *Woodell*, 2019 WL 3287896, at *6.

Conceding the allegations lack particularity, Plaintiffs claim details of the "fraudulent uses of the U.S. Mail and interstate wire facilities are hidden from Plaintiffs" and "cannot be alleged without access to Defendants' books and records." CACC ¶250. Plaintiffs ignore that mails, wires, or other communications related to the home purchases by Liao and Cady—the only transactions with any nexus to the Real Estate Defendants—would be in those Plaintiffs' possession. *See, e.g.*, CACC ¶246(b) (alleging that "Defendants" used fraudulent mails and wires to communicate *with buyers* but identifying no such mails or wires). Yet Plaintiffs identify *no* specifics of *any* such mail or wire communication. Further, even if "precise dates" of some subset of the alleged mails or wires were in Defendants' possession, Plaintiffs must still satisfy Rule 9(b). *Woodell*, 2019 WL 3287896, at *6 ("[T]he 'relaxation' of the Rule 9(b) particularized pleading requirement for matters within the opposing party's knowledge 'does not nullify Rule 9(b).'" (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). "Indeed, 'a plaintiff who makes allegations on information and belief must state the factual basis for this belief.' Alleging 'no more than suspicious circumstances' is insufficient." *Id.* (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Here, Plaintiffs do not even describe suspicious circumstances and allege *no* particulars of any alleged communications Plaintiffs believe exclusively lie in the Real Estate Defendants' possession.

In short, it is impossible to discern from the CACC what specific conduct Plaintiffs' claims target or how such conduct could amount to fraud. Plaintiffs' RICO claim fails for this reason alone. *See Neubronner*, 6 F.3d at 671 (Rule 9(b) requires notice of the "particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong" (internal quotations omitted)).

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Finally, Plaintiffs fail to allege specific intent to defraud. They make only conclusory allegations as to "Defendants[']" intent. *E.g.*, CACC ¶249 ("Defendants acted with knowledge of their wrongdoing and/or with the specific intent to defraud.").

### b.    No pattern of racketeering activity.

As Plaintiffs allege no racketeering activity, they necessarily fail to allege a "pattern" of racketeering activity. *Woodell*, 2019 WL 3287896, at *7.

### c.    No RICO enterprise.

Plaintiffs allege the Real Estate Defendants participated with Zillow in an "association-in fact enterprise." CACC ¶220. To allege such an enterprise, "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997.

Plaintiffs fail to plausibly allege that the putative "enterprise" has a common purpose "distinct from their own affairs." *Woodell*, 2019 WL 3287896, at *7-*8 (conduct "consistent with ordinary business activities or purposes" is insufficient). "Where the alleged association-in-fact is formed through routine contracts for services, the 'common purpose' element is unmet because the entities are pursuing their own individual economic interests, rather than a shared purpose." *Id.* Plaintiffs allege the common purpose of "monetizing buyer-side real estate transactions," a purpose indistinguishable from the Real Estate Defendants' own legitimate business interests. CACC ¶223; *see also, e.g., Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1056-57 (C.D. Cal. 2016) (internal quotations omitted) (dismissing RICO claim because "[c]ourts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises."); *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 826 F. Supp. 2d 1180, 120-03 (C.D. Cal. 2011) (dismissing RICO action where plaintiff "allege[d] no more than that Defendants' primary business activity . . . was conducted fraudulently"). Apart from conclusory allegations, "the complaint contains no specific factual allegations that any [Real Estate Defendant] acted with an objective unrelated to ordinary business aims." *Woodell*, 2019 WL 3287896, at *7.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Separately, Plaintiffs do not allege with particularity that any Real Estate Defendant joined or participated in an "association-in-fact" enterprise. Plaintiffs do not plead, for example, when any Real Estate Defendant allegedly joined or what specific acts they took as part of the enterprise. Rather, they rely (again) on improper group pleading. *E.g.*, CACC ¶¶226, 227, 233; *see Erickson v. Chase*, 2022 WL 3022137, at *3 (E.D. Wash. July 30, 2022) (dismissing complaint because plaintiff "d[id] not tie Defendant's actions to those of any other defendants, such that the Court could infer the existence of a relationship with sufficient longevity necessary to sustain a RICO claim"); *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (affirming dismissal because it was "not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit"); *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009) (same).

