# EXHIBIT 1

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALUCARD TAYLOR, ARABA ARMSTRONG, HAN ZHENG, DAVID LIAO, KAREN KING, LISA KNUDSON, EYDALIA THURSTON, KYLE SILVA, DALE KOGER, JOHN CADY, and REBECCA BRUCALIERE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZILLOW, INC., ZILLOW GROUP, INC., ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC., Washington Corporations, ZILLOW HOME LOANS, LLC, a California Corporation, WORKS INDUSTRIES, LLC, an Oregon Corporation, GK PROPERTIES, a Nevada Corporation, REAL BROKER, LLC, a Florida Corporation, and FRANO TEAM, a Florida Organization,<br><br>Defendants. | Case No. 2:25-cv-01818-JLR<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS** |

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR)

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Plaintiffs in the above-titled action hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Defendants Zillow Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Zillow Home Loans, LLC (collectively, "Zillow" or "Zillow Defendants) produce to Plaintiffs all Documents, electronically stored information, and things that are in Your possession, custody, or control responsive to the following Requests for Production. The production shall be completed within thirty (30) days.

## I.    DEFINITIONS

1. Each of these definitions and instructions is incorporated into each of the requests to which it pertains. Notwithstanding any definition below, each word, term, or phrase used in these requests for production is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2. The terms "relating to," "related to," "relate to," "refer to," or "concerning" or any variations thereof, mean referring to, pertaining to, reflecting, containing, evidencing, supporting, describing, establishing, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, setting forth, summarizing, characterizing, and/or contradicting, either directly or indirectly, in full or in part.

3. "Communications" means the conveyance (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) of information, whether written, oral, or electronic, including correspondence, emails, text messages, instant messages, chats (including Slack or Microsoft Teams), voice messages, telephone calls, video conferences, meetings, presentations, letters, memoranda, reports, notes, recordings and postings of any kind, including on internal social media networks (such as Microsoft Viva Engage, formerly known as Yammer, or private Facebook pages). Communications include instances where one party disseminates information that the other party receives but to which it does not respond.

4. "Documents" has the broadest meaning permitted under Federal Rule of Civil Procedure 34 and includes all writings, recordings, and electronically stored information, whether in hard-copy or electronic form, and whether maintained in draft or final form. "Documents" Include,

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

without limitation, emails and attachments, correspondence, memoranda, presentations, reports, studies, contracts, agreements, policies, procedures, itineraries, schedules, notes, logs, spreadsheets, databases, reimbursements, travel bookings, receipts, metadata, call recordings and transcripts, video recordings and transcripts, text messages, instant messages, chats (including Slack or Microsoft Teams), postings (including on internal social media sites) source code, configuration files, and all other data compilations from which information can be obtained. "Documents" also include all non-identical copies, drafts, revisions, and versions of the foregoing.

5. "Including" is used to provide examples of certain types of information and should not be construed as limiting a request or definition in any way. The term "including" shall be construed as if followed by the phrase "but not limited to."

6. "All," "or," and "and" should be understood to include and encompass "any"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or."

7. The "Action" refers to the particular action in which these Requests have been served, i.e., the action within which the party or parties responding to these Requests have been named as a Defendant.

8. "Zillow," "Zillow Defendants," "You," and "Your" refer to and include Zillow Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., Zillow Home Loans, LLC, and each of their predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, and all current and former officers, directors, employees, agents, contractors, consultants, and attorneys acting or purporting to act on their behalf.

9. "Zillow Home Loans" and "ZHL" mean Zillow Home Loans, LLC, and any predecessors, successors, parents, subsidiaries, divisions, affiliates, and all related officers, directors, employees, loan officers, agents, and contractors.

10. "Zillow-Affiliated Agents" means any real estate agent, team of agents, or brokerage that participates in, receives leads from, or is subject to performance standards, compensation

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 3

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

arrangements, or monitoring through Zillow's Premier Agent program, Flex program, or any successor or related program on behalf of Zillow.

11. "Real Estate Defendants" refers to and includes Works Industries, LLC, GK Properties, Real Broker, LLC, and Frano Team, and each of their predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, and all current and former officers, directors, employees, agents, contractors, consultants, and attorneys acting or purporting to act on their behalf.

12. "Premier Agent" means Zillow's agent advertising, lead distribution, and marketing platform marketed as "Premier Agent," including all associated performance standards, policies, tools, and integrations.

