The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALUCARD TAYLOR, ARABA
ARMSTRONG, HAN ZHENG, DAVID
LIAO, KAREN KING, LISA KNUDSON,
EYDALIA THURSTON, KYLE SILVA,
DALE KOGER, JOHN CADY, and
REBECCA BRUCALIERE, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

ZILLOW, INC., ZILLOW GROUP, INC.,
ZILLOW HOMES, INC., and ZILLOW
LISTING SERVICES, INC., Washington
Corporations, ZILLOW HOME LOANS,
LLC, a California Corporation, GK
PROPERTIES, a Nevada Corporation,
REAL BROKER, LLC, a Florida
Corporation, and FRANO TEAM, a Florida
Organization,

Defendants.

CASE NO. 2:25-cv-01818-JLR

DEFENDANTS REAL BROKER, LLC
AND FRANO TEAM'S MOTION TO
COMPEL ARBITRATION

NOTE ON MOTION CALENDAR:
April 13, 2026

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 1
CASE NO. 2:25-cv-01818-JLR

**Table of Contents**

I.    Introduction & Relief Requested ............................................................................. 3

II.   Factual and Procedural Background ........................................................................ 4

    A.    Mr. Cady Engaged Real Broker to Help Him Purchase a Home and
        Agreed to Arbitrate Any Disputes Related to Such Services. ................................ 4

    B.    Plaintiffs Added the Cady Transaction and the Cady Defendants to their
        Putative RICO Class Action, yet Omitted Mr. Cady's Contractual
        Relationship with Real Broker. ............................................................................. 5

    C.    The Real Estate Defendants Moved to Dismiss Based on the CACC's
        Overlapping Procedural and Substantive Failings. ................................................ 8

III.  Argument .................................................................................................................. 8

    A.    Legal Framework. ................................................................................................... 9

    B.    The Claims Against the Cady Defendants Must Be Arbitrated. ........................... 10

        1.    The Agreement Contains a Valid Arbitration Clause. .............................. 10

        2.    The Arbitration Agreement Requires Arbitration of All Claims
            Against the Cady Defendants. .................................................................... 12

        3.    The Cady Defendants Have Not Waived Their Right to Arbitrate. ........... 16

IV.   Conclusion .............................................................................................................. 17

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 2
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I.   INTRODUCTION & RELIEF REQUESTED

Defendants Real Broker and Frano Team move to compel arbitration of all claims asserted against them in the Consolidated Amended Class Action Complaint ("CACC").

Though the CACC spans 100 pages, the claims asserted against Real Broker and Frano Team arise from a single, discrete residential real estate transaction: Plaintiff John Cady's purchase of a home in Melbourne, Florida, using a real estate agent associated with Real Broker and Frano Team, which Plaintiffs allege to be "a Florida organization that is part of Real Broker." Specifically, through claims of (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) breach of fiduciary duty, and (3) aiding and abetting breach of fiduciary duty, Plaintiffs allege that, in connection with Mr. Cady's home purchase, Real Broker and Frano Team (hereafter "the Cady Defendants") committed unspecified acts of wire and mail fraud and breached or abetted breaches of unidentified duties owed to Mr. Cady. On February 20, 2026, the Cady Defendants and GK Properties (together, the "Real Estate Defendants") moved to dismiss on the ground Plaintiffs predicate their claims on a fraudulent scheme for which they have not pleaded any of the requisite particularities, a defect which warrants dismissal on two independent grounds: (1) failure to state a claim and (2) lack of personal jurisdiction, as Plaintiffs' sole basis for invoking personal jurisdiction over the non-resident Real Estate Defendants for claims arising from an out-of-state real estate transaction is the RICO statute. This motion is predicated on another independently fatal defect with Plaintiffs' invocation of this Court's jurisdiction: the August 2025 agreement by which Mr. Cady agreed to arbitrate all disputes relating to Real Broker's provision of brokerage services to him (and by extension, disputes against Frano Team arising from the same).

