The Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| ALUCARD TAYLOR, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZILLOW, INC., *et al.*,<br><br>Defendants. | Case No. 2:25-cv-01818-JLR<br><br>**PLAINTIFFS' OPPOSITION TO ZILLOW DEFENDANTS' MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br>Friday, April 17, 2026<br><br>ORAL ARGUMENT REQUESTED |

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................3

III.  LEGAL STANDARD.............................................................................................5

IV.   ARGUMENT..........................................................................................................6

    A.    Plaintiffs Plead Zillow's Conduct With Sufficient Particularity. ...........6

    B.    Plaintiffs Plausibly Alleges RESPA Violations.......................................7

        1.    Plaintiffs have statutory standing under RESPA. .........................8

        2.    Plaintiffs state a claim under 12 U.S.C. § 2607(a) (Count II)...................................................................................................9

            a.    Loan pre-approval and origination are "settlement services" under RESPA. ...................................................10

            b.    Plaintiffs plausibly allege "referrals."............................11

            c.    Plaintiffs plausibly allege a "thing of value." ................12

        3.    Plaintiffs state a RESPA violation under 12 U.S.C. § 2607(b) (Count III). .................................................................14

            a.    Plaintiffs plausibly allege an unearned fee or split charge...............................................................................14

            b.    The Safe Harbor does not bar Plaintiffs' § 2607(b) claim.................................................................................15

    C.    Plaintiffs Plausibly Allege a WCPA Claim. ..........................................16

        1.    Zillow engaged in unfair and deceptive conduct. ......................16

        2.    Plaintiffs sufficiently pled injury. ..............................................19

    D.    Plaintiffs Sufficiently Allege RICO Claim. ...........................................20

        1.    Plaintiffs allege "racketeering.".................................................20

         2.    Plaintiffs allege an association-in-fact and RICO conspiracy. ................................................................................22



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

E.    Plaintiffs Plausibly Allege Zillow's Aiding and Abetting of Brokers' Breaches of Duties Owed to Buyers (Count VI). ...................................22

F.    Plaintiffs Plausibly Allege Unjust Enrichment (Count VII). ...............................23

G.    Plaintiffs' Claims are Timely. ........................................................................24

V.    CONCLUSION ..............................................................................................27

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - ii
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Accellion, Inc. Data Breach Litig.*,
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ................................................................................18

*In re Amazon Serv. Fee Litig.*,
    705 F. Supp. 3d 1255 (W.D. Wash. 2023) ...........................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................5

*Baugh v. Fed. Sav. Bank*,
    337 F.R.D. 100 (D. Md. 2020) ..............................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................6

*Bloom v. Martin*,
    77 F.3d 318 (9th Cir. 1996) ............................................................................................10, 11

*Bolinger v. First Multiple Listing Serv., Inc.*,
    838 F. Supp. 2d 1340 (N.D. Ga. 2012) ...............................................................1, 11, 14, 15

*Bushbeck v. Chicago Title Ins. Co.*,
    632 F. Supp. 2d 1036 (W.D. Wash. 2008) ......................................................................10, 11

*Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*,
    2009 WL 10677052 (W.D. Wash. Sept. 30, 2009) ..............................................................20

*Cootey v. Countrywide Home Loans, Inc.*,
    2011 WL 4853333 (D. Haw. Oct. 12, 2011) .........................................................................7

*Demopolis v. Galvin*,
    57 Wash. App. 47 (1990) ......................................................................................................20

*Douglass v. Bank of Am. Corp.*,
    2013 WL 2245092 (E.D. Wash. May 21, 2013) ...................................................................20

*E&E Co. v. Kam Hing Enters., Inc.*,
    429 F. App'x 632 (9th Cir. 2011) ........................................................................................6, 7

*Edwards v. First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015) .......................................................................................2, 11, 14



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*Evans v. Arizona Cardinals Football Club, LLC*,
  761 F. App'x 701 (9th Cir. 2019) ...................................................................................25

*Gleason v. Orth*,
  2022 WL 4534405 (W.D. Wash. Sept. 28, 2022) ............................................................19

*Gray v. Amazon.com, Inc.*,
  653 F. Supp. 3d 847 (W.D. Wash. 2023) .........................................................................19

*Guebara v. Saxon Mortg.*,
  2011 WL 1670762 (E.D. Cal. May 3, 2011) ....................................................................14

*Guketlov v. HomeKey Mortg., LLC*,
  2009 WL 3785575 (W.D. Wash. Nov. 9, 2009) ...........................................................25, 27

*Henson v. Fid. Nat'l Fin. Inc.*,
  18 F. Supp. 3d 1006 (C.D. Cal. 2014) .........................................................................15, 16

*HomeLight, Inc. v. Shkipin*,
  694 F. Supp. 3d 1242 (N.D. Cal. 2023) ...........................................................................16

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
  2017 WL 3313963 (W.D. Wash. Aug. 3, 2017) ................................................................18

*Jones v. Barrett*,
  2024 WL 4142676 (S.D. Cal. Sept. 10, 2024) .................................................................25

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ..........................................................................................5

*Merritt v. Countrywide Fin. Corp.*,
  759 F.3d 1023 (9th Cir. 2014) .....................................................................................7, 24

*Munoz v. PHH Mortg. Corp.*,
  478 F. Supp. 3d 945 (E.D. Cal. 2020) ...............................................................................8

*Nikolich v. Progressive Cas. Ins. Co.*,
  2026 WL 445566 (W.D. Wash. Feb. 17, 2026) ...............................................................24

*Panag v. Farmers Ins. Co. of Washington*,
  166 Wash. 2d 27 (2009) .......................................................................................3, 17, 20

*Reed v. Gen. Mills, Inc.*,
  2019 WL 2475706 (W.D. Wash. June 13, 2019) .........................................................2, 17, 18

*RL Liquidators LLC v. Amazon.com Servs., LLC*,
  2025 WL 2052611 (W.D. Wash. July 15, 2025) ..............................................................19


DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*Salinas v. United States*,
    522 U.S. 52 (1997)............................................................................................22

*Shields v. Fred Meyer Stores Inc.*,
    741 F. Supp. 3d 915 (W.D. Wash. 2024)...............................................................6, 16

*Sosa v. Chase Manhattan Mortg. Corp.*,
    348 F.3d 979 (11th Cir. 2003) ..............................................................................14

*Stillaguamish Tribe of Indians v. Nelson*,
    2012 WL 13028100 (W.D. Wash. July 24, 2012) ....................................................21

*Taie v. Ten Bridges LLC*,
    568 F. Supp. 3d 1126 (W.D. Wash. 2021).............................................................24

*United States v. Woods*,
    335 F.3d 993 (9th Cir. 2003) .............................................................................2, 21

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................18, 19

**STATUTES**

12 U.S.C. § 2602..............................................................................................7, 10, 12

12 U.S.C. § 2607........................................................................................... *passim*

Wash. Rev. Code § 4.16.080(4)..............................................................................24

**OTHER AUTHORITIES**

12 C.F.R. § 1024.2 ...........................................................................................7, 10

12 C.F.R. § 1024.14 ................................................................................11, 12, 14, 16



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## I.    INTRODUCTION

The Zillow Defendants'[1] motion to dismiss the Amended Consolidated Class Action Complaint ("CCAC")[2] doubles down on its fraudulent practices by falsely denying the veracity of Plaintiffs' allegations. Zillow claims Plaintiffs' allegations that the website is deceptive are "demonstrably untrue" and "collectively nonsensical" (Mot. at 1). These claims are specious: as the CCAC recounts, it is widely reported that Zillow's website operates on a classic "bait-and-switch" model. When clicking the "Contact Agent" or "Request a Tour" button, home buyers believe they are being connected to a *listing* agent, but Zillow instead secretly connects them with a *buyer*'s agent affiliated with Zillow, so that Zillow can ensnare these home buyers into its web at the very first click.[3] ¶107.

