The Honorable James L. Robart

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

ALUCARD TAYLOR*, et. al.*, individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ZILLOW, INC., *et. al.*,

Defendants.

Case No. 2:25-cv-01818-JLR

**PLAINTIFFS' OPPOSITION TO REAL ESTATE DEFENDANTS' MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
Friday, April 17, 2026

ORAL ARGUMENT REQUESTED

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL ALLEGATIONS ..................................................................................... 2

     A.      Plaintiff-Specific Allegations.......................................................................... 2

     B.      Defendants' Fraudulent Scheme ...................................................................... 3

     C.      Defendants' Steering Scheme .......................................................................... 4

     D.      Plaintiffs' Breach of Fiduciary Duty Allegations ........................................... 5

     E.      Zillow's post-filing statements to Defendants confirm their close partnerships. ................................................................................................... 9

III.    ARGUMENT............................................................................................................. 9

     A.      Legal Standard ................................................................................................. 9

     B.      Plaintiffs Sufficiently Allege Their RICO Claim. ........................................ 10

          1.      Plaintiffs sufficiently plead all RICO elements. ............................... 10

          2.      Defendants' RICO arguments fail. .................................................... 12

               a.      Plaintiffs sufficiently pled a pattern of racketeering activity................................................................................ 12

               b.      Plaintiffs plausibly allege an enterprise. ..................................... 14

               c.      Plaintiffs allege proximate harm. ................................................ 15

          3.      Plaintiffs plausibly allege conspiracy. .............................................. 16

     C.      Plaintiffs Plausibly Pled Breach of Fiduciary Duty. ..................................... 17

     D.      The CCAC Plausibly Alleges Aiding and Abetting Breach of Fiduciary Duty. ............................................................................................... 18

     E.      This Court Has Personal Jurisdiction Over the Defendants............................ 20

     F.      Plaintiff Liao's Claims Are Not Barred By The Statutes Of Limitations. .................................................................................................... 21

IV.     CONCLUSION........................................................................................................ 23





DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................9

*Beasley v. Wells Fargo Bank, NA*,
  2022 WL 267478 (M.D. Fla. Jan. 28, 2022)........................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................9

*Blaylock v. First Am. Title Ins. Co.*,
  504 F. Supp. 2d 1091 (W.D. Wash. 2007)...........................................................22

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)........................................................................................1, 13

*Cannon v. Wells Fargo Bank, N.A.*,
  2014 WL 324556 (N.D. Cal. Jan. 29, 2014) ................................................. *passim*

*Canyon Cty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ...............................................................................15

*Chagby v. Target Corp.*,
  358 F. App'x 805 (9th Cir. 2009) ........................................................................15

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) .........................................................................13, 17

*In re Consol. Meridian Funds*,
  485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................................................20

*Doan v. Singh*,
  617 F. App'x 684 (9th Cir. 2015) ........................................................................15

*E.W. French & Sons, Inc. v. Gen. Portland Inc.*,
  885 F.2d 1392 (9th Cir. 1989) ..........................................................................2, 22

*Erickson v. Chase*,
  2022 WL 3022137 (E.D. Wash. July 30, 2022)....................................................15

*Facebook, Inc. v. MaxBounty, Inc.*,
  274 F.R.D. 279 (N.D. Cal. 2011)..........................................................................20

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................................20

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*In re Galena Biopharma, Inc. Derivative Litigation*,
    83 F. Supp. 3d 1047 (D. Or. 2015) (*see* Mot. ) ...........................................................................17

*Kjellander v. Abbott*,
    199 So. 3d 1129 (Fla. Dist. Ct. App. 2016) ...........................................................................17

*Klasch v. Walgreen Co.*,
    264 P.3d 1155 (Nev. 2011) ...........................................................................................2, 18

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ...................................................................................15

*Limcaco v. Wynn*,
    2023 WL 154965 (9th Cir. Jan. 11, 2023) .............................................................................21

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
    431 F.3d 353 (9th Cir. 2005) .....................................................................................................12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ....................................................................................................9

*Med. Marijuana, Inc. v. Horn*,
    604 U.S. 593 (2025)...................................................................................................................15

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ....................................................................................................13

*Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*,
    781 F. Supp. 2d 1098 (W.D. Wash. 2011)...............................................................................12

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Housing Inst., LLC*,
    2008 WL 269080 (E.D. Cal. Jan. 29, 2008) ...........................................................................13

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    163 F. Supp. 2d 1268 (D. Or. 2001) ........................................................................................16

*Salinas v. United States*,
    522 U.S. 52 (1997)....................................................................................................................16

*Schricker v. Schricker*,
    569 P.3d 214 (Nev. Ct. App. 2025) ....................................................................................17, 18

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985)..................................................................................................................10

*Shaw v. Nissan North America Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) ...................................................................................14

*Swartz v. Deutsche Bank*,
    2008 WL 1968948 (W.D. Wash. May 2, 2008)......................................................................20

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Tucker v. BMW of N. Am. LLC*,
No. C20-5050 BHS, 2020 WL 5701844 (W.D. Wash. Sept. 24, 2020) ..................................21

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ..........................................................................................14

*United States v. Dorsey*,
2009 WL 959324 (W.D. Wash. Apr. 6, 2009)..................................................................16

*Woodell v. Expedia Inc.*,
2019 WL 3287896 (W.D. Wash. July 22, 2019) .......................................................1, 13, 14

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 626 (C.D. Cal. 2022) ............................................................................14

**STATUTES**

18 U.S.C. § 1962(d) ......................................................................................................16

Fla. Stat. § 475.278(2)(a) ..............................................................................................17

Nev. Rev. Stat. § 645.252(1)(a) ......................................................................................17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(k)(1)...................................................................................................20

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - iv
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# I.    INTRODUCTION

The Real Estate Defendants ("Defendants") fail to adequately challenge Plaintiffs' allegations that Zillow trains Zillow-Affiliated Agents to trick home buyers into touring homes and requires them to steer clients to Zillow Home Loans, which offer more expensive and costly loan packages. And Defendants do not deny that they—along with other Zillow-Affiliated Agents—are required to pay up to 40% of their commissions to Zillow, which is not disclosed to the homebuyers. Instead, Defendants' motion to dismiss[1] attempts to isolate their conduct from the broader scheme, and mischaracterize detailed factual allegations as insufficient. They also suggest that, even if these allegations *were* true, they have no obligation to be candid and honest with their clients. *See* Mot. at 16–19.

These assertions are clearly false and lack support. Their legal arguments likewise are unpersuasive:

***First***, Plaintiffs' RICO claim is well-suited for this case. Plaintiffs plead wrongdoing and deception by otherwise "legitimate" entities that seek to steer homebuyers into purchasing inferior and costly mortgages. *See infra* § III.B. Defendants rely heavily on this Court's decision in *Woodell v. Expedia Inc.*, 2019 WL 3287896 (W.D. Wash. July 22, 2019).  Yet plaintiffs in *Woodell* alleged "nothing more than legitimate business conduct" by the defendants. *Id.* at *9. Here, Plaintiffs have alleged that Defendants breached their duties by, *inter alia*, failing to disclose hidden kickbacks to Zillow and steering clients towards unfavorable loans. And Defendants' assertion that Plaintiffs must allege the specific mailings and wires were fraudulent ignores established precedent. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) ("The gravamen of the offense is the scheme to defraud, and any mailing incident to an essential part of the scheme satisfies the mailing element, even if the mailing contains no false information." (cleaned up)).

***Second***, Defendants claim their conduct did not breach any duty to their clients. Yet Nevada and Florida impose obligations of honesty and candor on real estate agents, and Zillow's steering scheme *relies on* the willingness of the Zillow-Affiliated Agents—including Defendants—to violate

---

[1] *See* Real Estate Defendants' Motion to Dismiss, Dkt. No. 67 ("Mot.").

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 1
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

these duties. *See infra* § II.D. Defendants again deny these allegations, but resolution of this question is a matter for the jury. *See Klasch v. Walgreen Co.*, 264 P.3d 1155, 1161 (Nev. 2011) ("Breach of duty and causation are classically questions of fact.").

**Third**, Plaintiff Liao's claims are tolled through the fraudulent concealment of the steering scheme by Defendants and Zillow.  Among other acts of concealment, Zillow personnel fly out to meet with Zillow-Affiliated Agents  to avoid putting anything in writing about the steering scheme. *See E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1400 (9th Cir. 1989) (secretive meeting supports fraudulent concealment claims). Given these facts, Plaintiff Liao could not have reasonably learned about the Defendants' conduct until this litigation came to light.

Defendants' motion to dismiss should be denied.

## II.    FACTUAL ALLEGATIONS

### A.    Plaintiff-Specific Allegations

The CCAC alleges Zillow-Affiliated Agents[2] worked in tandem with Zillow to illegally steer business to Zillow Home Loans in exchange for continued "leads" from prospective home buyers. In exchange, Zillow-Affiliated Agents agreed to pay Zillow up to 40% of their commissions and steer clients to Zillow Home Loans. ¶¶9–11.[3] Defendants engaged in this conduct with respect to Plaintiff David Liao and Plaintiff John Cady. ¶¶38, 40.

Plaintiff Liao used a Zillow preferred agent identified as "V.P.," who works for the George Kypreos Team, owned by Defendant GK Properties. ¶38. Plaintiff Liao bought a property in Las Vegas and used Zillow Home Loans to finance and close on the purchase. ¶22. Prior to purchasing his home on February 12, 2021, "Plaintiff Liao accessed Zillow.com, viewed a residential listing, and was routed by Zillow to V.P." ¶247(a). According to the CCAC, "V.P. did not disclose the Hidden Zillow Fees to Plaintiff [Liao],[4] and these fees inflated the commissions and the cost of the property that Plaintiff Liao had to pay." ¶22.

---

[2] For purposes of this Opposition, "Zillow-Affiliated Agents" means any real estate agent, team of agents, or brokerage that participates in, receives leads from, or is subject to performance standards, compensation arrangements, or monitoring through Zillow's Premier Agent program, Flex program, or any successor or related program on behalf of Zillow.

[3] Citations to "¶__" are to the Consolidated Amended Class Action Complaint, Dkt. No. 45.

[4] The CCAC inadvertently misidentifies Plaintiff Liao as Plaintiff Zheng.

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 2
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Plaintiff Cady used a Zillow preferred agent identified as "E.L.," who works for Defendant Frano Team, owned by Defendant Real Broker, LLC. ¶¶28, 39–40. Plaintiff Cady bought a property in Melbourne, Florida. ¶28. Prior to his purchase on September 29, 2025, "Plaintiff Cady was browsing Zillow.com to look for houses and identified a house that interested him. He clicked on the 'Contact Agent' button, which the intent of contacting the seller's agent directly." ¶28. According to the CCAC, "[h]e wanted to contact the seller's agent directly to avoid paying buyer agent commissions, which would reduce the overall price he would pay." ¶28. Plaintiff Cady's agent, E.L., "did not disclose the Hidden Zillow Fees to Plaintiff Cady, and these fees inflated the commissions and the cost of the property that Plaintiff Cady had to pay." ¶28. Plaintiff Cady brings all claims except Count II against the Zillow and Defendants on behalf of the Class.

Collectively, "V.P." and "E.L." are referred to herein as "Defendants' Agents."

**B.    Defendants' Fraudulent Scheme**

Zillow operates the most visited residential real estate website in the United States, and controls about two thirds of all online home-listing traffic. ¶3. To generate revenue from this traffic, Zillow captures interested buyers by featuring two large buttons at the top of the page, right under the pictures of the home. ¶102. These buttons state "Request A Tour" or "Contact agent."

By clicking the "Contact Agent" button, the prospective buyer naturally believes that she is contacting the *listing* agent, not a prospective buyer's agent that she has never met. ¶102. Similarly, a buyer would reasonably believe that the "Request a tour" button would take them to the listing agent, because the listing agent has to consent to a tour of the home. ¶103. The purpose of this deception is to immediately connect buyers to a Zillow-Affiliated Agent—including the Defendants' Agents—who do not readily disclose that they are not the seller's agent. ¶112. These agents (including the Defendants' Agents) then push buyers into signing a "Touring Agreement," which purports to be "free." ¶104. But this agreement is created to make clients feel like they have no viable option other than using a Zillow-Affiliated Agents to purchase a home. ¶¶106, 108.

Upon closing of the property, Defendants' Agents are required to pay back a substantial portion (up to 40%) of their commission back to Zillow (the "Zillow Hidden Fees"), which is never



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

disclosed to the buyer. As recounted above, Defendants' Agents never disclosed the Zillow Hidden Fees to Plaintiffs Liao and Cady.

Current and former Flex "preferred agents," and bank loan officers, have confirmed that Zillow's policy of tricking buyers is intentional and calculated:

- Confidential Agent ("CA") 2 stated that prospective buyers on the Zillow website have "no idea" that they are not connecting with the listing agent. In flex training programs, Zillow personnel encouraged agents not to reveal they are the buyer agents until they get them face-to-face in a house. ¶129. These Zillow preferred agents are often new and completely inexperienced in real estate. ¶130.

- CA5 stated that many home buyers are caught off guard when meeting with the Zillow Flex agents because they did not know they had contacted a buyer's agent (and not a seller's agent). Zillow trained agents to avoid any conversation on the phone call about whether they are the seller's agent. ¶142.

- CA6, a current Flex agent, stated that Zillow coaches agents on what to say, including not volunteering during the first phone call that the Zillow agent is a buyer's agent (and not the listing agent), and to tell clients that it is not in their best interest to contact the seller's agent directly. ¶149.

- CA9 stated that potential buyers are being duped into signing an agreement with a buyer's agent, before seeing the property, which means the buyers are locked into using the first agent they signed up with and believe that agent was the listing agent. ¶165.

- CA10 stated that nearly all the customers who contacted an agent through Zillow.com thought the Flex agents were the listing agent, based on the design of the app and the website. ¶167.

## C.  Defendants' Steering Scheme

Defendants attempt to recast the CCAC as advancing two isolated "theories"—a "Contact Agent" theory and a "Pre-Approval Letter" theory. Mot. at 4.  Not so: Plaintiffs allege a coordinated, vertically integrated system through which Zillow generated, routed, and conditioned buyer leads,



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

and Defendants actively participated in implementing that system at the brokerage and transaction level.

The CCAC alleges continued participation in the Flex program is conditioned on steering buyers to Zillow Home Loans ("ZHL"). *Id.* ¶¶9–10. Zillow-Affiliated Agents are required to meet ZHL pre-approval and loan "attach" benchmarks, and Zillow monitors compliance through internal systems such as "Follow-Up Boss." *Id.* Numerous confidential witnesses describe in-person quota instructions and enforcement mechanisms designed to avoid written documentation, and discipline Zillow-Affiliated Agents who recommend competing lenders. *Id.*

Within this broader steering architecture, pre-approval letters function as one step in a much larger process—not a standalone theory of harm. Zillow incentivizes or pressures Zillow-Affiliated Agents to obtain ZHL pre-approval letters early in the buying process, channeling buyers into Zillow's mortgage funnel before they meaningfully evaluate competing lenders. *Id.* Although styled as "free" and "no obligation," these pre-approval letters advance Zillow's steering benchmarks and increase the likelihood that buyers ultimately use ZHL. *Id.* The injury alleged is not the receipt of a pre-approval letter, but that "Plaintiffs and Class Members paid more for mortgage credit than they otherwise would have, lost access to competing loan programs and favorable terms, and were deprived of the independent advice that state and federal law require in residential real estate transactions." *Id.* ¶99.

## D.    Plaintiffs' Breach of Fiduciary Duty Allegations

The CCAC alleges "[r]eal estate agents are state-licensed professionals who are obligated by law and professional ethics to act in their clients' interests. Licensed agents must complete required education, pass state examinations, and comply with state licensing laws that recognize their fiduciary duties of loyalty and full disclose to their clients." ¶57. In Washington State, for example, real estate agents must complete 90 hours of pre-licensing courses, pass the state licensing exam, and complete at least 30 hours of CLEs every two years. ¶57. (This is the same annual requirement for Washington state attorneys.)



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Zillow's own website, targeted to the Zillow-Affiliated Agents, states "[w]e strongly believe in the value of independent representation: Buyers and sellers deserve to work with an agent who is committed to their best interests and only represents them." ¶116.

The violation of the agents' basic duties of fairness and honesty is corroborated multiple times over by confidential witnesses. CA1 "was deeply uncomfortable with steering buyers to Zillow Home Loans, which CA1 believed were more expensive and not beneficial to the buyers." ¶126. According to CA3, "Zillow is steering customers to Zillow Home Loans, with consistent threats to drop agents from the Flex program if they do not meet certain quotas. Through ZHL, buyers are paying more at the back end, at closing, than other loan programs." ¶134.

CA5 reports that, "beginning in 2022, Zillow has been adamant that agents should send leads to Zillow Home Loans." CA5 believed that this practice violates RESPA, and believed "that the pressure to steer clients to ZHL violated CA5's fiduciary duties and, as a result, CA5 quit the Flex program." ¶144. Similarly, accordingly to CA6, "although Zillow does not put it in writing, Zillow's representatives tell agents in the Zillow Flex and Premier programs that they need to steer clients to Zillow Home Loans, and that the more clients agents steer to Zillow Home Loans, the better their leads will be." ¶147.

According to CA7, "the large commissions paid to Zillow are hurting home buyers, because the agents have no flexibility to agree to a lower commission. The $5,000 to $15,000 that could be shaved off the purchase price can often make the difference between getting the house or losing it to another buyer." ¶155. In addition, according to CA7, "none of these buyers would use these agents if they knew they were paying this referral—they would instead contact the seller agent directly or use another agent. The large commissions paid to Zillow put the buyers at a distinct disadvantage when trying to buy a house."

CA8 provided a script that the Zillow preferred agents are expected to follow, which flat-out tells agents to lie to their clients if the agents are pressed on whether Zillow Home Loans provides the same packages as other mortgage brokers: (¶164):



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

> - #3. What if they need a DPA product, VA loan or jumbo product?
>   - Inform them that Zillow Home Loans offers a variety of competitive products for all client needs. Let them know you will connect them with your dedicated loan officer who will walk them through their loan options and pre-approval steps.

This statement is a lie. Zillow Home Loans "does not participate in or disclose the existence of Down Payment Assistance Programs." ¶172. It does not offer VA loans or other "non-conforming or specialized loan products." ¶173–174; *see also* ¶¶77–78. Nor does it offer jumbo loans. ¶180.

According to CA10, "Flex agents are pushed aggressively by Zillow to use ZHL, and—if agents do not steer clients to ZHL—they will receive fewer leads or be cut from the program." ¶168 Confidential Loan Officer 2 ("LO2") notes that Zillow's website tricks clients into expressing an interest in financing because the "interested in financing" box is pre-checked. According to LO2, "Flex agents tell these buyers that the agents have no choice but to refer them to Zillow Home Loans because the buyers did not uncheck the pre-checked box—a directly acknowledgement that the agents are steering potential buyers to Zillow Home Loans." ¶182.

Other real estate professionals have gone public with their concerns. Real estate agent and commentator Jared James noted that he receives numerous comments from other agents, and even the 10% pre-approval requirement is not the end of what is expected, because "behind the scenes they're telling them no, if you—if you don't close with us—if a certain percent do not close with us then you're getting downgraded. Like there's a whole system, you know, green yellow red, like you will be downgraded green yellow red." ¶74; *see also* ¶72:



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

| Performance Metric | | Performance Rating | | |
|---|---|---|---|---|
| Performance Metric: Fulfilled customer request for ZHL information / Successfully closed Flex home purchase | | **Poor** < 75% | **Moderate** 75-99% | **Strong** >= 100% |
| Performance Rating | **Poor** < 10% | Eligible for Disengagement | Eligible for Disengagement | Decrease |
| | **Moderate** 11-19% | Eligible for Disengagement | Decrease | Eligible to Grow |
| | **Strong** >= 20% | Decrease | Eligible to Grow | Eligible to Grow |

According to James, Zillow reps are flying out to deliver these messages in person, and "this is where this gets really dirty," because the Zillow reps are saying "I know that we have to put in writing, it's 10%. But I'm telling you now in this area, **this is a competitive area, it needs to be 50%**. Or the leads are going to someone else. . . . Now, that is clearly not allowed." ¶83 (citation modified). The Zillow reps are now even "bypassing the team lead and going straight to the agents and chastising them and training them on how not to recommend other lenders." ¶84

In addition, LO2 notes that Zillow requires Zillow-affiliated agents to use a Customer Relationship Management software called Follow-Up Boss. ¶184. According to LO2, "Zillow uses the Follow-Up Boss app and software to actively monitor the Zillow Flex Agents, to make sure that they are following the scripts and rules that Zillow imposes." ¶184; *see also* ¶89. Follow-Up Boss tracks and captures agents' communications with their clients, including phone calls and text messages. ¶184. According to LO2, "this is a violation of an agent's fiduciary duty to his/her clients to keep this information confidential. Zillow is not the agent and should not be privy to the clients' confidential information. The Follow-Up Boss also only offers Zillow Home Loans as an option for a buyer looking for financing. ¶184.

Further reporting, citing in the CCAC, notes that the Zillow platform "has immense ability to monitor how they do their jobs. Agents must take calls and manage their clients through the Zillow app or Zillow-owned Follow Up Boss, a customer relations management app." ¶89. According to



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

this reporting, "[a]gents said that through these apps Zillow records their phone calls and rates them on metrics like how quickly they start reciting a script provided by Zillow." ¶89.

### E.    Zillow's post-filing statements to Defendants confirm their close partnerships.

On November 19, 2025, Plaintiffs filed an Amended Class Action Complaint, which added claims against the Defendants. *See* ECF No. 15. Two weeks later, in a remarkable concession, Zillow released a statement from Zuhairah Washington, its Senior Vice President, addressed to its "Zillow Preferred Partners" to assure them that "we value your partnership deeply, and we're committed to navigating this moment and whatever comes next—together." ¶195.

In an accompanying video, Ms. Washington stated "we've already connected with the name partners and will be supporting them through this process. ***And for any partner who is named in either of these suits, we plan to enter into a joint defense agreement***. We will vigorously defend against these claims." ¶196 (emphasis added). In closing, Ms. Washington stated "Thank you for your continued partnership." ¶196. Zillow is attempting to buy the acquiescence of Defendants so that they do not threaten Zillow's business model. All of the Real Estate Defendants are being represented by the same law firm, suggesting that Zillow's message to its partners was received and a joint defense agreement has been enacted. ¶196.

### III.    ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  And "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  A complaint must only state factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Defendants claim Plaintiffs allege only two transactions involving named Plaintiffs. Mot. at 3. This argument is nonsensical, as these transactions are merely *representative* of the class and are supported by detailed scheme allegations, confidential witness accounts, and uniform program requirements applicable to all Zillow-Affiliated Agents, including those operating under Defendants' supervision. *See* CCAC § IV.B., D., E.

## B.    Plaintiffs Sufficiently Allege Their RICO Claim.

The scope of "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985) (citation omitted) (quoting Pub. L. 91-452, § 904(a)). And "the statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Id*. In rejecting the appellate court's concern that RICO could be brought against "respected and legitimate 'enterprises,'" the Supreme Court pointedly noted that "Congress wanted to reach both 'legitimate' and 'illegitimate' enterprises." *Id.* at 499.

### 1.    Plaintiffs sufficiently plead all RICO elements.

Plaintiffs address Defendants' arguments on a point-by-point basis below. But Judge Chen's decision in *Cannon v. Wells Fargo Bank, N.A*., 2014 WL 324556 (N.D. Cal. Jan. 29, 2014), serves as a helpful blueprint for consideration of the RICO claim, particularly given its analogous facts.

In that case, plaintiffs obtained mortgages from Wells Fargo for their homes, but failed to obtain flood and hazard insurance. Wells Fargo accordingly charged Plaintiffs a fee for "force-placed insurance," and had entered into a "secret agreement" with American Security Insurance Company ("ASIC") providing that ASIC was the exclusive provider of force-placed insurance. *Id.* at *1. Pursuant to this secret agreement, ASIC paid a "kickback" to Wells Fargo Insurance ("WFI") of 10–20% of every force-placed insurance premium, and charged a multiple of the market rate for the insurance. *Id.* In other words, the defendants entered into a kickback scheme whereby plaintiffs were pushed to use ASIC, and ASIC paid back a kickback to WFI for the push. Plaintiffs accordingly brought a RICO claim against Wells Fargo, WFI, and ASIC.



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Unlike in this case, however, Wells Fargo had significant disclosures that the customers were paying more for force-placed insurance. Wells Fargo sent plaintiffs notices that "they had a right to purchase their own insurance and that the force-placed insurance will in nearly all instances be 'far more expensive' than policies Plaintiffs could obtain on their own, and stated, '***We strongly recommend that you obtain your own insurance***.'" *Id.* at *2. No such warning from the Defendants was forthcoming to home buyers here.

The court held the Wells Fargo plaintiffs plausibly pled a RICO claim, for the following reasons:

***First***, the Wells Fargo plaintiffs alleged a scheme to defraud because, although it disclosed WFI would receive a commission for assistance in obtaining the insurance, "there was nothing for WFI to assist and no 'commission' to be had, since there was already in place a master insurance policy." *Id.* at *2. Here, Defendants were paying *undisclosed* commissions back to Zillow, even as Zillow played no role in closing the real estate transaction. In addition, "Defendants' non-disclosure of the kickbacks may be a basis for the scheme to defraud" because "the Court previously found that Plaintiffs had plausibly alleged that Wells Fargo received a greater economic benefit than from a typical transaction, which may impose a fiduciary duty on Wells Fargo." *Id.* Similarly here, Defendants did not disclose even the *fact* of a kickback—let alone the amount of the kickback—and Defendants did not meet their fiduciary duty to disclose this to customers.

***Second***, the Wells Fargo plaintiffs adequately alleged the use of mail in furtherance of the scheme, because defendants mailed notices and letters regarding the force-placed insurance. *Id.* at *3. Plaintiffs make similar allegations here. *See* ¶247(a)–(k).

***Third***, the Wells Fargo plaintiffs plausibly alleged an intent to defraud because: (i) "it is plausible that Defendants intended Plaintiffs to believe that the 'commissions' were payment to WFI for its services;" and (ii) "it is plausible that they chose not to disclose that the commissions were 'kickbacks' because, otherwise, more borrowers, including Plaintiffs, would contest them, and fewer borrowers would pay for force-placed insurance." *Cannon*, 2014 WL 324556, at *3. Similarly,



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Plaintiffs here allege that home buyers would question and not want to pay the extra commissions to Zillow. ¶¶154, 193.

*Fourth*, the Wells Fargo plaintiffs adequately pled causation because "it is plausible that Plaintiffs would not have paid, or would have contested, the premiums for the force-placed insurance, if Defendants had disclosed that the premiums included unearned kickbacks rather than earned commissions." *Cannon*, 2014 WL 324556, at *3. This is precisely what Plaintiffs allege here. ¶¶154–155, 193, 304–305, 334.

*Fifth*, the Wells Fargo plaintiffs adequately alleged a RICO enterprise because the defendants acted as a "continuing unit" when they sought to increase and maximize each defendant's revenue "by forcing Plaintiffs and members of the Classes to pay artificially high inflated premiums . . . . The ongoing agreements show that the Defendants functioned as a 'continuing unit.'" *Cannon*, 2014 WL 324556, at *10–11. Plaintiffs, too, make substantially similar allegations. *See* ¶¶12, 217, 220–224, 227, 230.

### 2. Defendants' RICO arguments fail.[5]

#### a. Plaintiffs sufficiently pled a pattern of racketeering activity.

To plead a "pattern of racketeering activity" under RICO, Plaintiffs must allege at least two predicate criminal acts within a ten-year period that are related. *Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1110 (W.D. Wash. 2011). Plaintiffs have done so. *See* ¶¶239–254.

Defendants argue Plaintiffs did not allege the "'time, place, and manner' of any act of mail or wire fraud by a Real Estate Defendant." Mot. at 10. Defendants are mistaken; the CCAC specifies the mails and wires at issue, plausibly alleging repeated predicate acts constituting a pattern. *See* ¶247(a)–(k); *see also* ¶247 ("Each of the foregoing communications was transmitted via interstate wires and constituted a step in Defendants' scheme to route buyers through Zillow-controlled agent channels and, where applicable, to steer buyers toward Zillow Home Loans."). Defendants cannot

---

[5] The RICO elements are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

credibly dispute that they are on notice of the communications at issue. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) (Rule 9(b)'s purpose is to ensure adequate notice to defendants of their alleged conduct).

Yet Defendants claim that these allegations were not specific enough under Rule 9, citing *Woodell*. But *Woodell* did not rule on the adequacy of the wire or mail allegations at all, instead resting on the Court's finding that defendants engaged in "legitimate business conduct." 2019 WL 3287896, at *6.[6] Here, by contrast, the CCAC contains detailed and repeated allegations tying each category of defendant to the illegitimate scheme. *See, e.g.*, ¶¶226–260.

Defendants misstate the law for the mail and wire elements when they claim the mailings themselves have to be fraudulent. *See* Mot. at 11. This is incorrect, as "[t]he gravamen of the offense is the scheme to defraud, and any mailing incident to an essential part of the scheme satisfies the mailing element, even if the mailing contains no false information." *Bridge*, 553 U.S. at 647 (cleaned up)). Defendants themselves acknowledge that they engaged in mail and wire communications. Mot. at 11–12. That is all that is required to satisfy the wire/mail element.[7]

In a cursory fashion, Defendants claim Plaintiffs failed to allege intent to defraud. Mot. at 13. But Plaintiffs *do* explicitly allege intent (¶233, 241, 249, 251, 258–259), and they further allege Defendants had financial incentives to conceal their compensation arrangements and conflicts of interest. ¶9. At the pleading stage, such allegations are sufficient to support a plausible inference of intent to defraud. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (general allegations suffice to establish specific intent; particularized allegations are not required); *Cannon*, 2014 WL 324556, at *3 (plaintiffs plausibly pled intent to defraud based on failure to disclose kickbacks).

---

[6] In two other cases cited by Defendants, the courts also concluded that the plaintiffs failed to allege that defendants did anything wrong. Mot. at 11 (citing *Aqualina v. Certain Underwriters at Lloyd's Syndicate #2003,* 406 F. Supp. 3d 884 (D. Haw. 2019), and *Wieck v. CIT Grp., Inc.*, 308 F. Supp. 3d 1093, 1126 (D. Haw. 2018))—clearly not the case here.

[7] Even the posting of information online satisfies the RICO wire requirement. *See Proven Methods Seminars, LLC v. Am. Grants & Affordable Housing Inst., LLC*, 2008 WL 269080, at *3 (E.D. Cal. Jan. 29, 2008) (RICO wire element met by publishing and sending information over the internet).

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

### b.    Plaintiffs plausibly allege an enterprise.

To plead an enterprise element, plaintiffs must allege that defendants have: (1) a common purpose, (2) an ongoing organization, and (3) a continuing unit. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). Plaintiffs have sufficiently plead all of these elements. *See supra* § III(B).

Defendants argue Plaintiffs failed to plead an enterprise because Defendants are purportedly engaging in ordinary business activities and "'pursuing their own individual economic interests, rather than a shared purpose.'" Mot. at 13 (citing *Woodell*). Defendants repeat their mischaracterization of *Wooddell*, where plaintiffs failed to allege any wrongdoing by the defendants. 2019 WL 3287896, at *6. Defendants further suggest the common purpose of the enterprise is limited to "monetizing buyer-side real estate transactions" (Mot. at 13), but this truncates the CCAC's allegations, which specifies that the common purpose involved "(a) misleading prospective buyers into believing they were contacting listing agents; (b) routing buyers to Zillow-affiliated Flex agents subject to commission-sharing obligations; and (c) steering buyers to Zillow Home Loans, all for the financial benefit of the members of the enterprise." ¶223. Defendants do not dispute that, if these allegations are true, they are not legitimate, routine business practices. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 626, 741 (C.D. Cal. 2022) ("That a group of entities shares a legitimate business purpose 'does not shield them from RICO liability' when such a purpose is pursued through illegitimate means.").

Defendants also cite *Shaw v. Nissan North America Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016), but that case—involving a RICO claim against a parts supplier and OEM—is wholly inapposite: the parts supplier (BorgWarner) was not named as a co-defendant, and plaintiffs acknowledged BorgWarner recommended certain remedial measures, and overall acted "consistent with the behavior of a responsive supplier." *Id.* at 1057. Plaintiffs have made no such allegation of remediation here. Rather, Defendants worked hand-in-glove with the Zillow defendants throughout the scheme. *See* ¶226 (Defendants "integrally participated in the enterprise by enrolling in Zillow's Flex program; accepting and distributing Zillow-generated buyer leads to affiliated agents; requiring



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

agents to comply with Zillow-mandated referral, steering, and commission-sharing practices; and supervising agent conduct within Zillow-controlled platforms and workflows").

Defendants also argue Plaintiffs failed to allege an "association in fact" enterprise. Mot. at 14. This is incorrect: the CCAC alleges a "Zillow Fraudulent Business Enterprise" which "(a) had an existence separate and distinct from Zillow; (b) was separate and distinct from the pattern of racketeering in which Zillow engaged; and (c) was an ongoing organization consisting of legal entities." ¶236. Defendants do not dispute any of these allegations, but merely assert that Plaintiffs failed to allege "what specific acts they took as part of the enterprise." Mot. at 14. This, once again, completely misconstrues the CCAC allegations. *See, e.g.*, ¶¶227–234.[8]

### c.    Plaintiffs allege proximate harm.

A civil plaintiff needs to demonstrate that their business or property was harmed because of a RICO violation. *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1084 (C.D. Cal. 2009).

Defendants claim Plaintiffs did not sufficiently allege injury based on Plaintiffs' contention that Defendants' conduct inflated the prices of their homes. Mot. at 7. But this is not a full summary of the allegations, which focus on the increase in fees and costs associated with the loans charged by Zillow Home Loans. Defendants ignore this entirely. *See* ¶¶9, 96, 126, 160, 261–263, 313. This type of injury is precisely the "loss of property" that RICO was designed to recoup. *See Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008) ("In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money."); *Cannon*, 2014 WL 324556, at *3 (plaintiffs plausibly alleged harm based on allegations they "would not have paid, or would have contested, the premiums for the force-placed insurance, if Defendants had disclosed that the premiums included unearned kickbacks rather than earned commissions."); *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 608, 614 (2025)

---

[8] Defendants' other cases offer no support. *See* Mot. at 14. In *Erickson v. Chase*, 2022 WL 3022137 (E.D. Wash. July 30, 2022), the *pro se* plaintiff did not allege any facts in support of her RICO claim "but simply outline[d] the elements of RICO claim," without more. *Id.* at *2. In *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015), plaintiffs failed to allege how defendants associated together for a common purpose and failed "to satisfy rudimentary pleading standards." And in *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009), plaintiffs' RICO allegations were "conclusory and merely identify the correct legal labels, rather than alleging facts to support liability."



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

(noting that all RICO requires is "business or property 'harm' resulting from the defendant's 'predicate acts'" and even "economic harms that result from personal injuries" can form basis of a RICO claim (citation omitted)).

Finally, Defendants falsely suggest that most of the documents related to the fraudulent scheme, including the wire and mail communications, are in Plaintiffs' possession. Mot. at 12. Defendants here miss the point: discovery will reveal the communications *among the defendants* (including the Zillow Defendants), and Defendants' internal communications. Plaintiffs need not allege any communications or wires *to the Plaintiffs*, even as Plaintiffs have made precisely these allegations. *See* ¶247.

### 3.    Plaintiffs plausibly allege conspiracy.

To establish a conspiracy under RICO, plaintiffs must allege that either an agreement to substantively violate RICO exists, or that Defendants agreed to commit, or participated in, a violation of two predicate acts. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 163 F. Supp. 2d 1268, 1280 (D. Or. 2001), *aff'd*, 348 F.3d 1116 (9th Cir. 2003). Plaintiffs sufficiently allege both. *See supra* § III(B)(2)(a).

Defendants assert there is not a RICO conspiracy because Plaintiffs have not sufficiently pled homebuyers were steered to Zillow Home Loans. Mot. at 15. Defendants are misconstruing what a conspiracy is, which is an *agreement* to violate RICO. *See* 18 U.S.C. § 1962(d); *Salinas v. United States*, 522 U.S. 52, 64 (1997) (RICO conspiracy statute "broadened conspiracy coverage by omitting the requirement of an overt act"). As the *Salinas* court held, "It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *Id.* at 65. The CCAC is replete with allegations on the agreement between Zillow and the Defendants, including secret meetings, working together for the common purpose of steering clients toward Zillow Home Loans, and post-complaint assurances that Zillow will protect the Defendants in this litigation. *See United States v. Dorsey*, 2009 WL 959324 (W.D. Wash. Apr. 6, 2009) ("'A conspiracy and its cover-up are parts of a common

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

plan.' . . . [P]roof of witness tampering both constitutes and depends upon proof of the conspiracy to be concealed." (citation omitted)).

## C.    Plaintiffs Plausibly Pled Breach of Fiduciary Duty.

Defendants assert Plaintiffs must meet the Rule 9(b) elements for their breach of fiduciary claims because they sound in fraud. Mot. at 15. This misstates the CCAC, which alleges Defendants breach their fiduciary duties when they fail to provide clients with professional, unbiased service. *See* ¶¶330–333. These allegations do not require Plaintiffs to meet Rule 9(b). *Concha*, 62 F.3d at 1503. And liability for a fiduciary duty breach is based on a failure to act in the clients' best interests, not necessarily on affirmative misrepresentations. *Id.* That is precisely what the CCAC alleges here. ¶¶57–58. *In re Galena Biopharma, Inc. Derivative Litigation*, 83 F. Supp. 3d 1047 (D. Or. 2015) (*see* Mot. at 15) is distinguishable, because it relied solely on dissemination of misleading information. *See id.* at 1060.

Next, Defendants falsely contend Nevada and Florida law does not impose a fiduciary duty on real estate agents. *See* Mot. at 16–18 (citing Fla. Stat. § 475.278; Nev. Rev. Stat. § 645.252). That argument misses the point. Whether framed as fiduciary duties or statutorily defined obligations, both Florida and Nevada (like nearly every state in the country) impose materially similar core duties on real estate agents, including duties of honesty and fair dealing, disclosure of material facts, and avoidance of misleading conduct.

Florida law imposes a duty on agents to act with "honesty and fair dealing" and to disclose all known facts that materially affect the value of the property and are not readily observable. *See* Fla. Stat. § 475.278(2)(a); *Kjellander v. Abbott*, 199 So. 3d 1129, 1132 (Fla. Dist. Ct. App. 2016). Nevada law likewise requires disclosure of "[a]ny material and relevant facts, data, or information." Nev. Rev. Stat. § 645.252(1)(a); *Schricker v. Schricker*, 569 P.3d 214 (Nev. Ct. App. 2025). Finally, the National Association of Realtor's Code of Ethics includes duties of candor.[9] The Code of Ethics

---

[9] Code of Ethics and Standards of Practice of the National Association of REALTORS®, Preamble (eff. Jan. 1, 2025), https://www.nar.realtor/about-nar/governing-documents/code-of-ethics/2025-code-of-ethics-standards-of-practice.; *see also* CCAC preamble.

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

notes that real estate agents "shall be honest and truthful in their real estate communications," and "shall not mislead buyers." *Id.*

These duties—however labeled—require agents to provide clients with honest, non-misleading, and conflict-free advice. The CCAC is replete with allegations that Defendants are consistently breaching these core obligations by operating under undisclosed financial incentives, including Hidden Zillow Fees and Zillow Home Loans referral structures, that created material conflicts of interest and distorted the advice provided to buyers. ¶¶6, 19–29. The Defendants' agreement to steer their clients into higher-cost loans, which saddle them with a higher debt for a typical 30-year loan, is the very anthesis of the principles of care and candor. ¶78. Tricking clients into believing they are meeting with the seller's agent to tour a home, just so the agents can land them as clients, lacks basic fairness, integrity, and honesty.

Defendants cannot credibly dispute these allegations—and, even if they do, the question of whether Defendants violated these duties is a question of fact that cannot be resolved at the dismissal motion stage. *See Klasch*, 264 P.3d at 1161 ("Breach of duty and causation are classically questions of fact."); *Beasley v. Wells Fargo Bank, NA*, 2022 WL 267478, at *5 (M.D. Fla. Jan. 28, 2022) ("The issue of breach of duty is often considered a question for the jury, unless only one reasonable conclusion may be drawn from the facts in evidence." (citation omitted)).  Defendants' arguments here have no merit.

**D.    The CCAC Plausibly Alleges Aiding and Abetting Breach of Fiduciary Duty.**

Plaintiffs plausibly allege that Defendants knowingly aided and abetted breaches of fiduciary duties owed by buyers' agents by pleading: (1) underlying fiduciary breaches by agent primary wrongdoers; (2) Defendants' actual knowledge of those breaches; and (3) their substantial participation, encouragement, and assistance in the breaches. At the pleading stage, these detailed factual allegations easily satisfy Rule 8 and, to the extent applicable, Rule 9(b).

Plaintiffs adequately allege underlying breaches by distinct primary wrongdoers—Zillow-Affiliated Agents. *See supra* § III(C). Defendants' argument that the aiding-and-abetting claim rests on their own alleged breaches mischaracterizes the CCAC. The claim is expressly predicated on



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*agents'* fiduciary breaches, which Defendants then knowingly and substantially assisted. *Compare, e.g.*, ¶¶332, 340 (agents' conduct), *with* ¶¶339, 342, 345 (brokerage conduct).

Nor is there any categorical bar to pleading both direct and aiding-and-abetting liability. Defendants' reliance on *Mann v GTCR Golder Rauner, L.L.C.* (Mot. at 20) is misplaced; that case granted *summary judgment* because plaintiffs failed to produce evidence that the defendant acted in a non-fiduciary role. 483 F. Supp. 2d 884, 916 (D. Ariz. 2007).

Plaintiffs also plausibly allege actual knowledge, to which Rule 9(b)'s heightened pleading standard does not apply, and substantial assistance for each Real Estate Defendant. *See* Fed. R. Civ. P. 9(b) ("[C]onditions of a person's mind may be alleged generally."). As licensed brokerages responsible for supervising agents, the Real Estate Defendants were required to understand and enforce fiduciary duties, and the CCAC alleges that "[t]hrough the licensing, training and supervisory framework" they operated under, they knew their agents owed fiduciary duties to buyers and that Zillow's Affiliated Agents' conduct constituted breaches of those duties. ¶339. Plaintiffs further allege that Defendants knowingly allowed agents to operate within Zillow's programs under undisclosed financial incentives—including Hidden Zillow Fees and Zillow Home Loans referral metrics—that created material conflicts of interest and predictably resulted in fiduciary breaches. *See, e.g.*, ¶342, 345. These are not conclusory assertions; they are supported by detailed allegations that industry participants uniformly recognized that Zillow Flex pressured agents to steer clients, suppress alternatives, and prioritize lead retention over client interests. *See generally, e.g.*, ¶¶73–89, 119–188.

Defendants' assertion that Plaintiffs allege no facts specific to the Real Estate Defendants (Mot. at 21) is likewise incorrect. Plaintiffs allege that GK Properties housed the George Kypreos Team, held itself out as part of Zillow Flex, and supplied the agent who served as buyer's agent for Plaintiff Liao. ¶38. Plaintiffs allege that Real Broker, LLC was the brokerage through which Peter Frano—the Frano Team's leader—operated, and that the Frano Team was part of Real Broker, publicly promoted its "Zillow Flex lead system," and supplied the agent who served as buyer's agent for Plaintiff Cady. ¶¶39–40. These allegations tie each Defendant to Zillow Flex participation, to

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 19
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2

DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

affiliated agents, and to the transactions at issue, establishing their substantial assistance in the representative fiduciary breaches.

The cases Defendants cite are inapposite—these cases were only dismissed because plaintiffs failed to plead that defendants knew of the wrongdoing. *See Swartz v. Deutsche Bank*, 2008 WL 1968948, at *16 (W.D. Wash. May 2, 2008); *In re Consol. Meridian Funds*, 485 B.R. 604, 622 (Bankr. W.D. Wash. 2013); *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011).

Here, by contrast, Plaintiffs allege a specific supervisory relationship, specific Flex participation by each Real Estate Defendant, specific affiliated agents tied to named Plaintiffs, and a detailed factual basis for inferring that Defendants knew the Zillow programs created conflicts that compromised fiduciary duties and nonetheless authorized, supervised, and profited from their agents' participation in them. These are concrete, role-specific allegations—not generalized assertions or a "vague suspicion of wrongdoing." *Cf. In re First All. Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006) (Mot. at 20).

Finally, Plaintiffs plausibly allege that Defendants' aiding and abetting in the primary fiduciary breaches committed by Zillow-Affiliated Agents directly and proximately caused Plaintiffs' injuries, including "increased borrowing and settlement costs, inflated commissions, and loss of access to more favorable financing options and assistance programs." *See, e.g.*, ¶345.

In sum, Plaintiffs allege a straightforward aiding-and-abetting theory: Zillow-Affiliated Agents breached fiduciary duties to buyers, and the Real Estate Defendants knowingly enabled, sustained, and profited from those breaches.

**E.    This Court Has Personal Jurisdiction Over the Defendants.**

18 U.S.C. § 1965(b) allows service on RICO defendants outside a court's jurisdiction when required by "the ends of justice" and that service establishes personal jurisdiction when authorized by a federal statute like 18 U.S.C. § 1965(b). Fed. R. Civ. P. 4(k)(1).

Defendants recognize that 18 U.S.C. § 1965(b) allows service on RICO defendants outside a court's jurisdiction when required by "the ends of justice." To meet this standard: (1) the court must

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 20
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

have personal jurisdiction over at least one of the participants; (2) no other district has personal jurisdiction over all the alleged co-conspirators; and (3) there must be sufficient facts regarding the existence of a multidistrict conspiracy encompassing defendants. *Limcaco v. Wynn*, 2023 WL 154965, at *1 (9th Cir. Jan. 11, 2023). *See* Mot. at 22–23. Defendants do not challenge the second and third elements.[10]

Instead, Defendants merely assert plaintiffs "have not sufficiently alleged a multidistrict conspiracy." *Id.* Plaintiffs have amply alleged facts in support. *See* § III(B). The CCAC details how Zillow and the Defendants "coordinated their conduct to fraudulently induce home buyers to use Zillow Flex agents and to illegally steer buyers to Zillow Home Loans[.]" ¶221. Defendants "integrally participated in the enterprise by enrolling in Zillow's Flex program; accepting and distributing Zillow-generated buyer leads to affiliated agents; requiring agents to comply with Zillow-mandated referral, steering, and commission-sharing practices; and supervising agent conduct within Zillow-controlled platforms and workflows." *Id.* ¶226. This enterprise relied on shared communications, frequent collaboration, and ongoing coordination over several years, demonstrating its longevity. *Id.* ¶¶227–234.

This Court clearly has jurisdiction over Defendants under the RICO statute.

**F.    Plaintiff Liao's Claims Are Not Barred By The Statutes Of Limitations.**

Fraudulent concealment of a claim tolls the statute of limitations. To toll the statute of limitations, plaintiff needs to plausibly allege facts showing: (1) they were ignorant of the unlawful behavior; and (2) defendant engaged in affirmative conduct to conceal the unlawful behavior. *See Tucker v. BMW of N. Am. LLC*, No. C20-5050 BHS, 2020 WL 5701844, at *5 (W.D. Wash. Sept. 24, 2020).

Defendants argue Plaintiff Liao's claims are barred by the statutes of limitation and are not equitably tolled. But Defendants ignore Plaintiff Liao's allegations, which is that his Zillow-Affiliated Real Estate Agent (who worked for Defendant GK Properties) failed to disclose the Hidden Zillow fees to him. Defendants further ignore the detailed allegations about how the material facts

---

[10] Nor could it: Zillow is the hub of the conspiracy, which has its headquarters in Seattle, Washington. ¶¶30-34.


DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

of Defendants' allegedly unlawful practices were not disclosed to *any* clients, including Plaintiff Liao. The structure of the challenged scheme only became publicly visible after investigative reporting by *The Capitol Forum* exposed Zillow's internal Flex program practices, which, in turn, prompted multiple witnesses come forward with corroborating accounts of Zillow's steering requirements and enforcement mechanisms. *See, e.g.*, ¶¶87–89. Before those revelations, "[t]here was no reasonable way for the public, including Plaintiffs, to know that Zillow Flex agents were involved in their transactions," that those agents were required to remit Hidden Zillow Fees to Zillow, or that Zillow conditioned continued participation in its lead-distribution system on directing borrowers to ZHL—such that they would be on notice of their injury of inflated home prices and mortgage costs. ¶¶210–212. *Blaylock v. First Am. Title Ins. Co.*, 504 F. Supp. 2d 1091, 1108 (W.D. Wash. 2007) (allegation that plaintiffs could not have reasonably discovered the allegedly unfair and deceptive practices under a report's publication was sufficient to plead equitable tolling).

The CCAC alleges Zillow and Defendants met in private to discuss the steering requirements because they did not want to have anything in writing documenting their illegal scheme. As one of the confidential real estate agents (CA7) described it, "Zillow agents now visit Flex Agents in person, so that they can talk about the performance metrics (including the rate at which agents steer clients to ZHL) without putting anything in writing." ¶158. Another confidential real estate agent (CA10) recounted how "Zillow flies their people out to Flex team offices to avoid putting anything in writing, which CA10 regards as 'shady' and 'just not right.'" ¶169; *see also* ¶¶10, 76, 83–85, 147, 212. These are instances of affirmative conduct to conceal the unlawful behavior.

Critically, Defendants do not contest any of these allegations.[11] This is textbook fraudulent concealment and is at the very least a factual question to be resolved by a jury. *See E.W. French & Sons, Inc.*, 885 F.2d at 1400 (reversing directed verdict ruling when reasonable jury could conclude that secretive messages and denials of wrongdoing constituted fraudulent concealment).

---

[11] Defendants' other argument that Plaintiff Liao did not allege "lack of knowledge about his agent's connection with Zillow" (Mot. at 9) is irrelevant to Plaintiffs' claims.

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 22
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## IV.    CONCLUSION

Defendants are crucial participants in Zillow's scheme to illegally exploit homebuyers for profit.  Their motion to dismiss should be denied.


I hereby certify that this memorandum contains 7,947 words, including words found in images, in accordance with the Local Civil Rules.

DATED this 27th day of March, 2026.         Respectfully submitted,


**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
    Steve W. Berman (WSBA No. 12536)
By: */s/ Jerrod C. Patterson*
    Jerrod C. Patterson (WSBA No. 43325)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
        jerrodp@hbsslaw.com


By: */s/ Adam J. Levitt*
    Adam J. Levitt, *admitted pro hac vice*
Amy E. Keller, *admitted pro hac vice*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dicellolevitt.com
        akeller@dicellolevitt.com


Corban S. Rhodes, *admitted pro hac vice*
Emma Bruder, *admitted pro hac vice*
**DICELLO LEVITT LLP**
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
Email: crhodes@dicellolevitt.com
        ebruder@dicellolevitt.com


*Plaintiffs' Interim Class Counsel*


PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 23
CASE NO. 2:25-cv-01818-JLR
011313-11/3519682 V2



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Douglas J. McNamara, *admitted pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Email: dmcnamara@cohenmilstein.com

Theodore J. Leopold*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Email: tleopold@cohenmilstein.com

Jason T. Dennett, WSBA #30686
Rebecca L. Solomon, WSBA #51520
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Email: jdennett@tousley.com
       rsolomon@tousley.com

*\*Pro hac vice* application forthcoming

*Attorneys for Plaintiffs and the Proposed Classes*

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 24
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



DICELLO LEVITT
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on March 27, 2026. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.


Dated: March 27, 2026                    /s/ *Steve W. Berman*
                                         Steve W. Berman

PLS.' OPP. TO REAL ESTATE DEFS.'
MOTION TO DISMISS - 25
CASE NO. 2:25-CV-01818-JLR
011313-11/3519682 V2



**DICELLO LEVITT**
10 N Dearborn Street
Sixth Floor
Chicago, Illinois 60602
P: 312.214.7900



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX