The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALUCARD TAYLOR, ARABA ARMSTRONG, HAN ZHENG, DAVID LIAO, KAREN KING, LISA KNUDSON, EYDALIA THURSTON, KYLE SILVA, DALE KOGER, JOHN CADY, and REBECCA BRUCALIERE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ZILLOW, INC., ZILLOW GROUP, INC., ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC., Washington Corporations, ZILLOW HOME LOANS, LLC, a California Corporation, GK PROPERTIES, a Nevada Corporation, REAL BROKER, LLC, a Florida Corporation, and FRANO TEAM, a Florida Organization,

Defendants.

CASE NO. 2:25-cv-01818-JLR

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

NOTE ON MOTION CALENDAR:
April 17, 2026

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT...................................................................................................... 2

    A.   Plaintiffs' Sole Basis for Invoking this Court's Personal Jurisdiction Over the Real Estate Defendants is a RICO Conspiracy for which They Allege No Specifics. ............................................................................................ 2

    B.   Plaintiffs Do Not State Any Plausible Claims Against the Real Estate Defendants. ......................................................................................... 2

        1.   Plaintiffs Concede their Reliance on Improper Group Pleadings ............... 2

        2.   Plaintiffs Do Not Defend the Sole Theory of Proximately Caused Harm Alleged Against the Real Estate Defendants. ................................... 3

        3.   Plaintiffs Cannot Save Liao's Time-Barred Claims. ................................ 4

        4.   Plaintiffs Fail to Rescue Their Implausible RICO Claim. ......................... 5

            a.   Predicate Acts. ...................................................................... 5

            b.   Enterprise. ............................................................................ 8

            c.   Conspiracy. .......................................................................... 9

            d.   Intent to Defraud. ................................................................. 9

        5.   Plaintiffs' Fiduciary Duty Claim Still Fails. ........................................ 11

        6.   Plaintiffs' Aiding and Abetting Claim Should Be Dismissed. ................. 12

III.  CONCLUSION................................................................................................ 13

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## I.    INTRODUCTION

Instead of refuting the defects in their claims against the Real Estate Defendants, Plaintiffs' opposition confirms them: the CACC[1] (1) includes no specifically alleged acts of fraud or steering by the Real Estate Defendants or their agents, (2) presents no plausible theory of proximately caused harm, and (3) alleges no basis for personal jurisdiction other than the RICO statute, which cannot be invoked here because there is no plausible RICO conspiracy.

As with the CACC, Plaintiffs' opposition offers few words specific to the Real Estate Defendants. Instead of explaining how any factual allegations specific to the Real Estate Defendants state plausible claims against them, Plaintiffs recite pages of allegations of a fraudulent "scheme" by "Defendants" that include none of the who, what, when, where, or how necessary to connect the allegations to *any* specific act or actor, much less any Real Estate Defendant. Plaintiffs also ignore that their own allegations preclude the assumption that their "scheme" and "confidential witness" allegations extend to all Partner Agents as apparently is their argument here and theory of the case. As addressed in the motion, the allegations specific to the Real Estate Defendants are ***not*** consistent with the theories of deception or steering that underlie each of Plaintiffs' claims. Plaintiffs offer no authority from any court anywhere endorsing their view that vague and conclusory allegations of fraud by an undifferentiated group somehow provide the particularity required by Rule 9(b), let alone where the group allegations are *contrary to* specifically alleged facts.

By any recognized standard of law or logic, Plaintiffs fail to state plausible RICO, fiduciary duty, and aiding and abetting claims against the Real Estate Defendants, warranting dismissal under both Rule 12(b)(2) and Rule 12(b)(6).

---

[1] Plaintiffs improperly filed Docket 87 without seeking leave; the CACC remains operative.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 1
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## II.    ARGUMENT

**A.    Plaintiffs' Sole Basis for Invoking this Court's Personal Jurisdiction Over the Real Estate Defendants is a RICO Conspiracy for which They Allege No Specifics.**

Plaintiffs confirm this Court lacks personal jurisdiction over the Real Estate Defendants unless Plaintiffs have adequately pleaded a multidistrict RICO conspiracy. Dkt. 81, pp.25-26.[2] As further discussed below, they have not. All claims against the Real Estate Defendants must be dismissed on jurisdictional grounds.

**B.    Plaintiffs Do Not State Any Plausible Claims Against the Real Estate Defendants.**

**1.    Plaintiffs Concede their Reliance on Improper Group Pleadings**

Plaintiffs neither respond to the Real Estate Defendants' arguments about the CCAC's improper group pleadings nor identify specific allegations of fraud or steering by Real Broker, GK Properties, or Frano Team. Instead, Plaintiffs reiterate generalized allegations that have no specific nexus to any actor at all, let alone the Real Estate Defendants. *See* Dkt. 81, pp.8-14. Plaintiffs rest on these group-pleaded allegations throughout their opposition. *Id.*, pp.17-21 (predicating each element of a RICO claim on group-pleaded allegations); *id.*, p.23 (predicating breach of fiduciary duty claim on group-pleaded allegations); *id.*, pp.23-25 (predicating aiding and abetting claim on group-pleaded allegations).[3] To indulge Plaintiffs' contention that nonspecific "scheme" and confidential witness allegations support their claims against the Real Estate Defendants, this Court would have to assume that every allegation extends to *every* Partner Agent and their brokerage and to *every* transaction conducted by such agent or brokerage and so is specifically pleaded against them, no matter the actual details of the transaction.

---

[2] Docket page numbers cited herein refer to the page numbers generated by ECF rather than the internal pagination.

[3] Indeed, Plaintiffs admit their group pleading strategy, arguing "the CACC contains detailed and repeated allegations tying each ***category of defendant***" to the purported "illegitimate scheme." Dkt. 81, p.18 (emphasis added) (citing allegations against "Defendants," "Zillow Defendants," and "Real Estate Defendants").

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 2
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Even setting aside that group allegations and assumptions do not provide the specificity required by Rule 9(b), Plaintiffs' argument (and theory of the case) ignores that Liao and Cady's actual allegations about the Real Estate Defendants are *not* consistent with the group-pleaded "scheme" and confidential witness accounts. In fact, Liao and Cady *undermine* Plaintiffs' theory of steering and deception by Partner Agents. As explained in the motion, neither Liao nor Cady alleges steering, Liao does not claim any confusion about who he was contacting through Zillow's website, and Cady (implausibly) claims only that he initially believed he was contacting a listing agent *based on Zillow's website*, not anything said or done by any Real Estate Defendant or its agent; he claims no confusion once he spoke with the agent. CACC ¶¶22, 28, 247(d), 247(j); Dkt. 67, pp.6-7. Stated simply, Plaintiffs' theories of presumed fraud and conspiracy are, if anything, **defeated** by the specifically pleaded facts about transactions involving the Real Estate Defendants.

### 2. Plaintiffs Do Not Defend the Sole Theory of Proximately Caused Harm Alleged Against the Real Estate Defendants.

Plaintiffs do not defend the only theory of proximately caused harm alleged by Liao and Cady: that the Real Estate Defendants' conduct somehow inflated the price of their homes. CACC ¶¶22, 28 (alleging only increased home prices). This is fatal to all their claims.

Plaintiffs acknowledge the Real Estate Defendants moved to dismiss all claims on the basis that this theory is speculative. Dkt. 81, p.20. But Plaintiffs do not defend their allegations of inflated prices. *Id.* Rather, Plaintiffs' only critique of the Real Estate Defendants' argument is that it purportedly "ignore[d]" a *separate* theory of proximately caused harm: a purported "increase in fees and costs associated with the loans charged by Zillow Home Loans." *Id.*

But the CACC does not allege that *the Real Estate Defendants* caused anyone to incur increased mortgage costs. Neither Liao nor Cady allege inflated mortgage costs from ZHL. Cady (the sole Plaintiff with a connection to Frano Team and Real Broker) did not even use ZHL. CACC ¶28. Liao (the sole Plaintiff with a connection to GK Properties) does not claim inflated mortgage costs (by comparison, he does allege—albeit speculatively—inflated home prices). CACC ¶22. As

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 3
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

explained in the motion, all Liao alleges about ZHL is that he "used Zillow Home Loans to finance and close on the purchase." *Id.* And in any event, Liao's 2021 transaction predated the alleged steering scheme. *Compare* CACC ¶22 (Liao used ZHL in February 2021), *with id.* ¶66 (claiming agents received incentives around ZHL pre-approval metrics "[b]eginning in or around 2022"); *see also id.* ¶144 ("According to CA5, beginning in 2022, Zillow has been adamant that agents should send leads to Zillow Home Loans."); *id.* ¶181 ("According to LO2, since 2022, Zillow has been requiring agents to steer clients to Zillow loan officers . . .").

By contrast, other Plaintiffs (who have **no** alleged connection to the Real Estate Defendants) at least *purport* to allege increased mortgage costs, albeit speculatively. *E.g.*, CACC ¶20 (Armstrong claims used ZHL at her "agent's direction" and speculates she "paid more for her loan"). Cady and Liao conspicuously make no such allegations.

### 3. Plaintiffs Cannot Save Liao's Time-Barred Claims.

Plaintiffs' timeliness arguments are equally flawed. Plaintiffs again focus on their unsupported, misplaced steering allegations, even though Liao does not allege steering. In any event, according to the CACC, the "steering requirements" *predated* Liao's 2021 home purchase. CACC ¶¶22, 66. Defendants could not have "concealed" requirements that did not exist.

Nor do Plaintiffs cure Liao's failure to plead fraudulent concealment on any other theory. Plaintiffs cite only *one* specific allegation by Liao: that "his Zillow-Affiliated Real Estate Agent (who worked for Defendant GK Properties) failed to disclose the Hidden Zillow fees to him." Dkt. 81, p.26. Liao does not allege that information about these "fees" was otherwise unavailable to him (*e.g.*, through Zillow disclosures and closing documents), let alone fraudulently concealed, only that he did not learn of them from his *agent*. CACC ¶22.

Further, Plaintiffs argue it is "irrelevant" to Liao's claims that he does not allege confusion about who he was contacting through Zillow's website. Dkt. 81, n.11 ("Defendants' other argument that Plaintiff Liao did not allege 'lack of knowledge about his agent's connection with Zillow' (Mot. at 9) is irrelevant to Plaintiffs' claims"). But the CACC predicates Plaintiffs' claims on a theory that

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 4
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

buyers have no idea they are contacting a Zillow-affiliated buyer agent. *E.g.*, CACC ¶103 ("Prospective buyers who click on the "Request a Tour/Contact Agent" buttons would be reasonable in believing that they are reaching out to the listing agent who was hired by the home seller to "list" the property. This is a ruse. In actuality, Zillow directs the buyer away from the listing agent and redirects the buyer to a buyer agent who is working on a Zillow team . . ."). Plaintiffs' argument concedes that as to Liao, these claims are time-barred *and* unsupported.

Finally, mistaking this motion to dismiss as something else, Plaintiffs offer that "Defendants do not contest" various allegations. Dkt. 81, p.27. This non sequitur cures no defects in Plaintiffs' pleadings but begs three points: (1) the allegations Plaintiffs appear to refer to (in the preceding paragraph) are from confidential witnesses who do not purport to make claims about the Real Estate Defendants (2) as for the scant specific CCAC allegations involving the Real Estate Defendants, a motion to dismiss is not the time to "contest" them; they are taken as true at this stage, and (3) of course, the Real Estate Defendants vigorously contest Plaintiffs' conclusory claims of wrongdoing.

**4.      Plaintiffs Fail to Rescue Their Implausible RICO Claim.**

Plaintiffs concede their RICO allegations must satisfy Rule 9(b). Dkt. 81, p.18. Still, they fail to identify with particularity the who, what, when, where, or how of any of the fraud required to state their RICO claim, let alone fraud by any individual Defendant, including the Real Estate Defendants.

**a.      Predicate Acts.**

Plaintiffs claim "the CACC specifies the mails and wires at issue" but point to no such specifics. Between both oppositions, Plaintiffs cite CACC ¶246 and 247(a)–(k),[4] but these are the same vague allegations the Defendants addressed in their motions. *See* Dkt. 67, pp.13-14; Dkt. 64, pp.24-25. Even ignoring the absence of specifics, Plaintiffs do not explain how any Defendant purportedly furthered "fraud" by any mail or wire communication.

---

[4] Dkt. 80, p.27; Dkt. 81, p.17.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 5
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

In stark contrast, in *Cannon v. Wells Fargo Bank, N.A.*, 2014 WL 324556 (N.D. Cal. Jan. 29, 2014)—Plaintiffs' preferred authority—the plaintiffs pleaded with particularity the time, place, and manner of mail and wire fraud. *Id.* at \*2 (specifying authors and quoting language in specific mails). The complaint included the requisite particulars, describing the dates letters were mailed, from and to whom they were sent, and the contents. *See, e.g.*, Third Amended Class Action Complaint ¶174, *Cannon v. Wells Fargo Bank, N.A.*, No. 12-cv-01376-EMC (N.D. Cal. Oct. 8, 2013), Dkt. 137 ("On April 27, 2012, ASIC, with the approval of Wells Fargo, drafted and sent Plaintiff Cannon a letter on Wells Fargo letterhead. The letter stated . . ."); *id.* ¶171 ("On August 6, 2011, ASIC, with the approval of Wells Fargo, drafted and sent Plaintiff Cannon a letter on Wells Fargo letterhead. The letter stated . . ."). These mails themselves included misrepresentations. *Cannon*, 2014 WL 324556, at \*2 ("Defendants' representations lead one to believe that WFI would receive a commission for assisting in obtaining the insurance. However, there was nothing for WFI to assist and no 'commission' to be had, since there was already in place a master insurance policy."). For these reasons, the court found plaintiffs pleaded predicate acts with particularity. *Id.* at \*3.

As for *Woodell v. Expedia Inc.*, 2019 WL 3287896 (W.D. Wash. July 22, 2019), Plaintiffs twice misstate this Court's holding on the mail and wire fraud allegations. *First*, this Court **did** "rule on the adequacy of the wire or mail allegations," Dkt. 81, p.18, indeed "dismissing Ms. Woodell's RICO claim predicated on the alleged racketeering activity of mail fraud" *because* she failed to identify specific mailings, *Woodell*, 2019 WL 3287896, at \*5; *compare* Dkt. 81, p.18 (asserting, "*Woodell* did not rule on the adequacy of the wire or mail allegations at all"). The analysis appears under the heading "***a. Mail Fraud***" and cites other cases likewise finding "that contentions regarding the use of the mails were too generalized to satisfy Rule 9(b) where 'no specific mailings are mentioned'" *Id.* (quoting *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)). This Court explained that courts are "particularly sensitive" to Rule 9(b) "in RICO cases [like this one] in which the 'predicate acts' are mail fraud and wire fraud, and have further

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 6
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

required specific allegations as to which defendant caused what to be mailed . . . , and when and how each mailing . . . furthered the fraudulent scheme." *Id.* (quoting *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011)). Unlike here where Plaintiffs identify *no* specific mails or wires used by any Defendant, Ms. Woodell identified *some* specific wires,[5] but where she alleged wire use by "Defendants collectively," as Plaintiffs do here, this Court found the allegations insufficient. *Id.* at *6 ("[A]lthough Ms. Woodell's specific allegations concerning Expedia are sufficient, her generalized allegations—lumping the three remaining Defendants together with respect to the same conduct—are not.").

*Second*, Plaintiffs wrongly construe the Court's conclusion in *Woodell*—that Plaintiffs' specifically pleaded allegations described "nothing more than legitimate business conduct"—as suggesting the plaintiff there did not even purport to allege anything more. Dkt. 81, p.6, 19. Like here, the plaintiff in *Woodell* claimed an "unlawful scheme to defraud" and purported to list "the RICO Members' use of mails and wires" in furtherance of such "illegal tax overcharge scheme." Class Action Complaint ¶¶97-98, *Woodell v. Expedia Inc.*, No. 19-cv-00051-JLR (W.D. Wash. Jan. 11, 2019), Dkt. 1. That list included allegations such as "[f]alse or misleading communications to the public" and "[s]ales and marketing materials which misrepresented, and concealed the true nature of the 'Taxes & Fees' owed and collected[.]" *Id.* Notwithstanding these conclusory claims of fraud by "the RICO Members," the Court found the allegations in which Ms. Woodell alleged specific conduct of individual defendants (Expedia aside[6]) "describe[d] nothing more than legitimate business conduct." *Woodell*, 2019 WL 3287896, at *6. The same is true here.

Plaintiffs' sole remaining argument in support of its mail and wire fraud allegations—that Defendants are wrong that the "mailings themselves have to be fraudulent," Dkt. 81, p.18; *see also*

---

[5] Ms. Woodell alleged that through the Reservations.com website, Expedia overcharged customers for taxes and pocketed the overcharge as profits. *Woodell*, 2019 WL 3287896, at *5.

[6] The Court dismissed the RICO claim against Expedia based on the plaintiff's failure to adequately plead other elements (enterprise and proximate causation). *Woodell*, 2019 WL 3287896, at *9–10.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 7
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Dkt. 80, p.2, 21—attacks a strawman. Defendants have not argued the mailings themselves must be fraudulent. Rather, as Defendants have argued, Plaintiffs must plead with particularity how each Defendant used mail or wires to *further* a scheme to defraud. Dkt. 67, p.12-15; Dkt. 64, p.24-25. They have not. Indeed, they fail to identify even those communications that Plaintiffs allegedly had with the Real Estate Defendants. *See* CACC ¶246 (claiming communications "with potential buyers" but identifying none).

### b.    Enterprise.

Plaintiffs misread *Woodell* on this element, too, in suggesting the plaintiff there "failed to allege any wrongdoing." Dkt. 81, p.19. Like Plaintiffs here, Ms. Woodell *alleged* a "fraudulent" and "illegal scheme" by co-conspirators, albeit of a different ilk ("collect[ing] tax overpayments"). *Woodell*, 2019 WL 3287896, at *7, n.3 (quoting the complaint). The Court concluded, however, that the scheme allegations were "conclusory," *Id.* at *7 ("this and other similar, conclusory allegations fall short of the pleading standard"), and, critically, that Ms. Woodell's *specific* factual allegations reflected only "ordinary business activities or purposes." *Id.* at *8. Again, the same is true here. *See* CACC ¶223 (reciting conclusory allegations of fraud and steering).

On *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016), Plaintiffs miss the point. *Shaw* stands for the proposition that "entities engaged in 'ordinary business conduct and an ordinary business purpose' do not necessarily constitute an 'enterprise' bound by common purpose under RICO." *Id.* at 1054. And the remedial measures in *Shaw* that Plaintiffs argue make that case distinguishable are analogous to the fact Cady did not use ZHL here. Both show that "[u]nlike a participant in some fraudulent enterprise," the defendants were acting inconsistently with the alleged common purpose. *Shaw*, 220 F. Supp. 3d at 1057.

Plaintiffs do not address the argument that Plaintiffs rely on improper group pleading to allege an enterprise. Dkt. 67, p.16 (arguing Plaintiffs "rely (again) on improper group pleading" and citing cases). Instead, Plaintiffs again oppose a strawman, claiming the Real Estate Defendants "argue Plaintiffs failed to allege an 'association in fact' enterprise," full stop, and citing their

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 8
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

improperly group-pleaded (and conclusory) enterprise allegations to prove otherwise. This response proves Defendants right.

### c. Conspiracy.

Apparently conceding they "have not sufficiently pled homebuyers were steered to Zillow Home Loans," much less by the Real Estate Defendants, Plaintiffs argue that they nevertheless allege an "*agreement*" to steer buyers because "[t]he CCAC is replete with allegations on the agreement between Zillow and the Defendants, including secret meetings, working together for the common purpose of steering clients toward Zillow Home Loans, and post-complaint assurances that Zillow will protect the Defendants in this litigation." Dkt. 81, p.21 (emphasis original).

But, as the Real Estate Defendants argued, these conclusory allegations of an "agreement" to steer buyers *are implausible*, particularly as to the Real Estate Defendants. The CACC offers no basis for the Court to find it plausible that the Real Estate Defendants "agreed" to steer buyers. Plaintiffs make no specific allegations about who, when, or how any Real Estate Defendant entered this purported agreement or participated in "secret meetings." And the fact that *no Plaintiff alleges steering by any Real Estate Defendant* suggests they did not.

Finally, Plaintiffs cannot manufacture a RICO conspiracy claim on the basis that Zillow offered public words of support to its co-defendants in this litigation or that the Real Estate Defendants are each represented by the same counsel (who are separate from Zillow's counsel). These arguments only confirm Plaintiffs have no real RICO conspiracy allegations to offer.

### d. Intent to Defraud.

Plaintiffs claim they allege intent through CACC ¶¶233, 241, 249, 251, and 258-259. This appears to be a list of each paragraph of the CACC in which Plaintiffs use a variation of the word "intent," notwithstanding that none make the "intent" allegations plausible.[7] Specifically, these paragraphs allege as follows:

---

[7] The "intent" allegations Plaintiffs identify for the Zillow Defendants (¶¶153, 232, and 304) are similarly unavailing. Dkt. 80, p.28. Paragraph 153 offers only CA7's hearsay allegation regarding "what several Zillow agents [] have been told." Paragraph 304 does not relate to intent whatsoever,

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 9
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

| ¶233 | "[T]he Real Estate Defendants . . . intentionally" participated in the purported "Zillow Fraudulent Business Enterprise's conduct." |
|---|---|
| ¶241 | "Each Defendant knowingly and intentionally participated in the scheme to defraud by using mail, telephone, and the internet to transmit mailings and wires in interstate or foreign commerce." |
| ¶249 | "This scheme involved material misrepresentations and omissions, and Defendants acted with knowledge of their wrongdoing and/or with the specific intent to defraud." |
| ¶251 | "Each Defendant knew and intended that Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them regarding the Zillow Fraudulent Business Enterprise. Defendants knew and intended that consumers would incur economic damages as a result." |
| ¶258 | "To achieve its common goals, Defendants actively and intentionally concealed from the general public the unlawfulness of the Zillow Fraudulent Business Enterprise's conduct alleged herein." |
| ¶259 | "The Zillow Defendants, the Real Estate Defendants, and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy, adopted the goal of furthering and facilitating the enterprise's racketeering conduct, and participated in the common course of conduct to commit acts of fraud by fraudulently inducing prospective home buyers into using Zillow Flex agents, and illegally steering buyers into using Zillow Home Loans." |

---

stating, "Defendants' unlawful conduct deprived Plaintiffs . . . of impartial and independent advice." Paragraph 232 concludes that "Zillow Fraudulent Business enterprise worked to fraudulently induce prospective home buyers into using Zillow Flex agents[.]" None plausibly alleges intent to defraud.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 10
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) does not, as Plaintiffs suggest, make these allegations sufficient. *Odom* provides that "general allegations" of intent are "sufficient" to survive dismissal, assuming the complaint also makes "particularized allegations" of "the factual circumstances of the fraud itself." *Id.* at 554. Plaintiffs make no such "particularized allegations" here. And further, where fraud is alleged against multiple defendants, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)). Plaintiffs do not.

### 5. Plaintiffs' Fiduciary Duty Claim Still Fails.

Plaintiffs' opposition does not save their fiduciary duty claim.

First, Plaintiffs cannot evade Rule 9(b). Plaintiffs' theory now that the fiduciary duty claims are *not* premised on the same allegations of fraud that underly their RICO claims is disproved by the CACC. *See* CACC ¶¶332 (claiming breach of fiduciary duty based on the same allegations of deception and omission that underly Plaintiffs' RICO claims), 340-42 (aiding and abetting).

Second, this claim, too, relies on improper group pleading, arguing breach based on "Defendants' agreement to steer their clients into higher-cost loans" (notwithstanding that Liao and Cady were not steered to ZHL) and claiming unnamed Defendants "[t]rick[ed] clients into believing they are meeting with a seller's agent to tour a home" (notwithstanding that Liao and Cady make no such allegations against the Real Estate Defendants).

Finally, Liao and Cady's sole specific allegations of breach are untethered to any proximately caused harm or applicable statutory duty. Each makes only one allegation specific to the Real Estate Defendants to support their claim: that their buyer agents, who were associated with the Real Estate Defendants, purportedly did not disclose that a portion of their commission would go to Zillow. But Liao and Cady do not plausibly allege attendant proximately caused harm. *See supra* Section II.B.2.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 11
CASE NO. 2:25-cv-01818-JLR

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

And Plaintiffs still identify no applicable statutory duty the Real Estate Defendants plausibly breached. Departing from the CACC (which claims breach of common law duties that do not apply) Plaintiffs now point (without committing) to Florida and Nevada statutes and the National Association of Realtor's Code of Ethics. Plaintiffs offer no authority for the proposition that they can premise a breach of fiduciary duty claim on alleged violations of the National Association of Realtor's Code of Ethics. And the Florida and Nevada statutes do not support their breach theory. As for the Nevada statute, Plaintiffs argue that agents owe a duty to disclose "any material and relevant facts, data, or information," Dkt. 81, p.17, but they omit the portion of this provision that limits its application to facts, data, and information "*relating to the property*." Nev. Rev. Stat. §645.252(1)(a) (emphasis added). Plaintiffs have not alleged a failure to disclose facts related to a property. And the sole case they cite is an unpublished court of appeals decision that, in any event, is unhelpful to Plaintiffs: the court upheld dismissal of a breach of fiduciary duty claim brought by a wife against her husband who she claimed "surreptitiously" added his name to the deed to the property. *Schricker v. Schricker*, 569 P.3d 214, 2025 WL 1427716, at *2, 9 (Nev. App. 2025). The Florida statute likewise requires disclosure of "known facts that materially affect the value of the property and are not readily observable" Fla. Stat. §475.278(2)(a). Plaintiffs have not plausibly alleged that any "breach" materially affected the property value. Further, Plaintiffs offer no support for the proposition that the statutory duty to act with "honesty and fair dealing" requires Florida agents to disclose how they are divvying up their commission or makes a broker liable by extension if they did not. Plaintiffs' allegations are a far cry from the sole case they cite, *Kjellander v. Abbott*, 199 So. 3d 1129 (Fla. Dist. Ct. App. 2016), in which home buyers discovered their home "had numerous undisclosed material defects, including water damage, mold, and problems with the HVAC system." *Id.* at 1130.

**6.      Plaintiffs' Aiding and Abetting Claim Should Be Dismissed.**

Plaintiffs fail to save their aiding and abetting claim for the same reasons. Chiefly, they have no plausible theory of proximately caused harm and rely on improper group pleading.

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 12
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Further, Plaintiffs here reveal (again) that their theory of liability is predicated on mere participation in the Zillow Flex program, notwithstanding the individual experience of the buyer or the details of their transaction. Indeed, Plaintiffs describe the "facts specific to the Real Estate Defendants" as no more than their alleged participation in Zillow Flex. Dkt. 81, p.24 (reciting allegations that each Real Estate Defendant participated in Zillow Flex; arguing, "[t]hese allegations tie each Defendant to Zillow Flex participation, to affiliated agents, and to the transactions at issue, establishing their substantial assistance in the respective fiduciary breaches").

### III.  CONCLUSION

Plaintiffs' case against the Real Estate Defendants is predicated on unsupported assumptions, not well-pleaded factual allegations, and should be dismissed.

DATED this 17th day of April, 2026.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC
Attorneys for Defendants GK Properties, Real Broker, LLC, and Frano Team

I CERTIFY THAT THIS MOTION CONTAINS 4,200 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By *s/ Diana Siri Breaux*
   Diana Siri Breaux, WSBA #46112
   *dianab@summitlaw.com*
   Eva Sharf Oliver, WSBA #57019
   *evao@summitlaw.com*

REAL ESTATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS - 13
CASE NO. 2:25-cv-01818-JLR

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001