UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALUCARD TAYLOR, et al., | CASE NO. C25-1818JLR |
| Plaintiffs, | ORDER |
| v. | |
| ZILLOW INC., et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants[1] Real Broker, LLC ("Real Broker"), and Frano Team's (together, "Moving Defendants") motion to compel arbitration.  (Mot. (Dkt. # 78); Reply (Dkt. # 86).)  Plaintiffs[2] oppose the motion.  (Resp. (Dkt. # 85); *see also*

---

[1] Defendants are Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., and Zillow Home Loans, LLC (collectively, "Zillow Defendants") and GK Properties, Real Broker, LLC, and Frano Team (collectively, "Real Estate Defendants") (together, "Defendants").

[2] Plaintiffs are Alucard Taylor, Araba Armstrong, Han Zheng, David Liao, Karen King, Lisa Knudson, Eydalia Thurston, Kyle Silva, Dale Koger, John Cady, and Rebecca Brucaliere (together, "Plaintiffs").

ORDER - 1

Consolidated Amended Class Action Complaint ("CACC") (Dkt. # 45).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised, the court GRANTS Moving Defendants' motion and STAYS this action pending the completion of arbitration.

## II.    BACKGROUND

Plaintiff Alucard Taylor initiated this proposed class action suit against the Zillow Defendants on September 19, 2025.  (*See* Compl. (Dkt. # 1).)  Plaintiffs filed the operative consolidated amended class action complaint on December 29, 2025.  (*See* CACC.[3])  Plaintiffs bring claims against Moving Defendants for (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d) (CACC ¶¶ 213-18); (2) breach of fiduciary duty (*id*. ¶¶ 327-34); and (3) aiding and abetting breach of fiduciary duty (*id*. ¶¶ 335-45).  Plaintiffs' claims against Moving Defendants arise from a residential real estate transaction in which Plaintiff John Cady, a resident of Florida, purchased a home in Melbourne, Florida (the "Property") using Frano Team agent Emily LaPlante.  (*Id*. ¶ 28.)  In connection with the home purchase, Plaintiffs allege Moving Defendants committed acts of wire and mail fraud and aided or abetted breaches of duties owed to Mr. Cady.  (*Id*. ¶¶ 244-54.)

---

[3] On April 15, 2026, Plaintiffs filed a Consolidated Second Amended Class Action Complaint.  (CSAC (Dkt. # 87).)  The court subsequently issued an order directing Plaintiffs to show cause why it should not strike the complaint for failure to comply with Federal Rule of Civil Procedure 15 and Local Civil Rule 15.  (4/17/26 Order (Dkt. # 89).)  In response, Plaintiffs filed a motion for leave to amend their complaint.  (MTA (Dkt. # 93).)  Because that motion remains pending, the Consolidated Amended Class Action Complaint remains the operative pleading.  (*See generally* Dkt.)

ORDER - 2

On August 12, 2025, Mr. Cady and Ms. LaPlante executed an Exclusive Buyer Brokerage Agreement, formalizing her role as his real estate agent for the transaction. (Axelson Decl. (Dkt. # 78-2) ¶ 3, Ex. A (the "Agreement").)  Florida law governs the Agreement, which gave Real Broker the exclusive right to help Mr. Cady find and buy suitable real property.  (*See* Agreement § 4(a).)  The Agreement specified that Ms. LaPlante would earn a 3% commission on the total purchase price or other consideration for the acquired property.  (*Id*. § 7(a).)  The Agreement's dispute resolution clause provides, in relevant part:

> DISPUTE RESOLUTION: This Agreement will be construed under Florida law.  All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association ["AAA"] or other mediator agreed upon by the parties.  If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration**: . . . [D]isputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the [AAA] or other arbitrator agreed upon by the parties.

(*See id*. §10.)

On March 16, 2026, Moving Defendants moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., or, in the alternative, the Revised Florida Arbitration Code ("RFAC"), Fla. Stat. § 682.01 *et seq*.  (*See, e.g.*, Mot. at 8.)  The motion is now fully briefed and ripe for the court's consideration.

ORDER - 3

## III.    ANALYSIS

Below, the court sets forth the legal standard for motions to compel arbitration and then considers Moving Defendants' motion.

**A.    The Court's Authority to Compel Arbitration Arises Under the FAA.**

Although the parties agree that Florida law applies to the Agreement itself, they fail to identify the statutory basis for the court's authority to compel arbitration.  (*See, e.g.*, Mot. at 9 ("State law governs any challenges to the formation or validity of the Agreement.") (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, n.26 (1983)); Resp. at 2 ("Plaintiffs agree that Florida law applies to the [] arbitration agreement."); *see also* Agreement § 10 ("This Agreement will be construed under Florida law.").)  Moving Defendants assert, and Plaintiffs do not dispute, that (1) this action "involves a Texas LLC entering a contract governed by Florida law with a Florida resident for the provision of residential brokerage services in Florida[,]" and (2) the court has jurisdiction to compel arbitration regardless of whether the FAA or the RFAC applies.  (Mot. at 8 n.7; *see generally* Reply.)  Plaintiffs say nothing about which law governs the court's authority to compel arbitration.  (*See generally* Resp.)

The FAA applies where there exists "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2; *see Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Because the FAA "is based upon and confined to the incontestable federal foundations of 'control over interstate commerce,'" the contract must have some connection with interstate commerce.  *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 271 (1995).  The Supreme Court, however, has explained that the words "involving

ORDER - 4

commerce" "are broader than the often-found words of art 'in commerce,'" and that "involving" in this context is "the functional equivalent of the word 'affecting.'" *Id*. at 273-74.  Considering this expansive view of the FAA's reach, the Supreme Court has concluded that the FAA applies in the context of real estate transactions.  *See Hall St. Assocs., LLC, v. Mattel, Inc.*, 552 U.S. 576, 590 (2008); *Russell v. United States*, 471 U.S. 858, 862 (1985); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 783-84 (1975).

Because this action concerns a residential real-estate transaction between parties of different states, the court concludes that the underlying controversy affects interstate commerce.  Accordingly, the court concludes that its authority to compel arbitration arises under the FAA rather than the RFAC.

**B.    The Applicable Legal Standard**

A district court's authority to compel arbitration arises under § 4 of the FAA. 9 U.S.C. § 4.  In general, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  The parties may, however, delegate the resolution of these gateway issues to the arbitrator.  *Fli-Lo Falcon LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024) (explaining that delegable threshold issues may include "whether the parties have agreed to arbitrate," "whether [the arbitration] agreement covers a particular controversy," and "whether the [arbitration] [a]greement is unconscionable") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63,

68-69 (2010)). If "the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Id*. at 1194 (first citing *Rent-A-Ctr.*, 561 U.S. at 68-70; and then citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

Incorporation of the AAA Commercial Arbitration Rules (the "AAA Rules") in an arbitration agreement "constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability." *Id.* at 1199 (quoting *Brennan*, 796 F.3d at 1130). Thus, if an arbitration agreement incorporates the AAA Rules, "the only remaining question [for the district court] is whether the particular agreement to delegate arbitrability—the [d]elegation [p]rovision—is itself unconscionable." *Id*. (quoting *Brennan*, 796 F.3d at 1132). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating that the FAA "leaves no place for the exercise of discretion by a district court").

**C.     The Court Grants the Motion to Compel Arbitration.**

Moving Defendants assert, and Plaintiffs do not dispute, that the Agreement contains a valid arbitration clause. (Mot. at 10-11; *see generally* Resp.) In response, however, Plaintiffs argue that the court should deny the motion for three reasons: (1) neither Moving Defendant is a party to the Agreement; (2) Moving Defendants failed to comply with the mandatory mediation clause as required to trigger the dispute

resolution clause; and (3) the Agreement's temporal scope is limited to an eleven-week window that excludes the disputed conduct. (*See generally* Resp.) For the reasons set forth below, the court concludes that Plaintiffs' arguments are without merit and grants the motion to compel arbitration and stay proceedings.

Plaintiffs first assert that the court should deny the motion because Moving Defendants are not parties to the Agreement and Ms. LaPlante's signature cannot bind Moving Defendants to the Agreement. (Resp. at 2-3.) The parties agree that Florida law controls the Agreement. (*See, e.g.*, Mot. at 9; Resp. at 2.) Under Florida law, claims against a non-signatory are unambiguously subject to arbitration, where, as here, they are "predicated upon the same allegations and necessarily involve [intersecting] factual determinations" as the arbitrable claims. *Shetty v. Palm Beach Radiation Oncology Associates-Sunderam K. Shetty, M.D., P.A.*, 915 So.2d 1233, 1235 (Fla. 4th Dist. Ct. App. 2005).

Here, the Agreement explicitly names Real Broker as a party to the Agreement. (Agreement at 1 (identifying Real Broker as the "Broker").) Ms. LaPlante is not herself party to the Agreement; she simply signed the Agreement as an "Authorized Associate or Broker" on behalf of Real Broker. (Agreement at ¶ 3.) Accordingly, the court determines that pursuant to Florida law Real Broker is party to the Agreement. Furthermore, Frano Team can enforce the Agreement as a non-party by virtue of its relationship with Real Broker. (*See* Reply at 2.) Frano Team is a subsidiary of Real Broker, and Mr. Cady's claims against Frano Team are based on the same operative facts and are inextricably intertwined with his claims against Real Broker. *See Morales v.*

*Perez*, 952 So.2d 605, 609 (Fla. 3rd Dist. Ct. App. 2007) (concluding that arbitration was required where claims were based on the same operative facts and inextricably intertwined with arbitrable claims); (CACC ¶¶ 39, 40, 244-46, 247(j), 248-60, 330-45 (summarizing the operative facts that link the Real Estate Defendants)).  Plaintiffs do not address *Shetty* or explain why this court should ignore its holding.  (*See generally* Resp.)  Consequently, the court determines that Frano Team may enforce the arbitration clause in the Agreement.

Next, Plaintiffs raise two threshold challenges to arbitrability: compliance with a mandatory mediation clause and the temporal scope of the Agreement.  (Resp. at 1.)  Specifically, Plaintiffs assert that (1) Moving Defendants failed to comply with the Agreement's provision that disputes arising therefrom "will be settled by first attempting mediation" and (2) the disputed conduct falls outside "the temporal scope of the arbitration document[, which] is strictly limited to an 11-week window (August 12, 2025, to October 31, 2025)."  (*Id*. (citing Agreement §§ 2, 10).)  According to Plaintiffs, because the Moving Defendants have not satisfied the requirement to first attempt mediation and allege conduct occurring outside the 11-week window, Moving Defendants lack the authority to move to compel.  (*See id*.)

The court agrees with Moving Defendants that by incorporating the AAA rules of arbitration in the Agreement, the parties delegated to the arbitrator the question of whether any claim is arbitrable.[4]  (Mot. at 12; *see generally* Resp (making no challenge to

---

[4] Moving Defendants argue that the RFAC applies but note that both the FAA and RFAC delegate arbitrability disputes to the arbitrator.  (*See* Reply at 4 n.3.)  The court agrees that the

ORDER - 8

the validity of the delegation clause)); *see also Fli-Lo Falcon*, 97 F.4th at 1194 (citation omitted) (holding that when parties to a contract have "clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator," the court's analysis is limited to confirming the existence of an arbitration agreement).  Because the court concludes that the delegation clause in this action is valid and enforceable, the court cannot consider Plaintiffs' arguments regarding the mediation clause and the scope of the Agreement's arbitration provision.  *Henry Schein*, 586 U.S. at 65; *see also Dean Witter Reynolds*, 470 U.S. at 218 (stating that the FAA "leaves no place for the exercise of discretion by a district court").

## IV. CONCLUSION

For these reasons, the court GRANTS Moving Defendants' motion to compel (Dkt. # 78) and STAYS this action pending the completion of arbitration.

Dated this 23rd day of June, 2026.

JAMES L. ROBART
United States District Judge

---

parties delegated to the arbitrator all questions as to whether the condition precent has been satisfied.

ORDER - 9