THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

ARABA ARMSTRONG, DAVID LIAO, FURGUS WILSON, BRANDON DAUGHERTY, and REBECCA ROBBINS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ZILLOW, INC., ZILLOW GROUP, INC., ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC., Washington Corporations, ZILLOW HOME LOANS, LLC, a California Corporation,

Defendants.

Consolidated Case No. 2:25-cv-01818-JLR

**ZILLOW DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR:
OCTOBER 30, 2026

**ORAL ARGUMENT REQUESTED**



COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. No Plaintiff Adequately Alleges A RESPA Violation (Count I). ..... 5

1. Plaintiffs still fail to allege they paid a "charge" tied to an alleged RESPA violation and lack standing. ..... 6

a. Plaintiffs do not cure their failure to identify a "charge" tied to a pre-approval. ..... 6

b. Loan origination fees cannot confer standing because they are not tied to a RESPA violation. ..... 6

2. Pre-Approval letters are not a RESPA settlement service. ..... 10

3. Encouragement to seek a pre-approval letter is not a "referral" under RESPA. ..... 11

4. The cooperative brokerage safe harbor applies. ..... 12

5. Each Plaintiff's RESPA claim also fails for individual reasons. ..... 13

a. The TAC adds nothing to support equitable tolling, and Plaintiffs Armstrong's, Liao's, and Wilson's RESPA claims fail. ..... 13

b. Plaintiff Liao's, Daugherty's, and Robbins's claims are deficient for additional reasons. ..... 17

B. The Plaintiffs' WCPA Claim Still Fails (Count II). ..... 18

1. The per se theory fails with Plaintiffs' RESPA claim. ..... 18

2. Plaintiffs otherwise fail to allege deceptive conduct, injury, and causation. ..... 19

a. Zillow's disclosures still defeat any claim of unfairness or deception. ..... 19

b. Plaintiffs also still fail to allege injury. ..... 21

c. Plaintiffs do not allege causation. ..... 22




COOLEY LLP
1700 SEVENTH AVENUE
SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

## TABLE OF CONTENTS
(continued)

**Page**

C. Plaintiffs' Group Pleading Strategy is Improper. .... 23

D. The TAC Should Be Dismissed With Prejudice. .... 24

V. CONCLUSION .... 25



COOLEY LLP
1700 SEVENTH AVENUE
SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amina v. WMC Fin. Co.*,
329 F.Supp.3d 1141 (D. Haw. 2018) ....................24

*Armstrong v. Zillow Grp., Inc.*,
No. 2:25-cv-02226 (W.D. Wash. Nov. 7, 2025), Dkt. 1 ....................7

*Bain v. Metro. Mortg. Grp., Inc.*,
285 P.3d 34 (Wash. 2012)....................19

*Bednaruk v. Nw. Tr. Servs., Inc.*,
2010 WL 545643 (W.D. Wash. Feb. 9, 2010) ....................18

*Blake v. JPMorgan Chase Bank, N.A.*,
259 F. Supp. 3d 249 (E.D. Pa. 2017) ....................16

*Blaylock v. First Am. Title Ins. Co.*,
2008 WL 8741396 (W.D. Wash. Nov. 7, 2008) ....................5

*Bloom v. Martin*,
77 F.3d 318 (9th Cir. 1996) ....................10

*Bolinger v. First Multiple Listing Service, Inc.*,
2014 WL 4803155 (N.D. Ga. Sep. 26, 2014) ....................11

*Brown v. Wash. State Dep't of Com.*,
359 P.3d 771 (Wash. 2015)....................19

*In re Bryce*,
491 B.R. 157 (W.D. Wash. 2013)....................18

*Bushbeck v. Chicago Title Ins. Co.*,
632 F. Supp. 2d 1036 (W.D. Wash. 2008) (Robart, J.)....................10

*CFPB v. Borders & Borders, PLC*,
2018 WL 1440606 (W.D. Ky. Mar. 22, 2018) ....................8

*Clausing v. Zimmar*,
1996 WL 742209 (Wash. Ct. App. Dec. 30, 1996) ....................15

*Cootey v. Countrywide Home Loans, Inc.*,
2011 WL 4853333 (D. Haw. Oct. 12, 2011) ....................23



COOLEY LLP
1700 SEVENTH AVENUE
SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dawson v. Porch.com*,
2023 WL 3947831 (W.D. Wash. June 11, 2023)....9

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011)....24

*Douglass v. Stanger*,
2 P.3d 998 (Wash. Ct. App. 2000)....15

*Edwards v. First Am. Corp.*,
798 F.3d 1172 (9th Cir. 2015)....5

*Fid. Mortg. Corp. v. Seattle Times Co.*,
213 F.R.D. 573 (W.D. Wash. 2003)....20

*Freeman v. Quicken Loans, Inc.*,
566 U.S. 624 (2012)....8

*Galiano v. Fid. Nat'l Title Ins. Co.*,
684 F.3d 309 (2d Cir. 2012)....7, 8

*Gerhart v. Beazer Homes Holdings Corp.*,
2009 WL 799256 (E.D. Cal. Mar. 23, 2009)....15

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014)....24

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024)....20

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006)....13, 14

*Guketlov v. Homekey Mortg., LLC*,
2009 WL 3785575 (W.D. Wash. Nov. 9, 2009) (Robart, J.)....14, 18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986) (en banc)....18, 23

*Jackson v. Wells Fargo Bank, N.A.*,
2020 WL 1876052 (E.D. Okla. Apr. 15, 2020)....16



COOLEY LLP
1700 SEVENTH AVENUE
SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................5

*King v. California*,
784 F.2d 910 (9th Cir. 1986) ....................16

*Kozlov v. F.D.I.C.*,
2010 WL 4923103 (W.D. Wash. Nov. 29, 2010) ....................24

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................5

*McDonald v. OneWest Bank, FSB*,
929 F. Supp. 2d 1079 (W.D. Wash. 2013) ....................19

*Menichino v. Citibank, N.A.*,
2017 WL 2455166 (W.D. Pa. June 6, 2017) ....................16

*Morales v. City & Cnty. of San Francisco*,
603 F. Supp. 3d 841 (N.D. Cal. 2022) ....................9

*Omni Innovations, LLC v. Inviva, Inc.*,
2009 WL 10677137 (W.D. Wash. Dec. 15, 2009) ....................9

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009) ....................18

*Pascual v. Wells Fargo Bank, N.A.*,
2013 WL 4066946 (N.D. Cal. Aug. 8, 2013) ....................16

*Peyton v. Veterans United Home Loans*,
2026 WL 2446755 (W.D. Mo. Aug. 20, 2026) ....................8, 10, 17

*S.E.C. v. Reys*,
712 F. Supp. 2d 1170 (W.D. Wash. 2010) ....................20

*Snow v. First Am. Title Ins. Co.*,
332 F.3d 356 (5th Cir. 2003) ....................15

*Storey v. Amazon.com, Inc.*,
2026 WL 1470611 (9th Cir. May 26, 2026) ....................20

*Storey v. Amazon.com Services LLC*,
2024 WL 2882270 (W.D. Wash. June 7, 2024) ....................20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tierney v. Carrington Mortg. Servs.*,
2021 WL 5280022 (W.D. Wash. Nov. 12, 2021) ....................19

*Tierney v. Carrington Mortg. Servs., LLC*,
2023 WL 2783241 (9th Cir. Apr. 5, 2023) ....................22

*Trujillo v. Nw. Tr. Servs., Inc.*,
355 P.3d 1100 (Wash. 2015)....................19

*Valdez v. JPMorgan Chase Bank, N.A.*,
2013 WL 4516366 (N.D. Cal. Aug. 23, 2013) ....................15, 16

*Ward v. Caulk*,
650 F.2d 1144 (9th Cir. 1981) ....................15

*White v. Symetra Assigned Benefits Serv. Co.*,
104 F.4th 1182 (9th Cir. 2024) ....................22

*Woodell v. Expedia Inc.*,
2019 WL 3287896 (W.D. Wash. July 22, 2019) ....................23

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020)....................21



COOLEY LLP
1700 SEVENTH AVENUE
SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

# I. INTRODUCTION

Rather than asserting additional facts to strengthen their dismissed claims, Plaintiffs' Third Amended Complaint merely attempts to *obscure* the alleged "kickback agreement" by replacing factual allegations with conclusory assertions of "steering." The Court should not reward this gamesmanship. The few particularized facts that remain confirm the TAC targets the same subject as prior pleadings: free, non-binding pre-approval letters. As such, Plaintiffs still fail to state a claim and the Court should dismiss the TAC with prejudice.

*First*, Plaintiffs do not cure their failure to sufficiently plead standing. They ignore the Court's instruction to identify how much they paid for a ZHL pre-approval letter because they in fact paid nothing. Rather than address the Order, the TAC strips out many of the specific factual allegations related to pre-approval letter metrics the Court found deficient and replaces them with vague allegations of an undefined agreement to "steer" buyers to ZHL, generally. But no amount of strategic repackaging can disguise the fundamental reality that Plaintiffs continue to assert the same claims, tied to the same pre-approval letters and related performance metrics, that the Court previously found could not support a claim. The TAC is devoid of particularized allegations identifying what ZHL settlement service was the subject of any referral agreement, what "kickback" or "thing of value," or which Zillow entity was party to any such agreement.

*Second*, Plaintiffs' RESPA claims fail for other reasons, too. ZHL pre-approval letters are free, optional, and non-binding—they are not a RESPA "settlement service," they do not establish a covered "referral," and Plaintiffs never paid a cent for one. Beyond Plaintiffs' failure to allege the core elements of a Section 2607(a) violation, the three time-barred Plaintiffs still plead no facts justifying equitable tolling, and the two others fail based on individualized factual defects. And ***even if*** Plaintiffs could state a RESPA violation, Defendants are exempt from liability under the cooperative brokerage safe harbor.

*Third*, Plaintiffs' WCPA claim collapses with the failed RESPA predicate. It also independently fails because Zillow's Terms of Use, Affiliated Business Arrangement Disclosures,



COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

and Plaintiffs' own agents notified Plaintiffs of the very conduct they now challenge, defeating any claim of deception. Finally, no individual Plaintiff alleges a concrete, particularized injury caused by Zillow's conduct.

By pleading even *fewer* facts than before, Plaintiffs have shown they are incapable of curing the deficiencies in their claims. They have had several bites at this apple, and still fail to state a claim. Accordingly, the TAC should be dismissed with prejudice.

## II. BACKGROUND

Plaintiffs' Third Amended Class Action Complaint ("TAC") is brought by five named Plaintiffs—Araba Armstrong, David Liao, Furgus Wilson, Brandon Daugherty, and Rebecca Robbins. Each alleges purchasing a home between February 2021 and June 2026, using a Zillow "Preferred" (formerly "Flex") agent, and financing through Zillow Home Loans ("ZHL"). (Dkt. 103, TAC ¶¶10, 15, 19-20, 24-25, 29-30.)

***The Named Plaintiffs' Transactions.*** Plaintiffs' own allegations, along with documents incorporated by reference, confirm: (1) that their agent's Zillow affiliation was disclosed to them, and (2) that Plaintiffs were not required to use ZHL for their mortgage.

- *Plaintiff Armstrong* purchased a home in Anchorage, Alaska on April 3, 2024, using agent "D.M.," and *Plaintiff Wilson* purchased a home in Weleetka, Oklahoma on November 29, 2023, with agent "J.M." Both obtained a nonbinding, free pre-approval and chose to finance through ZHL. Neither alleges their pre-approval required them to use ZHL, or that they asked their agent about, or were refused, alternative lenders. (TAC ¶¶10–11, 13; *id.* ¶¶19–20.) Wilson engaged his agent after using Zillow's "Contact Agent" button—a feature that, as Zillow's website and Terms of Use ("TOU") disclose, connects consumers with professionals who may pay Zillow "valuable consideration" for the connection. (*See* Reddy Decl., Ex. 1; *id.*, Ex. 5 at 6.)
- *Plaintiff Liao* purchased a home in Las Vegas, Nevada on February 12, 2021—***before Plaintiffs allege Zillow implemented any ZHL-related steering metrics in 2022***. (TAC

¶¶15–16; *see also id.* ¶¶80, 92, 116 (dating the alleged scheme to 2022 or 2023).)[1] Liao does not allege receiving a ZHL pre-approval letter and claims he chose ZHL because his agent, "V.P.," told him ZHL had "really good interest rates"—a statement Plaintiff Liao does not allege was false. (*See id.* ¶15.)

- *Plaintiff Daugherty* purchased a home in Zionsville, Pennsylvania on March 31, 2026. (*Id.* ¶24.) He alleges he was first contacted by a ZHL loan officer after using Zillow's "Contact Agent" button and only paired with a Preferred agent ***after*** obtaining a pre-approval letter. Daugherty does not allege he believed he was obligated to obtain a ZHL mortgage, or that his fees were higher because he used ZHL. (*Id.*) Rather, he alleges he chose ZHL because agent "N.D." told him ZHL could close faster—a claim he does not allege was untrue, and one he could have tested by simply asking another lender, which he admits he never did. (*Id.* ¶¶24, 27.)
- *Plaintiff Robbins* purchased a home in Flint, Michigan on June 13, 2026; she does not allege she received a ZHL pre-approval letter. (*Id.* ¶29.) She claims that when ZHL's fees appeared to increase as she approached closing, she and her husband "contact[ed] the loan officer to push back against the excessive fees"—confirming that she was aware of, and capable of negotiating, ZHL's charges well before closing. (*Id.* ¶32.)

Each Plaintiff alleges paying mortgage points and loan origination fees at closing, but none alleges facts suggesting their own origination charges were artificially inflated. Plaintiffs' only support for any claim of overpayment is a December 2025 working-paper study by Georgetown Professor Steven Salop—funded by a Zillow competitor—purporting to find an average

[1] Plaintiffs also allege that "[p]ressure on Zillow agents to steer clients to Zillow Home Loans has been ongoing since at least 2018" (TAC ¶58), and elsewhere allege that "beginning at least as early as 2019, Zillow representatives were pressuring CA7 to push clients to use . . . Zillow Mortgage." (*Id.* ¶96.) The Court should disregard these generic allegations because they are untethered to the specific wrongful scheme alleged in the TAC—the alleged agreement requiring Preferred agents to meet ZHL pre-approval quotas in exchange for continued access to leads.



COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

"overcharge" of approximately $2,881 across ZHL loans, based on aggregate data for 2022–2024.[2] (TAC ¶¶7, 68, 73.) Not one Plaintiff alleges what rate or fees they personally could have obtained from a different lender, or otherwise connects this generalized statistic to their own transaction. Nor does any Plaintiff allege that Zillow's rates or fees were not disclosed before closing. (*See generally id*. ¶¶10–33.) Moreover, Plaintiff Robbins' own allegation that she actively negotiated such fees undercuts any claim of overpayment.

***The Alleged Steering Scheme***. Plaintiffs vaguely allege that Zillow requires Preferred agents to "steer" homebuyers to ZHL in exchange for ongoing access to future homebuyer leads, and evaluates Preferred agents based on "multiple metrics." (*Id.* ¶79.) According to Plaintiffs, since at least 2022, one such metric has been the rate at which agents' clients obtain ZHL pre-approval letters. (*Id.* ¶¶47, 80, 92, 116.) Agents who fail to meet Zillow's "pre-approval quotas" allegedly face reduced lead volume or removal from the Preferred program. (*Id.* ¶¶2, 47.)

Plaintiffs do not allege that ZHL pre-approval carries any cost or obligates a buyer to finance with ZHL. Nor do they add new allegations that Zillow tied any performance metrics to loan applications, originations, or closings—*i.e.*, any actual RESPA-covered settlement service.

***Procedural Posture.*** Plaintiffs' prior Consolidated Class Action Complaint ("CCAC") named eleven plaintiffs and asserted eight causes of action—civil RICO, RESPA Sections 2607(a) and (b), WCPA, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment—premised on two theories that this Court rejected in full: that Zillow deceived homebuyers into believing they were contacting listing agents, rather than buyer's agents, who paid Zillow a portion of their commissions, and that Zillow incentivized agents to encourage buyers to obtain free ZHL pre-approvals.

---

[2] Professor Salop's methodology has been criticized by his own consulting firm, Charles River Associates. Meghan Roos, *Borrowers who use Zillow Home Loans pay more, study suggests*, Real Est. News (Jan. 5, 2025), https://www.realestatenews.com/2025/12/22/borrowers-who-use-zillow-home-loans-pay-more-study-suggests.

The Zillow Defendants (along with one broker defendant who was dropped from the TAC) moved to dismiss the CCAC on February 20, 2026. On July 27, 2026, the Court issued an Order granting the Zillow Defendants' motion to dismiss in its entirety, with leave for Plaintiffs to file "an amended complaint that adds [specified] new Plaintiffs and addresses the pleading deficiencies identified" in the Order. (Dkt. 102 ("Order") at 31–32.) Plaintiffs filed the TAC on August 17, 2026. This Motion follows.

## III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). Where, as here, a claim sounds in fraud, the plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## IV. ARGUMENT

### A. No Plaintiff Adequately Alleges A RESPA Violation (Count I).

RESPA does not prohibit referrals to mortgage lenders—it prohibits an ***agreement*** to provide or accept ***kickbacks*** for ***referrals for a settlement service*** on a federally-related mortgage loan. 12 U.S.C. § 2607(a). There can be no Section 2607(a) violation absent allegations that: (1) the defendant exchanged a payment or thing of value, (2) pursuant to an agreement to refer real estate settlement services, and (3) there was an actual referral. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178–79 (9th Cir. 2015). To have standing, Plaintiffs must also establish that "they were personally 'charged for the settlement service ***involved in the [RESPA] violation***.'" (Order at 17 (quoting *Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) (emphasis added)).)

Measured against these requirements, the TAC falls short at every turn. Plaintiffs' RESPA claim fails for at least the following reasons: (i) Plaintiffs still fail to adequately allege standing because their mortgage origination fees are untethered to "the settlement service involved in the

[RESPA] violation," *i.e.*, pre-approval letters; (ii) pre-approval letters are not a RESPA "settlement service"; (iii) Plaintiffs do not allege a RESPA-covered "referral;" and (iv) the RESPA safe harbor for cooperative brokerages applies. Each Plaintiff's claims also individually fail for the additional reasons discussed below.

**1. Plaintiffs still fail to allege they paid a "charge" tied to an alleged RESPA violation and lack standing.**

**a. Plaintiffs do not cure their failure to identify a "charge" tied to a pre-approval.**

The Court could not have been clearer: Plaintiffs' "Section 2607(a) claim fails because they do not allege that they paid for a pre-approval letter." (Order at 18.) As held, Plaintiffs must plausibly plead that they "pa[id] for the *contested* settlement services" as an "absolute threshold requirement" to state a claim. (*Id.* at 17–18 (emphasis added).) They fail because the "contested settlement services" remain the same as those in the CCAC: free ZHL ***pre-approval letters***. (*See* Order at 18.) This alone warrants dismissal of their RESPA claim with prejudice.

**b. Loan origination fees cannot confer standing because they are not tied to a RESPA violation.**

Unable to supply the allegation the Court found lacking, Plaintiffs assert that "loan origination fees each Plaintiff paid are the 'charge paid for such settlement service' within the meaning of 12 U.S.C. 2607(d)(2)." (TAC ¶156; *see also id.* ¶5.) This allegation is not new. Although Plaintiffs' prior complaint omitted the specific breakdown of closing fees each Plaintiff paid, the CCAC still alleged that "[e]ach class member paid charges for mortgage-origination services provided by Zillow Home Loans[.]" (Dkt. 45, CCAC ¶283.) Yet, the Court implicitly determined that the "contested settlement service" was free pre-approval letters and it dismissed their claim. (Order at 18.) The same outcome holds true here.

Plaintiffs' core theory has been the same since the outset of this litigation: "Beginning in or around 2022 . . . Zillow paired Premier Agent partners with ZHL loan officers, and . . . require[ed] Participating Agents to meet specific ZHL pre-approval quotas as a condition for

maintaining access to [] high-value leads." *Armstrong v. Zillow Grp., Inc.*, No. 2:25-cv-02226 (W.D. Wash. Nov. 7, 2025), Dkt. 1 ¶¶8-9 ("Agents who meet ZHL pre-approval quotas receive better leads and placement . . . a textbook *quid pro quo* that turns Zillow's referral network into a mortgage funnel[.]"), 51–52, 77. This failed to support a RESPA violation in the CCAC. (*See* CCAC ¶¶66 (Zillow "require[ed] Participating Agents to meet specific ZHL pre-approval quotas as a condition for maintaining access to these high-value leads"), 71, 73, 88, 159, 163, 278; *see also* Order at 17–18.)

In place of their once-detailed allegations, Plaintiffs now offer vague references to a generic "scheme": that an undefined "Zillow" requires its Preferred agents to "steer homebuyers to use Zillow Home Loans." *See* TAC ¶¶1-2, 47, 87, 89, 94. But these conclusory allegations reflect assumptions the Court need not credit as true, even on a motion to dismiss. Lacking any *facts* that would plausibly support an agreement to unlawfully reward agents for mortgage origination referrals, Plaintiffs opt instead to delete specific references to "pre-approval" metrics from prior allegations, replacing them with generic references to "steering." (*Compare, e.g.,* CCAC ¶¶66 , 70-71 (screenshots of pre-approval-related performance metrics), *with* TAC ¶47 ("If agents do not comply and fail to meet **Zillow's *steering* quotas**, the agents are dropped from the Zillow Preferred program[.]") (emphases added).)

Plaintiffs do not—and cannot—allege that there was an agreement between Zillow and its Preferred Agents that conditioned continued access to leads through the Preferred program on agents referring their clients to apply for, originate, or close loans with ZHL. For example, in contrast to their pre-approval allegations, they do not identify any specific "agreement," which "Zillow" entity is allegedly responsible, or what specific "quotas" agents must meet to obtain the unidentified "kickback." *See Galiano v. Fid. Nat'l Title Ins. Co*., 684 F.3d 309, 314–15 (2d Cir. 2012) (dismissing 2607(a) claim where kickback scheme was alleged "in a wholly conclusory and speculative manner[,]" and "failed to allege any specifics as to the date, time, or amount of the

alleged . . . violations" or offer non-conclusory facts "as to the alleged kickbacks, referral agreements, or referrals [at issue with the named plaintiffs themselves]").

At most, Plaintiffs allege only that their agents "encouraged," "pressured," or "directed" them to use ZHL, (TAC ¶¶10, 15, 22, 27, 32), but they do not assert a single fact that connects these allegations to an actual ***agreement*** between their agents and Defendants. *See Galiano*, 684 F.3d at 314–15 (affirming dismissal where plaintiff did not plead sufficient facts to establish inference of an agreement); *see also Freeman v. Quicken Loans, Inc*., 566 U.S. 624, 636 n.9 (2012) (RESPA "has always required two culpable parties for a violation"); *Peyton v. Veterans United Home Loans*, 2026 WL 2446755, at *8–9 (W.D. Mo. Aug. 20, 2026) (plaintiff failed to state a 2607(a) claim where she "only allege[d] that her real estate agent 'encouraged' her to use [a lender] and did not present other options[,]" in contrast to other plaintiffs who alleged "detailed" evidence of a "kickback agreement," including "volume-linked patterns"). Nor do they identify any "thing of value" exchanged for referrals for mortgage origination. *CFPB v. Borders & Borders, PLC*, 2018 WL 1440606, at *3 (W.D. Ky. Mar. 22, 2018) (there can be no 2607(a) violation where no "thing of value" is exchanged for a referral).

The only factual allegations that could even possibly support a Section 2607(a) "agreement" or "understanding" detail the same "kickback" scheme predicated on the exchange of referrals for free ZHL pre-approval letters for continued access to the Preferred Agent program. This includes:

- Confidential Agent statements alleging that "Zillow is 'holding leads hostage from agents that do not send clients to get preapproval from ZHL[,]" and that "[i]f an agent does not get 10% or more of his/her clients to obtain a pre-approval letter from ZHL, the agent is dropped from the program." (TAC ¶¶ 55, 98.)
- Incorporation of the Zillow "Preferred Program Standards," which include a "**Zillow Home Loans Pre-Approval Target**" that measures the "[n]umber of agent's customers

who get pre-approved with Zillow Home Loans." (*Id.* ¶62 n.38; *see also* Reddy Decl., Ex. 8.)

- Confidential Loan Officer statements that "agents are measured and judged based on metrics created by Zillow that capture how many clients that supposedly expressed an interest in 'financing' are preapproved for a loan by Zillow Home Loans. Zillow then threatens to remove, and does remove, Zillow Flex agents who fail to meet Zillow's 10% quota." (*Id.* ¶118.)

(*See also id.* ¶¶102–103 (including screenshots of performance metric tracking).) Without ***a single factual allegation*** of an agreement tied to loan origination (as opposed to pre-approval letters), Plaintiffs' allegations that they paid loan origination fees fails to confer standing.

The Court granted Plaintiffs leave to address the deficiencies in their CCAC, but all they have done is obfuscate their core legal theory, hoping the innuendo of wrongdoing will suffice. Rules 12 and 9(b), however, do not allow this, and the Court should reject Plaintiffs' attempt to state a claim by simply obscuring their prior allegations. *Dawson v. Porch.com*, 2023 WL 3947831, at *3 (W.D. Wash. June 11, 2023) (amendment futile where plaintiff "delete[d] specific factual allegations that would otherwise defeat the asserted cause of action in favor of conclusory and implausible recitations of statutory elements"); *see also, e.g., Omni Innovations, LLC v. Inviva, Inc.*, 2009 WL 10677137, at *2 (W.D. Wash. Dec. 15, 2009) (denying motion for leave to amend where plaintiff's proposed amendment attempted "to sidestep prior Court decisions that found that he has no standing"); *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022) (dismissing claim where plaintiffs' TAC "[wa]s difficult to reconcile with the previous complaints," because "'[t]he Court does not ignore the prior allegations in determining the plausibility of the current pleadings' and is 'not required to accept as true [contradictory] allegations in an amended complaint' ***without more facts***" (emphasis added)).

The fact remains that "[b]ecause Plaintiffs did not directly pay ***for the contested settlement services*** [*i.e.*, pre-approval letters] they lack statutory standing, and the claim fails as a matter of law." (Order at 18 (emphasis added).) This alone is dispositive of Plaintiffs' RESPA claim.

**2. Pre-Approval letters are not a RESPA settlement service.**

Even if Plaintiffs had standing, they also fail to plausibly plead a "settlement service" under Section 2607(a). RESPA defines a "settlement service" as "any service provided in connection with a real estate *settlement*," and lists a host of such for-cost services as examples. 12 U.S.C. § 2602(3) (referring to, *inter alia*, "title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney . . . the handling of the processing, and closing or settlement"). Consistent with this stated purpose, the Ninth Circuit has interpreted the phrase "settlement services" to encompass ***only those services necessary for closing and for which the borrower pays at or before closing***. *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) ("RESPA's non-exhaustive list of settlement services also suggests a limitation to costs payable at or before settlement"); *see also Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036, 1040–41 (W.D. Wash. 2008) (Robart, J.) (plaintiffs stated a claim where challenged fees were payable at or before settlement, were "not assessed after the closing," and "there was no doubt that they would be collected").

Thus, a "settlement service" must cost money and be necessary for obtaining a loan. Pre-approvals cannot qualify because Plaintiffs do not (and cannot) allege they paid for pre-approval letters or that such letters are required for their loan. Instead, as Plaintiffs previously alleged, pre-approval letters "empower[] consumers to navigate affordability during their home search"—*i.e.*, before they have even identified a property to finance. (CCAC ¶71); *see also Peyton*, 2026 WL 2446755, at *9 ("[b]eing pre-approved for a home loan does not obligate a buyer to work with that specific lender").

Other RESPA provisions confirm this interpretation. First, among RESPA's required disclosures is a booklet that must be provided to loan applicants, which describes "costs incident

to a real estate settlement or a federally related mortgage loan." 12 U.S.C. § 2604(b)(1). Pre-approval letters—which have no cost—are not among them. *See, e.g.*, 1974 U.S.C.C.A.N. 6546, 6548, 6555, 1974 WL 11646 (1974). Second, the TILA-RESPA Integrated Disclosures Rule, which governs the timing and content of RESPA-required disclosures, is triggered by an "application" that includes a "property address" and "value"—neither of which is necessary for pre-approval. *See* Integrated Mortgage Disclosures Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 79730, 79731 (Dec. 31, 2013); 12 C.F.R. § 1026.2(a)(3)(ii). Third, construing a free pre-approval letter as a "settlement service" cannot be squared with RESPA's remedial provision, permitting recovery of "three times the amount of any charge *paid* for such settlement service[.]" 12 U.S.C. § 2607(d)(2) (emphasis added). As the Court already found, no such charge was paid. (Order at 18.)

Read together or independently, RESPA's broader context reveals that pre-approval letters are not a settlement service, and this theory fails.

### 3. Encouragement to seek a pre-approval letter is not a "referral" under RESPA.

For similar reasons, Plaintiffs have not pled a RESPA-covered referral. RESPA's implementing regulation, Regulation X, limits covered "referrals" to settlement services for which the consumer will pay: "A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service . . . ***when such person will <u>pay for</u> such settlement service or business incident thereto <u>or pay</u> a charge attributable in whole or in part to such settlement service or business***." 12 C.F.R. § 1024.14(f)(1) (emphasis added). A pre-approval letter requires neither.

In *Bolinger v. First Multiple Listing Service, Inc.*, 2014 WL 4803155, at *5–6 (N.D. Ga. Sep. 26, 2014), the court granted summary judgment on 2607(a) claims involving similar allegations because there was no "referral"—the plaintiffs "paid no charges to [the listing service]," and defendants "never influenced or required Plaintiffs to do business with [it.]" *Id.*

The same is true here; pre-approval letters are not a settlement service, carry no cost, and Plaintiffs do not (and cannot) allege they paid any charge to ZHL for them. Accordingly, the challenged conduct did not constitute a RESPA "referral."

**4. The cooperative brokerage safe harbor applies.**

Finally, *even if* any Plaintiff had standing ***and*** could sufficiently allege the baseline elements of a RESPA claim, their claims must still be dismissed under RESPA's cooperative brokerage exception. 12 U.S.C. § 2607(c)(3) ("Nothing in this section shall be construed as prohibiting . . . payments pursuant to cooperative brokerage and referral arrangements"). In creating this exception, Congress intended to broadly exempt referrals made under cooperative brokerage arrangements, including listing referrals from brokerages (like Zillow) to local brokers. H.R. Rep. No. 94-667, *Comm. on Banking, Currency and Hous., Real Est. Settlement Proc.*, at 2 (1975) (purpose was "to make it clear that cooperative brokerage and referral arrangements of real estate agents are exempt from the prohibition of kickbacks and unearned fees"); *Real Estate Settlement Procedures Act of 1974: Hearings on H.R. 5352, S. 2327, and H.R. 10283 Before the Subcomm. on Hous. & Cmty. Dev.*, 94th Cong. 129 (1975) (statement of Mr. Kasten) ("There is no doubt in my mind that Congress in no way intended to prohibit either out-of-town referrals or the multiple listing services.").

The plain language of the safe harbor requires that: (1) the parties are "real estate brokerages"; and (2) the "payments" given or received must be "pursuant to cooperative brokerage and referral arrangements" or "agreements between real estate agents and brokers." 12 U.S.C. § 2607(c)(3); 12 C.F.R. § 1024.14(g)(1)(v). Both elements are satisfied here. As to the first, Plaintiffs allege both that "Zillow maintains real estate brokerage licenses in several states" (TAC ¶¶34, 37) and that the third-party agents it works with are "brokerage[s]" (*see, e.g., id.* ¶¶32, 53). As to the second, Plaintiffs allege that Zillow "paid" the Preferred Agent brokerages pursuant to agreements among their brokerages. Specifically, Plaintiffs allege that Zillow provided agents

with favorable "opportunities to participate in a money-making program"—*i.e.*, a "payment"[3]—if those agents referred clients to ZHL for pre-approvals. Plaintiffs further allege that Zillow performed substantial brokerage services in connection with these arrangements, including "marketing, lead-generation, referral, and coordination functions[.]" (TAC ¶161.) The referrals and "payments" were thus made pursuant to precisely the kind of cooperative brokerage arrangement the exception allows.

Plaintiffs attempt to avoid the safe harbor through the bare conclusion that "Zillow does not act as a real-estate broker . . . in these transactions . . . and performs no brokerage services in the purchase or sale of property." (*Id.* ¶166.) But, as evidenced by Plaintiffs' allegation just five paragraphs earlier, this is plainly false. (*Compare id.* ¶161 (detailing Zillow's marketing, lead generation, and coordination services), *with* Alaska Stat. Ann. § 08.88.161(8) (prohibiting "assist[ing] in or direct[ing] the procuring of prospective buyers and sellers of real estate" by anyone but licensed real estate brokers).[4])

**5. Each Plaintiff's RESPA claim also fails for individual reasons.**

**a. The TAC adds nothing to support equitable tolling, and Plaintiffs Armstrong's, Liao's, and Wilson's RESPA claims fail.**

This Court already determined that Ms. Armstrong's and Mr. Liao's RESPA claims are facially time-barred. (Order at 14, 30–31); *see also* 12 U.S.C. § 2614 (RESPA claims must be brought within one year "from the date of the occurrence of the violation"). The same is true of Mr. Wilson, who purchased his home on November 29, 2023. (TAC ¶19.) To overcome this, the TAC must plead a basis for equitable tolling. *See Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006). This Court already rejected equitable tolling, correctly observing the doctrine is to be applied "sparingly," and requires both that (i) the defendant engaged in deceptive conduct

[3] Regulation X defines "payment[s]" as "synonymous with the giving or receiving of any 'thing of value'…" and defines a "thing of value" to include the "opportunity to participate in a money-making program." 12 C.F.R. § 1024.14(d).

[4] Alaska, Plaintiff Armstrong's home state, is included as an illustrative example.

***targeting the plaintiff***; and (ii) the plaintiff exercised reasonable diligence. (Order at 14 (collecting cases)); *see also Guerrero*, 442 F.3d at 706–07 ("Equitable estoppel . . . halts the statute of limitations when there is 'active conduct by a defendant,'" upon which plaintiff relied, "'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" (citation omitted)). Facts supporting each element must be pled with particularity, under Rule 9(b). *Id.*

Nothing in the TAC's amended tolling allegations justifies disturbing the Court's earlier conclusion: Plaintiffs still "fail to demonstrate that [they] engaged in reasonable diligence when they closed on their real estate transactions" and so "have not plausibly alleged that they are entitled to equitable tolling." (Order at 30.)

***First***, each Plaintiff alleges they "could not have discovered the violations through reasonable diligence" and that they "exercised due diligence related to [their] claims, including relying on [their] agent's obligations to comply with state law governing real estate agents' fiduciary duties[.]" (TAC ¶¶143–147.) As this Court has held, tolling "focuses on excusable delay by the plaintiff . . . and inquires whether a reasonable plaintiff would . . . have known of the existence of a possible claim within the limitations period." *Guketlov v. Homekey Mortg., LLC*, 2009 WL 3785575, at *3 (W.D. Wash. Nov. 9, 2009) (Robart, J.) (internal quotations and citations omitted). Plaintiffs' conclusory allusions to agents' fiduciary duties offer "no fact[s] that would support a finding that a reasonable plaintiff would not have known that he received inadequate disclosures[.]" *Id.*

Plaintiffs' own allegations defeat any claim of "reasonable diligence." Before closing a ZHL loan, Plaintiffs received disclosures expressly informing them that they might be connected with affiliated mortgage providers, and that Zillow entities could benefit from these referrals. (Reddy Decl., Exs. 2-7; *see also* Order at 21–22 ("Zillow discloses the challenged conduct in its TOU and other consumer-facing notices[.]").) The TAC further confirms that Zillow's Program Standards—including the very pre-approval targets Plaintiffs challenge—are published on



COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

publicly available websites. (*See, e.g.*, TAC ¶62 n.38.) Courts do not permit blind reliance on a "fiduciary" in the face of objective disclosures to justify equitable tolling. *Clausing v. Zimmar*, 1996 WL 742209, at *3 (Wash. Ct. App. Dec. 30, 1996) (reliance on the loyalty of an agent "must have been reasonable, and if the known facts are objectively sufficient to dispel any reasonable trust in a fiduciary, the claimed reliance cannot toll the statute of limitations"); *Gerhart v. Beazer Homes Holdings Corp*., 2009 WL 799256, at *4 (E.D. Cal. Mar. 23, 2009) (no equitable tolling where "plaintiffs received adequate disclosure regarding the relationship [through an ABAD] . . . such that plaintiffs should have been aware of the possible existence of a RESPA claim"). The same principles apply here. *See Douglass v. Stanger*, 2 P.3d 998, 1005 (Wash. Ct. App. 2000) ("[E]ven in an action for fraud where a fiduciary relation exists, the burden is upon the plaintiff to show that the facts constituting the fraud were not discovered or could not [be] discovered[.]" (first and second alterations in original) (citation omitted)).

***Second***, Plaintiffs alternatively allege the limitations period was tolled because "Defendants also continue to violate RESPA, and thus Defendants' actions amount to a continuing violation." (TAC ¶149.) This argument finds no support in law or fact. The "continuing violation" doctrine extends accrual only "if a chain of unlawful acts connects an earlier claim to a claim arising within the limitations period." *Valdez v. JPMorgan Chase Bank, N.A.*, 2013 WL 4516366, at *2 (N.D. Cal. Aug. 23, 2013) (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). The doctrine requires "continual unlawful acts—not by continual ill effects from an original violation." *Id.*

Here, Plaintiffs claim that each monthly mortgage payment "constitutes a continuing collection of fees on a settlement service that was procured through an illegal referral, and therefore constitutes a new violation[.]" (TAC ¶149.) They offer no details of any post-closing payments, no subsequent "kickbacks," fees, or referrals. The sole alleged violation occurred once per transaction: at pre-approval. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358–59 (5th Cir. 2003) ("The phrase 'the date of the occurrence of the violation' refers to the closing, i.e., when the

plaintiffs paid for the insurance, because that is when the agents earned the allegedly prohibited 'thing of value.'" (footnote omitted)). Indeed, their allegations suggest ZHL does not even service these loans. (TAC ¶63.)

Even if Plaintiffs pleaded an unlawful referral arrangement tied to mortgage origination (they did not), their continuing violation argument would still fail because they do not plead a subsequent unlawful act to trigger a new limitations period. Courts across the country—including in this Circuit—routinely find that ongoing loan payments are not a "continuing violation." *See, e.g., Valdez*, 2013 WL 4516366, at *2 (rejecting argument that "each mortgage payment Defendant collected, from 2007 to 2013, is continuous misconduct that triggers the continuing violation doctrine"); *Pascual v. Wells Fargo Bank, N.A.*, 2013 WL 4066946, at *5 (N.D. Cal. Aug. 8, 2013) ("continuing violation doctrine" did not apply to loan origination because "any subsequent loan payments were simply an effect of the violation rather than a new violation"); *Menichino v. Citibank, N.A.*, 2017 WL 2455166, at *7 (W.D. Pa. June 6, 2017) ("[N]o Court of Appeals has held that each monthly mortgage insurance payment constitutes a new and independent violation of RESPA[.]"); *cf. Blake v. JPMorgan Chase Bank, N.A.*, 259 F. Supp. 3d 249, 256–57 (E.D. Pa. 2017) ("***a subsequent pattern of kickbacks*** and fees (prohibited by RESPA)"—*e.g.*, reinsurance payments that represent a repeated "kickback"—may "amount[] to a 'continuing violation,' thereby re-setting the statute of limitations upon each ***new violation***" (emphases added)).

This result is particularly logical given the prevalence of 30-year mortgages. Adopting Plaintiffs' theory would effectively result in a ***31-year statute of limitations***—substantively eliminating RESPA's limitations period. *Jackson v. Wells Fargo Bank, N.A.*, 2020 WL 1876052, at *2 (E.D. Okla. Apr. 15, 2020) ("[a]cceptance of plaintiff's continuing violation theory . . . would, in substance, eliminate the statute of limitations" for RESPA claims); *King v. California*, 784 F.2d 910, 914 (9th Cir. 1986) ("reject[ing] the 'continuing violation' theory" as to TILA claims because it was "unrealistically open-ended" and "exposes the lender to a prolonged and unforeseeable

liability that Congress did not intend"). This Court should decline Plaintiffs' invitation to create such an absurd result here.

**b. Plaintiff Liao's, Daugherty's, and Robbins's claims are deficient for additional reasons.**

***First***, even setting aside the arguments above, Mr. Liao's claims fail because he purchased his home before the alleged referral "scheme" began. Plaintiffs allege the challenged metrics were added to Zillow's Preferred program standards in ***2022 or 2023***. (TAC ¶¶80, 92, 116, 122; *see also* CCAC ¶66 (alleging that the ZHL scheme started "in or around 2022" and "***over time***, incorporated ZHL-related metrics into agents' performance framework" (emphasis added)).) Mr. Liao purchased his home in Las Vegas, Nevada ***on February 12, 2021*** (TAC ¶15), after his agent purportedly "encouraged" him to use ZHL "because of its really good interest rates." (*Id.*) But the TAC alleges no facts to support the existence of any agreement to exchange referrals for leads (or any other thing of value) by any of the Zillow Defendants prior to 2022 (to the extent alleged at all), and there is no factual basis to conclude Zillow influenced Mr. Liao's agent's conduct in any way. His claims should be dismissed.

***Second***, Plaintiffs Liao, Daugherty, and Robbins do not allege that their agents "referred" them to seek a pre-approval from ZHL. Mr. Daugherty does not allege his ***agent*** encouraged him to seek a pre-approval, and Mr. Liao and Ms. Robbins do not allege seeking a preapproval at all. (*See* TAC ¶¶ 15, 24, 29.) With no referral—and no corresponding thing of value received in exchange—these Plaintiffs allege no connection to the purported kickback scheme, and there can be no RESPA violation. *Peyton*, 2026 WL 2446755, at *9 (dismissing RESPA § 8(a) claim where plaintiff "only allege[d] that her real estate agent 'encouraged' her to use [a lender] and did not present other options[,]" because "[w]ithout alleging some connection between [her real estate agent] and the alleged kickback scheme, [plaintiff] fail[ed] to make her claim plausible").

**B. The Plaintiffs' WCPA Claim Still Fails (Count II).**

Plaintiffs also fail to cure the deficiencies in their WCPA claim, which now rests on two theories: (1) that a RESPA violation is a *per se* WCPA violation, and (2) that Zillow failed to disclose its "steering." (TAC ¶¶174–181.) Under either theory, a claim for a WCPA violation requires five elements: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). The Court previously determined that Plaintiffs failed to plead unfair or deceptive conduct—including on their *per se* theory—as well as injury. (*See* Order at 19–22.) The same result holds here.

**1. The *per se* theory fails with Plaintiffs' RESPA claim.**

Plaintiffs argue that a RESPA Section 8(a) violation is, by itself, an unfair practice under the WCPA. (TAC ¶¶179–181.) This theory fails for two independent reasons.

*First*, as the Court has already held, when the predicate RESPA claim itself fails, the dependent WCPA claim must fall with it. (*See* Order at 19); *see supra* Section IV(A).

*Second*, even a well-pleaded RESPA violation—which does not exist here—is not *per se* unfair conduct for WCPA purposes. "A per se unfair trade practice exists when a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *In re Bryce*, 491 B.R. 157, 185 (W.D. Wash. 2013) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535–36 (Wash. 1986) (en banc)). Courts routinely hold that a RESPA violation does not automatically satisfy this standard. *See id.* at 185–87 ("[T]his Court is not aware of a single Washington State case finding that a violation of TILA, HOEPA or RESPA is a per se violation of the CPA."); *see also Bednaruk v. Nw. Tr. Servs., Inc.*, 2010 WL 545643, at *4 (W.D. Wash. Feb. 9, 2010) (dismissing WCPA claim where plaintiffs "failed to point this Court to [any] authority" showing that RESPA violation satisfies *per se* treatment under the WCPA); *Guketlov*, 2009 WL 3785575, at *4 (same).

Plaintiffs' lone authority does not provide otherwise. *Tierney v. Carrington Mortg. Servs.*, 2021 WL 5280022 (W.D. Wash. Nov. 12, 2021); (*see* TAC ¶¶8 n.12, 179 n.56.) Procedurally, *Tierney* involved a different provision of RESPA. *See Tierney*, 2021 WL 5280022, at *4 (reflecting that plaintiff sued under RESPA's qualified written request provision, which is not at issue here). And substantively, *Tierney* undermines Plaintiffs' argument because the court disposed of the CPA claim ***while allowing the RESPA claim to proceed*** because the plaintiff failed to prove injury. *See id*. at *6–7; *see infra* Section IV(B)(2). While the *Tierney* court noted *in dicta* that a RESPA violation "typically" constitutes a *per se* WCPA violation, none of its cited cases support that conclusion.[5] *Tierney*, 2021 WL 5280022, at *6. Accordingly, regardless of whether Plaintiffs plead a viable RESPA claim (they do not), the Court should dismiss their WCPA claim premised on a *per se* violation of RESPA.

**2. Plaintiffs otherwise fail to allege deceptive conduct, injury, and causation.**

Plaintiffs' WCPA claim also fails because Plaintiffs plead no unfair or deceptive act, no injury caused by any Zillow conduct, and no causation.

**a. Zillow's disclosures still defeat any claim of unfairness or deception.**

Plaintiffs have recast their prior "Contact Agent" and "pre-approval letter" theories as a "fail[ure] to disclose" theory (TAC ¶175), but the challenged conduct is the same: Plaintiffs complain that Zillow failed to disclose arrangements with their agents that required the agents to refer plaintiffs to ZHL for pre-approvals, or risk losing the ability to participate in the Preferred

[5] Three of the four cases cited in *Tierney* do not even mention RESPA, let alone find that its violation constitutes a *per se* WCPA violation. *Tierney*, 2021 WL 5280022, at *6 (citing *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 51 (Wash. 2012); *Brown v. Wash. State Dep't of Com.*, 359 P.3d 771, 781, n.12 (Wash. 2015); *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100 (Wash. 2015)). And while the fourth case at least mentions both RESPA and the WCPA, it does not assess their connection or hold that a RESPA violation constitutes a *per se* WCPA violation. *See McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1097–98 (W.D. Wash. 2013).

Agent program. (TAC ¶¶177–178; *see also generally* TAC.)[6] Because Plaintiffs still claim Zillow's conduct was deceptive, they must satisfy the heightened pleading standard under Rule 9(b). *See, e.g.*, *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003). But their allegations do not even satisfy Rule 8, let alone Rule 9(b).

It is well settled that "[c]onduct disclosed in a company's terms of service is not deceptive under the WCPA." (Order at 19 (citing *Storey v. Amazon.com Services LLC*, 2024 WL 2882270, at *1 (W.D. Wash. June 7, 2024), *aff'd sub nom*. *Storey v. Amazon.com, Inc.*, 2026 WL 1470611 (9th Cir. May 26, 2026)).) Conduct is likewise "not unfair if clear disclosures provide consumers enough notice to 'reasonably avoid' the alleged injury." (*Id.* (citing *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024)).) These principles are dispositive here. The TAC's new allegations do not disturb—and even reinforce—the Court's prior holding that Zillow's Terms of Use, Touring Agreement, and Affiliated Business Arrangement Disclosure gave consumers "notice of the challenged conduct and the means to avoid it[.]" (Order at 20, 22.)

Plaintiffs now characterize these disclosures as "generic boilerplate" and "not reveal[ing] the specific quid pro quo alleged here." (TAC ¶178). But these allegations are pure conclusions, not facts, and are not entitled to a presumption of truth. *See S.E.C. v. Reys*, 712 F. Supp. 2d 1170, 1172 (W.D. Wash. 2010). As this Court has already noted, it is apparent from the face of the disclosures that they describe sufficient facts to put Plaintiffs on notice of the pre-approval referral relationship they complain of here. For example, Zillow's TOU expressly state that Zillow may connect consumers with Partner Agents and receive "***valuable consideration for facilitating such connection***." (Reddy Decl., Ex. 5, at 6 (emphasis added).) The TOU also informed Plaintiffs that Zillow and its affiliated brands, including ZHL, might facilitate referrals among affiliated entities, and that such referrals "may provide the referred company . . . with a financial or other benefit."

[6] As detailed in Section IV(A)(1)(b), *supra*, outside of pre-approval metrics, Plaintiffs have failed to sufficiently allege any other purported "steering" conduct at all, let alone with the requisite particularity to state a claim based on fraud.

(*Id.* at 2.) Plaintiffs (like all users) also separately received this disclosure in the Affiliated Business Arrangement Disclosure. (*See* Reddy Decl., Ex. 7 at 1.) Consistent with these disclosures, Plaintiff Robbins's agent expressly told her that the agent's brokerage and Zillow "were all part of the same company." (TAC ¶¶4, 32.) Given these particularized disclosures, Plaintiffs cannot allege that Zillow concealed that their agents were Zillow-affiliated, or that Zillow might facilitate referrals to its affiliated brands (like ZHL).

Plaintiffs further allege that Zillow should have disclosed the findings of Professor Salop's so-called "report" about Zillow (which, as Plaintiffs themselves concede, was completed with "financial support" from Zillow's competitor CoStar). (TAC ¶¶68, 178.) No authority imposes a duty to disclose competitor-funded hit pieces, and the Court should give this allegation no weight.

Finally, Plaintiffs point to an image of a "training" script, as indicating that Zillow requires agents to steer consumers toward ZHL. (*See* TAC ¶3; *see also id.* ¶¶4, 47–60 (alleging Zillow affirmatively pressured agents to conceal alternative options).) These allegations show no affirmative misrepresentation; instead, the statement that "Zillow Home Loans offers a variety of competitive products for all client needs," (TAC ¶3), is true on its face. A truthful statement is not a misrepresentation, regardless of how Plaintiffs frame it.

Because Plaintiffs still fail to identify any representation, omission, or practice likely to mislead a reasonable consumer, they can show no deception or unfairness, let alone under a Rule 9 standard. *See Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020).

**b. Plaintiffs also still fail to allege injury.**

The Court previously dismissed the WCPA claim, in part, because Plaintiffs failed to allege facts showing how they suffered any injury. (Order at 22.) Plaintiffs do not even attempt to remedy this defect with any specific allegations of injury. Instead, they assert conclusory allegations that they "paid more for [a] loan than [they] would have absent the steering," (TAC ¶13)—or even just "believe[] [they] paid more." (*Id.* ¶22.) These are not "facts showing how the pre-approval letters or ZHL caused them any injury." (Order at 22.) No Plaintiff describes what

mortgage rate they could have received or how they overpaid because of Zillow's conduct, as required. (*See id*. ("Plaintiffs, however, do not allege facts showing that Flex agent commissions were higher than non-Flex agent commissions, or how those rates inflated property costs.").) This is fatal to Plaintiffs' WCPA claim.

Plaintiffs also invoke the Salop report, which they say shows that ZHL borrowers paid between 2022 and 2024, on average, about ten basis points more than comparable borrowers, for an average overcharge of $2,881 per loan. (TAC ¶183.) Even assuming this report that was funded and commissioned by a Zillow competitor has any credibility (it does not), an *average* is not evidence of any *particular* Plaintiff's injury—it says nothing about what any individual Plaintiff paid, or what rate that Plaintiff could have obtained elsewhere. That is what Plaintiffs were required to allege to avoid dismissal. *See, e.g.*, *Tierney v. Carrington Mortg. Servs., LLC*, 2023 WL 2783241, at *2 (9th Cir. Apr. 5, 2023) (WCPA requires plaintiffs to "establish injury to *his* business or property," and affirming dismissal of claim where plaintiff failed to explain counterfactual to his own situation if challenged conduct had not occurred (emphasis added)). Moreover, the Salop report says nothing about Plaintiffs Liao, Daugherty, and Robbins, who all purchased their homes outside the 2022–2024 period examined in the report. (TAC ¶¶15, 24, 29.)[7]

Because Plaintiffs fail to sufficiently allege an injury, their failure-to-disclose theory fails for this independent reason as well.

**c. Plaintiffs do not allege causation.**

Plaintiffs also still fail to connect Zillow's specific conduct with any purported injury, and thus fail to plead causation. *See White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1193 (9th Cir. 2024) ("The WCPA requires 'causation' as an element, in that '[a] causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff.'" (alteration in

[7] Plaintiffs' reliance on agent or loan officer allegations are similarly flawed. Those allegations, at best, describe general concerns about ZHL's rates and Zillow's internal metric (TAC ¶¶78–92), but none of them ties any Plaintiff to a specific overcharge, a specific alternative loan that Plaintiff could have obtained, or a specific dollar figure lost.

original) (quoting *Hangman Ridge*, 719 P.2d at 539)). Rather, Plaintiffs blame their individual agents for their decision to use ZHL. (*See, e.g.*, TAC ¶22 ("[A]gent (J.M.) . . . represented that ZHL was the best possible option and discouraged Plaintiff Wilson from shopping for alternative lenders."); *id.* ¶27 (Daugherty's agent told him "ZHL will be able to close faster on the property, and that he would lose the property if he tried to use someone else because that would delay his closing"); *id.* ¶32 (Robbins's agent told her "Zillow had less fees because [her agent]'s brokerage and Zillow were all part of the same company").) Allegations related to Plaintiffs' individual agents fail to establish that Zillow caused them harm.

Plaintiffs plead no facts explaining how Zillow's conduct forced them to use ZHL, or caused them to suffer economic harm. At most, Zillow allegedly incentivized agents to encourage buyers to obtain free, non-binding pre-approval letters; as explained above, they still fail to plead particularized facts showing that Zillow incentivized agents to encourage buyers to actually apply for, originate, or close loans with ZHL. *See supra*, at Part IV(A)(1)(b). And some Plaintiff-specific allegations actually ***belie*** causation. For example, Plaintiff Robbins alleges that when ZHL fees appeared to increase as she approached closing, she "and her husband had to contact the loan officer to push back against the excessive fees," demonstrating that Plaintiff Robbins not only knew of, but acted on, her ability to negotiate with ZHL. (TAC ¶32.) These allegations reflect the implausibility of Plaintiffs' theory that Zillow is the root of their alleged injuries.

**C. Plaintiffs' Group Pleading Strategy is Improper.**

The TAC alleges wrongdoing collectively by "Zillow," with no meaningful factual allegations explaining or differentiating among the named defendants' purported wrongdoing. As this Court observed, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" (Order at 23 (quoting *Woodell v. Expedia Inc.*, 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019))); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333,

at *6 (D. Haw. Oct. 12, 2011) (dismissing RESPA claims under 9(b) where the court could not determine what each defendant allegedly did to form the basis of the claims).

Plaintiffs still do not allege each individual defendant's participation in the alleged wrongdoing, instead relying again on generalized allegations against "Defendants," "Zillow Defendants," or an undefined "Zillow." This defect is particularly acute as to Plaintiffs' RESPA claims "because it is not clear which provision of the statute was violated by which party[.]" *Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1162 (D. Haw. 2018); (TAC ¶¶150–169 (alleging 2607(a) claims as to all "Zillow defendants")). For example, there is not a single specific fact pled as to Zillow Homes, Inc. or Zillow Listing Services, Inc. And, at best, the TAC alleges Zillow Group, Inc. is named because it is a parent holding company that performs unspecified "marketing, lead-generation, referral, and coordination functions" (TAC ¶¶35, 161), but a parent relationship does not independently create liability. *See Kozlov v. F.D.I.C.*, 2010 WL 4923103, at *1 (W.D. Wash. Nov. 29, 2010) ("case law support[s]" proposition that parent company cannot be liable under RESPA based solely on status as parent). Thus, both the WCPA and RESPA claims fail for this reason as well.

**D. The TAC Should Be Dismissed With Prejudice.**

The TAC represents Plaintiffs' ***fifth*** collective attempt to state a claim against the Zillow Defendants. It is "well-established" that courts may "dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'" *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011); *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (District courts have "particularly broad" discretion in denying amendment when leave to amend has previously been granted. (citation omitted)). As evidenced by their focus on deleting, rather than adding, specific, well-pled allegations in the TAC, Plaintiffs are incapable of stating a claim against Zillow. As such, further amendment would be futile and the Court should deny leave to amend.

## V. CONCLUSION

For each of the foregoing reasons, the Zillow Defendants respectfully request dismissal of all claims against them with prejudice.

Dated: September 21, 2026

*/s/ Benjamin B. Sweeney*
Benjamin Brink Sweeney (WSBA No. 63957)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
Telephone: (206) 452-8700
Fax: (206) 452-8800
Email: bsweeney@cooley.com

Benedict Y. Hur (*pro hac vice*)
Aarti Reddy (*pro hac vice*)
Thilini Chandrasekera (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Fax: (415) 693-2222
Email: areddy@cooley.com
bhur@cooley.com
tchandrasekera@cooley.com

Michelle Rogers (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Fax: (202) 842-7899
Email: mrogers@cooley.com

Sara Victoria M. Pitt (*pro hac vice*)
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Fax: (213) 561-3244
Email: sporter@cooley.com

Attorneys for Defendants
Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Zillow Home Loans, LLC

**Local Civil Rule 7(e)(6) Certification**

I certify that this memorandum contains 8,396 words, in compliance with the Local Civil Rules for the Western District of Washington.

Dated: September 21, 2026

*/s/ Benjamin B. Sweeney*

Benjamin Brink Sweeney (WSBA No. 63957)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
Telephone: (206) 452-8700
Fax: (206) 452-8800
Email: bsweeney@cooley.com

Benedict Y. Hur (*pro hac vice*)
Aarti Reddy (*pro hac vice*)
Thilini Chandrasekera (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Fax: (415) 693-2222
Email: areddy@cooley.com
bhur@cooley.com
tchandrasekera@cooley.com

Michelle Rogers (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Fax: (202) 842-7899
Email: mrogers@cooley.com

Sara Victoria M. Pitt (*pro hac vice*)
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Fax: (213) 561-3244
Email: sporter@cooley.com

Attorneys for Defendants
Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Zillow Home Loans, LLC