The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

ARABA ARMSTRONG, et al., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ZILLOW, INC., et al.,

Defendants.

Case No. 2:25-cv-01818-JLR

**PLAINTIFFS' OPPOSITION TO ZILLOW DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT**

NOTED ON MOTION CALENDAR FOR: November 20, 2026

ORAL ARGUMENT REQUESTED



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Plaintiffs State a RESPA § 2607(a) Claim (Count I) ........ 6

1. Plaintiffs have statutory standing because they paid ZHL for the settlement service involved in the violation. ........ 8

a. The TAC identifies the paid settlement services. ........ 8

b. The TAC does not delete the steering allegations; it connects them to origination. ........ 9

2. The TAC plausibly alleges an agreement and a thing of value ........ 10

3. Mortgage origination is a settlement service, and pre-approval is part of it. ........ 11

4. The TAC alleges actual referrals. ........ 12

5. The cooperative brokerage exemption does not apply, and at minimum presents a factual issue. ........ 13

6. Armstrong's, Liao's, and Wilson's claims are timely under equitable tolling and continuing violation. ........ 14

7. The TAC is not limited to post-2022 conduct. ........ 16

B. Plaintiffs State a WCPA Claim (Count II) ........ 16

1. Plaintiffs plausibly allege unfair and deceptive conduct contrary to public policy. ........ 16

2. The alleged conduct is unfair and deceptive; disclosures do not defeat the claim. ........ 17

3. Plaintiffs allege injury. ........ 19

4. Zillow's conduct caused Plaintiffs' injury. ........ 19

C. The TAC Does Not Engage in Impermissible Group Pleading ........ 20




HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

D. Dismissal With Prejudice Is Unwarranted ........ 20

V. CONCLUSION ........ 21



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Blaylock v. First Am. Title Ins. Co.*,
504 F. Supp. 2d 1091 (W.D. Wash. 2007) ........ 15

*Bloom v. Martin*,
77 F.3d 318 (9th Cir. 1996) ........ 11, 12

*Bolinger v. First Multiple List. Serv., Inc.*,
2014 WL 4803155 (N.D. Ga. Sep. 26, 2014) ........ 13

*Bushbeck v. Chicago Title Ins. Co.*,
632 F. Supp. 2d 1036 (W.D. Wash. 2008) ........ 11, 12

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ........ 21

*Dupuis v. Zillow Grp., Inc.*,
2026 WL 3046729 (W.D. Wash. Sep. 28, 2026) ........ *passim*

*Edwards v. First Am. Corp.*,
798 F.3d 1172 (9th Cir. 2015) ........ 6, 10, 12

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) ........ 15

*Hilton v. Mumaw*,
522 F.2d 588 (9th Cir. 1975) ........ 15

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
2017 WL 3313963 (W.D. Wash. Aug. 3, 2017) ........ 18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 18

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 21

*Lucas v. Dep't of Corr.*,
66 F.3d 245 (9th Cir. 1995) ........ 21

*Merritt v. Countrywide Fin. Corp.*,
759 F.3d 1023 (9th Cir. 2014) ........ 9, 10, 15

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ........ 21



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009) ....................19

*Peyton v. Veterans United Home Loans*,
2026 WL 2446755 (W.D. Mo. Aug. 20, 2026).................... *passim*

*Preston v. SB&C, Ltd.*,
588 P.3d 371 (Wash. 2026) ....................17

*Santa Maria v. Pac. Bell*,
202 F.3d 1170 (9th Cir. 2000) ....................15

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ....................15, 16

*Tierney v. Carrington Mortg. Servs., LLC*,
2021 WL 5280022 (W.D. Wash. Nov. 12, 2021) ....................16

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ....................18

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020) ....................18

**STATUTES**

12 U.S.C. § 2601(a), (b)(2)....................17

12 U.S.C. § 2602....................11

12 U.S.C. § 2602(3) ....................8

12 U.S.C. § 2607(a) ....................1, 7, 11

12 U.S.C. § 2607(d)(2)....................8, 12

**OTHER AUTHORITIES**

12 C.F.R. § 1024.2(b)....................9

12 C.F.R. § 1024.14(d)....................7, 10

12 C.F.R. § 1024.14(e)....................10

12 C.F.R. § 1024.14(f)(1)....................7, 12

12 C.F.R. § 1024.14(g)(1)(v)....................13



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## I. INTRODUCTION

Zillow's motion to dismiss[1] tries to relitigate Plaintiffs' inoperative *second* complaint, rather than squarely address the allegations in Plaintiffs' operative Third Amended Complaint.[2] Zillow persists with a fiction that this case concerns only free, nonbinding pre-approval letters. *See* Mot. at 1. It does not. The TAC alleges that Zillow required "Zillow Preferred" agents to steer buyers to Zillow Home Loans ("ZHL") in exchange for leads, and that each named Plaintiff was steered to ZHL and paid ZHL origination charges or points at closing. ¶¶ 1–4. That is a textbook violation of RESPA's anti-kickback provision, 12 U.S.C. § 2607(a)—indeed, this Court has already credited the plausibility of substantially similar allegations in the class action case against Zillow brought by real estate agents. *See Dupuis v. Zillow Grp., Inc.*, 2026 WL 3046729, at *7 (W.D. Wash. Sep. 28, 2026) ("The commercial reality of the [real estate] industry, as set forth in the pleadings, is that independent agents are highly dependent on Zillow's platform to acquire viable client leads.").

Similarly, a federal district court, considering a substantially similar lead-for-referral arrangement in a case against Veterans United, recently held that plaintiffs plausibly pled a RESPA violation where Veterans United conditioned leads on referrals to its mortgage arm (Veterans United Home Loans). *See Peyton v. Veterans United Home Loans*, 2026 WL 2446755, at *8–9 (W.D. Mo. Aug. 20, 2026) (holding that referrals were a "thing of value" that Veterans United provided in exchange for steering to Veterans United Home Loans). There is no conceptual difference between these two cases.

Zillow suggests that its entire ecosystem of Zillow Preferred real estate agent referrals, commissions, and ZHL referral tracking and compliance measures was intended only to generate the opportunity for Zillow to provide free, non-binding pre-approval letters. Mot. at 5–6. That premise defies common sense: no rational business builds quota, monitoring, and enforcement machinery to give away a free letter. Zillow's clear intent was to successfully steer Plaintiffs and

---

[1] *See* Zillow Defs.' Mot. to Dismiss Pls.' Consol. Third Am. Class Action Compl., Dkt. 108 ("Mot.").

[2] Consol. Third Am. Class Action Compl., Dkt. 103 ("TAC"). All "¶" references herein are to the TAC.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

other class members to utilize ZHL's settlement services. *See Dupuis*, 2026 WL 3046729, at *11 ("Zillow's argument that its targets are merely non-binding metrics is unpersuasive."). That the referral process began with a free pre-approval letter is irrelevant because the process ended (as it was intended) with ZHL's provision of settlement services, for which Plaintiffs and members of the class overpaid as a result of the scheme.

The Court's prior Order held that Plaintiffs lacked statutory standing because they had not adequately alleged that they paid out-of-pocket for a settlement service. Order, Dkt. 102 at 18. The TAC cures that defect with Plaintiff-specific closing payments. The TAC alleges that Armstrong paid ZHL $1,500 in origination fees and $205.86 in points;[3] Liao paid $850 in origination fees and $1,526.40 in points; Wilson paid $1,500 in origination fees; Daugherty paid $1,500 in origination fees and $102.34 in points; and Robbins paid $1,500 in origination fees and $2,242.43 in points. ¶¶ 5, 11, 16, 20, 25, 30. Mortgage origination is an enumerated settlement service under 12 U.S.C. § 2602(3), as the Court itself recognized. Order, Dkt. 102 at 17. The origination "charge" is therefore not a hypothetical cost of a free letter; it is the out-of-pocket payment each Plaintiff made to the lender for the mortgage-origination service that the alleged referral scheme delivered to ZHL.

Zillow's effort to recast the case as one about pre-approval letters also ignores the TAC's detailed allegations of the agreement and its enforcement. The TAC alleges that agents were threatened with reduced leads or removal from the program if they failed to steer customers to ZHL; that Zillow monitored their performance, including through Follow-Up Boss ("FUB"); and that Zillow tied its business strategy to mortgage-origination volume and customer adoption. ¶¶ 39, 49–63, 80–105, 113–123. These allegations are more than sufficient to allege steering. *See Dupuis*, 2026 WL 3046729, at *9 (plaintiffs plausibly stated claim for abuse of monopoly with allegations that "Zillow [] uses FUB to track and coerce agents into steering homebuyers to ZHL and allegedly blocks real estate professionals from purchasing quality referrals unless they use FUB and meet ZHL pre-approval quotas.").

[3] "Points" are upfront fees paid directly to a lender to lower the interest rate.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Plaintiffs have addressed the Court's concerns head-on, which is why Zillow wants to litigate a different case. Plaintiffs respectfully request that the Court deny the motion, allow both statutory claims to proceed, and reject Zillow's request for dismissal with prejudice.

## II. STATEMENT OF FACTS

Zillow has a policy to coerce real estate agents participating in its lead-generation network (the "Zillow Preferred" agents) to steer homebuyers into using Zillow Home Loans. ¶ 1. If agents do not successfully refer homebuyers to ZHL, Zillow cuts their leads or drops them from the program. ¶¶ 46–60. Zillow is accordingly providing a "thing of value" (leads to Zillow Preferred agents) in exchange for the receipt of a thing of value (successful referrals to ZHL). ¶ 47. By one loan officer's account, Zillow requires that at least one in five leads "must close through Zillow Home Loans." ¶ 113. To ensure compliance with the program (and punish those out of compliance), Zillow tracked agent performance, including using FUB to record and listen in on confidential communications between Zillow Preferred agents and homebuyers. ¶¶ 47, 102–103, 118–120. Zillow representatives instructed agents to direct consumers to ZHL even when consumers asked about down-payment assistance or other options that Zillow did not even offer. ¶¶ 3, 103. Below is a snapshot from training talking points Zillow disseminated (¶ 103):

> - #3. What if they need a DPA product, VA loan or jumbo product?
>   - Inform them that Zillow Home Loans offers a variety of competitive products for all client needs. Let them know you will connect them with your dedicated loan officer who will walk them through their loan options and pre-approval steps.

As the above bullet indicates, Zillow Preferred agents were compelled to steer homebuyers into the ZHL pipeline, even when Zillow admits that it cannot provide the homebuyer with a loan product that he or she needs, and that would be more affordable. ¶¶ 8, 84, 127, 178.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Zillow has this policy in place because loan origination is where the money is. As Zillow's own SEC filings acknowledge, "loan origination volume is an important metric as it is a measure of how successful we are at the origination of mortgage loan products through our Zillow Home Loans mortgage origination operations, which directly impacts our Mortgages revenue." ¶ 39.

One of the indicators that the steering has been successful is in Zillow's mortgages revenue. Zillow reports that its loan origination volume for the six-month period ending on June 30, 2026, increased ***95%***, to $3.75 billion, compared to the same six-month period in 2025. ¶ 61. According to Zillow, "[t]his increase was primarily driven by the continued growth in Zillow Home Loans purchase loan originations in line with our strategic priorities." ¶ 61. The TAC alleges that those "strategic priorities" include training and pressuring agents to steer clients to ZHL. ¶¶ 61–63, 103.

Each Plaintiff used a Zillow Preferred (formerly known as "Flex") agent and was routed into the Zillow ecosystem. According to the TAC:

- Plaintiff Armstrong alleges that "at the time she obtained her mortgage loan, following her communications with her Zillow agent, her agent led her to believe that she was obligated to use ZHL for her mortgage. Plaintiff Armstrong subsequently realized that there were other options available to her as a first-time home buyer that her Zillow agent did not inform her about, including her qualification for several federal and state programs designed to reduce interest rates, down payments, and closing costs." ¶ 13.
- Plaintiff Liao alleges that his real estate agent "encouraged Liao to use Zillow Home Loans because of its really good interest rates." ¶ 15.
- Plaintiff Wilson alleges that "both the agent (J.M.) and loan officer directed Plaintiff Wilson to obtain pre-approval through ZHL, and J.M. represented that ZHL was the best possible option and discouraged Plaintiff Wilson from shopping for alternative lenders. No other lenders were meaningfully discussed, and Plaintiff Wilson felt pressured to proceed with ZHL. As a result, Plaintiff Wilson did not pursue other available financing options, for which he believes he would have



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

qualified, and he believes he paid more for his loan than he would have absent the steering." ¶ 22.

- Plaintiff Daugherty alleges that his real estate agent "pressured him into using Zillow Home Loans by telling him that ZHL will be able to close faster on the property, and that he would lose the property if he tried to use someone else because that would delay his closing. Plaintiff Daughterty relied on these statements in using ZHL because N.D. led him to believe that he did not have any other choice. As a result of N.D.'s comments, Plaintiff Daugherty did not research alternate lenders." ¶ 27.
- Plaintiff Robbins alleges that her real estate agent "pressured her into using Zillow Home Loans by telling her that Zillow had less fees because K.M.'s brokerage and Zillow were all part of the same company. K.M. never told Robbins that there were other options, or that she could use other lenders …. Plaintiff Robbins did not research other lending options because she felt like she did not have any other choice, as they were almost at closing, they had already paid a down payment on the property, and they did not want to risk losing the house." ¶ 32.

As a result, Plaintiffs paid the following amounts in settlement services to Zillow:

- Plaintiff Araba Armstrong paid out-of-pocket $205.86 in points and $1,500 in loan origination fees directly to Zillow Home Loans, LLC for settlement services. ¶ 11.
- Plaintiff David Liao paid out-of-pocket $1,526.40 in points, $850 in loan origination fees, $189.49 in prepaid interest, $159.51 in homeowner's insurance, and $589.11 in property taxes directly to Zillow Home Loans, LLC for settlement services. ¶ 16.
- Plaintiff Furgus Wilson paid out-of-pocket $1,500 in loan origination fees directly to Zillow Home Loans, LLC for settlement services. ¶ 20.
- Plaintiff Brandon Daugherty paid out-of-pocket $1,500 in loan origination fees, and $102.34 in mortgage points, directly to Zillow Home Loans, LLC for settlement services. ¶ 25.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

- Plaintiff Rebecca Robbins paid out-of-pocket $1,500 in loan origination fees, and $2,242.43 in mortgage points, directly to Zillow Home Loans for settlement services. ¶ 30.

The TAC alleges that the steering caused economic harm. A regression analysis by Georgetown Professor Steven Salop, cited in the TAC, found that ZHL loans associated with the Zillow network carried approximately 10 basis points of additional cost, or approximately $2,881 in net present value per loan. ¶¶ 68–75. The report's findings "suggest that ZHL borrowers pay significantly higher mortgage costs than they would pay to other lenders, which are referred to as ZHL 'overcharges.'" ¶ 73.

## III. LEGAL STANDARD

A complaint survives Rule 12(b)(6) when it contains sufficient factual matter to state a plausible claim. Order, Dkt. 102 at 4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded factual allegations as true and construes them in the plaintiff's favor. *Id.* (citing *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)).

## IV. ARGUMENT

### A. Plaintiffs State a RESPA § 2607(a) Claim (Count I)

To allege a RESPA claim, Plaintiffs need to show that Defendants (1) exchanged a payment or thing of value (2) pursuant to an agreement to refer real estate settlement services and (3) there was an actual referral. *See Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178–79 (9th Cir. 2015). In *Dupuis*, Zillow acknowledged that it exchanged a thing of value pursuant to an agreement to refer real estate settlement services. 2026 WL 3046729, at *14 ("Zillow argues that its distribution of client leads creates a complete, equitable exchange of value that precludes an unjust enrichment claim."). And each Plaintiff closed with ZHL, thereby satisfying the "actual referral" requirement. ¶¶ 11, 16, 20, 25, 30.

In arguing that these straightforward allegations do not make a RESPA claim, Zillow defies common sense. It argues that if a referral of a prospective homebuyer to a lender does not necessarily, immediately, and directly lead to a paid settlement service, it is not subject to RESPA's



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

anti-kickback provisions. Mot. at 8. That is not how RESPA works, it is not how the real estate business works, and it is not how Plaintiffs have pled their claims.

Under RESPA, it is the end result of a referral (i.e., whether a paid settlement service is provided) rather than the first incident of the referral (i.e., a pre-approval letter or loan application) that matters. 12 U.S.C. § 2607(a) states:

> Business referrals[:] No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business *incident to or a part of a real estate settlement service* involving a federally related mortgage loan shall be referred to any person.

*Id.* (emphasis added). Regulation X, which implements RESPA, defines "referral" to include "any oral or written action directed to a person which has the effect of affirmatively influencing the selection … of a provider of a settlement service or business *incident to or part of a settlement service* when such person will pay for such settlement service …." 12 C.F.R. § 1024.14(f)(1) (emphasis added).

In this context, "referral" does not require every single homebuyer to use ZHL. A "business referral" is valuable not because it is *guaranteed* to lead to paid business but because it provides the *opportunity* to engage in paid business.[4] That is precisely what Regulation X recognizes when it defines a "thing of value" to include the "*opportunity* to participate in a money-making program." 12 C.F.R. § 1024.14(d). Thus, when a Zillow Preferred agent "refers" a buyer to ZHL, they are providing ZHL with the *opportunit*y to engage in business with the buyer. That is true regardless of whether the first step in that engagement is ZHL's provision of a pre-approval letter (which ZHL expects and hopes will lead to a final lending agreement from which it will profit) or a home loan application (which Zillow hopes will lead to a final lending agreement).

The second element, "business incident to or a part of a real estate settlement service," 12 U.S.C. § 2607(a), recognizes that real estate settlements are necessarily part of a process. In the context of a "federally related mortgage loan," settlement services will *always* be preceded by a

---

[4] Zillow does not dispute Plaintiffs' allegation that the referrals are a "thing of value." Nor could it reasonably do so: referring a buyer to ZHL for any purpose puts that buyer in ZHL's "pipeline" and gives it an opportunity to originate a home loan and charge settlement fees.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

loan application; frequently, the loan application process begins with a pre-approval letter. A referral to a lender like ZHL, whether it be for a pre-approval letter or loan application, is a referral "incident to or part of a real estate settlement service." To hold otherwise would be to ignore the realities of the mortgage lending industry.

Moreover, under RESPA only *successful* referrals lead to liability. Under 12 U.S.C. § 2607(d)(2), a violator is liable "to the person [] charged for the settlement service." If the referral is not successful and there are no settlement services, there is no liability. This is a logical limitation recognizing that not every referral, even if made in violation of RESPA's anti-kickback provisions, will be successful. Further, it demonstrates that RESPA liability hinges not on the first incident of contact, but on the end result. Here, each of the Plaintiffs alleges that their agents affirmatively influenced them to work with ZHL, and that those referrals led to them securing loans from and paying settlement costs to ZHL. That is sufficient under RESPA.

**1. Plaintiffs have statutory standing because they paid ZHL for the settlement service involved in the violation.**

**a. The TAC identifies the paid settlement services.**

Zillow contends that Plaintiffs lack standing because the only service allegedly referred was a free pre-approval letter, and that the origination fees and points pleaded in the TAC are unrelated. Mot. at 6–10. That argument misreads both the TAC and the statutory text. RESPA provides liability to "the person or persons charged for the settlement service involved in the violation," 12 U.S.C. § 2607(d)(2), and expressly includes mortgage-loan origination, 12 U.S.C. § 2602(3). The TAC alleges that the service referred was mortgage origination through ZHL—not issuance of a free letter—and that each Plaintiff paid ZHL for that service at closing. ¶¶ 1–2, 5, 11, 16, 20, 25, 30, 156–158.

The Order held that the earlier complaint contained "no allegations that [Plaintiffs] paid out-of-pocket for any settlement services." Order, Dkt. 102 at 18.[5] It did not hold that origination

[5] To the extent the Court interpreted the earlier complaint to allege that the pre-approval letter itself was the trigger of liability, the TAC has been amended to make clear that it is the loan origination and associated settlement services that form the basis of liability. *See, e.g.*, ¶ 5 (each Plaintiff alleging he or she paid loan origination and related fees directly to ZHL).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

fees did not satisfy 12 U.S.C. § 2607(d)(2), nor did it decide the remaining elements of the alleged referral scheme. To the contrary, the Order cited *Merritt* for the proposition that a pleading could cure the deficiency by alleging that plaintiffs paid the provider directly. Order, Dkt. 102 at 17–18 (citing *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1035 (9th Cir. 2014)). The TAC does exactly that, making clear that each Plaintiff closed their loans with ZHL and providing the amounts they paid for settlement services. ¶¶ 11, 16, 20, 25, 30.

As detailed below (*see infra* Part IV.B.3), Plaintiffs have independently established standing based on the allegations that Plaintiffs overpaid for their loans and were deprived of information about competing loans. *Compare Dupuis*, 2026 WL 3046729, at *9 (plaintiffs' complaint was "more than sufficient" to plausibly allege "Zillow blocks homebuyers from receiving information about superior third-party loan products by threatening to terminate agents who do not meet steering quotas") *and Peyton*, 2026 WL 2446755, at *5 (plaintiffs have standing based on allegations involving higher origination fees, higher interest rates, and inflated loan costs) *with* ¶ 7 ("Plaintiffs were also injured from the higher costs, fees, and interest rates that Defendants charge.") *and* 67–76 (detailing higher costs).

**b. The TAC does not delete the steering allegations; it connects them to origination.**

Zillow claims the TAC strategically removed pre-approval allegations and replaced them with vague references to "steering." Mot. at 3 n.1, 7–9. In fact, the TAC retained the pre-approval allegations, including the Preferred Program Standards, quota evidence, screenshots, and training allegations. ¶¶ 62 n.38, 98, 102–103, 118. What changed is that the TAC now makes clear—consistent with the Court's Order—that it is the end result of the process, not the initiation of that process that matters.

Pre-approval is also part of the origination process. Section 2602(3) includes the taking of loan applications, processing, underwriting, and funding, and 12 C.F.R. § 1024.2(b) defines settlement services to include origination and services related to origination. A practice that requires agents to push consumers into ZHL's application pipeline, monitors whether those consumers obtain ZHL financing, and rewards agents based on ZHL closing volume plausibly



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

concerns the settlement service ultimately paid for at closing. Zillow's attempt to isolate the first step of that process cannot defeat the full course of conduct alleged. The pleading rules require the Court to accept that course of conduct as true and construe it in Plaintiffs' favor. *Merritt*, 759 F.3d at 1040.

**2. The TAC plausibly alleges an agreement and a thing of value.**

Zillow argues that the TAC identifies neither a specific agreement nor a thing of value tied to mortgage origination. Mot. at 7–9. But § 2607(a) does not require a written contract. Regulation X provides that an agreement "need not be written or verbalized but may be established by a practice, pattern or course of conduct." 12 C.F.R. § 1024.14(e). The regulation also broadly defines "thing of value" to include the "opportunity to participate in a money-making program." 12 C.F.R. § 1024.14(d). The three elements of Plaintiffs' § 2607(a) claim are an exchange of value, an agreement to refer settlement business, and an actual referral. *Edwards*, 798 F.3d at 1178–79; *see also Peyton*, 2026 WL 2446755, at *7.

The TAC pleads those elements with concrete detail. Zillow gave Preferred agents access to valuable buyer leads and program participation; agents were expected to route customers to ZHL; Zillow tracked performance through quotas and Follow-Up Boss; and agents who refused were downgraded or terminated. ¶¶ 47, 50, 56, 62 n.38, 80–81, 94, 97, 102–103, 105, 113, 118–120. The training script directed agents to ZHL even when the customers were seeking loan packages that Zillow did not offer. ¶¶ 3, 103. The well-pled threats, monitoring, lead allocation, and closing metrics plausibly show both an agreement and reciprocal value: continued access to leads for agents and mortgage-origination revenue for Zillow and ZHL.

*Peyton* confirms that these allegations cross the plausibility threshold. There, the court treated leads conditioned on steering compliance as the opportunity to participate in a money-making program. *Peyton*, 2026 WL 2446755 at *8 ("The volume-linked patterns alleged … are precisely the evidence Regulation X contemplates and are sufficient to push the Plaintiffs' claims over the line of plausibility"). Zillow's reliance on the *Peyton* plaintiff whose claim failed for lack of any connection between her agent and the alleged scheme only underscores the difference here:



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

every Plaintiff used a Zillow Preferred or "Top Agent on Zillow" agent and alleges a specific referral to ZHL. ¶¶ 10, 15, 19, 24, 29.[6]

**3. Mortgage origination is a settlement service, and pre-approval is part of it.**

Zillow contends that pre-approval letters are free, optional, and nonbinding, and therefore are not settlement services. Mot. at 10–11. Plaintiffs do not contend that a free letter, standing alone, is the charge at issue. The TAC alleges referrals of mortgage-origination business, for which Plaintiffs paid ZHL at closing. Section 2602(3) expressly enumerates "origination of a federally related mortgage loan," including taking applications, processing, underwriting, and funding, and also covers services related to origination. 12 U.S.C. § 2602. Section 2607(a) reaches business "incident to or a part of" a settlement service. The pleaded referral therefore falls within the statute even if the first contact with ZHL was a free pre-approval. 12 U.S.C. § 2607(a).

The authorities Zillow cites about fees paid after closing do not control here. *Bloom* and *Bushbeck* do not stand for the proposition that a settlement service "must cost money and be necessary for obtaining a loan" as Zillow claims. Mot. at 10. Rather, they simply draw a temporal distinction for fees arising *after* closing. In *Bloom v. Martin*, 77 F.3d 318, 320–21 (9th Cir. 1996), the issue was whether an alleged failure to disclose the "assessment of demand and reconveyance fees" violated RESPA. A demand fee is a "charge … for preparing a statement summarizing the outstanding loan balance in connection with the borrower's prepayment of the balance of a loan." *Id.* at 319. A "reconveyance fee" is a charge when lenders "reconvey the deed back to the borrower after the loan is repaid." *Id. Bloom* found these charges were not covered by RESPA because they were not a "charge a borrower is likely to be required to pay at settlement." *Id. Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036, 1040–41 (W.D. Wash. 2008), like *Bloom*, involved RESPA claims premised on reconveyance fees. However, the claims in *Bushbeck* were not based on failure

---

[6] Zillow misrepresents the dismissal of the plaintiff in *Peyton* as based on her allegations that the agent "encouraged" her to use the lender. Mot. at 8. In fact, that plaintiff was dismissed because "[s]he [did] not allege that her real estate agent, K.B., was affiliated with [the defendant companies] in any way." 2026 WL 2446755 at *9. The *Peyton* court upheld claims for plaintiffs who alleged "that an identified agent 'encouraged' or 'pushed' each individual Plaintiff to work with VUHL and did not disclose that the agent was required to pay a portion of his or her commission back to VUR" and that "these requirements only apply to agents in the VUR network." *Id.*



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

to disclose, but rather receiving fees for services not actually performed. *Id.* at 1040. This Court recognized *Bloom's* holding that "RESPA was meant to apply only to costs payable at or before settlement," but found that it "does not apply to the facts as pleaded in this complaint." *Id.* at 1040–41. Nor does *Bloom* apply to the facts pleaded in the TAC. The conduct alleged here occurred before or at closing, and the charges were paid at closing for mortgage-origination services. The TAC thus pleads the required connection between the referral and the settlement service for which Plaintiffs were charged.

Zillow's other arguments are equally unavailing. The fact that the mandated disclosures booklet does not require disclosure of pre-approval letters is irrelevant. *See* Mot. at 10–11. Plaintiffs' claims are based upon their loan closing and settlement costs, not the pre-approval letter. Nor does it help Zillow that the TILA-RESPA Integrated Disclosures Rule is triggered by an "application" that includes a "property address" and a "value." *Id.* at 11. All of the Plaintiffs closed their mortgages with ZHL, and in the course of doing so completed applications that included the property address and value of the property. And RESPA's treble damages provision for "any charge paid for such settlement service" squares exactly with Plaintiffs' allegations, which include specific payments to ZHL for settlement services associated with the closing of their home purchases. 12 U.S.C. § 2607(d)(2); *see also* ¶ 5 (listing the amounts paid to ZHL for settlement services for each Plaintiff).

**4. The TAC alleges actual referrals.**

Zillow argues that encouraging a consumer to obtain a pre-approval is not a referral of a settlement service. Mot. at 11, 17. Regulation X defines a referral as "any oral or written action directed to a person which has the effect of affirmatively influencing" the selection of a settlement-service provider. 12 C.F.R. § 1024.14(f)(1). *Edwards* confirms that the referral need not be exclusive or the primary reason for a consumer's selection, and Plaintiffs need not isolate the precise value of every component of the transaction at the pleading stage. 798 F.3d at 1181–82, 1184; *see also Peyton*, 2026 WL 2446755, at *9 ("Being pre-approved for a home loan does not obligate a buyer to work with that specific lender. Agent conduct occurring after a borrower's



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

initial contact or pre-approval with VUHL can therefore still 'affirmatively influenc[e]' which lender the buyer ultimately selects, which is all the regulation requires.").

The TAC details Plaintiff-specific referrals. Armstrong was led to believe she was obligated to use ZHL. Liao was encouraged to use ZHL because of its purported rates. Wilson was directed to ZHL and discouraged from shopping. Daugherty was told he would lose the property if he used another lender. Robbins was told ZHL had lower fees because the agent's brokerage and Zillow were part of the same company and was not told about other lenders. ¶¶ 13, 15, 22, 27, 32. These allegations describe oral actions that affirmatively influenced lender selection and resulted in ZHL origination charges.

*Bolinger v. First Multiple Listing Service, Inc.*, 2014 WL 4803155, at *5–6 (N.D. Ga. Sep. 26, 2014), cited by Defendants (Mot. at 11), is inapposite. There, the court found no RESPA violation where plaintiffs "could not have been referred to FMLS because they never paid for any services it provided." 2014 WL 4803155, at *5. Rather, the brokers "were in an independent contractual relationship with FMLS under which the Brokers were solely liable for the Sold Fees." *Id. Bolinger* does not apply to a pleading alleging that each Plaintiff paid the referred mortgage lender.

**5. The cooperative brokerage exemption does not apply, and at minimum presents a factual issue.**

Zillow contends that the cooperative brokerage exemption (the Safe Harbor provision) protects the alleged arrangements. Mot. at 12–13. The argument fails on the face of Regulation X. Section 1024.14(g)(1)(v) limits the exemption to fee divisions within real-estate brokerage arrangements when all parties act in a brokerage capacity and states that it has "no applicability to any fee arrangements between real estate brokers and mortgage brokers." 12 C.F.R. § 1024.14(g)(1)(v). The alleged quid pro quo here is not a division of a brokerage fee between cooperating brokers. It is the provision of leads in exchange for referrals to ZHL, a mortgage lender, and the Plaintiffs allege that Zillow performed no real estate brokerage function in their challenged mortgage transactions. ¶¶ 161, 165–166.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Zillow's reliance on an Alaska statute and on its characterization of lead generation as brokerage activity asks the Court to resolve facts against Plaintiffs. Mot. at 13. Lead generation may be incident to mortgage origination without being brokerage on the sale of a home. The TAC alleges that Zillow's role was marketing, lead generation, and referral coordination, while ZHL originated the loans and received the payments. Whether any purported services fit the exemption is a factual question that cannot be decided on a motion to dismiss.

*Peyton* likewise declined to apply a safe harbor before factual development. 2026 WL 2446755 at *6–7 ("Whether the challenged receipt of a 'thing of value' was made pursuant to a cooperative brokerage arrangement, to which the exemption would apply, or pursuant to a lender-steering arrangement, to which the exemption would not apply, is a question of fact that cannot be resolved at this stage." (citing *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 761 n.9 (3d Cir. 2009) ("Whether it is or is not a legitimate business arrangement—and, thus, whether it is exempted by section [2607(c)]—is a fundamental merits question that has no bearing whatsoever on what is before us."); *White v. PNC Fin. Servs. Grp., Inc.*, 2014 WL 4063344, at *8 (E.D. Pa. Aug. 18, 2014) ("holding that where the exact arrangement between defendants was unclear, further discovery was required to say whether the claim was legally precluded by the safe harbor provision).").

At minimum, the application of the Safe Harbor provision is a factual matter that cannot be resolved on a motion to dismiss.

**6. Armstrong's, Liao's, and Wilson's claims are timely under equitable tolling and continuing violation.**

Zillow repeats the Order's conclusion that Armstrong's and Liao's earlier claims were time-barred and argues that the TAC adds no diligence facts. Mot. at 13–17; Order at 14, 29–31. The TAC does add those facts. It alleges that Plaintiffs reasonably relied on their agents fulfilling their fiduciary duties of candor and loyalty, which includes disclosure of referral fees and financial interests under applicable state law, that the quota arrangement was not disclosed to them, and that Zillow concealed the arrangement by communicating quota instructions in person so they would



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

not be put in writing. ¶¶ 10, 124–130, 143–148. It also alleges that Zillow never disclosed that Preferred agent lead access was conditioned on steering consumers to ZHL. ¶¶ 142, 178.

Applying Washington law, the Ninth Circuit recognized that although a fiduciary relationship does not eliminate the obligation to exercise diligence, the fiduciary's duties bear on whether a plaintiff reasonably should have suspected wrongdoing and undertaken further investigation. *Hilton v. Mumaw*, 522 F.2d 588, 595–97 (9th Cir. 1975). Similarly, applying California law, the Ninth Circuit held that a plaintiff's reasonable reliance on a fiduciary affects the diligence expected absent facts sufficient to arouse suspicion, including with respect to claims against third parties. *Graham-Sult v. Clainos*, 756 F.3d 724, 743 & n.19 (9th Cir. 2014). Here, Plaintiffs reasonably relied on their agents' duties of honesty and disclosure and had no reason to suspect that their agents' recommendations were influenced by Zillow's undisclosed steering requirements.

These allegations are more than sufficient to establish equitable tolling at the pleading stage. *Merritt* holds that the RESPA limitations period may be equitably tolled until the borrower discovers or has a reasonable opportunity to discover the violation, particularly where a provider's obfuscation or failure to disclose prevents suit. 759 F.3d at 1036–40. *Blaylock v. First American Title Insurance Co.* likewise recognizes that § 2614 is non-jurisdictional, that tolling is consistent with RESPA's remedial purposes, and that the inquiry focuses on "whether a reasonable plaintiff would have known of the existence of a possible claim within the limitations period." 504 F. Supp. 2d 1091, 1107–08 (W.D. Wash. 2007) (citation modified); *see also Dupuis*, 2026 WL 3046729, at *12 (tolling statute of limitations when the "true impact" of Zillow's steering policies manifested in December 2025, and holding "[t]racing the exact moment a reasonable person should have understood the full scope of the platform's restrictions is a fact issue reserved for trial"); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ("Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" (citation omitted)); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

The disclosures Zillow cites do not reveal the alleged quid pro quo. A statement that Zillow may receive consideration or that affiliated referrals may benefit consumers does not disclose that agents' continued access to leads was conditioned on directing clients to ZHL. Whether a reasonable consumer would discover that hidden condition, and whether the alleged in-person communications frustrated diligence, are fact-intensive questions not appropriate for disposition at the motion to dismiss stage. *Supermail*, 68 F.3d at 1206.

**7. The TAC is not limited to post-2022 conduct.**

Zillow asks the Court to disregard the TAC's allegations that pressure on real estate agents to steer began in 2018. Mot. at 3 n.1, 17. The TAC alleges that Baker discussed leads tied to "deals we sent to Zillow Mortgage" at an October 2018 Boston meeting; that CA7 had been subject to the pressure since 2019; and that CA6 was on the Flex team beginning in 2020. ¶¶ 58–60, 94, 96. While Zillow's scheme became more pronounced and sophisticated over time with the implementation of advanced tracking methods and metrics, those steps were a continuation and expansion of the scheme, not the beginning. Plaintiffs' allegations support Mr. Liao's individual claim and the class period beginning October 1, 2018. At minimum, those claims cannot be weighed or disregarded at the pleading stage.

Because the TAC alleges a paid mortgage-origination service, an agreement supported by a thing of value, actual referrals, and timely claims, Count I should proceed.

**B. Plaintiffs State a WCPA Claim (Count II)**

**1. Plaintiffs plausibly allege unfair and deceptive conduct contrary to public policy.**

Zillow argues that the WCPA *per se* theory collapses because the RESPA claim fails and because a RESPA violation does not automatically constitute a *per se* WCPA violation. Mot. at 18–19. The first premise is wrong for the reasons above. The TAC plausibly alleges a violation of § 2607(a), and that violation supplies the predicate for Plaintiffs' public-policy theory. *Tierney v. Carrington*, 2021 WL 5280022, at *6 (W.D. Wash. Nov. 12, 2021), recognized that a RESPA violation "typically" constitutes a per se WCPA violation.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Washington law nevertheless recognizes independent WCPA claims based on unfair conduct that contravenes public interest, even absent a *per se* statutory violation. *Preston v. SB&C, Ltd.*, 588 P.3d 371, 375 (Wash. 2026) ("Unfair or deceptive conduct that violates the public interest may be based on actions contrary to a comprehensive statutory scheme, like, as alleged in this case, the charity care act."). Congress expressly identified protecting consumers from unnecessarily high settlement charges and eliminating kickbacks and referral fees as purposes of RESPA. 12 U.S.C. § 2601(a), (b)(2). Zillow's alleged practice contravenes that express public policy by violating RESPA. Thus, even if the Court does not recognize a per se WCPA violation based on RESPA, that does not foreclose Plaintiffs' independent unfairness theory. ¶¶ 179–181.

**2. The alleged conduct is unfair and deceptive; disclosures do not defeat the claim.**

Zillow argues that its Terms of Use, affiliated-business disclosures, and the statement by Robbins' agent that their brokerage and Zillow "were all part of the same company" disclosed the relevant conduct, and that the training script was truthful. Mot. at 19–21; Reddy Decl., Dkt. 110. The Order identified the earlier pleading's deficiencies: it lacked detailed allegations about interactions with agents and alleged ZHL use for only two Plaintiffs. Order, Dkt. 102 at 20–21. The TAC cures both problems with the specific statements to Liao, Wilson, Daugherty, and Robbins by their Zillow Preferred agents—each of whom used ZHL to finance the purchase. ¶¶ 15, 22, 27, 32.

Zillow's disclosures also do not reveal the conduct that Plaintiffs allege in the TAC. The disclosures say Zillow may receive consideration and that affiliated referrals may benefit consumers; they do not disclose that Preferred agents' lead access was conditioned on steering clients to ZHL, that their agent had a direct financial incentive to steer them to ZHL, or that ZHL's loans are more expensive. ¶ 178. The agent's statement to Robbins that ZHL had lower fees because the brokerage and Zillow were part of the same company was itself misleading (absent the necessary context of the benefit the agent reaped by making that statement). And Zillow's training script, which instructed agents to deflect questions about down-payment assistance, is a misleading half-truth when the agent is not told to disclose competing options. ¶¶ 3, 32, 103. The



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

existence of accurate disclosures does not defeat a WCPA claim where those disclosures fail to reveal the allegedly deceptive practice. *See Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2017 WL 3313963, at *4 (W.D. Wash. Aug. 3, 2017) (declining to dismiss a WCPA claim notwithstanding a product's accurate listing of its contents); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008) (fine-print disclosures did not necessarily cure otherwise misleading representations).

Under *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020), a practice is deceptive if it has the capacity to deceive a substantial portion of the public, including through a representation, omission, or practice likely to mislead a reasonable consumer. Plaintiffs' allegations demonstrate Zillow's practice of coercing agents to refer clients to ZHL, while hiding the direct financial interest (and consequences of failing to make referrals) from home buyers. That practice deprived Plaintiffs and class members of the information necessary to view the ZHL referrals with appropriate skepticism and caution. Zillow's conduct has the capacity to deceive a substantial portion of the public and is actionable under the WCPA.

The same allegations support unfairness. Zillow's practice contravenes RESPA's anti-kickback policy and the agents' disclosure duties identified in the TAC. It deprived consumers of an informed lender choice while hiding the incentives (and disincentives) that prompted the referral. Zillow's disclosures cannot resolve that issue on a motion to dismiss because they do not specifically disclose the challenged practice. The existence of a disclosure may be noticed, but its meaning, adequacy, and effect on a reasonable consumer cannot be resolved by accepting Zillow's characterization of it. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). Plaintiffs maintain their objections to Zillow's Request for Judicial Notice to the extent Zillow offers materials for the truth of disputed matters. *See* Dkt. 82.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**3. Plaintiffs allege injury.**

Zillow argues that the TAC offers only generalized assertions that ZHL loans cost more. Mot. at 21–22. The TAC alleges far more: each Plaintiff paid ZHL origination fees or points; Professor Salop's analysis, whose findings cited in the TAC must be accepted as true at the pleading stage, found an approximately 10-basis-point and $2,881 net-present-value difference; agents observed ZHL rates up to a point higher; Armstrong lost access to first-time-buyer programs; Robbins's fees increased approaching closing; and Plaintiffs allege that competing lenders would have offered lower rates and fees. ¶¶ 11, 13, 16, 20, 25, 30, 68–75, 83, 99, 183. That is more than sufficient to plead injury to business or property under the WCPA. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009) *Dupuis*, 2026 WL 3046729, at *9 ("A platform policy that systematically restricts consumer choice and undermines the competitive process states a plausible injury to the marketplace.").

Washington law requires only that money or a property interest be diminished because of unlawful conduct; it does not require Plaintiffs to quantify their damages at the pleading stage, or at all. *Panag*, 204 P.3d at 899–900 (injury requirement is met upon proof that the plaintiffs' property interest or money has been diminished, and "[m]onetary damages need not be proved; unquantifiable damages may suffice"). The named Plaintiffs' closing payments and alleged excess financing costs easily satisfy that standard at the pleading stage. Zillow's complaint that Plaintiffs have not provided concrete competitor comparisons goes to weight and proof, not plausibility. Plaintiffs are not required to provide such evidence at the pleading stage.

The Court's Order faulted the prior complaint for failing to show how ZHL caused injury (Order, Dkt. 102 at 22); the TAC supplies the causal facts: Zillow's scheme applied coercive force to its Zillow Preferred agents, which led those agents to refer Plaintiffs to ZHL for their mortgage settlement services, without knowledge of the perverse incentives at play. As a result, Plaintiffs paid more for their settlement services than they otherwise would have.

**4. Zillow's conduct caused Plaintiffs' injury.**

Zillow argues that Plaintiffs' own financing choices and Robbins's effort to negotiate fees defeat causation. Mot. at 22–23. The TAC alleges the opposite mechanism: Zillow controlled lead



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

access, required or pressured Preferred agents to steer consumers to ZHL, monitored compliance, and threatened agents who did not meet the metrics. ¶¶ 47, 57, 113–114, 118. The agents' statements were the mechanism by which Zillow's program reached consumers. Robbins's pushback on fees shows that the fees increased and that she attempted to mitigate the harm; it does not establish that Zillow's steering had no causal role. Indeed, Robbins alleged that she felt compelled to continue with ZHL despite her reservations because "they were almost at closing, they had already paid a down payment on the property, and they did not want to risk losing the house." ¶ 32. Causation is a fact question where, as here, the complaint plausibly connects the challenged practice to the lender selection and resulting charges.

The TAC therefore pleads unfair or deceptive conduct in trade or commerce affecting the public interest, injury to business or property, and causation under RCW 19.86.020, .090, and .120. Count II should proceed.

### C. The TAC Does Not Engage in Impermissible Group Pleading

Zillow contends that the TAC improperly lumps the Zillow entities together and offers no meaningful allegations concerning Zillow Homes or Zillow Group. Mot. at 23–24. The TAC differentiates the entities and their functions. Zillow, Inc. operates the marketplace and holds brokerage licenses. Zillow Group, Inc. controls the marketplace and performs or coordinates marketing, lead generation, and referrals, while reporting the strategy tied to ZHL volume. Zillow Listing Services, Inc. holds brokerage licenses. Zillow Homes, Inc. is identified as part of the Zillow structure. ZHL originates the loans and received the payments from Plaintiffs. ¶¶ 34–40, 61–63, 161, 165–166.

### D. Dismissal With Prejudice Is Unwarranted

Zillow argues that Plaintiffs have had repeated opportunities to amend and that the TAC shows they cannot cure the defects. Mot. at 24. The procedural history shows the opposite. The Court's Order granted leave to amend, and the TAC added three Plaintiffs, named each Plaintiff's closing charges, added detailed steering statements and monitoring evidence, pleaded concealment and diligence, and differentiated the Zillow entities. Order, Dkt. 102 at 31–32; ¶¶ 5, 11, 16, 20, 25,



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

30, 47–63, 80–120, 124–149, 156–183. Those additions directly address the Court's stated concerns.

Rule 15(a)(2) directs that leave to amend be freely given when justice so requires. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Dismissal with prejudice is appropriate only when the defect cannot be cured. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Because the TAC alleges a paid settlement service and supplies facts addressing each prior deficiency, Zillow cannot show futility. If the Court identifies any remaining pleading defect, Plaintiffs request leave to amend rather than dismissal with prejudice.

## V. CONCLUSION

For these reasons, the Court should deny the Zillow Defendants' motion to dismiss in its entirety. Alternatively, if the Court finds any pleading deficiency, it should grant Plaintiffs leave to amend under Rule 15(a)(2).

DATED: October 27, 2026

Respectfully submitted,

By: */s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
By: */s/ Jerrod C. Patterson*
Jerrod C. Patterson (WSBA No. 43325)
By: */s/ Garth D. Wojtanowicz*
Garth D. Wojtanowicz (WSBA No. 30822)

**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
jerrodp@hbsslaw.com
garthw@hbsslaw.com

Adam J. Levitt (*pro hac vice*)
Amy E. Keller (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dicellolevitt.com

akeller@dicellolevitt.com

Corban S. Rhodes (*pro hac vice*)
Emma Bruder (*pro hac vice*)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
Email: crhodes@dicellolevitt.com
ebruder@dicellolevitt.com

*Plaintiffs' Interim Class Counsel*

Douglas J. McNamara (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Email: dmcnamara@cohenmilstein.com

Theodore J. Leopold (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Email: tleopold@cohenmilstein.com

*Attorneys for Plaintiffs*

**Local Civil Rule 7(e)(6) Certification**

I certify that this memorandum contains 7,547 words, in compliance with the Local Civil Rules for the Western District of Washington.

DATED: October 27, 2026

*/s/ Steve W. Berman*
Steve W. Berman