### d.    No proximately caused harm.

Plaintiffs also fail to allege racketeering activity proximately caused them harm. For one, Plaintiffs fail to allege racketeering activity at all. But even if they had, Plaintiffs advance only speculative allegations of causation and harm, as explained *supra* Section III.A.2.a.

### e.    No RICO conspiracy.

Nor do Plaintiffs allege a plausible RICO conspiracy. To state a RICO conspiracy claim, plaintiffs must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Plaintiffs must also allege a defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal quotations omitted).

Plaintiffs' conspiracy claim fails because they do not adequately allege a substantive violation of the statute. *Howard*, 208 F.3d at 751 ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (same).

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Separately, Plaintiffs fail to allege plausible participation in the alleged "conspiracy" by the

2   Real Estate Defendants. Plaintiffs allege the Real Estate Defendants and others conspired to

3   "fraudulently induc[e] prospective home buyers into using Zillow Flex agents" and "illegally steer[]

4   buyers into using Zillow Home Loans." CACC ¶259. Plaintiffs nowhere particularize the alleged

5   "fraud." *See supra* Section III.A.3.a. And the scant allegations specific to the Real Estate Defendants

6   *disprove* the steering conspiracy theory. Of the two transactions, *only one* (Liao's) is alleged to have

7   any nexus to ZHL. And Liao does not allege he was steered to, or even introduced to, ZHL by his

8   agent. CACC ¶22. Cady *used another lender* and makes no mention of ZHL. CACC ¶28. If the Real

9   Estate Defendants were involved in a conspiracy to steer buyers to ZHL, one would expect the

10   complaint to allege the Plaintiffs were so steered (or at least that the Real Estate Defendants tried).

11   The CACC makes Plaintiffs' conspiracy allegations *implausible*.

12      **4.      Plaintiffs Fail to State a Plausible Breach of Fiduciary Duty Claim.**

13          **a.      Plaintiffs' fiduciary duty claims sound in fraud and lack the requisite
                      specificity.**

14

15      Plaintiffs' claim of breach of fiduciary duty (and by extension their derivative aiding and

16   abetting claim) reprise the same conclusory allegations of fraud that underly their RICO claims—

17   *e.g.*, that the Real Estate Defendants engaged in unspecified acts of deception and omission.

18   Specifically, that they "[m]isled buyers into believing they were contacting or working with listing

19   agents," "[f]ailed to disclose material conflicts of interest arising from Zillow's lead-distribution

20   programs, including the Hidden Zillow Fees paid to Zillow out of the agents' commissions," and

21   "[p]rovided biased and conflicted advice by steering buyers toward Zillow Home Loans," among

22   similar allegations. *Compare* CACC ¶¶332 (breach of fiduciary duty), 340-42 (aiding and abetting),

23   *with* CACC ¶¶223, 227 (RICO). Because each of Plaintiffs' claims is grounded in the same unified

24   course of fraudulent conduct, the allegations must satisfy Rule 9(b)'s more stringent pleading

25   standard. *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047, 1060 (D. Or. 2015)

26   (fiduciary duty claim premised on incomplete and misleading disclosures subject to Rule 9);

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 15
CASE NO. **2:25-cv-01818-JLR**

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Aquilina*, 406 F. Supp. 3d at 898-99 (breach of good faith and fair dealing and unjust enrichment claims subject to Rule 9(b) where premised on "a unified course of fraudulent conduct"); *Perkumpulan Inv. Crisis Ctr. Dressel--WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1114–15 (W.D. Wash. 2011) (applying 9(b) to aiding and abetting claim).

The CACC does not come close to meeting Rule 9(b)'s particularity standard. Plaintiffs have not identified who on behalf of a Real Estate Defendant engaged in or assisted with the alleged breaches, what each Real Estate Defendant did to perpetrate the alleged breaches, when or where such conduct allegedly occurred, or how each the alleged breaches caused harm to Plaintiffs. *See also supra* Section III.A.2.a.

### b.    Even under a lesser standard, Plaintiffs do not state a viable claim.

Generally speaking, to succeed on a breach of fiduciary duty claim, a plaintiff must show: (1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages as a result of the breach. *See generally All Purpose Title, LLC*, 397 So. 3d at 88; *Guzman*, 137 Nev. at 132. While the elements of this claim may be similar across jurisdictions, the duties plausibly applicable to the two at-issue transactions are not. Plaintiffs' claims are not tied to any existing duties and suffer from other flaws.

*First*, the two transactions here took place in Florida and Nevada. Both jurisdictions have carefully defined—and limited—the duties owed by real estate brokers and agents, replacing the broad common law fiduciary duties cited by Plaintiffs with detailed statutory schemes. These statutory schemes have also evolved over time. Plaintiffs' assertion of nonexistent generalized common law duties—and failure to identify any existing duty—alone warrants dismissal.[11]

In Florida, where Cady's transaction occurred, CACC ¶28, the legislature has created different realtor relationships with materially different duties, with the default presumption being a

---

[11] *E.g.*, *Nalbandian v. Lockheed Martin Corp.*, 2011 WL 338809, at *4 (N.D. Cal. Feb. 1, 2011) ("Plaintiffs make no specific allegations as to what fiduciary obligations Defendants violated or how Defendants violated those obligations. These conclusory allegations are insufficient to support Plaintiffs' breach of fiduciary duty claim.").

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 16
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"transaction broker" relationship that does not impose fiduciary obligations at all. Fla. Stat. 475.278(1), (2); *Burchfield v. Realty Executives*, 971 So. 2d 138, 139 (Fla. Dist. Ct. App. 2007). A transaction broker "does not represent either [party] in a fiduciary capacity" and instead owes only a limited set of enumerated duties. *See* Fla. Stat. 475.278(2)(a)-(g). A fiduciary relationship arises only if the broker is acting as a "single agent," which must be established in writing. *Id.* 475.278(1)(b), (3). Cady does not allege that E.L. (who is allegedly associated with the Frano Team, CACC ¶40) acted as a single agent, nor does Cady allege that E.L. took actions inconsistent with any provision of Florida's statutory scheme governing realtor duties.

Nevada, where Liao's transaction occurred (with GK Properties, CACC ¶¶22, 38), likewise defines a realtor's duties by statute, NRS 645.252–645.254, and common law claims are precluded where the conduct complained of is regulated by this statute. *See Davis v. Beling*, 128 Nev. 301, 314-15, 278 P.3d 501 (2012) (citing NRS 645.251); *WGH Acquisitions, LLC v. BondRok Partners, LLC*, 2014 WL 12788999, at *5-6 (D. Nev. Sept. 2, 2014). The CACC lacks specific allegations regarding what actions Liao's agent took that breached any duty defined by Nevada statute.

**Second**, the CACC obscures, rather than specifies, each of the Real Estate Defendant's allegedly unlawful conduct. Plaintiffs repeatedly allege the "Real Estate Defendants—through their own conduct and by and through the Zillow-affiliated agents operating under their supervision and control"—breached amorphous common law duties of "loyalty, care, good faith, and full disclosure." *E.g.*, CACC ¶¶328-30, 336. Yet the portions of the CACC directed to such alleged breaches make no specific references to any individual Real Estate Defendant, the source of any alleged duties, the factual circumstances under which those duties were allegedly breached, or how any alleged breach specifically harmed any Plaintiff. Instead, Plaintiffs group "Real Estate Defendants and their agents" together and offer a conclusory laundry list of alleged fraudulent conduct-breaches untethered to particular actors, transactions, or communications. Such pleading

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 17
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

fails to satisfy Rules 8 or 9(b), particularly where the Real Estate Defendants have distinct relationships with Plaintiffs and operated under different states' statutory schemes.[12]

With respect to Real Broker, the breach of fiduciary duty claim is even more attenuated as the CACC does not specifically allege Real Broker's role in any transaction. *Compare* CACC ¶39 (alleging Peter Frano is a Real Broker agent), *with* CACC ¶40 (alleging only that an agent working for or with the "Frano Team" was part of the Cady transaction). Absent allegations of the "who, what, when, where, and how" of the alleged breaches and other transaction-specific facts, the CACC fails to satisfy even the most basic pleading standards. *Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Aquilina*, 406 F. Supp. 3d at 918 ("[C]onclusory allegations and impermissible group pleading cannot support a claim for [breach of fiduciary duty], especially on a claim subject to the heightened pleading standard under Rule 9(b)."); *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1098 (N.D. Cal. 2017) (dismissing fiduciary duty claim where plaintiffs failed to allege "facts supporting the vague allegation that defendants 'fail[ed] to affirmatively and truthfully disclose their actions, intentions, and concerns'").

*Third*, setting aside Plaintiffs' failure to specify the applicable statutory duties and improper reliance on group pleadings, Plaintiffs' sparse allegations against the Real Estate Defendants do not state a plausible claim for breach of a fiduciary duty. Only one of Plaintiffs' theories of breach ("nondisclosure") has any plausible nexus to allegations against the Real Estate Defendants. Specifically, Cady and Liao allege their agents "did not disclose Hidden Zillow Fees" to them. *See* CACC ¶¶22, 28. The CACC does not, however, identify who specifically owed these Plaintiffs a duty to disclose under applicable law (*e.g.*, the agent, the Real Estate Defendant, or both); the contours of the agency relationship between each Real Estate Defendant and the alleged transaction

---

[12] *E.g.*, *In re Providian Fin. Corp. ERISA Litig.*, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002) ("[P]laintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties. The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.").

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 18
CASE NO. **2:25-cv-01818-JLR**

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

agent; what any Real Estate Defendant or agent actually said, recommended, or disclosed; what each Plaintiff specifically understood regarding the transaction, including from the content of closing documents and agreements between Plaintiffs and their agents; or how the alleged omission was material to the transaction. The CACC falls well short of alleging a plausible breach.

Further, the disclosures provided to Plaintiffs render implausible Plaintiffs' nonspecific, generalized allegations of nondisclosure with respect to Zillow's alleged contact referrals and associated fees. Specifically, each of the Plaintiffs who used the "Contact Agent" or "Request a Tour" tool, including Cady (CACC ¶28), and presumably Liao (CACC ¶247(d) (alleging being routed to a Zillow agent)), would have agreed to Zillow's Terms of Use, which disclosed that users "may be connected with a real estate professional[,]…authorize [Zillow] to make such referral or lead sale and acknowledge that [Zillow] may be paid valuable consideration for facilitating such a connection." Dkt. #66, Ex. 2, p.6; *id.*, Ex. 5, p.6. Plaintiffs do not allege that these disclosures were hidden, misleading, or contradicted by any communications from the Real Estate Defendants or their agents. Finally, the CACC shows that the listing agent's identity and contact information are presented on the same screen as the "Contact Agent" button, meaning that Plaintiffs had notice that the agent they were paired with in Zillow's platform was not the listing agent. *See* CACC ¶102.

**Finally,** as explained above, Plaintiffs do not plausibly claim the Real Estate Defendants' alleged breaches proximately caused them to suffer damages. *See supra* Section III.A.2.a. The absence of well-pleaded facts identifying a duty, breach, or resulting injury attributable to the Real Estate Defendants compels dismissal.

### 5. Plaintiffs Fail to State a Plausible Aiding and Abetting Claim.

To plead a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) the existence of a breach of fiduciary duty by the primary wrongdoer; (2) knowledge of this breach by the aider and abettor; and (3) that the aider and abettor substantially participated in or encouraged the breach. *See, e.g.*, *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 812-13 (2014) (Nevada); *Fonseca v. Taverna Imports, Inc.*, 212 So.3d 431, 442-43 (2017) (Florida).

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 19
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

A "vague suspicion of wrongdoing" is insufficient to satisfy the "actual knowledge" requirement. *In re First All. Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006). And "[s]ubstantial assistance requires that the defendant's actions be a 'substantial factor' in causing the plaintiff's injury." *Impac Warehouse Lending Group*, 270 F. App'x at 572.

Plaintiffs' aiding and abetting claim against the Real Estate Defendants fails at the threshold.

**First**, Plaintiffs fail to identify any cognizable, underlying breach of fiduciary duty with the specificity required by Rules 8 and 9(b). *See supra* Section III.A.4; *Mann*, 483 F. Supp. 2d at 917 ("[W]ithout the underlying breach of fiduciary duty, there can be no claim for aiding and abetting that purported breach.").

**Second**, Plaintiffs do not identify an underlying breach that the Real Estate Defendants allegedly aided and abetted that is, in any way, distinct from the fiduciary duties the Real Estate Defendants are alleged to have directly breached themselves (by their own conduct and the conduct of their alleged agents). *Compare* CACC ¶¶327-34, *with* CACC ¶¶335-45. Consistent with logic and common sense, Plaintiffs cannot bring aiding and abetting claim against the Real Estate Defendants premised on their alleged *primary* liability for the same breaches.[13] *See generally Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 916 (D. Ariz. 2007) (agreeing that "a person who himself owes a fiduciary duty with respect to a transaction or course of conduct cannot be liable for aiding and abetting a breach of that same fiduciary duty by another because the same facts that would otherwise constitute aiding and abetting would constitute a 'primary breach of fiduciary duty'").

**Third**, Plaintiffs fail to sufficiently allege facts establishing knowledge and substantial assistance by any Real Estate Defendant.[14] Plaintiffs merely allege, for example, that the Real Estate

---

[13] The breach of fiduciary duty claim is premised on alleged breaches by the Real Estate Defendants both through their "own conduct" and the conduct of "agents operating under their supervision and control." CACC ¶330.  Plaintiffs allege no facts to support a theory of secondary liability distinct from those alleged breaches.

[14] This is especially true with respect to Real Broker, as there are no specific allegations in the CACC regarding its alleged misconduct or role in a given transaction.

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 20
CASE NO. **2:25-cv-01818-JLR**

Defendants "knew that the conduct alleged herein constitutes breaches"; "knew that allowing agents to steer clients based on undisclosed financial incentives, suppress alternatives, and permit third-party interference with client communications violated fiduciary obligations"; and "substantially assisted and encouraged their agents' fiduciary breaches by supervising, authorizing, and profiting from agents' participation in Zillow's programs; by continuing to deploy agents despite knowing those programs compromised fiduciary loyalty; and by failing to disclose or remedy the resulting conflicts of interest." CACC ¶¶339, 342, 345. Plaintiffs do not allege *any facts specific to the Real Estate Defendants* to support these theories, apart from alleging that the agents were associated with the Real Estate Defendants and were "part of the Zillow Flex program." CACC ¶¶38-40. Plaintiffs' unsupported, conclusory allegations and legal conclusions are insufficient to establish "knowledge of…intent to breach and substantial[] assist[ance to] that breach." *E.g.*, *Swartz v. Deutsche Bank*, 2008 WL 1968948, at *16 (W.D. Wash. May 2, 2008); *In re Consol. Meridian Funds*, 485 B.R. 604, 622 (Bankr. W.D. Wash. 2013); *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011).

     ***Finally***, as explained above, Plaintiffs have not plausibly alleged that the Real Estate Defendants proximately caused them to suffer damages. *See supra* Section III.A.2.a.

**B.**    **Motion to Dismiss for Lack of Personal Jurisdiction.**

     This Court lacks personal jurisdiction over the Real Estate Defendants. Each is an alleged Nevada or Florida entity—in actuality, a Nevada entity (GK Properties), Texas entity (Real Broker), and an informal team based in Florida (Frano Team) that is not a legal entity at all. Plaintiffs' claims against them allege harm to California and Florida home buyers arising from real estate transactions in Nevada and Florida. Neither transaction occurred in Washington State; no party, broker, or agent involved in the transactions is alleged to be from Washington; and none of the claimed injuries were suffered in Washington. Plaintiffs cannot establish personal jurisdiction is proper over the out-of-state Real Estate Defendants here.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1.    **Legal Standard.**

On a Rule 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). When the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

2.    **This Court Lacks Personal Jurisdiction Over the Real Estate Defendants.**

Plaintiffs have two means to establish that the Court has personal jurisdiction over Defendants: (1) a federal statute authorized service, or (2) showing that a Washington court could exercise personal jurisdiction over them. *See* Fed. R. Civ. P. 4(k)(1)(A), (C). For the Real Estate Defendants, Plaintiffs rely only on RICO. CACC ¶46. RICO's nationwide service provision does not authorize service here.

a.    **Plaintiffs cannot rely on RICO's nationwide service provision.**

Under Rule 4(k)(1)(C), service establishes personal jurisdiction when authorized by a federal statute. Plaintiffs cite RICO's nationwide service provision, 18 U.S.C. § 1965(b). CACC ¶46 ("This Court has personal jurisdiction over each of the Real Estate Defendants because the ends of justice require that they be brought before this court, pursuant to 18 U.S.C. § 1965. Specifically, all members of the RICO enterprise should be tried together in a single jurisdiction.").

Section 1965(b) provides for service upon RICO defendants residing outside the federal court's district when "the ends of justice" require it. 18 U.S.C. § 1965(b). The purpose of the provision is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

Nationwide service under this statute is limited. *Id.* "[M]erely naming persons in a RICO complaint" is not enough. *Id.* Rather, Plaintiffs must establish:

> (1) that they have sufficiently alleged a multidistrict conspiracy that encompasses the defendants; (2) that the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other

district in which a court will have personal jurisdiction over all of the alleged co-conspirators.

*Canada v. Meracord, LLC*, 2013 WL 392492, at *3 (W.D. Wash. Jan. 31, 2013) (citing *Butcher's Union*, 788 F.2d at 539).

Plaintiffs fail at step one as they have not sufficiently alleged a multidistrict conspiracy involving the Real Estate Defendants, as explained *supra* Section III.A.3.

### b.    No general or specific jurisdiction.

Without RICO, Plaintiffs allege no basis for this Court to exercise personal jurisdiction over the Real Estate Defendants. Nor could they.

Absent a federal statute authorizing service, "the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800; Fed. R. Civ. P. 4(k)(1)(A). Washington permits courts to exercise personal jurisdiction "to the same extent allowed by the due process clause of the United States Constitution." *Ralls*, 221 F. Supp. 3d at 1242. Thus, this Court must analyze whether Plaintiffs have established jurisdiction is proper under "the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

The Constitution allows a court to exercise two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). If a court has general jurisdiction over a defendant, it may hear any claim against them, no matter the claim's connection to the forum. *Id.* A court may exercise general jurisdiction only when the defendant is "at home" in the forum.[15] *Id.*; *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 127, 133–34 (2023). The "paradigm" forums where a corporate defendant is "at home" are its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137. The Real Estate Defendants are not "at home" in Washington as none of them were incorporated or have their principal place of business here; Plaintiffs do not allege otherwise. CACC ¶¶38-40, 45-46.

---

[15] A court may also exercise general jurisdiction over a defendant when the state requires an entity to consent to the state's general jurisdiction as a condition of doing business there. Washington is not such a state. *Washington Equip. Mfg. Co. v. Concrete Placing Co.*, 85 Wn. App. 240, 245, 931 P.2d 170 (1997).

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 23
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Nor do Plaintiffs allege the Court has specific jurisdiction over the Real Estate Defendants. And for good reason. A court may exercise specific jurisdiction only if three conditions are met. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). First, the defendant "must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* Second, the claim must "arise[] out of or relate[] to the defendant's forum-related activities." And third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* It is the plaintiff's burden to satisfy the first two prongs. *CollegeSource*, 653 F.3d at 1076. Even if they do so, the Court may still find that the exercise of jurisdiction would be unreasonable. *Id.*; *Picot*, 780 F.3d at 1212 (if the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be unreasonable).

***No purposeful direction.*** Plaintiffs' claims here sound in tort. *E.g.*, *Munderloh v. Biegler GmbH*, 2022 WL 901408, at *3 (D. Ariz. Mar. 28, 2022) (RICO); *Entourage Inv. Grp., LLC v. TV4 Ent., Inc.*, 2023 WL 2042106, at *3 (D. Nev. Feb. 15, 2023) (fiduciary duty). For such claims, courts use a three-part "effects test" to evaluate "purposeful direction." *Schwarzenegger*, 374 F.3d at 803. "[A] defendant purposefully directed [its] activities at the forum if [it]: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 803).

Plaintiffs allege no "harm" suffered in the "forum state." Rather, Plaintiffs claim the Real Estate Defendants were involved in Nevada and Florida transactions that caused harm to California and Florida plaintiffs in Nevada and Florida. Here, even the Plaintiffs offer no link to the forum. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

***The claims do not arise out of or relate to forum contacts.*** Plaintiffs allege no forum contacts. Again, Plaintiffs do not even allege this Court has specific jurisdiction over these defendants.

Even if Plaintiffs could satisfy the first two criteria, the Court's exercise of jurisdiction would be unreasonable under the seven-factor balancing test applied by this circuit. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 866–67 (9th Cir. 2003).

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against the Real Estate Defendants with prejudice.

DATED this 20th day of February, 2026.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC
Attorneys for Defendants GK Properties, Real Broker, LLC and Frano Team

I CERTIFY THAT THIS MOTION CONTAINS 8,400 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By *s/ Diana Siri Breaux*
   Diana Siri Breaux, WSBA #46112
   dianab@summitlaw.com
   Eva Sharf Oliver, WSBA #57019
   evao@summitlaw.com

REAL ESTATE DEFENDANTS' MOTION TO DISMISS - 25
CASE NO. **2:25-cv-01818-JLR**

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001