13. "Flex" means Zillow's referral and commission-share program marketed as "Flex," including "Flex Performance Terms," "Flex Compliance Policies & The Disengagement Process," "Enhanced Markets," and all associated standards, policies, tools, and integrations.

14. "Leads" and "Lead Flow" mean consumer inquiries, referrals, contacts, or prospective buyer information generated via Zillow's websites, mobile applications, or partner channels, and the processes, rules, and algorithms for routing, prioritizing, allocating, or otherwise distributing such leads to agents or teams or conditioning access to such leads, including any measures of "lead quality," "priority," "placement," or "enhanced placement."

15. "Attach," "Attachment," "Adoption," and "Attach Rate" mean any metric or measure of consumer uptake of ZHL (including pre-approvals, applications, and closed loans) associated with or attributed to leads generated or routed by Zillow, including any target or quota for such metric.

16. "Pre-Approval Target" means any minimum performance requirement, quota, or target for obtaining ZHL pre-approvals or "transfers to ZHL," including any percentage-based thresholds (e.g., 10% or 25%) tied to agent or team performance.

17. "Transfer to ZHL" means any process or action by which an agent, team, or system submits, routes, or otherwise refers a Lead to ZHL for pre-approval, application, or other loan consideration, whether manually or automatically, including without limitation in-app or CRM-based "transfer" actions.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 4

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

18. "Success Fee," "Referral Fee," "Commission Share," and "Hidden Zillow Fees" mean any payment, fee, commission share, revenue share, or other remuneration paid or owed, directly or indirectly, to Zillow, whether denominated as a success fee, referral fee, or otherwise, contingent upon or associated with a closed transaction or referral of business.

19. "Touring Agreement" means any agreement, acknowledgment, disclosure, or document that consumers are asked to review or sign in connection with property tours scheduled via Zillow or by Zillow-Affiliated Agents, including any representations that services are "free."

20. "Contact Agent" and "Request a Tour" refer to any user interface component, button, flow, or pathway on Zillow's websites or mobile applications by which consumers can request to contact an agent or schedule a tour, including associated data capture, Lead creation, consent capture, and routing.

21. "Pre-checked Checkbox" means any user interface component or default setting via which consumer interest in "financing" or "Zillow Home Loans" is indicated by default (opt-out rather than opt-in), including design artifacts, specifications, and tracking.

22. "Performance Standards" means any metric, quota, benchmark, score, or requirement used by Zillow to evaluate, rank, reward, penalize, or remove agents or teams, including standards tied to ZHL transfers, attachment/adoptions, and pre-approval targets.

23. "Steering" means any act or practice that encourages, pressures, incentivizes, conditions, or otherwise influences a consumer's or agent's selection of a settlement service provider, including through defaults, quotas, performance standards, lead allocation, incentives, penalties, monitoring, or representations, whether or not alternative options are available.

24. "CRM" means customer relationship management systems and tools (e.g., Follow Up Boss), including any telephony, call recording, text/SMS, chat, or other integrations used to manage leads or monitor agent Communications.

25. "LAS" means the Zillow Listing Access Standards, any related policies, enforcement actions, warnings, and listing "blocks."

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 5

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

26. "Person" means any natural person, corporation, partnership, LLC, association, trust, or other legal entity.

27. "Refer" and "Referral" shall have the meaning in 12 C.F.R. § 1024.14(f)(1).

28. "Thing of Value" shall have the meaning in 12 C.F.R. § 1024.14(d).

29. "Settlement Service" and "Federally Related Mortgage Loan" shall have the meanings in 12 U.S.C. § 2602 and 12 C.F.R. § 1024.2.

## II.    INSTRUCTIONS

1. If, in responding to these requests, You encounter ambiguities when construing a question, instruction, or definition, Your answer shall set forth the matter deemed ambiguous and the construction used in answering.

2. Unless otherwise specified, Documents (including electronically stored information) shall be produced consistent with and in the manner set forth in the applicable ESI Protocol or, to the extent such ESI Protocol has not yet been entered by the Court, the portions of the ESI Protocol upon which the parties agree.

3. These Requests for Productions should be deemed continuing such that if Your directors, officers, employees, agents, representatives, or any person acting on Your behalf, subsequently discover or obtain possession, custody, or control of any Document or ESI previously requested or required to be produced, and supplemental productions should be provided as additional Documents become available.

4. If You claim You are unable to produce a Document, you must state whether that inability is because the Document never existed; has been destroyed, lost, misplaced or stolen; or has never been or is no longer in your possession, custody or control. Such a statement must further set forth the name and address of any person or entity that you know or believe to have possession, custody or control of that item or category of item. If any Document responsive to a request has been destroyed, produce all Documents describing or referencing (1) the contents of the lost or destroyed Document; (2) all locations in which any copy of the lost or destroyed Document had been maintained; (3) the date of any such loss or destruction to the extent known; (4) the name of each

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 6

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

person who ordered, authorized and carried out the destruction of any lost or destroyed Document; (5) all Document retention and destruction policies in effect at the time any requested Document was destroyed; and (6) all efforts made to locate any responsive Document alleged to have been lost or destroyed.

5. If You object to any item or category of item, Your response shall (a) identify with particularity each Document or thing to which the objection is made and (b) set forth clearly the extent of, and specific ground for, the objection; and You should respond to the Request to the extent it is not objectionable.

6. If You object that a Document is covered by the attorney-client or other privilege, or is work-product, You shall provide a Privilege Log containing: (1) the name of the Document; (2) the name and address of the person(s) who prepared it; (3) the person(s) to whom it was directed or circulated; (4) the date on which the Document was prepared or transmitted; (5) the name and address of the person(s) now in possession of the Document; (6) the description of the subject matter of the Document; and (7) the specific nature of the privilege claimed, including the reasons and each and every fact supporting the withholding, and legal basis sufficient to determine whether the claim of privilege is valid with respect to the Document (without revealing privileged information).

7. In responding to these Requests for Production, You are to Include Documents (1) obtained from witnesses who gave information to any governmental agency or investigatory body, including Congress; (2) that constitute, refer or relate to summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation, including before Congress; or (3) obtained on Your behalf in preparation for testimony or interviews before any governmental agency or investigatory body, including Congress.

8. The relevant period for these requests is October 1, 2018 to the present, unless otherwise specified.

9. Plaintiffs reserve the right to serve additional or amended requests as discovery proceeds.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 7



### III. REQUESTS FOR PRODUCTION

**A. Agent Programs, Quotas, and Enforcement (Flex / Premier)**

1. All Documents concerning the Premier Agent program, including program terms, policies, performance standards, agent scorecards, leaderboards, and any references to ZHL attachment, adoption, transfers, or pre-approval targets.

2. All Documents concerning the Flex program, including Flex Performance Terms, Flex Compliance Policies & The Disengagement Process, Enhanced Markets standards, metrics for performance evaluation, and any criteria, triggers, or actions for warnings, lead reduction, "disengagement," or removal.

3. All Documents sufficient to show the creation, modification, or use of any ZHL pre-approval target, including internal approvals, Communications, instructions to Zillow-Affiliated Agents, and any in-app/CRM prompts or requirements to "Transfer" leads to ZHL

4. All training, coaching, scripting, or talking points provided to Zillow-Affiliated Agents or Zillow personnel relating to: (a) how to handle consumer inquiries about listing versus buyer's agents; (b) how to present ZHL or financing options; (c) when and how to execute transfers to ZHL; (d) how to address consumer inquiries regarding closing costs and commission costs; and (e) how to address consumer requests for alternatives such as DPA, USDA, VA, or non-conforming loans.

5. All Documents reflecting Communications between Zillow and Zillow-Affiliated Agents regarding requirements or expectations to transfer leads to ZHL or to meet ZHL pre-approval targets, including any reference to consequences for noncompliance.

6. All Documents concerning the pairing of Flex teams with ZHL loan officers, including pairing criteria, performance goals, communication protocols, and any complaint or feedback regarding loan officer experience, closing efficacy, or disclosure accuracy.

7. All Documents concerning any policy, practice, or instruction to advise Zillow-Affiliated Agents to discourage consumers from contacting listing agents directly or to delay disclosing that a Zillow-Affiliated Agent is acting as a buyer's agent, including training, scripts, and compliance reviews.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 8


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

8. All Documents identifying escalation paths, review committees, or other decision-makers involved in approving, modifying, or enforcing Flex or Premier Agent performance standards, ZHL Pre-approval targets, or related disciplinary actions.

9. All Documents concerning any pilot programs, tests, or phased rollouts of Flex or Premier Agent or ZHL Pre-approval targets, including test design, results, and decisions to expand or modify such programs.

10. All Documents concerning the need to train Zillow-Affiliated Agents on how to promote ZHL.

11. All Documents concerning the need to conduct in-person compliance monitoring and trainings, including documents that discuss the importance of having discussions in person rather than via written communication.

12. All Documents reflecting all form and executed agreements between Zillow and any Real Estate Defendants relating to participation in Premier Agent, Flex, Enhanced Markets, or receipt of leads, including amendments, addenda, side letters, and referenced policies.

13. To the extent not encompassed by Request No. 12, Documents sufficient to show all other form agreements used by Zillow to govern Zillow-Affiliated Agent participation in Premier Agent, Flex, Enhanced Market, or receipt of leads.

**1. Monitoring and Enforcement**

14. All Documents concerning monitoring of Zillow-Affiliated Agent Communications and performance, including policies and procedures for call recording, call review, script adherence, CSAT, conversion, transfers to ZHL, attach/Adoption, in-person visits, and any use of CRM tools (including Follow Up Boss) to capture phone calls, texts, or chat.

15. All agreements, statements of work, integration specifications, configuration guides, and data dictionaries relating to any CRM or telephony system used to manage leads, lead flow, transfers, or agent Communications, including Follow Up Boss, and any settings that promote or restrict presentation of non-ZHL financing options.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 9

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

16. All Documents concerning warnings, lead reductions, "disengagement," or removal of any agent or team from Flex or Premier Agent for failing to meet ZHL pre-approval targets, transfers to ZHL, or other ZHL-related metrics, including reinstatement Communications and conditions.

17. All Documents concerning the Zillow Listing Access Standards (LAS), including policy drafts, legal reviews, enforcement protocols, warnings, "blocks," and any analyses of LAS impacts on listings coverage, traffic, lead volume, Flex/Premier revenue, or ZHL originations or attach rates.

18. All Documents and Communications with MLSs, brokerages, or industry groups concerning LAS, listing display rules, Flex/Premier lead routing, or complaints that Zillow's programs caused steering or elevated consumer costs.

**2.    Lead Flow Architecture**

19. All Documents reflecting the policies, rules, algorithms, or business logic governing leads and lead flow, including routing, prioritization, "enhanced placement," quality scoring, and any linkages between lead allocation and ZHL pre-approval targets, transfers, attachment, or adoption.

20. All Documents sufficient to show, by month and market: (a) total leads generated; (b) total leads Routed to Zillow-Affiliated Agents; (c) total "met-with" leads; (d) total transfers to ZHL; (e) ZHL Pre-Approvals; (f) ZHL Applications; (g) ZHL Fundings; (h) attachment/adoption rate definitions and values; and (i) lead allocation rules in effect.

21. All Documents and Communications with executives, product managers, engineering, operations, sales, and legal relating to the relationship between ZHL-related metrics (transfers, Pre-Approvals, attachment/adoption) and lead flow, priority, quality, "enhanced placement," or agent visibility.

22. All Documents concerning the use, calculation, or display of Zestimates for for-sale listings and any analyses of how Zestimates or listing exposure interact with lead flow, agent placement, or ZHL attachment/adoption.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 10

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

23. All source materials, requirements Documents, and user stories specifying that agent lead flow, "enhanced placement," or priority may be conditioned on the number or rate of ZHL transfers, pre-approvals, or attachment/adoption.

**B.   Zillow's Financial Incentives**

24. All Documents sufficient to show the existence, amounts, calculation methodologies, billing, and collection of any Success Fee, Referral Fee, Commission Share, or Hidden Zillow Fees (including up to 40% of agent commissions) paid or owed to Zillow in connection with leads or closed transactions, and any disclosures of such fees to consumers or third parties.

25. All Documents sufficient to show the business rationale and financial modeling that ties lead flow and agent participation in Flex/Premier to ZHL revenues, including revenue attribution models, "clear path to $1B incremental organic revenue," segment reporting, and monthly or quarterly dashboards.

26. All Documents concerning any plan, strategy, or initiative to increase ZHL attach rates, "overhaul mortgage funnels toward Zillow Home Loans," or otherwise integrate mortgage into the "housing super app," including targeted KPIs, budgets, forecasts, and performance tracking.

27. All internal and external investor Communications (including 10-K, 10-Q, shareholder letters, investor decks, and earnings scripts) that reference mortgage growth, ZHL attachment/adoption, Enhanced Markets, or integration of mortgage within the consumer funnels, together with backup materials relied on to prepare the public disclosures.

28. All Documents reflecting any incentive, bonus, or compensation program for Zillow employees tied to ZHL attachment/adoption, transfers, pre-approvals, originations, or to enforcement of Flex/Premier ZHL-related performance standards.

29. All Documents sufficient to show monthly ZHL originations by channel, including volume and revenue attributable to leads generated through Contact Agent/Request a Tour flows, Flex, and Premier Agent, and any internal attribution or "crediting" methodologies.



**C.     Plaintiff Records**

30.    All Documents sufficient to show each Named Plaintiff's account activity on Your platforms, including without limitation dates of use, properties viewed, Contact Agent or Request a Tour interactions, agent assignments, and any communications with You.

31.    All Documents sufficient to show how leads associated with each Named Plaintiff were created, routed, prioritized, monitored, or assigned to Zillow-Affiliated Agents, including whether any such routing or prioritization was influenced by ZHL-related metrics, performance standards, or availability.

32.    All Documents and Communications between You and each Named Plaintiff, including messages, emails, referrals, pre-approvals, applications, disclosures, and loan outcomes.

**D.     Consumer UX, Defaults, and Research**

33.    All Documents concerning the design, development, testing, implementation, and analytics of the Contact Agent and Request a Tour user flows, including the placement, prominence, and labeling of any listing-agent information, and any analysis of consumer expectations or confusion.

34.    All Documents concerning the Pre-checked Checkbox for financing or ZHL interest, including UX specifications, decision memos, risk assessments, legal or compliance reviews, A/B test plans and results, opt-in/opt-out rates, and any analysis of the impact on ZHL attach rates.

35.    All Documents concerning the Touring Agreement, including form agreements, disclosures, representations that services are "free," testing or consumer research, and legal or compliance reviews.

36.    All Documents concerning the selection, display, labeling, and qualification of "Top Agent on Zillow," "blue badge," or similar consumer-facing designations, including criteria, testing, and any analysis of consumer interpretations.

37.    All Documents concerning any study, survey, or research regarding consumer understanding of Contact Agent/Request a Tour, listing-agent versus buyer's-agent roles, the Touring Agreement, "free" services, ZHL interest defaults, and financing options, including any adjustments made in response.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 12


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

38. All Documents concerning any linkage or correlation analysis between changes to consumer UX (including Contact Agent/Request a Tour design and the Pre-checked Checkbox) and changes in transfers, attachment/adoption, lead flow, agent performance, or ZHL originations.

39. All Documents concerning any policy or configuration that restricts or deprioritizes presentation, referral, or "one-click" transfer to non-ZHL lenders within any Zillow, Flex, Premier, CRM, or agent-facing tools.

40. All form agreements, terms of use, disclosures, acknowledgments, or consents presented to consumers in connection with contacting Zillow-Affiliated Agents, requesting tours, expressing interest in financing, or using Zillow Home Loans, including historical versions and change logs.

**E.     Disclosures, Investigations, and Litigation**

41. All Documents concerning borrower disclosures for ZHL loans, including loan estimates, closing disclosures, fee disclosures, closing schedules, and any complaints or internal findings of inaccurate, incomplete, or misleading cost disclosures.

42. All Documents concerning borrower and agent complaints, escalations, or inquiries relating to steering to ZHL, confusion regarding listing versus buyer's agents, the Touring Agreement, undisclosed fees, "free" services, or the Pre-checked Checkbox, including complaint logs, Zendesk or other ticketing system exports, root-cause analyses, and remediation.

43. All Documents concerning legal, compliance, or risk assessments, audits, or reviews relating to RESPA Section 8(a) or (b), Regulation X, the Washington Consumer Protection Act, affiliated business arrangements, digital mortgage comparison-shopping platforms, Steering, transfers to ZHL, ZHL pre-approval targets, Success Fees/Hidden Zillow Fees, or related disclosures.

44. All Documents concerning Communications with any federal or state regulator, including the CFPB, state attorneys general, or state financial services regulators, relating to Zillow's lead flow, Flex or Premier Agent programs, ZHL, transfers, or alleged steering, kickbacks, or unlawful fee splits.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 13

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

45. All Documents and Communications concerning any complaint, notice, or inquiry from agents or brokerages asserting that Flex or Premier program requirements (including ZHL quotas) caused or required breaches of fiduciary duty, limited consumer choice, or increased consumer costs.

46. All Documents and Communications concerning any complaint, notice, or inquiry from borrowers asserting that they were misled or steered into using ZHL, that ZHL's loan terms were inferior to available alternatives, or that fees were undisclosed or inaccurately disclosed.

47. All Documents concerning any change management decisions post-October 2018 addressing RESPA risk in connection with Flex/Premier performance standards, ZHL quotas, the Pre-checked Checkbox, or CRM monitoring of agent Communications.

48. All Documents reflecting agent-facing marketing or enablement materials describing ZHL as a "trusted lending partner," faster closings, or similar claims, including substantiation, performance comparisons, and compliance reviews.

49. All Documents reflecting Zillow Defendants' insurance agreements under which any insurer may be liable to satisfy all or part of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy such a judgment, including primary, excess, and umbrella policies.

50. All Documents that Zillow has produced to any government regulator, law enforcement agency, or in any litigation, arbitration, or administrative proceeding, that relate to any of the subject matters of this action, including lead flow, Premier Agent or Flex programs, Zillow Home Loans, steering, referral fees or Success Fees, ZHL attach rates, consumer-facing defaults or disclosures, or compliance with RESPA, Regulation X, or state consumer protection laws.

**F.     Zillow Products**

51. All Documents reflecting ZHL product offerings, eligibility criteria, pricing and rate sheets, fees, and program availability over time, including policies on DPA, USDA, VA, manufactured housing/chattel, and non-conforming loans, and any analyses comparing ZHL offerings and pricing to market competitors.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 14

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

52. All Documents reflecting market, pricing, or competitive analyses comparing ZHL loan pricing and product breadth to competitors, including win/loss analyses, "price exception" logs, and internal assessments of ZHL competitiveness.

**G.     Record-Keeping Systems**

53. All Documents sufficient to identify and describe the data systems, warehouses, lakes, schemas, and tables storing data relevant to leads, lead flow, agent performance, transfers, ZHL pre-approvals, Applications, attachment/adoption, transaction targets, disengagements, and placement/priority, including data dictionaries, ERDs, and field-level definitions.

54. All Documents concerning strategies, policies, or practices to minimize or avoid written Communications about ZHL pre-approval targets, transfers, steering, or Flex/Premier compliance, including field visits, in-person trainings, and guidance to avoid call recording or messaging channels.

55. All retention schedules, legal holds, and data deletion policies applicable to leads, agent Communications, CRM records, call recordings, and ZHL loan files, and Documents sufficient to show what responsive categories were deleted, when, and under what policy.

56. All Documents reflecting internal key term glossaries, taxonomies, or data catalogs defining terms used in these Requests, including without limitation "Attach," "Adoption," "transfer," "met-with," "success fee," "enhanced placement," "lead quality," and "disengagement."

57. All Documents sufficient to identify individuals most knowledgeable about: (a) Flex/Premier program standards and enforcement; (b) lead routing and prioritization algorithms; (c) ZHL attachment/adoption and pre-approval targets; (d) Contact Agent/Request a Tour and Pre-checked Checkbox UX; (e) CRM integrations and call/communication capture; and (f) legal/compliance oversight of RESPA/Reg X and WCPA issues.

58. All Documents reflecting Zillow Defendants' organizational charts, reporting structures, and distribution of roles and responsibilities for Zillow personnel involved in Flex, Premier Agent, lead flow, ZHL, mortgage integration, consumer UX, compliance, legal, sales, product, and engineering, including historical versions.

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION TO ZILLOW DEFENDANTS
(Case No. 2:25-cv-01818-JLR) – 15

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

DATED: February 25, 2026

By: */s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
By: */s/ Jerrod C. Patterson*
Jerrod C. Patterson (WSBA No. 43325)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
　　　　jerrodp@hbsslaw.com

By: */s/ Adam J. Levitt*
Adam J. Levitt, *admitted pro hac vice*
Amy E. Keller, *admitted pro hac vice*
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dicellolevitt.com
　　　　akeller@dicellolevitt.com

Corban Rhodes, *admitted pro hac vice*
Emma Bruder, *admitted pro hac vice*
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
Facsimile: (646) 494-9648
Email: crhodes@dicellolevitt.com
　　　　ebruder@dicellolevitt.com

*Plaintiffs' Interim Class Counsel*

Jason T. Dennett, WSBA #30686
Rebecca L. Solomon, WSBA #51520
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Tel.: (206) 682-5600
Fax: (206) 682-2992
Email: jdennett@tousley.com
　　　　rsolomon@tousley.com

PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION (Case No. 2:25-cv-01818-JLR)
1

**HAGENS BERMAN**

Douglas J. McNamara, *admitted pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Email: dmcnamara@cohenmilstein.com

Theodore J. Leopold*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Email: tleopold@cohenmilstein.com

*Pro hac vice application forthcoming

*Attorneys for Plaintiffs and the Proposed Classes*