Mr. Cady cannot bypass his contractual obligation to arbitrate his claims. Under any plausibly applicable arbitration statute—whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., or the Revised Florida Arbitration Code, Fla. Stat. Ann. § 682.01 et seq.—the result is the same. Courts must enforce valid arbitration agreements according to their terms. Because all of Mr. Cady's claims against Real Broker and Frano Team concern the September 2025 transaction

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 3
CASE NO. 2:25-cv-01818-JLR

governed by the brokerage Agreement he executed with Real Broker, they must be stayed and compelled to arbitration.

Accordingly, this Court should stay all claims against Real Broker and Frano Team pending arbitration.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.    Mr. Cady Engaged Real Broker to Help Him Purchase a Home and Agreed to Arbitrate Any Disputes Related to Such Services.**

Mr. Cady, a Florida resident, alleges that he bought a home in Melbourne, Florida using a Frano Team agent, "E.L.," on September 19, 2025. *Id.* ¶¶ 28, 40. The CACC also alleges that Frano Team is a Florida organization[1] that participates in the Zillow Flex program and is "part of" Real Broker, LLC. Dkt. #45 ¶ 40 ("CACC").

The CACC conspicuously omits that on August 12, 2025, Mr. Cady (on behalf of himself) and E.L. (on behalf of Real Broker, a Texas LLC[2]) executed an Exclusive Buyer Brokerage Agreement. Declaration of Robert E. Axelson dated March 13, 2026 ("Axelson Decl."), Ex. A (the "Agreement"). The Agreement gave Real Broker "the exclusive right to work with and assist [Mr. Cady] in locating and negotiating the acquisition of suitable real property" and imposed obligations on both Real Broker and Mr. Cady. For example, Real Broker agreed to use its "professional knowledge and skills," "assist [Mr. Cady] with locating and viewing suitable properties," and help Mr. Cady in "negotiating and closing any resulting transaction. . . ." Agreement ¶ 4(a). Mr. Cady, for his part, agreed to work exclusively with Real Broker, provide Real Broker with "accurate

---

[1] Frano Team is not a legal entity. Dkt. #43 (corporate disclosure statement) ("'Frano Team' is not a corporate entity, nor is it an unincorporated association with corporate members.").

[2] Real Broker is a Texas LLC.
https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=REALBROKER%20M150000053151&aggregateId=forl-m15000005315-5830d431-3e31-4bd0-9d26-93c09098e15f&searchTerm=real%20broker&listNameOrder=REALBROKER%20M15000005315 1.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 4
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

information," and pay a commission of 3% "of the total purchase price or other consideration for the acquired property." Agreement ¶ 5.

Most importantly here, the Agreement laid out terms for how the parties would handle disputes, selecting Florida law to govern the Agreement and providing an optional arbitration provision that Mr. Cady specifically assented to, as shown below: Agreement ¶ 10:

> 10. **DISPUTE RESOLUTION:** This Agreement will be construed under Florida law. All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows. **Arbitration:** By initialing in the space provided, **Consumer** (_JC_) (____),and **Broker** or **Authorized Associate** (_EC_) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split the arbitrator's fees and administrative fees of arbitration.|

Agreement ¶ 10. By assenting to the arbitration term, Real Broker and Mr. Cady agreed to resolve "*[a]ll* controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement" through mediation, and if necessary, arbitration before the American Arbitration Association ("AAA") in Brevard County, Florida.[3]

**B.    Plaintiffs Added the Cady Transaction and the Cady Defendants to their Putative RICO Class Action, yet Omitted Mr. Cady's Contractual Relationship with Real Broker.**

Plaintiffs initiated this lawsuit on September 19, 2025, with a putative class action complaint naming one plaintiff and five defendants, each a Zillow entity—Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Zillow, Inc. Dkt. #1. By way of an Amended Class Action Complaint filed November 19, 2025, Plaintiffs added Mr. Cady and other named plaintiffs and Frano Team and other entities as Defendants. Dkt. #15. Following consolidation with a related, later-filed

---

[3] The agreed venue is the location of the "Property," Agreement ¶ 10, identified in the Agreement as Brevard County, Florida, *Id.* ¶ 3.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 5
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

action, Plaintiffs filed the operative CACC on December 29, 2025, adding Real Broker as a defendant for the first time. Dkt. #37.

The CACC alleges seven causes of action on behalf of 11 named plaintiffs and against five Zillow Defendants and three Real Estate Defendants, [4] including the Cady Defendants. *See id*.; *see also* Dkt. No. 63. Specifically, Plaintiffs assert claims for (1) civil violations of the Racketeer Influenced and Corrupt Organizations Act "RICO" (against all Defendants); (2) violation of RESPA's prohibition against kickbacks for referrals to a settlement service (against the Zillow Defendants); (3) violation of RESPA's prohibition against fee-splitting (against the Zillow Defendants); (4) violations of the WCPA (against the Zillow Defendants); (5) breach of fiduciary duty (against the Real Estate Defendants); (6) aiding and abetting a breach of fiduciary duty (against all Defendants); and (7) unjust enrichment (against the Zillow Defendants). CACC ¶¶ 213–354. Each of these claims is grounded in two overarching theories of liability, namely, that (1) Zillow's website purportedly deceives prospective buyers into contacting buyer's agents who advertise with Zillow, through the "Zillow Flex" program, and who share an allegedly undisclosed portion of commissions resulting from such contacts with Zillow; and (2) Zillow incentivizes agents to encourage buyers to obtain free, no obligation loan pre-approval letters from ZHL, which Plaintiffs allege constitutes illegal steering.[5] CACC ¶¶ 59-193.

The only allegations in the 100-page CACC with any nexus to the Cady Defendants are four paragraphs related to Mr. Cady's September 2025 home purchase. CACC ¶¶ 28, 39, 40, 247.[6] There is *no* other alleged association between any other Plaintiff or transaction and either of the Cady

---

[4] A fourth Real Estate Defendant, Works Industries LLC, was voluntarily dismissed. [Dkt. #63.

[5] Notably, Cady does not allege he was encouraged to use ZHL for pre-approval or any other purpose; he used an unnamed lender. CACC ¶ 28.

[6] As further discussed in the Real Estate Defendants' Motion to Dismiss, these allegations fail to raise even an inference of the fraudulent conspiracy underlying Plaintiffs' claims, let alone the specifics required to satisfy Rule 9.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 6
CASE NO. 2:25-cv-01818-JLR

Defendants. *See generally id.* Thus, Mr. Cady's purchase of a home with the assistance of "E.L.," an agent affiliated with the Cady Defendants, is the sole basis for the claims asserted against them.

The RICO claim against the Cady Defendants is supported by one sub-paragraph of allegations stating that Mr. Cady viewed a listing on Zillow.com, used the "Contact Agent" feature on Zillow's website, and was connected to E.L.:

> **John Cady.** Prior to purchasing a home on September 19, 2025, Plaintiff Cady accessed Zillow.com, viewed a residential listing, and used Zillow's 'Contact Agent' feature with the intent of contacting the seller's agent directly to avoid paying a buyer agent commission. Zillow routed his inquiry to E.L., identified on Zillow's website as a "Top Agent on Zillow."

CACC ¶ 247(j) (comprising the entirety of Plaintiffs' RICO allegations with any plausible nexus to the Cady Defendants). The CACC offers no allegations of "predicate act" mail or wire fraud by the Cady Defendants. Instead, Plaintiffs point to routine business communications such as "[c]ommunicating with potential buyers through email, text, phone calls, and other means," "[s]ending and receiving documents related to the financing of the homes advertised on Zillow.com," "[s]ending and receiving funds generated by commissions paid by Plaintiffs; and [s]ending and receiving emails, communications and correspondence related to all of the foregoing." CACC ¶ 246.

The fiduciary duty claims are premised on the notion that real estate brokers generally owe fiduciary duties to their clients and that *all* Real Estate Defendants breached that duty by, as examples, failing "to disclose material conflicts of interest arising from Zillow's lead-distribution programs" and "[m]isled[ing] buyers into believing they were contacting or working with listing agents." CACC ¶ 332. Though the paragraphs supporting the fiduciary duty claims do not make any allegations specific to the Cady Defendants (or for that matter, any transaction), the *only* agent-client relationship alleged in connection with the Cady Defendants is Mr. Cady's retention of E.L.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 7
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**C.    The Real Estate Defendants Moved to Dismiss Based on the CACC's Overlapping Procedural and Substantive Failings.**

On February 20, 2026, the Real Estate Defendants collectively filed a motion to dismiss for failure to state a claim and lack of personal jurisdiction. The motion asserts several bases for dismissal, including, under Rule 12(b)(6), that all of Plaintiffs' claims sound in fraud, yet Plaintiffs fail to plead any particulars to support their conclusory theories, relying instead on improper group pleading; and, under Rule 12(b)(2), that Plaintiffs cannot rely on RICO's nationwide service provision—the sole basis for personal jurisdiction asserted here—as they have no viable RICO claim. *See, e.g.*, Dkt. #67 at 21-23. Although the CACC did not identify, let alone attach, the parties' August 12, 2025, Agreement, the Real Estate Defendants expressly reserved "all rights to enforce any arbitration agreements relating to the at-issue transactions." *Id.* at 5 n.7.

The Real Estate Defendants' motion to dismiss currently remains pending and is noted for April 17, 2026. As of the time of filing this motion to compel arbitration, Plaintiffs have not yet filed their response to the currently pending motion to dismiss.

## III.   ARGUMENT

Mr. Cady's RICO and fiduciary duty claims against the Cady Defendants belong in arbitration. Accordingly, this Motion seeks an order compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, or alternatively, the Revised Florida Arbitration Code, Fla. Stat. Ann. § 682.03(1).[7] Both statutes provide the procedural mechanism for enforcing arbitration agreements, dictating that arbitration agreements are binding to the same extent as other contracts and requiring courts to compel parties to arbitrate disputes as required by the terms of the parties' agreement. 9

---

[7] The FAA generally governs arbitration agreements involving interstate commerce, 9 U.S.C. §§ 1-2, but Florida's statute has no such limitation. *See O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.*, 944 So.2d 181 (Fla. 2006) ("Because both parties are Florida corporations involved in Florida construction projects, interstate commerce is not involved and, thus, the provisions of the [Florida Arbitration Code] control."). This Court need not decide whether this case—which involves a Texas LLC entering a contract governed by Florida law with a Florida resident for the provision of residential brokerage services in Florida—sufficiently effects interstate commerce such that it triggers the FAA. The result is the same regardless.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 8
CASE NO. 2:25-cv-01818-JLR

U.S.C. §§ 2, 4; Fla. Stat. Ann. §§ 682.02, 682.03(1). When considering a motion to compel arbitration, this Court may consider pleadings as well as evidence submitted by the parties. *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1274 (S.D. Cal. 2024) (compelling arbitration in motion by non-signatory based on allegations of agency in the complaint).

**A.    Legal Framework.**

To evaluate a motion to compel arbitration, courts applying Florida law perform a three-step inquiry, asking whether: (1) a valid written agreement to arbitrate exists; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived. *Florida Power Corp. v. City of Casselberry*, 793 So.2d at 1178-1179; *accord Qubty v. Nagda*, 817 So. 2d 952, 956 (Fla. Dist. Ct. App. 2002); *Mutschler v. Used Auto Outlet Inc.*, 2025 WL 4087704, at *2 n.2 (M.D. Fla. Jan. 7, 2025), *report and recommendation adopted*, 2026 WL 228010 (M.D. Fla. Jan. 28, 2026) ("In any event, the same three-step process explained below applies when considering a motion to compel arbitration under either Florida's Arbitration Code, Fla. Stat. § 682.01, *et seq.*, or the FAA.").[8]

State law governs any challenges to the formation or validity of the Agreement. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 n.26 (1983) (state law governs validity and enforceability even under the FAA). Here, applying Washington choice-of-law principles, Florida law applies given that the Agreement selects Florida law, concerns a Florida resident's acquisition of Florida real property, and the Agreement itself is governed by Florida law. *See Osterhaus Pharma., Inc. v. UnitedHealth Grp. Inc.*, No. 2:23-cv-01944-RSL, 2025 WL 3280347

---

[8] In many courts, the "waiver" inquiry is not mentioned unless specifically implicated on the facts of the case. *E.g.*, *Weise v. Cach, LLC*, 358 P.3d 1213, 1221 (Wash. App. 2015) (applying the FAA and stating the "two-part inquiry" before turning to the waiver challenge). In those cases, the test is also often described as having only two threshold issues: (1) whether there is a valid agreement to arbitrate; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, because the Florida courts follow this approach and it is consistent with the federal inquiry in this Circuit, the Cady Defendants apply the three-prong test.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 9
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

(W.D. Wash. Nov. 25, 2025) (applying Washington choice-of-law doctrine to resolve challenges to arbitration agreement and applying the law selected by the contract after applying Restatement Section 187(2), which applies to issues related to "capacity, formation, and validity"). Additionally, the Florida arbitration statute applies to the extent it is not inconsistent with the FAA. *Qubty*, 817 So.2d at 955-956 (considering a motion to compel arbitration with respect to an agreement governed by the FAA and explaining that "federal law supersedes the Florida Arbitration Code, and the Florida Arbitration Code is applied in such cases only to the extent it is not inconsistent with federal law"); *accord Della Penna v. Zabawa*, 931 So.2d 155, 160 n.3 (Fla. 5th DCA 2006). Relevant there, the Florida statute provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." *Patterson v. Melman*, 398 So.3d 470, 477-78 (Fla. Dist. Ct. App. 2024), *review denied*, 2025 WL 1065758 (Fla. Apr. 9, 2025) (ruling the trial court should not have decided whether "the actual occurrence of mediation is a condition precedent to arbitration"). This pro-arbitration delegation is consistent with the FAA, and thus, any questions about whether conditions precedent have been satisfied should be delegated to the arbitrator. *See Chamber of Comm. of the United States of Am. v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023) ("[T]he FAA preempts a state rule that discriminates against arbitration by discouraging or prohibiting the formation of an arbitration agreement.").

**B.     The Claims Against the Cady Defendants Must Be Arbitrated.**

All three steps of the inquiry confirm Mr. Cady's dispute with the Cady Defendants should be moved to arbitration.[9]

**1.     The Agreement Contains a Valid Arbitration Clause.**

First, there is no reason to doubt that the Agreement's arbitration clause—setting out specific terms and initialed by both parties—is anything other than a valid agreement to arbitrate. *See Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So.3d 938,

---

[9] As noted in n.1, *supra*, "Frano Team" is not a legal entity but merely a team name, making it unclear how claims could be asserted against it at all.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 10
CASE NO. 2:25-cv-01818-JLR

941 (Fla. Dist. Ct. App. 2016) ("The basic elements of an enforceable contract are offer, acceptance, consideration, and sufficient specification of essential terms.").

This arbitration agreement necessarily extends to the claims against Real Broker, a party to the Agreement, and Frano Team, which Plaintiffs allege is "part of" Real Broker and associated with the Cady transaction only through its affiliation with E.L. and Real Broker. CACC ¶¶ 39, 40, 244-46, 247(j), 248-60, 330-45.

Where, as here, claims against a non-signatory are "predicated upon the same allegations and necessarily involve [overlapping] factual determinations" as arbitrable claims, they are subject to arbitration. *Shetty v. Palm Beach Radiation Oncology Associates-Sunderam K. Shetty, M.D., P.A.*, 915 So.2d 1233, 1235 (Fla. 4th DCA 2005); *accord Morales v. Perez*, 952 So.2d 605, 609 (Fla. Dist. Ct. App. 2007) (compelling arbitration where the claims were based on the "same operative facts" and were "inextricably intertwined" (quotations omitted)). Here, the CACC's allegations concerning Frano Team are based on the same Cady transaction that is the basis of the claims against Real Broker.

Arbitration of Plaintiffs' claims against Frano Team is also warranted under principles of agency because the CACC alleges that Frano Team acted as "part of" Real Broker. CACC ¶ 40; *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. . . . A statement in a complaint, answer or pretrial order is a judicial admission[.]").[10]

---

[10] Under Florida law, sales associates perform brokerage services only "under the direction, control, or management" of a licensed broker and may not operate independently. Fla. Stat. §§ 475.01(1)(j), 475.01(2), 475.42(1)(b). Because the claims against Frano Team arise from its alleged brokerage relationship with Real Broker, Frano Team may invoke Real Broker's arbitration agreement as its agent. *See also Qubty*, 817 So.2d 952, 957 ("A number of courts have held that agents must be afforded the benefits of arbitration agreements made by their principal, at least to the extent that the principal's liability and the agent's liability are based on the same set of facts."); *see also Herrera*, 104 F.4th at 707 (applying state law to resolve whether a non-signatory could

DEFENDANTS REAL BROKER, LLC AND FRANO TEAM'S MOTION TO COMPEL ARBITRATION - 11 CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**2.        The Arbitration Agreement Requires Arbitration of All Claims Against the Cady Defendants.**

Second, with respect to whether an arbitrable issue exists, by agreeing to AAA rules, the parties delegated issues of whether any specific claim is arbitrable to the arbitrator. Even if they had not, the claims here are all sufficiently tied to the Agreement that they are arbitrable.

By its terms, the Agreement reserves for the arbitrator the question of whether any particular claim is arbitrable. But even if it did not, the claims against the Cady Defendants arise out of or relate to the Agreement and are therefore subject to arbitration.

**a.        By Incorporating AAA Rules, the Parties Delegated Issues of Arbitrability to the Arbitrator.**

When the contracting parties have "'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator," the court's inquiry on this point becomes limited to confirming the existence of an arbitration agreement. *Fli-Lo Falcon LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010), and *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). In fact, where an arbitration agreement delegates threshold arbitrability questions to the arbitrator, a court "*may not decide the arbitrability issue.*" *Id.* at 1199 (emphasis added) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)); *see also Briggs v. Serv. Corp Int'l*, 2023 WL 2075958, at *7 (W.D. Wash. Feb. 17, 2023) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Because AAA Rules delegate issues of arbitrability to the arbitrator,[11] agreements to conduct arbitration according to those rules delegate issues of arbitrability to the arbitrator. *Fli-Lo Falcon LLC*, 97 F.4th at 1193-94 (holding issues of

invoke arbitration); *Ensambles Hyson, S.A. de C.V.*, 718 F. Supp. 3d at 1274 (compelling arbitration based on allegations of agency).

[11] *See also* AAA Consumer Arbitration Rules, Rule 7 (effective May 1, 2025), available at https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf; AAA Commercial Arbitration Rules, Rule 7 (effective Sept. 1, 2022), available at https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 12
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

arbitrability were delegated to arbitrator in clause providing that "[t]he arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules"); *Airbnb, Inc. v. Doe*, 336 So.3d 698, 702-03 (Fla. 2022) (applying FAA and federal precedent) ("[R]eference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability.").

Here, the parties delegated arbitrability by agreeing to arbitration "in accordance with the rules of the American Arbitration Association," subject only to the possibility that the parties might later agree to a different arbitrator. Agreement ¶ 10; *see Glasswall, LLC v. Monadnock Const., Inc.*, 187 So. 3d 248, 250-51 (Fla. Dist. Ct. App. 2016) (holding the parties delegated arbitrability to an arbitrator through clause providing that "any claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules"). Because this passage delegates issues of arbitrability to the arbitrator, the Court should end its analysis on this element there.

### b. Mr. Cady's Claims Against Real Broker and Frano Team Necessarily Arise from the Brokerage Agreement.

Even if the court were to consider issues of arbitrability, the result would be the same. As a starting point, both Florida and federal courts construe any ambiguities about the arbitrability of a dispute or claim in favor of arbitrability. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."); *accord Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Genesis Custom Jetliners, LLC v. ASG Aerospace, LLC*, No. 24-25060-CIV, 2025 WL 2145716, at *3 (S.D. Fla. July 2, 2025), *report and recommendation adopted,* No. 24-CV-25060-JB/EGT, 2025 WL 2142195 (S.D. Fla. July 29, 2025) ("Florida courts 'construe the scope of arbitration provisions in favor of arbitrability.'" (quoting S*teritech Group, Inc. v.*

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 13
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Mackenzie*, 970 So. 2d 895, 899 (Fla. 5th DCA 2007))). And both Florida and federal courts endorse the notion that broad arbitration clauses, such as the one here, reach non-contractual claims with a nexus to the contract. *Nazara v. FR Log Homes, Inc.*, No. CV 10-00177 HG-KSC, 2010 WL 11530961, at *3 (D. Haw. June 29, 2010), *aff'd*, 474 F. App'x 517 (9th Cir. 2012) ("relating to or arising out of" clause demonstrates that the parties intended the arbitration provision to reach all aspects of the relationship); *Aztec Med. Servs., Inc. v. Burger*, 792 So. 2d 617, 622 (Fla. Dist. Ct. App. 2001) ("Arbitration clauses have repeatedly been held to apply to statutory claims."); *Jackson v. Shakespeare Foundation, Inc.*, 108 So.3d 587, 591, 593-95 (Fla. 2013) (an "arising out of or relating to" arbitration clause captures claims where there is "'a contractual nexus' between the claim and the contract" such as where "the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract").

Here, Mr. Cady's statutory and common law claims are premised on his relationship with Real Broker and its alleged agents and thus necessarily arise out of or relate to the Agreement setting the terms of that relationship.

***Fiduciary Duty.*** Plaintiffs' fiduciary duty claims are based on the allegation that there existed "an agency relationship between the buyer and the broker." CACC ¶ 328. Under Florida law, all brokerages operate as non-fiduciary transaction brokers unless a single-agent relationship is established in writing, *i.e.*, via contract. Fla. Stat. § 475.278(1)(b); *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013). In other words, the Court cannot evaluate whether any fiduciary relationship even exists without consulting the at-issue written contract: the Agreement.[12] This is more than a sufficient nexus to support a finding that the fiduciary-duty based claims are subject to the arbitration agreement. *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458,

---

[12] An independently fatal flaw in Plaintiffs' fiduciary duty claims is that the Agreement—which they failed to incorporate or attach to the CACC—affirmatively establishes that Real Broker did *not* enter a fiduciary relationship with Mr. Cady. Rather, the Agreement was to be a non-fiduciary "transaction broker." Agreement ¶ 12 ("Broker will act as a transaction broker."); *see also* Mot. at 16-17.

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 14
CASE NO. 2:25-cv-01818-JLR

1464 (9th Cir. 1983) (finding fiduciary duty claim fell within a narrow arbitration provision that captured only claims arising from the contract itself); *Seth v. Rajagopalan*, No. 12-CIV-61040, 2013 WL 11927712, *5 (S.D. Fla. Jan. 25, 2013) ("The fiduciary relationship between KR, JA, and AIE is premised on the SSA and, thus, the breach of fiduciary duty cross-claim has a sufficient nexus with the SSA's arbitration clause.").

**RICO.** The same is true of the RICO claim. The CACC alleges that the Cady Defendants—along with the Zillow Defendants—violated RICO by conspiring to deceive and unlawfully steer homebuyers. CACC ¶¶ 245-46. To prevail, Plaintiffs must prove that each defendant committed at least two predicate acts. *RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 961 (N.D. Cal. 2022) ("[W]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.").

The predicate acts Plaintiffs attribute to the Defendants are wire fraud and mail fraud, based on (non-specific) allegations that the Defendants communicated about the respective home purchases and commission payments through the wires or mail. CACC ¶¶ 245-46. But any home-purchase documents or commissions allegedly paid through the wires or mail necessarily derive from and relate to the Agreement: Mr. Cady is the only Plaintiff alleged to have any association with the Cady Defendants, and the Agreement governs the services provided to Mr. Cady and the commission he agreed to pay in connection with the purchase of his home.

Plaintiffs' theory of RICO injury further confirms the contractual nexus. They allege that, absent *Zillow's* alleged conduct, buyers would have negotiated directly with sellers or retained agents willing to reduce their commissions, thereby lowering the purchase price of the home. *See, e.g.*, CACC ¶¶ 8, 28, 334. Evaluating that theory necessarily requires examining the actual commission structure governing Mr. Cady's transaction—the very terms set forth in the Agreement between Mr. Cady and Real Broker.

Because both the alleged predicate acts and the claimed damages depend on the Agreement, the Court cannot adjudicate Plaintiffs' RICO claims without consulting and interpreting that

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 15
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

contract. That is more than sufficient to establish the required contractual nexus and bring the claims within the scope of the arbitration provision. *Jackson*, 108 So.3d at 595 (holding a fraud claim was subject to an arbitration agreement within a real estate contract where the claim was "inextricably intertwined with both the transaction from which the contract arose and the contract itself" and required reference to the underlying contract); *Waterhouse Const. Grp., Inc. v. 5891 SW 64th St., LLC*, 949 So.2d 1095, 1100 (Fla. DCA 3d 2007) (compelling arbitration of state law RICO claim where the claim was "predicated on events directly relating to the performance of both agreements at issue"); *Aztec*, 792 So.2d at 623 ("[T]he factual allegations set forth in appellees' statutory claim are plainly governed by the terms of the parties' agreement—and hence, the 'contractual nexus' is satisfied.").

### 3.    The Cady Defendants Have Not Waived Their Right to Arbitrate.

Finally, the Cady Defendants have not waived the right to arbitration. Rather, they have acted consistently with the right to arbitrate their dispute.

Courts find waiver only if a party has acted inconsistently with the right to arbitrate. *Fisher v. AG Becker Paribas, Inc.*, 791 F.2d 691 (9th Cir. 1986), *overruled in part on other grounds by Morgan v. Sundance*, 596 U.S. 411 (2022)[13]; *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005).

Here, the Cady Defendants have acted *consistently* with the right to arbitration, even expressly preserving the right in their motion to dismiss when Plaintiffs failed to identify or include the Agreement in their pleadings. Dkt. #67 at 5 n.7. Neither of the Cady Defendants was served until

---

[13] Before 2022, some circuit courts required a nonmovant asserting waiver of the right to arbitrate through litigation conduct to demonstrate prejudice resulting from the movant's delay in invoking arbitration. *Morgan v. Sundance*, 596 U.S. 411, 413 (2022). In *Morgan*, the Supreme Court rejected that approach, holding that a court may require the non-movant to show prejudice only if the applicable law requires prejudice to establish waiver of *any* contractual right. *Id.* at 414, 418-19. This holding has no bearing here as Florida courts did not apply a prejudice requirement even before *Morgan*. *Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005) (resolving an intermediary appellate court split).

DEFENDANTS REAL BROKER, LLC AND FRANO
TEAM'S MOTION TO COMPEL ARBITRATION - 16
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

December 2025, their only motion (which remains pending) focuses on jurisdictional defects,[14] and there has been no discovery. *See, e.g.*, Dkt. #67 at 21-23. In short, neither Real Broker nor Frano Team has done anything to suggest that they believe this Court is the proper forum for Plaintiffs' disputes. As such, they have not waived their right to enforce the arbitration agreement. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 920-21 (N.D. Cal. 2024) (finding no waiver where party moved to arbitrate roughly six months after complaint was filed, after having filed a motion to dismiss based on jurisdictional and substantive grounds, where the motion to dismiss remained pending at the time the motion to compel arbitration was filed, and where there was no discovery).

## IV.   CONCLUSION

For the foregoing reasons, this Court should stay all claims against Real Broker and Frano Team pending arbitration.

DATED this 13th day of March, 2026.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC
Attorneys for Defendants Works Industries, LLC, GK Properties, Real Broker, LLC and Frano Team

I CERTIFY THAT THIS MEMORANDUM CONTAINS 5,096 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By *s/ Diana Siri Breaux*
Diana Siri Breaux, WSBA #46112
*dianab@summitlaw.com*
Eva Sharf Oliver, WSBA #57019
*evao@summitlaw.com*

---

[14] The Real Estate Defendants' arguments for dismissal for lack of personal jurisdiction necessarily overlap with merits issues as the sole basis for Plaintiffs' assertion of personal jurisdiction is the RICO statute. *See* Dkt. #67.

DEFENDANTS REAL BROKER, LLC AND FRANO TEAM'S MOTION TO COMPEL ARBITRATION - 17
CASE NO. 2:25-cv-01818-JLR