Likewise, Zillow's contention that it purportedly provided consumers with "more choice and information" (Mot. at 1) is belied by Plaintiffs' allegations that Zillow's entire financial model depends on *depriving* home buyers of choice and information. Zillow coaches Zillow-Affiliated Agents to evade questions about Zillow Home Loans' ("ZHL") inferior products so that the consumers do not learn about alternatives, such as loans for veterans or downpayment assistance. ¶164. Zillow's own talking points for its agents confirm that they are instructed to steer clients away from better loan products (¶164):

> #3. What if they need a DPA product, VA loan or jumbo product?
> - Inform them that Zillow Home Loans offers a variety of competitive products for all client needs. Let them know you will connect them with your dedicated loan officer who will walk them through their loan options and pre-approval steps.

---

[1] The "Zillow Defendants" are Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Zillow Home Loans, LLC (collectively "Zillow").

[2] *See* Zillow Defendants' Motion to Dismiss, Dkt. No. 64 ("Mot.")

[3] See Frederick Peters, *Buyers Beware of this Advertising Tactic by Zillow and StreetEasy*, FORBES (Dec. 9, 2020), https://www.forbes.com/sites/fredpeters/2020/12/09/buyers-beware-of-this-advertising-tactic-by-zillow-andstreeteasy/.

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 1
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Zillow even monitors the communications of Zillow-Affiliated Agents to make sure they are subverting consumer choice and violating their fiduciary duties to prioritize their clients' interests. ¶184.

Zillow's technical legal arguments fare no better:

*First*, Plaintiffs plausibly allege two violations of the Real Estate Settlement Procedures Act ("RESPA"). Section 2607(a) prohibits giving or accepting any "thing of value" in exchange for a referral. Zillow does both: it gives valuable leads to Zillow-Affiliated Agents, and in return, those agents steer customers to ZHL. Section 2607(b) prohibits splitting fees when a person accepts a portion of a charge without performing any brokerage settlement services. Zillow violates this provision by requiring agents to remit 40% of their commissions, even as Zillow provided no services. Zillow's technical defenses to both RESPA violations rely on a misstatement of what the statute says.

*Second*, Plaintiffs plausibly plead a violation of Washington's Consumer Protection Act ("WCPA") based in part on Zillow's deceptive website. Zillow argues that its miniscule disclosures in its Terms of Use preclude this claim, but the question of whether Zillow's website would reasonably deceive the public is squarely a question of fact that cannot warrant dismissal. *See Reed v. Gen. Mills, Inc.*, 2019 WL 2475706, at *3 (W.D. Wash. June 13, 2019) ("It is a 'rare situation' in which granting a motion to dismiss claims based on the reasonable consumer standard is appropriate.").

*Third*, Plaintiffs adequately plead a RICO claim when Zillow worked hand-in-glove with the Real Estate Defendants to defraud consumers and keep the incriminating details of their scheme private. Zillow's defense that Plaintiffs fail to allege fraudulent mailings is "immaterial" to a RICO claim, provided Plaintiffs allege a scheme to defraud. *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003).

*Fourth*, Zillow claims Plaintiffs failed to plead injury. But Plaintiffs alleged that they paid more for inferior ZHL mortgages, and that Zillow's 40% kickback payment inflates settlement costs borne by Plaintiffs. ¶¶94–99. These allegations easily pass the plausibility test to establish

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

injury. *See Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57 (2009) ("[T]he [WCPA] injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" (citation omitted)).

Zillow's other arguments rely on misstatements of Plaintiffs' allegations and law. *See infra* § IV.E–G. Zillow's motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

Zillow has created a coordinated, vertically integrated system through which it leverages its dominance as the nation's primary online real estate gatekeeper to control, condition, and monetize residential transactions at multiple stages, all to consumers' detriment.

It operates the most visited residential real estate website in the United States, capturing approximately two-thirds of all online home-listing traffic. ¶3. It monetizes that traffic by directing buyers through prominent "Request a Tour" and "Contact Agent" buttons featured on its website. ¶102. The prospective buyer naturally expects these buttons to connect them to the *listing agent.* ¶¶103, 107. Instead, Zillow routes them to a Zillow-Affiliated Agent, who does not readily disclose she is not the seller's agent. ¶112. This design is highly effective: a recent study found that Zillow "systematically deceives consumers" because **only .3% of users** understand they are not contacting the listing agent.[4]

These agents then push buyers into signing a "Touring Agreement," presented as free but designed to create an expectation of representation and limit the buyer's perceived ability to choose another agent. ¶¶104, 106, 108.

Current and former Zillow-Affiliated Agents, and bank loan officers, have confirmed that Zillow's policy of tricking buyers is intentional and calculated. Zillow trains agents not to disclose that they are buyer's agents during initial interactions, to avoid questions about agency status, and

---

[4] *See* Preston Mizell, *Penn professor says Zillow 'systematically deceives consumers' about agent connections*, FOX BUSINESS (Mar. 19, 2026), https://www.foxbusiness.com/real-estate/penn-professor-says-zillow-systematically-deceives-consumers-about-agent-connections. Although this report was released after the CCAC was filed, Plaintiffs respectfully request leave to amend if this fact is material to the Court's decision.

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 3
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

to discourage contact with listing agents. ¶¶129, 142, 149. Buyers are often led to believe they are dealing with the listing agent and are locked into representation before they understand the relationship. ¶¶165, 167.

Plaintiffs' experiences reflect this pattern. Plaintiff Taylor clicked on the "Contact Agent" button, believing that he was contacting the listing agent; he did not know that he would be routed to a Zillow agent. ¶19. Plaintiff Zheng clicked on the "Request a Tour" button "on the belief that he was contacting the seller's agent for a tour." ¶21. Plaintiff King clicked on the "Contact Agent" button "believing that she was contacting the listing agent; she did not know that she would be routed to a Zillow agent." ¶23. Plaintiffs Knudson and Thurston also clicked on the "Contact Agent button" without understanding they would be routed to a Zillow agent. ¶¶24–25. Plaintiff Silva clicked on the "Contact Agent" button, and, when he was contacted with the Zillow-Affiliated Agent, he believed he was talking to the seller's agent. ¶26. When Plaintiff Koger clicked on the "Contact Agent" button, he also believed he was contacting the seller's agent. ¶27.

As for Plaintiff Cady, when he clicked on the "Contact Agent" button, he did so because he wanted to contact the seller's agent directly " to avoid paying buyer agent commissions, which would reduce the overall price he would pay." ¶28. When Plaintiff Brucaliere clicked on the "Request a Tour" button, she thought she was contacting the seller's agent. And when she first met the Zillow-Affiliated Agent ("H.D."), H.D. did not disclose she was a buyer's agent, and instead insisted on her signing a touring agreement. "After she signed, H.D. told her that Zillow assigned her to H.D., and that H.D. would represent her going forward. Plaintiff Brucaliere did not feel that she had any other practical option but to use H.D. as the buyer's agent." ¶29.

Zillow controls how buyers tour and purchase homes and then monetizes that control through concealed referral-fee extraction from Zillow-Affiliated Agents. When a transaction closes, the agent must pay Zillow up to 40% of the commission—"Hidden Zillow Fees"—which are not disclosed to buyers. ¶110–11.

Because residential commissions are calculated as a percentage of the home's sale price and embedded in the transaction price, ¶¶50–53, Zillow's referral-fee extraction compresses

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

participating agents' margins, suppresses commission competition, and helps maintain high and inflexible commission norms that are reflected in inflated home prices. ¶8.

Zillow extends its control beyond agent routing into mortgage origination. Continued participation in the Flex program is conditioned on steering buyers to ZHL (¶¶9–10), and on meeting ZHL pre-approval and loan "attach" benchmarks, which Zillow monitors and enforces through internal systems. *Id.* Numerous confidential witnesses describe quotas, enforcement mechanisms, and efforts to avoid written records. *Id.*

Pre-approval letters are one step in this broader steering scheme. Zillow pressures Zillow-Affiliated Agents to obtain ZHL pre-approval letters early, channeling buyers toward ZHL before they meaningfully evaluate competing lenders. Although styled as "free" and "no obligation," these pre-approvals advance Zillow's steering benchmarks and increase the likelihood that buyers ultimately use ZHL. The resulting injury is concrete: "Plaintiffs and Class Members paid more for mortgage credit than they otherwise would have, lost access to competing loan programs and favorable terms, and were deprived of the independent advice that state and federal law require in residential real estate transactions." ¶99.

Taken together, Plaintiffs describe a coordinated system: Zillow captures buyer demand, routes it to Zillow-Affiliated Agents who must pay concealed referral fees, conditions continued lead access on steering buyers to its affiliated lender, and enforces compliance through quotas and monitoring.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  And "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663. The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A complaint must only state

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 5
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

When it applies, Rule 9(b) does not require Plaintiffs to plead facts that can only be obtained through discovery. The Ninth Circuit recognizes that the particularity requirement may be relaxed where the relevant facts are uniquely within the opposing party's knowledge, such as in cases of corporate fraud, where "'plaintiffs will not have personal knowledge of all of the underlying facts.'" *E&E Co. v. Kam Hing Enters., Inc.*, 429 F. App'x 632, 633 (9th Cir. 2011) (citation modified); *see also Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 923–24 (W.D. Wash. 2024), *amended by*, 796 F. Supp. 3d 740 (W.D. Wash. 2025) (rejecting argument that allegations were speculative where plaintiff pleaded the information in his possession, and further relied in part on statements from defendant's employees describing information contained in internal computer records unavailable to plaintiff).

## IV.    ARGUMENT

**A.    Plaintiffs Plead Zillow's Conduct With Sufficient Particularity.**

Plaintiffs do not engage in group pleading, as Zillow contends. Mot. at 10–11. They identify, to the extent possible without discovery, the distinct Zillow entities, describe their roles, and allege how those entities coordinated through an association-in-fact enterprise to execute the scheme. Plaintiffs allege, for example: Zillow, Inc. operates the online real estate marketplace and maintains brokerage licenses (¶30); Zillow Group, Inc. controls the Zillow marketplace and related businesses and services, including Premier Agent and lead-management technology (¶31); Zillow Listing Services, Inc. provides a variety of licensed brokerage services (¶34); and Zillow Home Loans originates mortgage loans integrated into Zillow's marketplace and Premier Agent/Flex programs (¶35). Plaintiffs connect those roles to the alleged fraud, pleading that Zillow, acting through affiliated entities, "designed, implemented, and enforced" the website design, lead-routing mechanisms, commission-sharing requirements, and mortgage referral processes at issue. *See, e.g.*, ¶225. They also plead transaction-specific allegations for each named Plaintiff, identifying the Zillow interface used ("Contact Agent," "Request a Tour," or "Schedule a Tour"), the routing of

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

the inquiry, the resulting agent relationship, and, where applicable, ZHL's involvement. ¶247. Any finer-grained allocation of responsibilities among affiliates is uniquely within Defendants' control and a factual issue for discovery, not dismissal. *See E&E Co.*, 429 F. App'x at 633 (Rule 9(b) may be relaxed where relevant facts are known only to the defendant).

Zillow's repeated reliance on *Woodell v. Expedia Inc.* (Mot. at 11) is misplaced because the plaintiffs in that case attributed alleged misrepresentation to Expedia only, while other defendant entities were engaged in legitimate business. 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019). The complaint failed to allege even "suspicious circumstances" linking those entities to the misrepresentation. *Id.* Similarly, Defendants erroneously rely on *Cootey* (Mot. at 11), in which the complaint was dismissed because it merely asserted in conclusory terms that "all Defendants violated §§ 2605 and 2607, without any regard to the fact that each Defendant had different roles[.]" *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333, at *6–8 (D. Haw. Oct. 12, 2011). Plaintiffs here identify the specific Zillow entities involved in the marketplace platform, brokerage, and mortgage-origination functions and allege how each participated in the challenged system. *See supra* § II.

## B.    Plaintiffs Plausibly Alleges RESPA Violations.

Plaintiffs state claims for violations of RESPA, 12 U.S.C. § 2607(a) and (b). RESPA is a remedial consumer-protection statute that should be construed liberally to effectuate its purposes. *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1040 (9th Cir. 2014). It prohibits kickbacks and unearned fees in connection with settlement services involving federally related mortgage loans. 12 U.S.C. §§ 2607(a), (b). "Settlement services" are defined broadly to include "any service provided in connection with a real estate settlement," including the "origination of a federally related mortgage loan[,]" "services rendered by a real estate agent or broker," and the "[p]rovision of any services related to the origination, processing, or funding of a federally related mortgage loan." 12 U.S.C. § 2602(3); 12 C.F.R. § 1024.2.

Plaintiffs allege two distinct RESPA violations and satisfy each element. First, § 2607(a) prohibits giving or accepting "any fee, kickback, or thing of value pursuant to an agreement or

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 7
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

understanding . . . that business incident to or part of a settlement service involving a federally related mortgage loan shall be referred." 12 U.S.C. § 2607(a). Plaintiffs allege that Zillow violated this provision by giving and accepting "things of value" to Zillow-Affiliated Agents pursuant to an understanding that the agents would refer borrowers to ZHL for mortgage-origination services. ¶¶264–283.

Second, § 2607(b) prohibits the splitting of a settlement charge between two parties where one party performed no services related to the property transaction. 12 U.S.C. § 2607(b). As Plaintiffs allege, Zillow violated this provision by extracting undisclosed Hidden Zillow Fees from buyer-agent commissions generated in real-estate settlement transactions despite not performing the brokerage settlement services underlying those commissions. ¶¶284–306.

### 1.      Plaintiffs have statutory standing under RESPA.

Zillow argues Plaintiffs Armstrong, Liao, and Silva lack RESPA standing because they do not "allege they were '***charged*** for the settlement service involved in' the alleged violations[.]" Mot. at 14. That argument misreads the statute, Plaintiffs' allegations, and the pleading standard.

Plaintiffs' transactions involved settlement services covered by RESPA—specifically mortgage-origination services and real-estate brokerage services. ¶¶272–275. Plaintiffs incurred concrete and particularized injury in the form of charges associated with those services in connection with their home purchases. These charges demonstrate concrete and particularized economic injuries. ¶¶275, 282–283, 293; *see Baugh v. Fed. Sav. Bank*, 337 F.R.D. 100, 106 (D. Md. 2020) (plaintiffs adequately alleged RESPA standing through higher settlement-service fees, even absent proof of overcharge at the pleading stage, where allegations plausibly showed fees would have been lower absent the scheme).

Even absent overpayment, a plaintiff suffers a concrete injury where a defendant's kickback scheme deprives the consumer of "meaningful disclosure" or a "meaningful choice" in selecting a settlement service provider—harms Congress specifically identified when enacting RESPA. *See Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 982–84 (E.D. Cal. 2020). That is precisely what Plaintiffs allege: Zillow's platform and program design steered borrowers toward

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 8
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

ZHL through undisclosed financial incentives and performance pressures, distorting borrower choice and undermining the impartiality of agent recommendations. ¶¶282, 304.

Plaintiffs therefore plausibly allege concrete and particularized injury resulting from both: (1) the alleged referral scheme involving mortgage-origination settlement services in violation of § 2607(a); and (2) the splitting of settlement charges in violation of § 2607(b).

### 2.    Plaintiffs state a claim under 12 U.S.C. § 2607(a) (Count II).

Plaintiffs plausibly allege that Zillow violated RESPA § 2607(a) through a referral scheme tying Zillow's distribution of buyer leads to mortgage referrals to ZHL. ¶¶264–83. Zillow erroneously argues that Plaintiff's claims are time-barred, that approval letters are not settlement services, and Zillow did not make a referral. Mot. at 14.

Zillow provided participating agents things of value, including continued and priority access to leads, enhanced placement, and participation in a profitable lead-generation program. Zillow also received a thing of value, including referral-based success fees and increased loan-origination revenue through ZHL, as reflected in the visual below (¶¶13, 277):



These "things of value" were exchanged pursuant to an agreement that agents receiving Zillow leads would steer borrowers toward ZHL for pre-approval and financing. Zillow monitored and controlled compliance through quotas, adoption targets, and lead-allocation consequences. ¶¶276–278.





The alleged referrals concern mortgage-origination services incident to federally related mortgage loans, which qualify as settlement services under RESPA. ¶¶270–275.

### a. Loan pre-approval and origination are "settlement services" under RESPA.

Zillow contends that pre-approval letters are not "settlement services" under RESPA because they are free, optional, and not necessary to closing. Mot. at 15–17. But that argument isolates one step in the alleged steering scheme, rather than the settlement service that the scheme was designed to influence.

Section 2607(a) prohibits kickbacks not only for referrals of settlement services, but also for referrals of "*business incident to or a part of* a real estate settlement service involving a federally related mortgage loan." 12 U.S.C. § 2607(a) (emphasis added). Plaintiffs allege that Zillow steered borrowers to ZHL for federal related mortgage loan origination and financing, which are "settlement services" under RESPA. *See* 12 U.S.C. § 2602(3); 12 C.F.R. § 1024.2; ¶¶270–275. Plaintiffs further allege "the services provided in connection with or incident to such settlements, including [but not limited to] marketing, lead-generation, referral, and coordination functions performed by Zillow Group, Inc. and Zillow, Inc—are settlement services within the meaning of 12 U.S.C. § 2602(3)." ¶275. Those allegations describe referrals of business incident to mortgage-origination settlement services involving federally related mortgage loans, which § 2607(a) squarely regulates.

Even under Zillow's narrower framing, mischaracterizing the claim as involving only free pre-approval letters, the allegations remain sufficient. Mortgage pre-approval is part of the borrower-qualification process for mortgage origination—an expressly enumerated settlement service that includes "the taking of loan applications, loan processing, and the underwriting and funding of loans." 12 U.S.C. § 2602(3); 12 C.F.R. § 1024.2. Steering borrowers to obtain pre-approval from a particular lender therefore plausibly constitutes the referral of business incident to mortgage-origination settlement services.

Zillow misreads *Bloom* and *Bushbeck* (Mot. at 15), which *do not* limit "settlement services" to only those "necessary for closing[,]" but rather, draw a "temporal distinction" by holding that

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 10
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

RESPA does not apply to certain fees assessed *after* closing. *Bloom v. Martin*, 77 F.3d 318, 320–21 (9th Cir. 1996); *Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036, 1040–41 (W.D. Wash. 2008). Here, all the alleged conduct occurred before closing.

Accordingly, Plaintiffs plausibly allege referrals of business incident to mortgage-origination settlement services involving federally related mortgage loans, which falls squarely within the conduct regulated by § 2607(a).

### b.    Plaintiffs plausibly allege "referrals."

Zillow argues a pre-approval is not a "referral" under RESPA. Mot. at 17–18. But Plaintiffs' theory is not that the pre-approval letter, standing alone, is the referral. Plaintiffs allege that Zillow conditioned lead flow, placement, and participation in its programs on agents directing borrowers to ZHL, and Zillow monitored compliance through quotas and usage metrics. ¶¶276–278. Those allegations plausibly describe referrals because they allege actions which have "the effect of affirmatively influencing the selection" of ZHL as the mortgage provider. 12 C.F.R. § 1024.14(f)(1).

Nor does the fact that borrowers *could* ultimately choose another lender defeat the claim. *Contra* Mot. at 17–18. A referral need not be "the exclusive or even the primary reason" for the borrower's choice; it is enough that the conduct affirmatively influences the selection of a provider. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1184 (9th Cir. 2015). Plaintiffs plausibly allege exactly that: Zillow used their program requirements imposed on Zillow-Affiliated Agents to channel borrowers toward ZHL, both at the pre-approval and financing stages.

Zillow cannot rely on *Bolinger v. First Multiple Listing Service, Inc.* (Mot. at 17) for its arguments. *Bolinger* rejected the plaintiffs' claim on summary judgment because the alleged referred business was the defendant's listing service, and the plaintiffs had not paid any charge for that service. 2014 WL 4803155, at *5–6 (N.D. Ga. Sept. 26, 2014). Here, by contrast, Plaintiffs allege that the challenged referrals were directed toward Zillow's *mortgage-origination services* for which borrowers ultimately paid charges in connection with their loans and/or home purchases

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 11
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

(even, as for Silva, where he did not ultimately use ZHL for his loan). ¶283. At the pleading stage, those allegations are sufficient to state a claim under § 2607(a).

### c.    Plaintiffs plausibly allege a "thing of value."

Plaintiffs plausibly allege that Zillow exchanged "things of value" for referrals within the meaning of RESPA. RESPA defines "thing of value" broadly to include *any consideration*, 12 U.S.C. § 2602(2), without limitation, for example: "monies, things, . . . the opportunity to participate in a money-making program, retained or increased earnings[.]"12 C.F.R. § 1024.14(d). Plaintiffs allege Zillow gave substantially valuable consideration to Zillow-Affiliated Agents—including, but not limited to, continued and priority access to leads, enhanced placement and visibility on Zillow's platform, increased lead quality and volume, and participation in Zillow's lead-distribution programs—pursuant to an arrangement or understanding that agents would refer borrowers toward ZHL for mortgage financing. Zillow, in turn, accepted consideration such as success fees, advertising revenue, and increased loan-origination revenue through ZHL. ¶277. These benefits fall squarely within RESPA's broad definition of a "thing of value."

Zillow's argument also rests on a mistaken premise about § 2607(a) by implying that Zillow needs to *receive* a "thing of value." *See* Mot. at 18. But RESPA prohibits *giving or accepting* "any fee, kickback, or thing of value pursuant to any agreement or understanding" that settlement-service business will be referred. 12 U.S.C. § 2607(a) (emphasis added). Plaintiffs therefore need not show that Zillow *received* value beyond the referral itself (although it did); it is sufficient to allege that Zillow *gave* things of value to participating agents in exchange for referring mortgage business to ZHL. *Id*.

Zillow argues that Plaintiffs fail to plead a "thing of value" because any benefit to ZHL from pre-approval letters depends on the consumer's later decision to obtain financing from ZHL. Mot. at 18. But Plaintiffs' theory does not depend on the pre-approval letters constituting the relevant "thing of value;" rather, Plaintiffs allege that Zillow provided value, primarily in the form of customer leads, to agents in exchange for steering borrowers toward ZHL, including through ZHL pre-approvals.

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 12
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Even if Zillow is correct that pre-approval letters must independently be a "thing of value" under RESPA, its argument still fails. Zillow characterizes the letters as merely non-binding referrals "constitut[ing] *potential* value for ZHL that *may* result in business[,]" (*id.*), but Plaintiffs allege that Zillow tracks and enforces metrics tied specifically to the use of ZHL pre-approval letters—including quotas and monitoring of the percentage of buyers who receive pre-approval letters, as well as those who ultimately proceed with ZHL financing. ¶¶276–278. These allegations plausibly demonstrate that the letters were a key mechanism through which Zillow drove mortgage business to its affiliated lender, demonstrating their economic value within the referral arrangement, both in terms of the value given to the Zillow-Affiliated Agents for meeting their metrics, and the increased profits for Zillow. Plaintiffs further allege that the pre-approval quota was merely the first step, because what Zillow actually monitored and rewarded (or punished) was the rate at which home buyers closed with ZHL. ¶¶64, 75, 121, 151.

*CFPB v. Borders & Borders PLC*, cited by Zillow (Mot. at 18), is easily distinguishable. 2018 WL 1440606 (W.D. Ky. Mar. 22, 2018). There, the court rejected a RESPA claim where the alleged referral created only a contingent opportunity for business: consumers remained entirely free to select another provider, and the joint venture received nothing if they did so, as the only "thing of value" alleged was the nominal assignment. *Id.* at *1, 3 (W.D. Ky. Mar. 22, 2018). The court therefore concluded that the nominal assignment itself did not constitute a "thing of value." *Id.*

In contrast to that nominal referral, Plaintiffs allege the exchange of numerous valuable platform benefits for referrals of mortgage business: Zillow provided concrete benefits to participating agents—including lead flow, platform visibility, and participation in lucrative lead-distribution programs—in exchange for referrals and pre-approvals to ZHL. ¶278. Plaintiffs suffered concrete and particularized economic injuries caused by the scheme, including higher rates and fees for mortgage credit than they otherwise would have paid and the loss of access to competing loan programs and favorable terms. ¶¶282–283, 99. And, at the pleading stage, Plaintiffs need not isolate the precise monetary value attributable to each component of the

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

exchange in order to plausibly allege a prohibited referral arrangement. *Edwards*, 798 F.3d at 1181–82.

Plaintiffs plausibly allege that Zillow gave and accepted valuable benefits to and from agents pursuant to an arrangement that borrowers would be steered toward ZHL for mortgage services. That is more than sufficient to plead the "thing of value" element of § 2607(a).

### 3.    Plaintiffs state a RESPA violation under 12 U.S.C. § 2607(b) (Count III).

#### a.    Plaintiffs plausibly allege an unearned fee or split charge.

Section 2607(b) prohibits any person from accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." 12 U.S.C. § 2607(b). Regulation X clarifies that a fee is "unearned" and unlawful where "no or nominal services are performed[,]" and "[t]he source of the payment does not determine whether or not a service is compensable[,]" so liability cannot be avoided by structuring payments through another participant in the transaction. 12 C.F.R. § 1024.14.(c).

Plaintiffs plausibly allege that buyer-agent commissions—charges for settlement services—were split so that Zillow received a portion at closing despite not performing the brokerage services for which those commissions were paid. ¶¶284–306.  That is precisely the conduct § 2607(b) prohibits.

Zillow argues that it provided services such as connecting buyers and agents or offering platform tools. Mot. at 19. This is not only a disputed fact issue, but an inadequate defense. To legally receive a split of commissions from a closing under RESPA, Zillow would need to perform services related to the *closing. See e.g.*, *Guebara v. Saxon Mortg.*, 2011 WL 1670762, at *3 (E.D. Cal. May 3, 2011) (settlement services are services related to the closing of a loan); *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 983 (11th Cir. 2003) (§ 2607(b) violation occurs when a payment is made for some reason "other than in exchange for services actually rendered"). Connecting potential buyers to agents and establishing a consumer-facing website are not services related to the *closing. See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1352 (N.D. Ga. 2012) (plaintiffs plausibly alleged § 2607(b) violation when defendant received "hidden

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

settlement fee" for listing property on database but contributed nothing to property closing).  These are merely activities Zillow provides related to the search for a home.

Congress established RESPA to ensure that homebuyers were only charged for services *actually performed. See Henson v. Fid. Nat'l Fin. Inc.*, 18 F. Supp. 3d 1006, 1011 (C.D. Cal. 2014) ("Congress would have vitiated RESPA's purposes by permitting kickbacks as long as the recipient performed any service—even if the service bore no relationship to a real-estate settlement."). Zillow performed no closing services for homebuyers; thus, they cannot receive a split of commissions for the closing. Further, whether Zillow's activities constitute compensable closing settlement services is a factual question that precludes dismissal of the claim. *Id.* at 1014 (question of the precise services provided by defendants "is a dispute of fact").

The cases Zillow cites, *Bolinger* and *Henson* (Mot. at 19), do not compel a different result. *Bolinger*, decided at summary judgment based on a "voluminous record," involved a fundamentally different business model. 2014 WL 4803155, at *6–8. There, discovery demonstrated that these payments were made pursuant to services rendered for the operation of the listing platform. *Id.*  at *3. Additionally, plaintiffs conceded part of the split fees were earned, and the court held that Eleventh Circuit precedent did not require an accounting of what portion were earned versus unearned.  Here, whatever services Zillow provided to Plaintiffs have nothing to do with the 40% kickback Zillow takes from the Zillow-Affiliated Agents' commission. The 40% kickback is not for listing services rendered, and Zillow did not provide any closing services. And in *Henson v. Fidelity National Financial Inc.*, the court dismissed the § 2607(b) claim because the payments were made in relation to overnight delivery systems that are used to process and close on federally related mortgages payment. 2014 WL 1246222, at *2, 9–10 (C.D. Cal. Mar. 21, 2014). As explained, the services provided by Zillow are not related to the closing of a loan.

### b.    The Safe Harbor does not bar Plaintiffs' § 2607(b) claim.

Zillow argues the referral fees fall within RESPA's cooperative broker safe harbor. Mot. at 20. It does not. This provision (§ 2607(c)) is narrow, and it only permits certain "fee divisions within real estate brokerage arrangements when all parties are acting in a real estate brokerage

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 15
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

capacity . . . ." 12 C.F.R. § 1024.14(g)(1)(v). The regulation further clarifies that the exemption "has no applicability to any fee arrangements between real estate brokers and mortgage brokers . . . ." *Id.*

Though *Zillow* is a licensed real-estate broker, Plaintiffs allege that "Zillow does not act as a real-estate broker or perform brokerage functions in these [challenged] transactions[,]" but instead, merely "operates as a referral marketplace[.]" ¶280.

Accepting those allegations as true, Zillow received a portion of settlement charges generated by brokerage services performed by participating agents while providing none of those brokerage services. Such an arrangement falls outside RESPA's safe harbor. Courts have recognized that agent-matching platforms operate upstream of brokers by supplying referrals rather than acting as brokers themselves. *See HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023) (describing referral platform as a vertical supplier of referrals to real estate agents rather than a broker competing with them); *Henson*, 18 F. Supp. 3d at 1012 (rejecting the notion that RESPA's safe harbor applies whenever the recipient performed some generic service, observing that such a rule "would lead to illogical results").

Under Plaintiffs' allegations, this scheme is not a fee division between cooperating brokers working on a transaction; they are success-based payments extracted from agents' commissions when a sale closes. The safe harbor offers Zillow no refuge.

## C.    Plaintiffs Plausibly Allege a WCPA Claim.

### 1.    Zillow engaged in unfair and deceptive conduct.

A WCPA claim requires plaintiffs to allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Shields*, 741 F. Supp. 3d at 930 (citation omitted). Plaintiffs allege unfair and deceptive practices because Zillow (1) failed to disclose steering; (2) unfairly used its dominate position to coerce agents into violating the agents' fiduciary duties;



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

and (3) deceptively induced consumers into signing up with agents by exaggerating the agents' success and failing to disclose they were acting as buyers' agents. ¶312.[5]

In evaluating whether a communication tends to deceive, Washington courts look to interpretations of the Federal Trade Communications Act. *Panag*, 166 Wash. 2d at 48. And "[u]nder the FTCA, a communication may be deceptive by virtue of the 'net impression' it conveys, even though it contains truthful information." *Id.* at 50 (citing *FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (solicitation masquerading as rebate check was misleading even with truthful disclosure in fine print)). The "net impression" inquiry "should look not to the most sophisticated readers but rather to the least." *Id.* at 50 (citation omitted). Finally, courts must interpret any misleading communications in context and not in isolation. *Reed*, 2019 WL 2475706, at *4.

Given this caselaw, Plaintiffs easily meet the pleading requirements of the CPA. For example, in *State v. Mandatory Poster Agency, Inc.*, the appellate court affirmed denial of defendant's summary judgment motion when defendant's mailer was designed to look like an official government document, even as it stated "THIS IS NOT A GOVERNMENT DOCUMENT" in all caps on the envelope. 199 Wash. App. 506, 523 (2017). The appellate court found this deceptive, and had the capacity to deceive a "substantial portion of the public," even though only 2,900 of the 79,000 recipients (or 3%) responded to the fraudulent mailing. *Id.* at 524. In contrast, Zillow's website reportedly misleads 99.7% of the public. *See supra* n.4. By this measure, Plaintiffs have easily pled the plausibility of Zillow's deceptive conduct. *See supra* § II.A.

Zillow argues Plaintiffs "offer no details regarding their interactions with Partner Agents or any representations by Zillow Defendants directly[.]" Mot. at 21. This is both not true and irrelevant: Plaintiffs expressly made these allegations. *See supra* § II.A; ¶¶19, 21, 23–29. And Zillow can engage in fraudulent conduct even if it did not directly engage with the buyers. *See,*

---

[5] Plaintiffs agree with Defendants that a RESPA violation is not a *per se* unfair practice.

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 17
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*e.g.*, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 649 (N.D. Cal. 2024) (denying motion to dismiss WCPA claim when defendant's conduct harmed "downstream" plaintiffs).

Zillow further contends their website is not deceptive because "if Plaintiffs *hoped* to be connected with the listing agent, any reasonable belief they were interacting with the listing agent would disappear as soon as the Partner Agents contacted them, including because Zillow discloses the name of the listing agents on property listings." Mot. at 21. This is a mere counterfactual assertion that is doubly wrong: first, Zillow and Zillow-Affiliated Agents did *not* disclose their status "as soon as" they talked to the clients; Plaintiffs allege—and other current and former Flex agents confirmed—they evaded the question or flat-out lied to the consumers. *See supra* § II.A. Zillow simply ignores these allegations. Zillow also suggests their miniscule disclosure in tiny print absolves them of any liability. Mot. at 21. In truth, the size of their "disclosure" compared to the size of their buttons that route clients to Partner agents *proves the deception*—the only reason to make it that small in comparison with the rest of the website is to mislead the consumer. ¶102. This is the only logical conclusion to draw from these allegations.

Courts routinely reject the partial disclosure defense when the disclosure was insufficient to adequately warn the public, because the deceptiveness of defendants' conduct is a fact-based question not amenable to a motion to dismiss. In *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), plaintiffs alleged Gerber's packaging showing copious fruits was deceptive and misleading when the only fruit in the snacks was white grape juice from concentrate. The Ninth Circuit, in reversing the district court's dismissal order, held that, although the ingredients were listed on the package, reasonable consumers should not be expected to read the fine print to see if it conflicts with the deceptive advertising. *Id.* at 939; *see also Reed*, 2019 WL 2475706, at *3 ("It is a 'rare situation' in which granting a motion to dismiss claims based on the reasonable consumer standard is appropriate."). Nor does the microscopic disclosure of the listing agent render the otherwise deceptive website truthful. *See Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2017 WL 3313963 at *4 (W.D. Wash. Aug. 3, 2017) (jury question whether package promising "all" James Bond movies was deceptive when package accurately listed the included movies).


**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900


**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Defendants cite cases that are inapposite. Mot. at 21–22. For example, *Promedev, LLC v. Wilson* involved sophisticated parties and a purported failure to disclose ownership structure of a company. 2023 WL 2330377, at *6 (W.D. Wash. Mar. 2, 2023). This Court held that the parties had easy access to the ownership structure based on relevant corporate filings, which has nothing to do with claims that Zillow's website deceived the public. *Id.* Similarly, *Storey v. Amazon.com Services LLC* relied on contract interpretations, which—as the court held—distinguished that case from *Williams* and *Mandatory Poster*. 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024). The court also held in that case that the terms at issue were "clear." *Id.*

Next, Zillow claims Plaintiffs failed to allege conduct sufficient to show "unfairness," but Plaintiffs allege far more than a "bare recitation" (Mot. at 22) of the elements. ¶¶314–315, 321–325 (alleging coercive use of market power, exploitation of consumer trust, and resulting harm). Zillow relies on cases involving conduct that was expressly disclosed to users—in *RL Liquidators* (Mot. at 22), through a negotiated agreement providing notice and a mechanism to address the challenged practices, and in *Gray* (Mot. at 23), through governing user terms that specifically disclosed the at-issue practice. *See RL Liquidators LLC v. Amazon.com Servs., LLC*, 2025 WL 2052611, at *7 (W.D. Wash. July 15, 2025); *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 852 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024). Here, Defendants' conduct was *never* adequately disclosed, leaving Plaintiffs without any "reason to anticipate their injury" or "means to avoid it[.]" *Contra* Mot. at 23.

### 2. Plaintiffs sufficiently pled injury.

Zillow contends Plaintiffs fail to allege injury because the complaint has a reference to increase of commissions being "to the detriment of sellers." Mot. at 23 (citing ¶317). This is a typo; as the rest of the complaint makes clear, increases in commission cause a higher price for *buyers* (and perhaps sellers as well).[6] *See* ¶¶313 (steering caused "consumers to be steered into higher-cost mortgage products, pay inflated interest rates and fees, ad lose access to lower-cost or

---

[6] *See Gleason v. Orth*, 2022 WL 4534405, at *9 (W.D. Wash. Sept. 28, 2022) (looking to the substance of the complaint to apply the correct statutory provisions despite typographical errors in statutory citations).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

more suitable loan options.), 323–326 (describing injury proximately caused by Defendants' conduct violating WCPA, including that "Plaintiffs and the other Class members paid inflated commissions and related fees when purchasing their homes."). Zillow inexplicably fails to address those allegations.

Zillow's cited cases offer no support for its position, because they involve cases with no injury at all. Mot. at 23; *see Demopolis v. Galvin*, 57 Wash. App. 47, 54 (1990) (no injury when plaintiff paid prevailing interest rate); *Douglass v. Bank of Am. Corp.*, 2013 WL 2245092 (E.D. Wash. May 21, 2013) (plaintiff failed to allege any basis for relief). Here, Plaintiffs easily establish that their financial injury is more than "minimal." *Panag*, 166 Wash. 2d at 57 ("[T]he [WCPA] injury requirement is met upon proof of the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'"). By claiming no injury, Zillow is improperly disregarding Plaintiffs' allegations.

**D.      Plaintiffs Sufficiently Allege RICO Claim.**

**1.      Plaintiffs allege "racketeering."**

Zillow lists several alleged deficiencies with Plaintiffs' RICO claim, but provides no context or meaningful discussion on how Plaintiffs' allegations are deficient. Mot. at 23–27.

For example, Zillow contends vaguely that Plaintiffs failed to allege a scheme to defraud, but does not explain why Plaintiffs' detailed allegations were insufficient. Zillow cites *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 2009 WL 10677052 (W.D. Wash. Sept. 30, 2009) (Mot. at 24), but that case involved mere assertions of fraud—a far cry from Plaintiffs' detailed allegations, spread throughout the 100-page complaint. *See* ¶¶239–254 (detailing scheme to fraud).

Zillow also asserts Plaintiffs failed to allege a duty to disclose. Mot. at 24. This is a remarkable admission that Zillow and the agents do not have to disclose the availability of more affordable loans for the home buyers. This is the question at the heart of this case, and it is well-pled in the CCAC. *See, e.g.*, ¶¶327–334 (breach of fiduciary claim), 319 (Zillow had duty to disclose based on its "exclusive knowledge" and "intentional conceal[ment]" of its fraud).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Zillow also argues that there were no "specific allegations regarding use of mails or wires." Mot. at 24–25. Plaintiffs do allege specific use of mail and wire. ¶246. Zillow relies on an out-of-circuit case from over 30 years ago, while neglecting controlling authority in this District, which makes clear that "[t]he only aspects of mail and wire fraud that require particularized allegations are the factual circumstances of the fraud itself." *Stillaguamish Tribe of Indians v. Nelson*, 2012 WL 13028100, at *3 (W.D. Wash. July 24, 2012) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007)).

Zillow also claims that Plaintiffs' allegations include "innocuous conduct" involving the mail and wires. Mot. at 25. Again, Zillow ignores controlling Ninth Circuit precedent, which holds that "[i]f a scheme is devised with the intent to defraud, and the mails are used in executing the scheme, *the fact that there is no misrepresentation of a single existing fact is immaterial*. It is only necessary to prove that it is a scheme reasonably calculated to deceive, and that the mail service of the United States was used and intended to be used in the execution of the scheme." *Woods*, 335 F.3d at 998 (emphasis added). Zillow ignores this precedent entirely.[7] Plaintiffs allege specific mailings and wires, consistent with the caselaw. ¶247(a)–(k) (identifying wire and mail communications for each Plaintiff).

Zillow next contends Plaintiffs admitted Zillow did not use wire or mail communications because Defendants "specifically avoided" their use, since Zillow met in private with Zillow-Affiliated Agents to prevent their communications from being in writing. Mot. at 25. This is another remarkable concession regarding the concealment of the fraudulent scheme, but also irrelevant when Plaintiffs allege (and Zillow does not deny) that wire and mail communications were involved. No party in this case was transmitting messages via carrier pigeon.[8]

---

[7] Zillow relies on *Farmer v. Countrywide Financial Corp.*, but *Farmer* involved the mere assertion of the use of mail and wires, without more. 2009 WL 1530973, at *4 (C.D. Cal. May 18, 2009).

[8] Zillow claims that communications "with buyers" were not hidden, but this misstates Plaintiffs' allegations that Zillow was having secret meetings with *agents*, not buyers. *See, e.g.*, ¶ 76.

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 21
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Finally, Zillow argues that Plaintiffs failed to allege intent to defraud because Zillow purportedly disclosures "refute intent." Mot. at 26. As with the WCPA claim, this is a mere factual assertion that does not provide a basis for dismissal. And key aspects of the fraud, like the requirement that agents steer clients to ZHL or risk expulsion from the program, were not disclosed at all. *See, e.g.*, ¶¶153, 232, 304. Plaintiffs' fraud theory is not based on Plaintiffs' "subjective beliefs," as Zillow contends (Mot at 26), but instead rests on its entire operation and intent to deprive home buyers of honest and objective advice, to their detriment. Zillow's entire model is built on fraud. *See* ¶2.

### 2.    Plaintiffs allege an association-in-fact and RICO conspiracy.

Zillow adopts by reference the Real Estate Defendants' argument regarding the "association in fact" RICO allegations. Mot. at 26–27. Plaintiffs likewise incorporate by reference their response. Zillow also urges dismissal of the RICO conspiracy claim based on a purported failure to adequately allege RICO. As explained in Plaintiffs' response to the Real Estate Defendants, this is incorrect; a party can be liable for a conspiracy without committing the underlying offense. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself."). Zillow does not dispute the existence of an illegal agreement.

### E.    Plaintiffs Plausibly Allege Zillow's Aiding and Abetting of Brokers' Breaches of Duties Owed to Buyers (Count VI).

Plaintiffs adequately plead that Zillow knowingly aided and abetted breaches of duties owed by buyers' agents by alleging (1) underlying breaches by the Real Estate Defendants and Zillow-Affiliated Agents, (2) Zillow's knowledge of those duties and breaches, and (3) Zillow's substantial assistance.

Zillow's argument, that the claim fails because Plaintiffs use the term "fiduciary duty" rather than "statutory duty," elevates form over substance because statutes simply codify the fiduciary duties. As alleged, the duties at issue—honesty, fair dealing, disclosure of material facts, and the obligation to provide conflict-free, client-first advice—are materially the same whether



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

framed as common-law fiduciary duties or codified statutory obligations. Defendants are on clear notice of the applicable duties at stake and the conduct at issue. *See Shahbazian Family Trust O'Neil*, 2017 WL 2964821, at *10 (W.D. Wash. July 12, 2017) (identifying duties defendants violated sufficient for notice, even though plaintiffs did not cite the applicable statutes).[9]

Plaintiffs plausibly allege underlying breaches of these duties with detailed allegations, including that Zillow-Affiliated Agents operated under undisclosed financial incentives tied to Zillow's lead-generation and mortgage-referral programs and, as a result, steered buyers; withheld or skewed information about financing alternatives and assistance programs; discouraged direct communication with listing agents; and permitted Zillow's tools to interfere with confidential client communications. ¶¶332–333, 340. The Real Estate Defendants engaged in this conduct, and knowingly authorized, supervised, and profited from it, despite understanding that it created undisclosed conflicts and undermined their agents' duties of loyalty, disclosure, and independent judgment. ¶¶330–333, 341. These allegations are far from "threadbare" pleadings. *Contra* Mot. at 28 (citing *Han v. Nationstar Mortg. LLC*, 2015 WL 7758552, at *3 (W.D. Wash. Dec. 1, 2015) (dismissing claim where court could not even "determine the nature of" the claims)).

Plaintiffs also plausibly allege Zillow's knowledge and substantial assistance. Plaintiffs allege Zillow understood agents' duties—including through its own policies and representations—yet designed, controlled, and enforced the systems and programs that placed agents in conflict with those obligations. *See, e.g.*, ¶¶336–338, 342–344. These allegations support a reasonable inference that Zillow knowingly provided substantial assistance and encouragement to the underlying breaches. Rule 9(b) does not require particularized pleading of knowledge, and Zillow's acknowledgment of agents' duties reinforces—rather than negates—the plausibility that it had knowledge of the conflicts its programs created.

## F.    Plaintiffs Plausibly Allege Unjust Enrichment (Count VII).

Defendants' arguments against Plaintiffs' unjust enrichment claims are unpersuasive.

---

[9] Zillow's reliance on *Nau v. Vogel* is misplaced, as that court affirmed summary judgment based on a failure of proof, not a failure to plead. 2021 WL 4520076, at *7 (Wash. Ct. App. Oct. 4, 2021).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

First, Zillow's argument that unjust enrichment is unavailable where a valid express contract governs the subject matter fails because, even if the Court could take judicial notice of the terms of use,[10] it cannot decide as a matter of law that those terms are enforceable. And Plaintiffs allege Zillow's entire compensation scheme is illegal, which invalidates an otherwise enforceable contract. *See Taie v. Ten Bridges LLC*, 568 F. Supp. 3d 1126, 1132–33 (W.D. Wash. 2021) (upholding unjust enrichment claim where contract violated Washington statute). Defendants' cited cases are inapplicable because they hinged on plaintiffs' failure to plead the contracts were invalid.[11]

Second, *Nienaber v. Overlake Hospital Medical Center* does not support Defendants' claim that 9(b) applies (Mot. at 28); it simply held plaintiffs failed to allege harm. 733 F. Supp. 3d 1072, 1093–94 (W.D. Wash. 2024). Plaintiffs' claims about the "Hidden Zillow Fees" and "Premium Fees" are well defined—with Hidden Zillow Fees referring to Zillow's practice of forcing Flex agents to pay 40% of their commission to Zillow, ¶¶6, 69, and Premium Fees encompassing both the Hidden Zillow Fees and the referral payments by Premium Agents. ¶347.

## G.    Plaintiffs' Claims are Timely.

Zillow argues that several of Plaintiffs' claims are time-barred because the alleged injuries occurred, if at all, on "the date[s] of their home purchases." Mot. at 11–13. Even assuming the limitations periods would begin to run at closing, Plaintiffs plausibly allege delayed discovery and fraudulent concealment sufficient to equitably toll those periods, as is allowed for each claim. ¶¶210–212. *See* Wash. Rev. Code § 4.16.080(4) (fraud claim accrues only when the aggrieved party discovers or reasonably could have discovered the facts constituting the fraud); *Merritt*, 759 F.3d at 1040 (RESPA limitations period may be equitably tolled "until the borrower discovers or had reasonable opportunity to discover' the violation.'"); *Nikolich v. Progressive Cas. Ins. Co.*,

---

[10] Plaintiffs oppose Zillow's Request for Judicial Notice, for reasons set forth in their response, incorporated by reference herein.

[11] *See* Mot. at 12 (citing *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1187 (W.D. Wash. 2010) (dismissing unjust enrichment claim where plaintiff did not plead unenforceability)); *In re Amazon Serv. Fee Litig.*, 705 F. Supp. 3d 1255, 1270 (W.D. Wash. 2023) (dismissing unjust enrichment claim where validity of contract was not in dispute)).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

2026 WL 445566, at *1 (W.D. Wash. Feb. 17, 2026) (civil RICO claims accrue under the "injury discovery" rule: the limitations period begins when a plaintiff is on notice of the injury underlying the claim).

To plead equitable tolling based on concealment, a plaintiff must allege that the defendant actively misled the plaintiff and that the plaintiff lacked actual or constructive knowledge of the facts constituting the claim despite the exercise of due diligence. *Evans v. Arizona Cardinals Football Club, LLC*, 761 F. App'x 701, 703–04 (9th Cir. 2019). As this Court has explained, equitable tolling "focuses on excusable delay by the plaintiff" and asks whether a reasonable plaintiff would have discovered the possible claim within the limitations period. *Guketlov v. HomeKey Mortg., LLC*, 2009 WL 3785575, at *3 (W.D. Wash. Nov. 9, 2009) (Robart, J.).

Plaintiffs plausibly allege that they did not discover—and could not reasonably have discovered—their injuries at closing. The structure of the challenged scheme only became publicly visible after investigative reporting by *The Capitol Forum* exposed Zillow's internal Flex program practices, which in turn prompted multiple whistleblowers to come forward with corroborating accounts of Zillow's steering requirements and enforcement mechanisms. *See, e.g.*, ¶¶87–89. Before those revelations, "[t]here was no reasonable way for the public, including Plaintiffs, to know that Zillow Flex agents were involved in their transactions" that those agents were required to pay Hidden Zillow Fees to Zillow, or that Zillow conditioned continued participation in its lead-distribution system on directing borrowers to ZHL—such that they would be on notice of their injury of inflated home prices and mortgage costs. ¶¶210–212. Instead, ordinary homebuyers, including Plaintiffs, reasonably relied on the advice of their buyer's agents—who owed duties of loyalty, disclosure, and client advocacy in residential real estate transactions—and had no reason to suspect that the advice they received, the lenders to whom they were steered, or the transaction costs they incurred were influenced by undisclosed financial obligations and steering benchmarks imposed by Zillow. ¶¶57–58, 117–118, 327–334. "When 'there is a fiduciary relationship, the usual duty of diligence to discover facts does not exist.'" *Jones v. Barrett*, 2024 WL 4142676, at

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*4 (S.D. Cal. Sept. 10, 2024) (citation omitted). Reliance on fiduciary agents under those circumstances constitutes reasonable diligence.

Plaintiffs also allege Zillow's deliberate efforts to prevent discovery of these practices. Confidential witnesses describe policies structured to avoid creating written records, including in-person quota instructions designed "to avoid putting anything in writing," undisclosed steering benchmarks, hidden transaction-linked compensation, and monitoring of agent communications through Zillow's internal systems. ¶10; *see* ¶¶119–189 (summarizing the accounts of confidential witnesses). Plaintiffs allege both that Zillow actively concealed the material facts underlying the scheme, and that those facts—and the resulting injuries—were not reasonably discoverable by Plaintiffs despite ordinary diligence. At the pleading stage, that is more than sufficient to support fraudulent-concealment tolling.

Zillow argues that Plaintiffs should have discovered their claims earlier based on the "Terms of Use" and other disclosures. Mot. at 13. As explained in Plaintiffs' Opposition to Zillow's Request for Judicial Notice, the Court should not consider those documents for the truth of the matters Zillow asserts, and it cannot assume at the pleading stage that Plaintiffs saw, read, or were bound by them. Zillow's argument therefore rests on factual premises that cannot be resolved on a motion to dismiss.

Even putting those defects aside, the cited materials would not establish that a reasonable consumer would have discovered the specific injuries alleged here. Zillow cites *Escue v. United Wholesale Mortgage, LLC* in support, but there, the alleged "concealed" broker agreement had been publicly disclosed through press releases and website statements describing the program's requirements. 2025 WL 2807314, at *20 (E.D. Mich. Sept. 30, 2025). Here, by contrast, Plaintiffs allege that the information that could have put consumers on notice of their injuries—such as the mechanics of the Flex referral system and Zillow's internal steering requirements—were never publicly disclosed. Generalized statements that Zillow may receive compensation or may connect users with affiliated providers do not disclose the material facts or otherwise place consumers on notice of the resulting injuries—particularly when they are buried in miniscule type. At minimum,

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

this presents a fact-intensive question that cannot be resolved on a motion to dismiss. *Guketlov*, 2009 WL 3785575, at *3.

Nor does Plaintiff Silva's decision to use another lender defeat the claim. Section 2607(a) prohibits giving or accepting things of value pursuant to an agreement that settlement-service business "shall be referred[.]" 12 U.S.C. § 2607(a). The violation arises from the referral arrangement itself; the statute does not require that the borrower ultimately close the loan with the referred provider, and Zillow does not cite any authority to support that inference. And Silva still alleges that Zillow's practices influenced his transaction and caused him to incur charges in connection with his home purchase. ¶26.

## V.    CONCLUSION

Zillow's motion to dismiss should be denied.

I hereby certify that this memorandum contains 9,201 words, including words found in images, in accordance with the Local Civil Rules and this Court's Order dated January 26, 2026 (Dkt. No. 61).

DATED this 27th day of March, 2026.        Respectfully submitted,

By: */s/ Steve W. Berman*
        Steve W. Berman (WSBA No. 12536)
By: */s/ Jerrod C. Patterson*
        Jerrod C. Patterson (WSBA No. 43325)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
        jerrodp@hbsslaw.com

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 27
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

By: /s/ Adam J. Levitt

Adam J. Levitt, *admitted pro hac vice*
Amy E. Keller, *admitted pro hac vice*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dicellolevitt.com
        akeller@dicellolevitt.com

Corban S. Rhodes, *admitted pro hac vice*
Emma Bruder, *admitted pro hac vice*
**DiCELLO LEVITT LLP**
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
Email: crhodes@dicellolevitt.com
        ebruder@dicellolevitt.com

*Plaintiffs' Interim Class Counsel*

Douglas J. McNamara, *admitted pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Email: dmcnamara@cohenmilstein.com

Theodore J. Leopold*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Email: tleopold@cohenmilstein.com

Jason T. Dennett, WSBA #30686
Rebecca L. Solomon, WSBA #51520
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Email: jdennett@tousley.com
        rsolomon@tousley.com

*Pro hac vice application forthcoming

*Attorneys for Plaintiffs and the Proposed Classes*

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 28
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on March 27, 2026. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: March 27, 2026

/s/ *Steve W. Berman*
Steve W. Berman

PLS.' OPP. TO ZILLOW DEFS.'
MOT. TO DISMISS - 29
(CASE NO. 2:25-CV-01818-JLR)
011313-11/3505671 V3



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX